Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
Jordan C. Wolff (Arizona Bar #034110)
**ANGELINI MILLS WOODS + ORI LAW**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone (480) 999-4556
docket@amwolawaz.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James W. Denby, a single man; Elizabeth J. Torres, a single woman; Wilma J. Logston; a single woman, | Case No. 2:17-CV-00119-SPL |
| Plaintiffs, | **SECOND AMENDED COMPLAINT** |
| vs. | (Assigned to the Hon. Steven P. Logan) |
| City Of Casa Grande, a governmental entity; County Of Pinal, a governmental entity; Paul Babeu, a single male; Francisco X. Lujan and JANE DOE LUJAN, a married couple; Kent Horn and Jane Doe Horn, a married couple; David Engstrom and Jane Doe Engstrom, a married couple; Mark McCabe and Jane Doe McCabe, a married couple; Jacob H. Robinson and Jane Doe Robinson, a married couple; C. Western and Jane Doe Western, a married couple; Michael Wilson and Jane Doe Wilson, a married couple; J J Ybarra and Jane Doe Ybarra, a married couple; Garric Berry and Jane Doe Berry, a married couple; Christopher Lapre and Jane Doe Lapre, a married couple; Sgt. Gregg and Jane Doe Gregg, a married couple; Rory Skedel and Jane Doe Skedel, a married couple; Abram Ochoa, a single man; John And Jane Does 1 through 80, | |
| Defendants. | |

Plaintiffs James W. Denby, Elizabeth J. Torres, and Wilma J. Logston (collectively referred to as "Plaintiffs"), by and through their counsel, Angelini Mills Woods + Ori Law, for their Second Amended Complaint (the "Complaint") against Defendants City Of Casa Grande; County Of Pinal; Paul Babeu; Francisco X. Lujan and Jane Doe Lujan; Kent Horn and Jane Doe Horn; David Engstrom and Jane Doe Engstrom; Mark McCabe and Jane Doe Mccabe; Jacob H. Robinson and Jane Doe Robinson; C. Western and Jane Doe Western; Michael Wilson and Jane Doe Wilson; J J Ybarra and Jane Doe Ybarra; Garric Berry and Jane Doe Berry; Christopher Lapre and Jane Doe Lapre; Sgt. Gregg and Jane Doe Gregg; Rory Skedel and Jane Doe Skedel; Abram Ochoa; and John and Jane Does 1-80 hereby allege as follows:

## NATURE OF ACTION

1.      Pursuant to 42 U.S.C. §1983 *et seq.*, Plaintiffs bring this action for violations of the United States Constitution, including without limitation the Fourth, fifth, and Fourteenth Amendments.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction of Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a) because all of Plaintiffs' claims share common operative facts. Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience and fairness to the parties.

4.      Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims occurred in this district, and pursuant to 38 U.S.C. § 4323(c)(2) because Defendant maintains a place of business in this district.

## PARTIES

5.      At all relevant times, James W. Denby ("Denby") was a resident of Pinal County, Arizona.

6.    At all relevant times, Elizabeth J. Torres ("Torres") was a resident of Maricopa County, Arizona.

7.    At all relevant times, Wilma J. Logston ("Logston") was a resident of Pinal County, Arizona.

8.    Defendant the City of Casa Grande is a governmental entity that acts by and through its officials, employees, and agents, including without limitation each of the other Defendants in this action.

9.    Defendant County of Pinal is a governmental entity that acts by and through its officials, employees, and agents, including without limitation each of the other Defendants in this action.

10.   Defendant Kent Horn ("Horn") was employed by the City of Casa Grande as a lieutenant in its police department. Upon information and belief, at all related times, Horn was the acting police chief. Among his various duties he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

11.   Defendant Francisco X. Lujan ("Lujan") was employed by the City of Casa Grande as a corporal in its police department. Among his various duties he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

12.   Defendant David T. Engstrom ("Engstrom") was employed by the City of Casa Grande as a sergeant in its police department. Among his various duties he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

13.   Defendant Mark McCabe ("McCabe") was employed by the City of Casa Grande as a police officer. Among his various duties, he is required to uphold the law and

3

protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

14.    Defendant Jacob H. Robinson ("Robinson") was employed by the City of Casa Grande as a police officer. Among his various duties, he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

15.    Defendant C. Western ("Western") was employed by the City of Casa Grande as a police officer. Among his various duties, he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

16.    Defendant Michael Wilson ("Wilson") was employed by the City of Casa Grande as a police officer. Among his various duties, he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

17.    Defendant J J Ybarra ("Ybarra") was employed by the City of Casa Grande as a police officer. Among his various duties, he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

18.    Defendant Paul Babeu ("Babeu") was employed by the Pinal County Sherriff's Office as the sheriff in its police department. Among his various duties, he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

4

19.     Defendant Garric Berry ("Berry") was employed by the Pinal County Sherriff's Office as a lieutenant in its police department. Among his various duties, he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

20.     Defendant Christopher. Lapre ("Lapre") was employed by the Pinal County Sherriff's Office as a sergeant. Among his various duties, he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

21.     Defendant Rory Skedel ("Skedel") was employed by the Pinal County Sherriff's Office as a sergeant. Among his various duties, he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

22.     Defendant Sgt. Gregg ("Gregg") was employed by the Pinal County Sherriff's Office as a sergeant. Among his various duties, he is required to uphold the law and protect and serve citizens, including exercising reasonable prudence in all actions taken that could be detrimental to a private citizen's rights. He is being sued in his individual and official capacity.

23.     The County of Pinal is liable for its promulgated policies, practices or customs that result in violations of the United States Constitution.

24.     The City of Casa Grande is liable for its promulgated policies, practices or customs that result in violations of the United States Constitution.

25.     Defendants JANE/JOHN DOES are named because at all relevant times described herein, Defendants Jane Doe Horn, Jane Doe Engstrom, Jane Doe Lujan, Jane Doe McCabe, Jane Doe Robinson, Jane Doe Western, Jane Doe Wilson, Jane Doe Ybarra, Jane Doe Berry, Jane Doe Lapre, and Jane Doe Skedel were acting for the benefit of their

respective marital communities, if any, and therefore the respective marital communities, if any, are liable for the actions of Defendants Horn, Engstrom, Lujan, McCabe, Robinson, Western, Wilson, Ybarra, Berry, Gregg, Lapre, and Skedel.

26.     John and Jane Does 1 through 40 are certain unknown Casa Grande employees who through their own actions or inactions have caused or assisted others in causing the incidents and resulting harm set forth below. Despite diligent efforts by Plaintiffs, the identity of these individuals have not yet been ascertained but they are well known by Defendants. Plaintiffs will amend this Complaint to allege the true names and capacities of the various Doe Defendants when they are learned.

27.     John and Jane Does 41 through 80 are certain unknown Pinal County employees who through their own actions or inactions have caused or assisted others in causing the incidents and resulting harm set forth below. Despite diligent efforts by Plaintiffs, the identity of these individuals have not yet been ascertained but they are well known by Defendants. Plaintiffs will amend this Complaint to allege the true names and capacities of the various Doe Defendants when they are learned.

28.     Upon information and belief, at all relevant times, Defendant Abram Ochoa was a resident of Pinal County, Arizona.

## FACTUAL ALLEGATIONS

29.     On or about December 17, 2014, James W. Denby and Wilma J. Logston resided at 116 West 10th Street, Case Grande, Arizona (the "Residence").

30.     The Residence was a single-family home and was approximately 2,364 square feet, which included the main house ("Main House") of approximately 1,348 square feet and a separate guest house ("Guest House") in the backyard of approximately 1,016 square feet. The Residence was enclosed by a fence.

31.     At approximately 3:05 P.M. on December 17, 2014, the Casa Grande Police Department ("CGPD") was dispatched to respond to a domestic disturbance at 107 ½ W 11th Street in Casa Grande (the "Starting Location").

32.     Lujan and Western arrived at the Starting Location at 3:11 P.M.

33.     Engstrom arrived at the Starting Location at 3:13 P.M.

34.     Upon information and belief, after multiple CGPD officers arrived at the Starting Location, they learned the incident involved Abram Ochoa ("Ochoa"), who had warrants out for his arrest for unrelated incidents.[1]

35.     According to police reports, Ochoa's girlfriend, Adela Castillo ("Castillo") informed CGPD that Ochoa had left the scene.

36.     Castillo also informed the CGPD that Ochoa had no firearms, but he did sometimes have a stun gun in the form of brass knuckles.

37.     Castillo further informed CGPD that Ochoa had potentially gone to the Residence down the street.

38.     According to police reports, Engstrom was somehow able to track Ochoa to the backyard via fresh footprints in the alley that lead to the backyard Residence despite not knowing what type of shoes Ochoa wore or what Ochoa's shoe size was.

39.     At 3:16 P.M., Engstrom reported that Ochoa was opening the back door.

40.     At 3:17 P.M., Engstrom reported that Ochoa came out of the Residence and went right back in.

41.     Engstrom then informed Lujan that he saw Ochoa.

42.     Wilson arrived on the scene at 3:17: P.M.

43.     Despite arriving at the scene after Ochoa had already been reported as having gone back inside the Residence, Wilson reported that he saw Ochoa exit the Residence, look directly at him, then went back into the Residence.

44.     When CGPD made the determination that Ochoa must be in the Residence, Lujan approached the front door of the Main House, and William Denby Jr. ("William"), Denby's son, exited the house on crutches.

---

[1] According to police reports, these included two thefts at area Walmarts wherein Ochoa attempted to exit the stores with large televisions, and an aggravated domestic violence assault charge.

45.     William told CGPD that Ochoa was in the house and he offered to assist in requesting Ochoa exit the Residence by re-entering the Main House and talking to him.

46.     CGPD declined William's assistance and then searched William and put him in the back of a patrol car where he remained for several hours.

47.     Ybarra arrived on the scene as Lujan made contact with William and remained at the Residence until Ochoa was apprehended.

48.     McCabe arrived and left the Residence at roughly the same time as Ybarra.

49.     Denby arrived at the Residence shortly after police arrived.

50.     Plaintiffs did not give permission for Ochoa to be at the Residence nor were they aware Ochoa was at the Residence prior to arriving at the scene.

51.     Ochoa did not live or reside at the Residence.

52.     Plaintiffs were unaware that Ochoa had an arrest warrant for failing to appear.

53.     Additionally, Denby provided CGPD with his keys so that they could drive and move a vehicle that was parked in the front of the Main House of the Residence away from the Residence to provide more visibility for police personnel.

54.     Upon information and belief, the CGPD were also provided with keys to the Residence, including the Main House.

55.     At this point, the only attempts CGPD made to communicate with Ochoa was through a loud speaker PA system.

56.     There was no response from the Residence.

57.     At some time during the incident Castillo also offered to assist CGPD in their attempts to have Ochoa exit the Residence by utilizing the PA system to call for him. CGPD refused any assistance and removed Castillo to the command center, which she promptly fled and returned to the Starting Location.

58.     At about 3:21 P.M., mere minutes after CGPD arrived on scene, Horn requested that Pinal County Regional SWAT ("SWAT") respond due to a "barricaded subject."

59.     At the time Horn called in SWAT there was no indication that Ochoa had barricaded himself in the house or had any violent intentions.

60.     By the time Horn called in SWAT, CGPD knew that Denby and Castillo had offered to assist in coaxing Ochoa out of the house but had been denied the opportunity to assist.

61.     At 3:38 P.M., Lapre arrived on the scene.

62.     At 4:03 P.M., Engstrom, who was maintaining the perimeter of the Residence was transferred to a tactical assignment.

63.     For the next couple of hours, Engstrom was assigned to "cover" the east perimeter wall of the Residence.

64.     After approximately one hour, and according to his police report, Engstrom noticed movement coming from a tarp that was covering a car in the backyard of the Residence.

65.     Engstrom, apparently thinking it was odd that he saw movement in an otherwise uninhabited area in the Residence with only one known human potentially in either the Main House or the surrounding area, advised on the tactical channel that he saw the movement.

66.     Inexplicably, another operator mentioned in response that there was "a dog loose in the area."

67.     The Residence's backyard is fully surrounded by a cinder block fence with an RV gate on the south wall.

68.     According to the police reports, the backyard was under full surveillance and entry into the backyard or exit from the backyard should have been impossible without a police officer or SWAT member observing it – whether it was a dog or a person.

69.     Additionally, according to police reports, officers reported actually seeing a dog walking around to the front of the Residence, so they were well aware of the dog's location – the dog was not under a tarp on the hood of a car in the backyard of the Residence.

70.     According to Engstrom's police report, despite the movement he saw under the white tarp covering a car in the backyard of the Residence, and despite the fact that Engstrom claims to have actually seen Ochoa attempt to exit the back of the Residence two times, he did not further investigate and continued to watch his assigned area as if fully buying the story that a dog loose in the area could have somehow entered the backyard, and climbed under a tarp ending up between the tarp and the top of the vehicle it covered.

71.     Again, upon information and belief, the area where Engstrom saw movement was fully enclosed by a fence and officers were well aware of the reported dog's location – the dog was not under a tarp in the backyard of the Residence.

72.     At or about 4:21 P.M., two (2) SWAT teams—Bravo and Charlie—arrived at the Residence and began evaluating the scene/residence.

73.     Upon information and belief, Sgt Gregg was in command prior to SWAT arriving.

74.     Upon arriving on the scene, SWAT believed it was necessary to bring an armored vehicle, which was referred to as the Bearcat.

75.     Lapre was assigned Bravo team leader and took position inside the Bearcat.

76.     The Bearcat was also used as a battering ram.

77.     CGPD and SWAT made the decision to use a Bearcat as a battering ram in this instance.

78.     Upon information and belief, every police officer at the Residence, including Berry, Engstrom, Gregg, Horn, Lujan, Lapre, McCabe, Engstrom, Skedel, Gregg, Robinson, Western, Wilson, and Ybarra were aware that a decision was made to use the Bearcat as a battering ram.

79.     Upon information and belief, Berry, Engstrom, Gregg, Horn, Lujan, Lapre, McCabe, Engstrom, Skedel, Gregg, Robinson, Western, Wilson, and Ybarra knew that using the Bearcat as a battering ram was a violation of the Plaintiffs' constitutional rights.

80.     The Bearcat was placed on the west side of the Residence, and was then driven over a chain-linked fence, fully demolishing the fence, and into the wall to break windows and the front door on the Residence.

81.     Lujan, CGPD, and SWAT attempted to use the Bearcat's P.A. system to announce their presence and advised Ochoa to come out of the Residence with his hands up and to follow verbal direction.

82.     There was no response or movement from within the Residence.

83.     During this time, SWAT team members then deployed a tactical phone into the freshly demolished windows and wall and attempted to contact Ochoa.

84.     There was no response when SWAT attempted to contact Ochoa through the tactical phone.

85.     After some time, CGPD and SWAT made the decision to launch chemical munitions into the Residence in an attempt to force Ochoa out of the Residence.

86.     At or about 5:00 P.M., a judge signed a search warrant for the Residence.

87.     Brian Walsh, a detective for CGPD, presented a copy of the signed search warrant to SWAT team leader Sgt. Gregg.

88.     The signed search warrant permitted that CGPD enter the Residence and the surrounding curtilage for the sole purpose of arresting Ochoa.

89.     At 5:02 P.M., Lt. Berry was advised that the search warrant was signed and on scene.

90.     According to the police reports, Miller and SWAT team Bravo deployed a medium robot into the Residence, and the robot was able to enter through the front door, which had been pushed opened by the Bearcat.

91.     According to the police reports, the medium robot was able to clear a large portion of the house without any sign of Ochoa.

92.     During this time, the on-site negotiators still failed to make contact with anyone inside the Residence.

93.     According to the police reports, at 5:05 P.M., minutes after the search warrant being signed, and after the medium robot had been placed in the Residence, SWAT announced via the PA system that Ochoa had five (5) minutes to exit the Residence or further force would be used against him.

94.     The five (5) minutes expired without any signs of movement or response from Ochoa or any affirmative information that he was still in the Residence.

95.     Accordingly, Lapre began firing oleoresin capsicum ("OC") canisters into the Residence.

96.     OC canisters contain what is commonly referred to as pepper spray.

97.     Robinson provided security for Lapre as he launched the chemical munitions into the Residence.

98.     After the initial deployment of OC, no voices, coughing, or movement were heard within the Residence.

99.     Because there was no response to the OC munitions, SWAT decided to escalate from OC to CS gas.

100.    CS canisters contain what is commonly referred to as a type of "tear gas."

101.    SWAT continued its assault on the Residence with CS gas.

102.    At least twenty-two (22) 40mm canisters of OC and CS gas were deployed into the house.

103.    Upon information and belief, each 40mm canister is designed to spread chemical agents in a coverage area of up to 120 square meters – equivalent to approximately 1,297 square feet.

104.    According to the police reports, during the chemical assault, SWAT deployed another robot into the Residence.

105.    Additionally, at 7:43 P.M., a Noise Flash Diversionary Device ("NFDD") was deployed. NFDD's are commonly referred to as "flash-bang" devices.

106.    According to the police reports, the robot searched the house until its batteries expired at 8:21 P.M.

107.    Despite no one purportedly seeing Ochoa in the Residence since 3:17 P.M.; no response from the chemical munitions assault; and two robots failing to see any movement or signs of Ochoa, CGPD and SWAT continued to act as though Ochoa was still in the house.

108.    Upon information and belief, and importantly, at no time had Ochoa ever made any statements to CGPD or SWAT, nor had he threatened anyone – including members of the public.

109.    After deployment of chemical munitions, destruction of the outer walls and windows of the Main House, and deployment of two (2) robots into the Main House, SWAT finally decided that now was the time to begin to develop a tactical plan to enter the Main House and clear the inner structure with SWAT team members in an attempt to locate Ochoa.

110.    At 9:47 P.M., SWAT made entry into the Main House.

111.    During the time of entry, Skedel deployed two (2) more NFDD devices within the Residence.

112.    After searching the entire Main House, SWAT unsurprisingly determined that Ochoa was not within the Main House.

113.    Upon information and belief, during the search of the Main House, SWAT team members demolished anything and everything they could get their hands on.

114.    The search warrant only permitted the Defendants to enter the Residence for the sole purpose of arresting Ochoa.

115.    The search warrant did not permit the Defendants to look through and destroy Plaintiffs' personal property.

116.    Furniture that was objectively too small to hide a human body was crushed, smashed, thrown against walls, or otherwise destroyed.

117.    Cushions and pillows were torn open and thrown aside.

118.    Windows and window coverings were ripped, broken, and torn apart.

119.    Shower Doors and bathroom mirrors were smashed.

120.   Toilets were completely obliterated.

121.   Homeowner property was tossed aside and stomped and smashed including televisions, artwork, heirlooms, antiques, and other items.

122.   The ceiling and walls were cracked and drywall and tiles were left hanging.

123.   SWAT and CGPD operated with complete indifference to and reckless disregard of the Plaintiffs' constitutional rights and property – indeed, it appears that SWAT and CGPD treated the entire situation as an opportunity to enact their video game fantasies in real life from utilizing the Bearcat to drive over fences and knock down doors and windows, to firing twenty-two (22) 40mm rounds of chemical munitions into an approximately 1300 square foot interior structure, to their "take no prisoners" approach to the complete demolition and destruction of the Plaintiffs' personal property and Residence.

124.   Once the Main House was cleared, SWAT now decided to start searching the entire property.

125.   Upon information and belief, this was the first time CGPD or SWAT searched the backyard of the Residence.

126.   Engstrom, who had earlier seen movement under the tarp in the backyard, was part of the tactical team that breached the Main House, did not find Ochoa, and then searched the backyard.

127.   According to his police report, Engstrom went directly to the car with the tarp, partially lifted the tarp and looked under the car, but did not locate Ochoa.

128.   At 10:03 P.M., SWAT finally located Ochoa after additional members of SWAT joined Engstrom in the backyard.

129.   After fully removing the tarp from the car, Ochoa was found under the white tarp on top of the hood of the car in the carport.

130.   The tarp under which Ochoa was found was the same white tarp under which Engstrom had noticed movement five (5) hours earlier, but failed to investigate.

14

131.    Upon information and belief, Defendants City of Casa Grande, Pinal County, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, Lujan did not train its police officers how to properly inspect and clear the perimeter of the Residence.

132.    Upon information and belief, Defendants City of Casa Grande, Pinal County, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, Lujan did not train its police officers how to properly react when there were no signs that anyone was in the Residence after the first chemical ammunition was deployed.

133.    Upon information and belief, Defendants City of Casa Grande, Pinal County, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, Lujan did not did not train its police officers how to determine the correct amount of chemical munitions to use when being deployed into an approximately 1,300 square foot residential building.

134.    Upon information and belief, Defendants City of Casa Grande, Pinal County, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, Lujan knew that deploying a Bearcat battering ram; multiple robots; at least twenty-two (22) chemical munitions; and, multiple NFDDs into an approximately 1,300 square foot residential building was excessive, and they knew it would damage and destroy everything within the Residence.

**A.    Damage to the Residence**

135.    After Ochoa was apprehended and CGPD and SWAT purportedly finished their investigation, the Plaintiffs returned to the Residence.

136.    Upon information and belief, neither SWAT nor CGPD provided any warning or instruction to the Plaintiffs about the dangers of the chemical munitions and the effects they can have on a person's health.

137.    To the Plaintiffs' utter astonishment and dismay, the Residence was completely destroyed and rendered completely uninhabitable.

138.    The damage included, but is not limited to: structural damage; all insulation and wood in the attic contaminated with chemical agents; collapsed ceiling; all windows were broken; the front and back entry doors were destroyed; the toilet was destroyed which caused subsequent water damage to the foundation; mirrors and shower doors were

shattered; all the furniture was destroyed; all electronics in the Residence were destroyed; all personal items including clothes, four generations of family pictures, antiques, and art work was destroyed; all kitchen, cleaning, and laundry room supplies were destroyed; all the food in the Residence was contaminated and needed to be discarded; and three (3) feet of soil under the Residence was contaminated and need to be removed.

139. Prior to initiating chemical munitions, CGPD and SWAT failed to inform Denby that they deployed OC and CS munition in the house, and again, they did not inform him or the other Plaintiffs of the associated hazardous conditions the munitions created.

140. Without this critical knowledge, Denby entered the Residence and eventually was taken to the hospital because he inhaled the various chemical agents within the Residence.

141. To date, the Residence remains uninhabitable because Defendants have failed to compensate or otherwise repair or replace Plaintiffs' damaged property.

142. Plaintiffs' family have lived in this home since the early 1900s when their grandparents and great-grandparents homesteaded and farmed the land.

143. Defendants' failures to act as a reasonable officer in a similar situation would have acted by failing to, without limitation, properly execute a search warrant; by failing to preserve Plaintiffs' property rights; and by failing to inform Plaintiffs' of the serious health hazards presented by the introduction of chemical munitions were done with conscious indifference to and reckless disregard of Plaintiffs' constitutional rights and Defendants have therefore deprived Plaintiffs' of their rights under the Arizona and United States Constitutions.

**COUNT I    VIOLATION OF PLAINTIFFS' CIVIL RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS and 42 U.S.C. § 1983**
*(Defendants City of Casa Grande, County of Pinal, Lapre, Engstrom, Skedel, Gregg, and Robinson)*

144.     Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs of the Complaint.

145.     The Fourth Amendment to the United States Constitution, which applies to the Defendants pursuant to the Due Process Clause of the Fourteenth Amendment, forbids one who acts under the color of state law from unreasonable search and seizure in violation of a person's security and interests.

146.     Plaintiffs have a firmly established right under the Fourth Amendment to be free from unreasonable seizure.

147.     The Fourth Amendment requires that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.

148.     Excessive or unnecessary property destruction during a search violates the Fourth Amendment. It was not necessary and reasonable to use a battering ram, twenty-two (22) 40mm capsules of chemical agents, and NSDDs for entrance to the Residence under these circumstances. Nor was it necessary to physically destroy Plaintiffs' personal property during the ensuing search of the Main House.

149.     A Fourth Amendment seizure of personal property occurs when there is some meaningful interference with an individual's possessory interests in that property.

150.     Destroying Plaintiffs' doors, windows, bathroom fixtures, furniture, personal property, and destroying the habitability of the Residence deprived and meaningfully interfered with their possessory interest in their property.

151.     The Constitution protects persons from such unreasonable searches and seizures.

152.     The Defendants City of Casa Grande, County of Pinal, Lapre, Engstrom, Skedel, Gregg, and Robinson separately and in concert, engaged in the illegal conduct to the injury of the Plaintiffs, and deprived Plaintiffs of the rights, privileges and immunities secured to Plaintiffs by the Fourth Amendment to the Constitution of the United States and the laws of the United States.

153.    Defendants City of Casa Grande, County of Pinal, Lapre, Engstrom, Skedel, Gregg, and Robinson knew that the search warrant only permitted police officers to enter the Residence for the purpose of arresting Ochoa.

154.    Defendants City of Casa Grande, County of Pinal, Lapre, Engstrom, Skedel, Gregg, and Robinson knew by destroying Plaintiffs' doors, windows, bathroom fixtures, furniture, personal property, and destroying the habitability of the Residence that they exceeded the scope of the search warrant and were violating Plaintiffs' constitutional rights.

155.    Defendants City of Casa Grande, County of Pinal, Lapre, Engstrom, Skedel, Gregg, and Robinson knew that Ochoa was not in the house, but still proceeded with destroying nearly all, if not all, of Plaintiffs' property within the Residence.

156.    Despite Defendants City of Casa Grande, County of Pinal, Lapre, Engstrom, Skedel, Gregg, and Robinson knowing that Ochoa was not in the Residence none of the Defendants attempted to intervene and stop other Defendants from violating Plaintiffs' constitutional rights.

157.    Defendants City of Casa Grande, County of Pinal, Lapre, Engstrom, Skedel, Gregg, and Robinson had reasonable time while they were both in the house and outside the house firing chemical munitions and destroying Plaintiffs' property to stop the harm caused by the other Defendants.

158.    As described herein, Defendants' City of Casa Grande, County of Pinal, Lapre, Engstrom, Skedel, Gregg, and Robinson destruction of Plaintiffs' property was not reasonably necessary to the performance of their duties.

159.    Defendants City of Casa Grande and County of Pinal adopted, promulgated, ratified, and approved policies, procedures, and customs that violated the Fourth and Fourteenth Amendment to the United States Constitution because said policies, procedures, and customs were deliberately indifferent to Plaintiffs' rights.

160.    By adopting, promulgating, ratifying, and approving such policies, procedures, and customs, Defendants City of Casa Grande and County of Pinal were

objectively unreasonable and undertook actions with willful, reckless, and malicious indifference to the rights of Plaintiffs, and with no regard to the likelihood that harm would and did result and that unnecessary financial damages and pain and suffering would be inflicted.

161.   Defendants Lapre, Engstrom, Skedel, Gregg, and Robinson were acting under the color of law.

162.   Plaintiffs suffered damages as a direct and proximate result of the illegal acts of Defendants City of Casa Grande, County of Pinal, Lapre, Engstrom, Skedel, Gregg, and Robinson.

163.   As set forth above, Defendants Lapre, Engstrom, Skedel, Gregg, Robinson, and Engstrom violated the Fourth Amendment of the United States Constitution by causing Plaintiffs' property to be searched and seized without probable cause thereby depriving Plaintiffs of their rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

164.   The acts and/or omissions of Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs. Plaintiffs, therefore, prays for an award of punitive and exemplary damages against these individual defendants in an amount to be determined according to proof.

165.   Pursuant to 42 U.S.C. § 1988 and other applicable law, Plaintiffs are also entitled to an award of incurred attorneys' fees and costs.

**COUNT II   FAILURE TO PROPERLY SUPERVISE AND FAILURE TO INTERVENE**
*(Defendants City of Casa Grande, County of Pinal, Berry, Engstrom, Gregg, Horn, Lujan, Lapre, Engstrom, Skedel, Gregg, McCabe, Robinson, Western, Wilson, Ybarra)*

166.   Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs of the Complaint.

167.   Law enforcement officers who have a realistic opportunity to prevent a fellow officer from violating a citizen's constitutional rights have a duty to intervene to

protect the victim from the unconstitutional retaliation, use of force or violation of due process of law.

168.    Defendants City of Casa Grande, County of Pinal, Berry, Engstrom, Gregg, Horn, Lujan, Lapre, Engstrom, McCabe, Skedel, Gregg, Robinson, Western, Wilson, and Ybarra were aware that each of the other Defendants were violating Plaintiffs' constitutional rights.

169.    The siege on the Residence lasted for nearly seven (7) hours and Defendants City of Casa Grande, County of Pinal, Berry, Engstrom, Gregg, Horn, Lujan, Lapre, Engstrom, Skedel, McCabe, Gregg, Robinson, Western, Wilson, and Ybarra had a reasonable opportunity to prevent the harm and/or prevent further harm.

170.    Defendants City of Casa Grande, County of Pinal, Berry, Engstrom, Gregg, Horn, Lujan, Lapre, Engstrom, Skedel, McCabe, Gregg, Robinson, Western, Wilson, and Ybarra knew that they had exceeded the scope of the search warrant and were violating the Plaintiffs' constitutional rights when they destroyed Plaintiffs' doors, windows, bathroom fixtures, furniture, personal property, and destroying the habitability of the Residence.

171.    However, as set forth herein, Defendants City of Casa Grande, County of Pinal, Berry, Engstrom, Gregg, Horn, Lujan, Lapre, Engstrom, McCabe, Skedel, Gregg, Robinson, Western, Wilson, and Ybarra did not intervene nor attempt to stop the violation of the Plaintiffs' constitutional rights despite knowing they were violating the Plaintiffs' constitutional rights and having a reasonable opportunity to prevent the harm.

172.    Defendants' Casa Grande and Pinal County failure to train, supervise and/or implement appropriate policy was deliberately indifferent to the federally protected rights of the Plaintiffs and violated their rights.

173.    The acts and/or omissions of Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs. Plaintiffs; therefore, prays for an award of punitive and exemplary damages against these individual defendants in an amount to be determined according to proof.

174.    Plaintiffs suffered damages as a direct and proximate result of the illegal acts of Defendants.

**COUNT III** <u>**MUNICIPAL LIABILITY- POLICIES, CUSTOM OR PRACTICE - 42 U.S.C. § 1983**</u>
*(Defendants City of Casa Grande and Pinal County)*

175.    Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs of the Complaint.

176.    This cause of action is brought pursuant to 42 U.S.C § 1983, wherein Plaintiffs seeks to redress a deprivation under color of law of a right, privilege or immunity secured to Plaintiffs, respectively, by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

177.    At all times relevant herein, Defendants City of Casa Grande and County of Pinal's police officers were agents and employees of Defendants City of Casa Grande and County of Pinal and were carrying out the acts alleged herein while acting under color of the authority and color of the statutes, regulations, customs, and usages of the Defendants City of Casa Grande and County of Pinal.

178.    At the time of the excessive force and unreasonable search and seizure against Plaintiffs, Defendants City of Casa Grande and County of Pinal had in place and had ratified, policies, procedures, customs, and practices by which the city and its police departments therein would not discipline, prosecute or in any way take corrective or responsive action to known incidents and/or complaints of excessive force and civil rights violations.

179.    Upon information and belief, said policies, procedures, customs, and practices called for the refusal of the Defendants City of Casa Grande and County of Pinal to investigate or document complaints of previous incidents of civil rights violations but instead, to officially claim that such incidents were justified and proper, or simply fail to report said misconduct.

180.    Upon information and belief, Defendants City of Casa Grande and County of Pinal did not investigate the conduct of its police officers despite knowing that its

officers failed to properly secure the backyard; used a battering ram; launched at least twenty-two (22) chemical munitions into a 1,300 square foot house; used multiple NFDDs; and, exceeded the scope of the warrant that permitted the Defendants to enter the Residence to arrest Ochoa and not to destroy nearly all, if not all, of Plaintiffs' personal property.

181.    Additionally, the foregoing was unnecessary because if the Defendants properly secured the premises when the they arrived at the Residence or when Engstrom reported movement under the tarp, the Defendants would have discovered Ochoa hiding under the very same tarp where Engstrom reported movement.

182.    It was the policy, practice and/or custom of the Defendants City of Casa Grande and County of Pinal to inadequately supervise and train its officials regarding the use of excessive force and/or unreasonable search and seizure, including those identified herein, thereby failing to adequately prevent and discourage civil rights violations on the part of its officials.

183.    The acts or omissions of the Defendants, and each of them, as alleged herein regarding the use of excessive force were either: (1) caused by inadequate and arbitrary training, supervision, or discipline of officers by the City of Casa Grande and County of Pinal; (2) caused by deliberate indifference of the City of Casa Grande and County of Pinal; (3) consistent with, and done pursuant to, a custom or *de facto* policy of the City of Casa Grande and County of Pinal; or, (4) ratified by final decision makers of the City of Casa Grande and County of Pinal.

184.    The foregoing acts, omissions and systematic deficiencies are policies and customs of Defendants City of Casa Grande and County of Pinal, and as such cause Defendants' police officers to believe that excessive force and unreasonable searches and seizures are permissible and that such misconduct would not be honestly and properly investigated, all with the foreseeable result that Defendants' officers would engage in violation of civil rights of citizens and residents of this state.

185.    Defendants Casa Grande and Pinal County developed and maintained inappropriate policies, practices and/or customs regarding the use of excessive force and/or unreasonable search and seizure exhibiting deliberately indifference to the constitutional rights of the Plaintiffs and its citizens.

186.    Defendants' Casa Grande and Pinal County failure to train, supervise and/or implement appropriate policies was deliberately indifferent to the federally protected rights of the Plaintiffs and violated their rights.

187.    Plaintiffs suffered damages as a direct and proximate result of the illegal acts of Defendants.

188.    The acts and/or omissions of Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs. Plaintiffs, therefore, prays for an award of punitive and exemplary damages against these individual defendants in an amount to be determined according to proof. Pursuant to 42 U.S.C. § 1988 and other applicable law, Plaintiffs are also entitled to an award of incurred attorneys' fees and costs.

**COUNT IV** <u>**FAILURE TO TRAIN AND SUPERVISE SUPERVISE - 42 U.S.C. § 1983**</u>
*(Defendants City of Casa Grande, Pinal County, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, Lujan)*

189.    Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs of the Complaint.

190.    This cause of action is brought pursuant to 42 U.S.C § 1983, wherein Plaintiffs seeks to redress a deprivation under color of law of a right, privilege or immunity secured to Plaintiffs, respectively, by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

191.    Upon information and belief, Defendants Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan as part of their official duties were responsible for training and

23

supervision of employee officers or agents that hold the power, authority, insignia, equipment, and arms entrusted to them.

192.   Supervising officers and/or agents had a duty to Plaintiffs to properly supervise employee officers or agents that hold the power, authority, insignia, equipment, and arms entrusted to them.

193.   Defendants City of Casa Grande, County of Pinal, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan were responsible for training and supervising their subordinates.

194.   Defendants City of Casa Grande, County of Pinal, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan failed to adequately train and supervise their employees.

195.   The training policies of Defendants City of Casa Grande and County of Pinal were not adequate to train its police officers to handle the usual and recurring situations such as the one described herein.

196.   Defendants City of Casa Grande and County of Pinal's police officers acted under the color of law.

197.   The actions of City of Casa Grande and County of Pinal's police officers deprived the Plaintiffs of their rights under the United States Constitution.

198.   Defendants City of Casa Grande, County of Pinal, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan knew that employees would confront a situation as described herein.

199.   Defendants City of Casa Grande, County of Pinal were deliberately indifferent to the constitutional rights of the Plaintiffs and its citizens.

200.   Defendants City of Casa Grande, County of Pinal, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan were deliberately indifferent to the need to train and supervise their subordinates, and the lack of training and supervision actually caused the constitutional harm and/or deprivation of rights to the Plaintiffs.

201.   Defendants City of Casa Grande, County of Pinal, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan were deliberately indifferent to the federally protected rights of the Plaintiffs and violated their rights.

202.   Defendants City of Casa Grande, County of Pinal, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan were deliberately indifferent to the obvious consequences of their failure to supervise and train their police officers adequately.

203.   Defendants City of Casa Grande, County of Pinal, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan failure to adequately supervise and train amounted to deliberate indifference to the fact that inaction would obviously result in the violation of Plaintiffs' constitutional rights.

204.   The foregoing unconstitutional failures to train were a direct and legal cause of harm to Plaintiffs.

205.   Defendants City of Casa Grande, County of Pinal, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan failure to adequately train and supervise proximately caused the violation of Plaintiffs' constitutional rights.

206.   Defendants City of Casa Grande, County of Pinal, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan's failures to train, as described herein, were within the control of Defendants, and within the feasibility of Defendants, and each of them, to alter, adjust and/or correct so as to prevent some or all of the unlawful acts and injuries complained of herein by Plaintiffs.

207.   The failure of Defendants City of Casa Grande, County of Pinal, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan to provide adequate training caused the deprivation of the Plaintiffs' rights by Defendants City of Casa Grande and County of Pinal's police officers.

208.   Defendants City of Casa Grande, County of Pinal, Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan's failure to supervise and train is so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the Plaintiffs' injury.

209.    The acts and/or omissions of Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs. Plaintiffs, therefore, prays for an award of punitive and exemplary damages against these individual defendants in an amount to be determined according to proof.

210.    Pursuant to 42 U.S.C. § 1988 and other applicable law, Plaintiffs are also entitled to an award of incurred attorneys' fees and costs.

**COUNT V   TRESPASS**
*(Defendant Ochoa)*

211.    Plaintiffs re-allege and incorporate by reference the allegations set forth in the preceding paragraphs of the Complaint.

212.    Defendant Ochoa physically entered and remained at the Residence without Plaintiffs' permission.

213.    Plaintiffs, by and through Defendants City of Casa Grande and County of Pinal, demanded that Defendant Ochoa remove himself from the Residence.

214.    Despite the demands, Defendant Ochoa remained within the Residence.

215.    Defendant Ochoa had to be physically removed from the Residence by City of Casa Grande and County of Pinal police officers after he was found hiding under a tarp in the Plaintiffs' backyard.

216.    The physical invasion upon Plaintiffs' property is the direct and proximate cause of the damage to the Residence.

217.    As a direct and proximate result of Defendant Ochoa's acts and omissions, Plaintiffs sustained substantial financial losses, severe and permanent injuries, and have and continue to endure extreme pain and suffering.

218.    Accordingly, Plaintiffs have been damaged in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that the Court enter judgment against the Defendants and in for of the Plaintiffs, as follows:

26

A.    For actual damages in an amount to be proven at trial;

B.    For compensatory, consequential and incidental damages in an amount to be proven at trial;

C.    For punitive and exemplary damages against the Defendants, in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

D.    For equitable or injunctive relief, as may be requested by Plaintiffs or as may be appropriate;

E.    Awarding Plaintiffs pre- and post-judgment interest on the foregoing amounts at the maximum rate recoverable by law;

F.    For Plaintiffs incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. § 1988 and other applicable law;

G.    For such other relief as this Court may deem proper.


**RESPECTFULLY SUBMITTED** this 17th day of April 2018.

ANGELINI MILLS WOODS + ORI LAW

By____/s/Sean A. Woods_____
        Robert T. Mills
        Sean A. Woods
        Jordan C. Wolff
        5055 N 12th Street, Suite 101
        Phoenix, AZ 85014
        *Attorneys for Plaintiffs*

1

2

**CERTIFICATE OF SERVICE**

3

     I hereby certify that on this 17th day of April 2018, I electronically transmitted the foregoing document to the Clerk's office using the Court's CM/ECF Filing System and forwarded copies to the following parties via electronic mail:

4

5

JELLISON LAW OFFICES, PLLC

6

James M. Jellison
2020 North Central Avenue

7

Suite 670
Phoenix, Arizona 85004

8

*Attorney for Defendants City of Casa Grande and Pinal County*

9

10

*/s/ Jordan C. Wolff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28