**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James W Denby, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>City of Casa Grande, et al.,<br><br>    Defendants. | No. CV-17-00119-PHX-SPL<br><br>**ORDER** |

This action arises from law enforcement's execution of a search warrant for Abram Ochoa at 116 West 10th Street in Casa Grande, Arizona (hereinafter "the Property"). Plaintiffs, the Property residents, allege the use of excessive force upon the Property and assert constitutional claims against Defendants pursuant to 42 U.S.C. § 1983 (Doc. 82). Pending before the Court are Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 83) and Motion for Summary Judgment (Doc. 91). The Court rules as follows.

**I. Motion to Dismiss (Doc. 83)**

 **A. Background**

On December 17, 2014, the Casa Grande Police Department ("CGPD") responded to a domestic disturbance call down the street from the Property (Doc. 82 at ¶ 31). Upon arrival, officers learned the incident involved Abram Ochoa, who had outstanding warrants for his arrest (Doc. 82 at ¶ 34). After determining that Ochoa had entered the Property, officers attempted to communicate with Ochoa via a loud speaker PA system but received

no response (Doc. 82 at ¶¶ 38-41, 43-45, 55-56). CGPD declined offers from Ochoa's girlfriend and Plaintiff James Denby's son in helping persuade Ochoa to leave the Property voluntarily (Doc. 82 at ¶¶ 45, 57). Minutes after arriving, CGPD requested assistance from Pinal County Regional SWAT ("SWAT") (Doc. 82 at ¶ 58). While establishing a perimeter, CGPD Officer Engstrom reported seeing movement under a tarp covering a car in the Property's backyard, but no further investigation was made (Doc. 82 at ¶¶ 64-70).

SWAT arrived on scene and decided to use an armored vehicle, referred to as a "Bearcat," (Doc. 82 at ¶ 74) as a battering ram to gain access to the Property (Doc. 82 at ¶¶ 76-77). SWAT drove the Bearcat over a chain-linked fence and into the front of the Property, breaking windows and the front door (Doc. 82 at ¶ 80). Further attempts to communicate with Ochoa through the Bearcat's PA system and a deployed tactical phone proved unsuccessful (Doc. 82 at ¶¶ 81-84).

Upon the execution of a search warrant (Doc. 82 at ¶¶ 86-89), SWAT deployed a medium robot into the Property but found no sign of Ochoa (Doc. 82 at ¶¶ 90-91). SWAT used the PA system to announce that Ochoa had five minutes to exit the building or further force would be used against him (Doc. 82 at ¶ 93). After the time expired, SWAT fired a total of 22 canisters of pepper spray and tear gas into the Property (Doc. 82 at ¶¶ 94-102), searched the Property with a second robot (Doc. 82 at ¶ 104), and deployed a Noise Flash Diversionary Device (Doc. 82 at ¶ 105). SWAT then developed a tactical plan to enter the Property, which included the use of two additional Noise Flash Diversionary Devices (Doc. 82 at ¶ 109-111). During the search, SWAT team members destroyed furniture, cushions, windows, bathroom mirrors, shower doors, toilets, televisions, artwork, and antiques (Doc. 82 at ¶¶ 116-121). Ochoa was not found inside the Property (Doc. 82 at ¶ 112). Once the Property was cleared, SWAT and CGPD searched the backyard (Doc. 82 at ¶¶ 124-126). Ochoa was found hiding underneath the tarp that Officer Engstrom had reported seeing movement under five hours earlier (Doc. 82 at ¶¶ 126-130).

///

///

**B. Legal Standard**

Defendants have moved to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion argues that each individual Defendant is entitled to qualified immunity, and the complaint fails to state a municipal entity claim against either the City of Casa Grande or Pinal County. The motion further argues that Plaintiff Elizabeth Torres must be dismissed for lack of standing.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face;' that is, plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court may dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, and (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), *abrogated on other grounds by Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007).

A complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equal "probability," but still requires more than a sheer possibility that a defendant acted unlawfully. *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citation and internal quotation marks omitted).

In deciding a motion to dismiss, the Court must "accept as true the well-pleaded allegations of material fact," and construe those facts "in the light most favorable to the nonmoving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

"[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, are insufficient to defeat a 12(b)(6) motion. Although a complaint "does not need detailed factual allegations," a plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requires "more than labels and conclusions, [or] a formulaic recitation of a cause of action's elements." *Id*.

**C. Qualified Immunity**

Defendants argue that the individually named Defendants are entitled to qualified immunity (Doc. 83 at 9-16). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). In resolving qualified immunity claims, the Court must consider: (1) whether the facts alleged establish the violation of a constitutional right, and (2) whether the right was "clearly established" at the time of the incident. *Id*. at 232. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." (quotation omitted)). Although a case on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Clearly established law should not be defined at a "high level of generality." *Id*. at 742.

Although the applicability of qualified immunity should be resolved at the earliest possible stage in litigation, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), "a motion to dismiss on qualified immunity grounds puts the Court in the difficult position of deciding 'far-reaching constitutional questions on a non-existent factual record,'" *Hernandez v. Ryan*, No. CV 09-2683-PHX-DGC, 2010 WL 4537975, at 2 (D. Ariz. 2010) (quoting *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004). In this Court's March 31,

2018 Order, the Court found that resolution of Defendants' qualified immunity claims required further factual development (Doc. 80). Accordingly, the Court will not dismiss the claims against the individual Defendants on the basis of qualified immunity at this time.

**D. Sufficiency of the Pleadings**

The Court now turns to Defendants' arguments regarding the sufficiency of Plaintiffs' allegations in the Second Amended Complaint (Doc. 83 at 16-18). The Court addresses each claim in turn.

**1. Municipal Liability: Failure to Investigate or Prosecute**

Municipalities may be liable under § 1983 when the execution of the government's policies or customs inflicts a constitutional injury. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019) ("A municipality may not, however, be sued under a respondeat superior theory."). There are two ways in which municipal liability may attach: (1) if the constitutional violation is committed in accordance with a longstanding custom or practice, or (2) if an isolated violation is caused by a person with final policymaking authority. *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003).

The Court reads Count III of the Second Amended Complaint as alleging that the government's failure to investigate or prosecute previous claims of civil rights violations resulted in what amounted to sanctioned use of excessive force (Doc. 82 at ¶¶ 178-182). This allegation, however, is conclusory in nature, and apart from the current incident, contains no factual allegations to support such a practice. *See Meas v. City & Cty. of San Francisco*, 681 F.Supp.2d 1128, 1142 (N.D. Cal. 2010) ("[P]lainiff's unsubstantiated allegations regarding the City's purported failure to discipline a single officer, as opposed to a systematic policy, cannot support a claim of municipal liability."). The Court therefore finds that Plaintiffs have failed to state a claim and the motion to dismiss Count III is granted.

///

///

## 2. Municipal Liability: Failure to Train and Supervise

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In Count IV, Plaintiffs allege the government entities and supervising agents were deliberately indifferent to the need to train and supervise employee officers and that lack of training caused Plaintiffs' constitutional harm. In reviewing such a claim, Plaintiffs much allege facts that demonstrate the Defendants "disregarded the known or obvious consequences that a *particular omission* in their training program would cause [municipal] employees to violate citizens' constitutional rights." *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (alteration in original) (emphasis added) (citation omitted).

Upon review, the Court find the allegations contained within the Second Amended Complaint are insufficient to state a plausible *Monell* Claim. Although the Court understands that Plaintiffs are alleging the government entities and supervising agents failed to adequately train employee officers on how to properly inspect and clear the perimeter of a residence or appropriately work with chemical munitions (Doc. 82 at ¶¶ 131-133, 203), the allegations lack any explanation as to *how* the training was deficient or inadequate. *See McFarland v. City of Clovis*, 163 F.Supp.3d. 798, 803 (E.D. Cal. 2016) ("Simply alleging that training is 'deficient' or 'inadequate' is conclusory and does not support a plausible claim."). Absent allegations of specific defects in officer training, Plaintiffs cannot prevail on their claim for failure to train. Accordingly, the motion to dismiss Count IV is granted.

### E. Elizabeth J. Torres

Finally, Defendants argue the Second Amended Complaint lacks any plausibly stated facts to demonstrate that Plaintiff Elizabeth Torres has standing to bring this suit (Doc. 83 at 4 n.2). Plaintiffs have not responded.

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has

suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Kirola v. City and Cty. of San Francisco*, 860 F.3d 1164, 1174 (9th Cir. 2017) (alteration in original) (quotation omitted); *see also* Fed. R. Civ. P. 12(b)(1). "We need only conclude that one of the plaintiffs has standing in order to consider the merits of the plaintiffs' claim." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1014 (9th Cir. 2013). The Court, however, will address Torres' standing because the motion to dismiss challenges that standing. *We Are Am./Somos Am. v. Maricopa Cty. Bd. of Supervisors*, 809 F.Supp.2d 1084, 1091 (D. Ariz. 2011) ("That general rule does not strictly prohibit a district court, in a multiple plaintiff case such as this, from considering the standing of the other plaintiffs even if it finds that one plaintiff has standing.").

The only fact alleged as to Elizabeth Torres in the Second Amended Complaint is that she is a resident of Maricopa County, Arizona (Doc. 82 at ¶ 6). Without more, Plaintiffs have failed to satisfy the Article III standing requirements. Accordingly, Plaintiff Elizabeth Torres will be dismissed for lack of standing.

**F. Conclusion**

Defendants' Motion to Dismiss (Doc. 83) will be granted in part and denied in part. The motion is denied as to Defendants' qualified immunity claims, but granted as to Count III, Count IV, and Elizabeth Torres.

In the alternative, Plaintiffs request this Court grant them leave to amend. In its March 31, 2018 Order, however, this Court already provided Plaintiffs with an opportunity to cure the defects as to the municipality claims (Counts III and IV) (Doc. 80 at 6). Accordingly, leave to amend will be denied and Counts III and IV will be dismissed with prejudice. *See Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980) ("[A] district court has broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint to allege federal claims."). Plaintiffs will, however, be provided with an opportunity to amend their

complaint to allege sufficient facts establishing Article III standing as to Elizabeth Torres.

**II.    Motion for Summary Judgment (Doc. 91)**

The City of Casa Grande and Pinal County have filed a Motion for Summary Judgment asserting the same arguments addressed in their Motion to Dismiss: (1) there are no facts supporting *Monell*-based liability as to the City and County Defendants, and (2) the individual Defendants are entitled to qualified immunity (Doc. 91 at 2). Plaintiffs argue the motion should be denied and Plaintiffs should be permitted to conduct discovery as to Defendants' qualified immunity claims.

**A.  Procedural History**

Plaintiffs filed a complaint in Maricopa County Superior Court on December 16, 2016 (Doc. 1 at 9), alleging various constitutional claims against Defendants under 42 U.S.C. § 1983 (Doc. 1). Defendants removed this action to federal court on January 13, 2017 (Doc. 1), Plaintiffs filed an Amended Complaint on April 6, 2017 (Doc. 31), the City and County Defendants filed a Motion to Dismiss on June 19, 2017 (Doc. 51), and Defendant Paul Babeu filed a separate Motion to Dismiss on July 10, 2017 (Doc. 58). In its Case Management Order, the Court granted the parties until May 4, 2018 to complete all discovery (Doc. 60 at 2).

On March 31, 2018, this Court issued its ruling on Defendants' pending Motions to Dismiss (Doc. 80). The Order ultimately dismissed the Amended Complaint, gave Plaintiffs the opportunity to amend as to Counts I, III, IV, V, and VI, and denied a Joint Motion to Stay discovery pending resolution of the motions as moot (Doc. 80). Pursuant to that Order, Plaintiffs filed their Second Amended Complaint on April 17, 2018, and Defendants filed another Motion to Dismiss on May 1, 2018 (Doc. 83). In response to a Motion for Clarification (Doc. 84), the Court informed the parties that the Case Management Order deadlines remained in effect (Doc. 85). Defendants then filed the instant Motion for Summary Judgment on July 3, 2018 (Doc. 91), which was fully briefed as of March 1, 2019 (Doc. 104).

///

**B. Discussion**

Plaintiffs argue that the Motion for Summary Judgment should be denied as the parties were unable to reasonably conduct discovery until the Second Amended Complaint was filed and the various motions to dismiss were adjudicated (Doc. 101 at 6-9). Defendants argue the response is, in large part, an untimely motion for reconsideration (Doc. 104 at 10-11).

"A motion to reopen discovery is a motion to modify the discovery deadline set in the Court's scheduling order pursuant to [Federal Rule of Civil Procedure 16]." *Lexington Ins. Co. v. Scott Homes Multifamily, Inc.*, No. CV-12-02119-PHX-JAT, 2015 WL 751204, *4 (D. Ariz. Feb. 23, 2015).[1] Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." In the Ninth Circuit, good cause requires a showing that the movant "diligently pursued previous discovery opportunities," and that "additional discovery would have precluded summary judgment." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1026 (9th Cir. 2006). When ruling on a motion to reopen discovery, courts may consider the following factors:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Lexington Ins. Co.*, 2015 WL 751204, at *4 (quotation omitted). Ultimately, district courts have "wide latitude in controlling discovery." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987).

---

[1] Plaintiffs move to reopen discovery under Federal Rule of Civil Procedure 56(d), which permits the Court to grant the opposing party relief on the basis that the nonmovant cannot present facts essential to its opposition (Doc. 101 at 2). Rule 56(d), however, "does not reopen discovery; rather it forestalls ruling on a motion for summary judgment in cases where discovery is still open and provides the prospect of defeating summary judgment." *Dumas v. Bangi*, No. 1:12-cv-01355-LJO-JLT (PC), 2014 WL 3844775, *2 (E.D. Cal. Jan. 23, 2014). Accordingly, the Court finds the request is improper under Rule 56(d) and will treat the response as a motion under Rule 16.

After thoroughly reviewing the docket, the Court will permit Plaintiffs time to conduct discovery as to Defendants' qualified immunity claims. As pointed out by Plaintiffs, in its March 31, 2018 Order, the Court stated that "resolution of Defendants' qualified immunity claims requires further factual development" (Doc. 80). Although Defendants object to the request now, the parties previously filed a stipulation to stay discovery, and Defendants recently moved to extend the dispositive motion deadline (*see* Doc. 89). The Court also notes that the parties had mutually agreed to refrain from conducting discovery during a majority of the designated discovery timeframe, based on the pending qualified immunity claims (*see* Doc. 84). *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (stating pretrial matters should be avoided if possible before resolution of qualified immunity claims). Accordingly, the Court finds that Defendants would not be prejudiced by granting an extension. Finally, the Court notes that although this case is beginning to age, a trial has not yet been set. Plaintiffs' request is therefore granted.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 83) is **granted in part and denied in part**. The motion is **denied** as to the claims of qualified immunity, but **granted** as to Count III, Count IV, and Elizabeth Torres. Plaintiff Elizabeth Torres is **dismissed without prejudice** and Counts III and IV are **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs may file a Third Amended Complaint no later than **April 12, 2019**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 91) is **denied without prejudice**.

///

///

///

///

///

///

is not used; instead:

**IT IS FURTHER ORDERED** that Plaintiff's Response to the Motion for Summary Judgment (Doc. 101), which is construed as a Motion to Reopen Discovery under Rule 16, is **granted**. Discovery deadlines are modified as follows:

1. Fact Discovery shall be completed by **June 26, 2019**;
2. Good Faith Settlement talks must be completed by **July 10, 2019**; and
3. Dispositive Motions shall be due by **July 26, 2019**.

Dated this 29th day of March, 2019.

Honorable Steven P. Logan
United States District Judge