**JELLISON LAW OFFICES, PLLC**
36889 N. Tom Darlington Dr.
Suite B7, Box 2800, #304
Carefree, Arizona 85377
Telephone: (480) 659-4244
Facsimile: (480) 659-4255
E-mail: jim@jellisonlaw.com
JAMES M. JELLISON, ESQ. #012763
Attorney for Defendants Paul Babeu, Francisco X. and Jane Doe Lujan, Kent and Jane Doe Horn, David and Jane Doe Engstrom, Mark and Jane Doe McCabe, Jacob H, and Jane Doe Robinson, C. and Jane Doe Western, Michael and Jane Doe Wilson, JJ and Jane Doe Ybarra, Garric and Jane Doe Berry, Christopher and Jane Doe Lapre, Sgt. Gregg and Jane Doe Gregg, and Rory and Jane Doe Skedel (the individual Defendants are referred to by name, or collectively as the "City and County Defendants")

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| James W. Denby, *et. al.*, | Case No.: 2:17-cv-00119-SPL |
| Plaintiffs, | **CITY AND COUNTY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| vs. | |
| City of Casa Grande, *et. al.*, | |
| Defendants. | |

Plaintiffs bear the burden to supply the contextually specific, clearly established law necessary to deprive a public official of his entitlement to qualified immunity. *See, Shafer v. Cty. of Santa Barbara,* 868 F.3d 1110, 1118 (9th Cir. 2017); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). And, the Ninth Circuit has made clear in its Memorandum Decision that qualified immunity, including its clearly established law component, must be assessed upon "an individualized determination as to the alleged actions of each Defendant to determine whether dismissal based on qualified immunity may be proper as to each Defendant." (Doc. 127-1, pg. 2). In their Response, however, Plaintiffs Denby and Logston don't seem to get the point. Instead of addressing the alleged "conduct" of each individual person and presenting qualifying, clearly established law they assert was violated, they do what they always have – and what the Ninth Circuit declared erroneous - persisting to

lump the named individuals together, ascribing conduct (or knowledge) to individuals that is not alleged, and, most importantly, failing to identify clearly established law as to each individual person that "articulates a constitutional rule specific enough to alert *this* officer *in this case* that *his particular conduct* was unlawful." *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). Having failed to meet the burden, each individual Defendant is entitled to qualified immunity.

More than the failure to meet their burden, Plaintiffs invite this Court to make the same error that resulted in Ninth Circuit reversal. Their Response reverberates with the same theme - that they have yet to engage in discovery. (Doc. 130, pgs. 2, lls. 2-6; 13, lls. 3 – 7; 14, lls. 10-13). But, the Ninth Circuit rejected that as a basis for denying qualified immunity. (Doc. 127-1). Additionally, they urge this Court to assess qualified immunity on antiquated case law - dating back to 2003 - that run counter to qualified immunity jurisprudence that has been established by the U.S. Supreme Court in the past decade. (Doc. 130, pgs. 7-9). Indeed, since 2003, the Supreme Court has issued no less than eight opinions reversing the Ninth Circuit's denial of qualified immunity in Fourth Amendment cases—four of which were summary reversals. *City of Escondido v. Emmons*, 139 S. Ct. 500 (2019) (summarily reversing); *Kisela v. Hughes*, 138 S. Ct. 1148 (2018) (summarily reversing); *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600 (2015); *Stanton v. Sims*, 571 U.S. 3 (2013) (summarily reversing); *Messerschmidt v. Millender*, 565 U.S. 535 (2012); *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011); *Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364 (2009); *Brosseau v. Haugen*, 543 U.S. 194 (2004) (summarily reversing). During that same time period, the Court has issued six more opinions reversing other circuit courts' denial of qualified immunity in Fourth Amendment cases, and three of those were also summary reversals. *D.C. v. Wesby*, 138 S. Ct. 577 (2018); *White v. Pauly*, 137 S. Ct. 548 (2017) (summarily reversing); *Mullenix v. Luna*, 136 S. Ct. 305 (2015) (summarily reversing); *Carroll v. Carman*, 574 U.S. 13 (2014) (summarily

reversing); *Plumhoff v. Rickard*, 572 U.S. 765 (2014); *Pearson v. Callahan*, 555 U.S. 223 (2009). Given that the Supreme Court has issued a total of 14 opinions since 2003 reversing the circuit courts' denials of qualified immunity in Fourth Amendment cases, including seven summary reversals, the suggestion by Plaintiff that this Court should, instead, rely on qualified immunity cases dating to 2001, 2003, and 2006, is an invitation for error. Contrary to the framework offered by Plaintiff - that relies on cases whose facts are wildly dissimilar to those here or denies qualified immunity on nothing more than the application of "common sense" - the Supreme Court "has repeatedly told courts ... not to define clearly established law at a high level of generality." *Kisela*, 138 S.Ct. at 1152 (internal quotation marks omitted). Conformity with this analytical framework is particularly important in excessive force cases:

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue....

*City of Escondido, Cal. v. Emmons*, 139 S.Ct. 500, 503-04 (2019). In *Emmons,* the Court described the lower court's analytical error this way: "[t]he Court of Appeals should have asked whether clearly established law prohibited the officers from stopping and taking down a man in these circumstances. Instead, the Court of Appeals defined the clearly established right at a high level of generality by saying only that the 'right to be free of excessive force' was clearly established. With the right defined at that high level of generality, the Court of Appeals then denied qualified immunity to the officers and remanded the case for trial." 139 S.Ct. at 503-04. *Emmons* reversed a denial of qualified immunity when this Court "failed to properly analyze whether *clearly established law* barred Officer Craig from stopping and taking down Marty Emmons in this manner as Emmons exited the apartment." *Emmons, id.* (emphasis

added). On remand, when clearly established law could not be found, qualified immunity was granted. *Emmons v. City of Escondido,* 921 F.3d 1172, 1174 (9th Cir. 2019).

Plaintiffs fail to identify clearly established law that has been violated by any individual Defendant, and ignores the case law that shows the issues involved here have not been definitely resolved – or have been resolved, but in favor of the individual Defendants.[1] Plaintiffs have failed to meet their burden, and this Court should recognize the individual Defendants' entitlement to qualified immunity.

### *Sergeant Rory Skedel*

Pinal County Sheriff's Sergeant Rory Skedel is alleged to have deployed two "flash-bangs" as part of the physical entry into the residence. (Doc. 82, ¶ 111). There is no allegation that the subject residence was destroyed by fire, any occupant was harmed by the flash-bang, or Skedel deployed the flash-bangs in an area known to contain innocent occupants – in fact, the allegations are otherwise. (*Id.*). These allegations do not state a plausible claim that withstands the application of qualified immunity. *Keates v. Koile,* 883 F.3d 1228 (9th Cir. 2018).

In the Motion to Dismiss, Sergeant Skedel cites a case that prohibits the use of flash bang devices where the devices are thrown without prior surveillance into a room containing innocents persons, *Boyd v. Benton,* 374 F.3d 773, 777 (9th Cir. 2004), or cases in which the use of flash bang devices in order to extract suspects with known criminal records was held to be constitutional. *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 973 (7th Cir. 2003); *Bing ex rel. Bing v. City of Whitehall, Ohio*, 456 F.3d 555, 569 (6th Cir. 2006). Plaintiffs do not discuss the use of flash bangs in these cases. Indeed, Plaintiffs do not cite to a single case that provides

---

[1] This Reply is focused on the clearly established prong of qualified immunity. This focus should not be construed as an abandonment of Defendants' position on the first prong - that none of them have violated the Constitution.

clearly established law proscribing Sergeant Skedel's alleged conduct in the use of NFDDs or flash bang devices under the circumstances he confronted. Neither do Plaintiffs show clearly established law that Skedel failed to supervise or to intervene in anyone else's application of unconstitutional force, with knowledge and opportunity. *See, Ting v. U.S.*, 927 F.2d 1504, 1512 (9th Cir. 1991); *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014).

Plaintiffs next rely on bald and conclusory allegations that Sergeant Skedel (and everyone else present) was aware of a decision to use the Bearcat as a battering ram, and that it was unconstitutional to do so. (Doc. 130, pg. 9, lls. 13-19). However, the U.S. Supreme Court tells us that individual defendants are entitled to qualified immunity where the allegations against them are simply "bald" or "conclusory" because such allegations do not "plausibly" establish the personal involvement necessary to establish a constitutional wrong. *See, Ashcroft v Iqbal*, 129 U.S. 662. 675-82 (9th Cir. 2009). Even then, Plaintiffs still fail to cite any clearly established law that would have put Sergeant Skedel on notice that he was constitutionally obligated to stop the use of the Bearcat as a battering ram.

Although not in the part of their Response discussing Sergeant Skedel, Plaintiffs address the use of the Bearcat, citing only to a California Supreme Court case, *Langford v. Superior Court,* 729 P.2d 822 (Cal. 1987). Of course, "clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear that *every* reasonable official would understand that what he is doing "*is unlawful.*" *Wesby*, 138 S. Ct. at 589 (emphasis added). To achieve that level of recognition, the Ninth Circuit seeks cases "'controlling'—from the Ninth Circuit or the Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp*, 871 F.3d at 911, quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999). A single California case does not fit the bill for an Arizona law enforcement official. Even then, the stark factual differences between *Langford* and this case, coupled with

the lack of controlling guidance provided, preclude a conclusion that the use of the Bearcat, as alleged, violated clearly established law in December, 2014.

In *Langford,* the California Supreme Court addressed whether to grant a preliminary injunction requiring prior court permission before police may use an armored vehicle known as a V100. 729 P.2d at 824. There, the LAPD had engaged the assistance of Special Weapons and Tactics Team members to break into a house, after concluding that iron bars over its windows and an electronically controlled locked "cage" at the front entrance precluded rapid entry by less dramatic means. *Id.* The police chief invited the news media to witness the first use of the "V–100," an armored personnel carrier equipped with a battering ram. *Id.* In front of television cameras and without prior warning by law enforcement to the occupants, the officers drove the ram through the exterior wall of the house and into a family room; simultaneously, police detonated flashbangs in the room and entered in full force. *Id.* As it turned out, the house was occupied by two unarmed women and their three young children; the officers recovered no weapons and only trace amounts of cocaine along with alleged drug paraphernalia. *Id.* at 824-25. The California Supreme Court held that the V-100 could continue to be deployed, but only with prior authorization from a neutral magistrate. *Id.* at 827. The court's concerns, however, were not over the destructive force on property, but the personal safety of occupants, and other persons in the neighborhood. "Fire from damaged electrical wires or explosion from gas leaking from broken gas pipes could threaten the safety not only of occupants, but of entire neighborhoods." *Id.* There are no allegations in this case that the Bearcat was used in a manner to create the same dangers involved with the use of the V-100. Indeed, the requirement that police obtain prior magistrate authorization to use the V-100 appears to be one unique to California. *Langford* cannot reasonably be construed as binding authority upon Arizona law enforcement officials, or guidance on the constitutional parameters for the use of a Bearcat under the factual circumstances alleged in this case.

Plaintiffs next claim that Sergeant Skedel was aware that multiple cannisters of OC spray were fired into the home, that the OC spray was escalated to the use of CS gas, and at least 22 cannisters were delivered. (Doc. 130, pg. 9, ll. 24 – pg. 10, ll. 3, citing ER 82, ¶¶ 97-99, 101-103). Plaintiffs' second amended complaint says no such thing about Sergeant Skedel. Even if it had, Plaintiffs have failed to meet their burden to provide clearly established law. Again, in another section of their Motion, Plaintiffs cite to *Bing ex. rel. Bing v. City of Whitehall, Ohio*, 456 F.3d 555 (6th Cir. 2006) which concluded that the police use of pepper gas and a first flash-bang device was reasonable in an attempt to extract a dangerous felon from a residence, and *Simpson v. Commonwealth of Virginia,* 2016 WL 3923887 (E.D. Va. 2016) which held that the use of 60 cannisters of gas, resulting in a fatal fire, was within constitutional limits. Plaintiffs cite to no case that would constitutionally proscribe the use of OC or CS as alleged here, or would obligate a person like Sergeant Skedel to interfere with its use. The authority Plaintiffs ignore is also remarkable.

In *West v. City of Caldwell,* 931 F.3d 978 (9th Cir. 2019), the Ninth Circuit concluded:

> We have found no Supreme Court or Ninth Circuit case clearly establishing that the procedure Defendants followed, *including the use of tear gas* and the resulting destruction, is unreasonable in those circumstances.
>
> . . .
>
> Given the unusual circumstances of this case, the need for specificity of precedent in the Fourth Amendment context, and controlling cases establishing that officers can sometimes damage a home during a search without violating the occupant's Fourth Amendment rights, this is not an obvious case in which to deny qualified immunity without any controlling precedent establishing that Defendants violated Plaintiff's rights.

*Id.* at 986. (emphasis added). In *West*, police received a call that Fabian Salinas was present in his girlfriend's residence, might be threatening her with a BB gun, and was high on methamphetamine. *Id.* at 980. Salinas was a gang member, with outstanding felony arrest

warrants for several violent crimes, and a criminal record involving weapons, assault, and drug crimes. *Id.* at 980-81. His girlfriend, West, was not present in the residence, but confirmed with police that Salinas was in her home, and gave them consent to enter the home to locate him. *Id.* West provided a key to the front door, but knew it was also chained shut from the inside. *Id.* SWAT was called and met to discuss a plan whereby the house would be contained from the outside, oral commands to Salinas would be issued to exit the residence, tear gas would be introduced if Salinas did not exit, and entry and search would occur after the gas dissipated if Salinas did not relent. *Id.* at 982. The residence was surrounded, commands were given, and when Salinas didn't come out, tear gas was deployed and SWAT team entry was made. *Id.* Salinas was not found inside. *Id.* West claimed extensive damage to her home. *Id.* *West* establishes, conclusively, that constitutional limits were not settled in 2014 regarding the use of gas during the lawful entry of a third-party's residence in order to extract a wanted person.

Finally, Plaintiffs allege that Sergeant Skedel demolished personal property. (Doc. 130, pg. 10, lls. 10-14, citing Doc. 82, ¶¶ 110-111, 115-122).[2] Again, these portions of Plaintiffs' second amended complaint state no such thing regarding Sergeant Skedel, nor do Plaintiffs cite to "conduct" and the clearly established law that prohibits *that* "conduct" as it relates to Sergeant Skedel. Again, the burden has not been met. To the extent Plaintiffs rely on *Mena v. City of Simi Valley,* 226 F.3d 1031 (9th Cir. 2000) to supply the clearly established law regarding general property destruction, the reliance is misplaced. In *Mena*, the Ninth Circuit found that "[d]efendants appear to have damaged Plaintiffs' property in a way that was 'not reasonably necessary to execute the search warrant,'" where they broke down doors that were already

---

[2] Plaintiffs attach Exhibit 1 to their Response. The photographs should be disregarded as they are not part of the Second Amended Complaint and, alone, do not distinguish between damage resulting from SWAT entry versus the existing condition of the residence.

unlocked and opened, while stating "I like to destroy these kinds of materials, it's cool." 226 F.3d at 1041. There are no similar allegations here and, more importantly, there are no allegations that plausibly allege that any individual Defendant, including Skedel, damaged property for purposes unrelated to, or unnecessary for, the search of Ochoa. In fact, the Ninth Circuit has already recognized, that "*Mena* simply does not describe an acceptable amount of property damage that a SWAT team may inflict while trying to flush a violent and likely armed felon (who recently had threatened a police officer's life) out of a house." *West,* 931 F.3d at 987. Plaintiffs do not plausibly allege that any named officer or deputy, including Sergeant Skedel, "appears to have damaged Plaintiffs' property in a way that was 'not reasonably necessary to execute the search warrant,'" *id.,* and do not provide clearly established law that any alleged destruction of property during the SWAT team entry violated the Fourth Amendment.

### *Sergeant Lapre*

Pinal County Sheriff's Sergeant Chris Lapre is alleged to have arrived on scene at approximately 3:38 p.m., was the Bravo team leader and took a position inside the Bearcat, and deployed approximately 22 canisters of chemical munitions into the residence, including a combination of OC (pepper spray) and CS (tear gas). (Doc. 82, ¶¶ 61, 72, 75, 93-102). For all of the reasons cited as to Sergeant Skedel regarding the use of a Bearcat, and OC/CS gas, these allegations do not state a plausible claim that withstands the application of qualified immunity, nor allege conduct that is proscribed by clearly established law. To the contrary, *Bing ex rel. Bing*, 456 F.3d at 569 and *Simpson,* 2016 WL 3923887, *13 (E.D. Va. 2016) support the constitutionality of the use of gas in this case. Sgt. Lapre's use of force does not violate the constitution, much less clearly established constitutional law.

There is also no allegation Sgt. Lapre failed to intervene in anyone else's application of unconstitutional force, with knowledge and opportunity to intervene. *See, Ting, supra.*

9

Contrary to Plaintiffs' assertions in its Response, Lapre is not alleged (1) to have driven the Bearcat demolishing a fence and ramming Plaintiffs' home (Doc. 82, ¶¶ 80-82); (2) to have believed no person was in the residence when he used gas canisters (Doc. 82, ¶¶ 81-84, 90-91, 95, 104, 106); or (3) to have entered the home, and destroyed personal property (Doc. 82, ¶¶ 109-110, 112-122, 138-39). Again, "[s]weeping conclusory allegations will not suffice to prevent summary judgment. The [plaintiff] must set forth specific facts as to each individual defendant's" role in each alleged constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). If mere conclusions will not suffice to deprive a public official of qualified immunity, fabrications will not either.

### *Lt. Kent Horn*

Plaintiffs assert that Casa Grande Police Department Lieutenant Horn is constitutionally liable because he knew the Bearcat was to be used and summoned support from SWAT. (Doc. 130, pgs. 12-13). As with Sergeant Skedel, the conclusory allegations about Horn's knowledge of the Bearcat are insufficient to deprive him of qualified immunity. *See, Iqbal,* 129 U.S. at 675-82. The well-pled allegations as to Horn are that he called SWAT to respond to a barricaded subject at a time when Ochoa, a person with outstanding arrest warrants had been seen entering the house, and his entry had been confirmed by the home's residents who offered civilian assistance to "coax" Ochoa out of the home. (Doc. 82, ¶¶ 34-36, 43-45, 50-51, 55-58). Lt. Horn's request for tactical team assistance is neither unconstitutional, nor in violation of clearly established constitutional law. *See Terebesi v. Torreso*, 764 F.3d 217, 232 (2nd Cir. 2014) (qualified immunity applied for decision to deploy tactical team); *see also, Phillips v. James,* 422 F.3d 1075, 1082 (10th Cir. 2005) (police chief's summons of SWAT objectively reasonable in domestic violence case involving weapons). Likewise, his mere role as a supervisor is insufficient to impose constitutional liability. *See, Iqbal, supra.* There are no allegations that Lt. Horn exerted unconstitutional force, caused unconstitutional force to be exerted, or failed

to intervene in anyone else's application of unconstitutional force, with knowledge and opportunity to intervene. *See, Ting, supra.* Indeed, none of the allegations as to Lt. Horn plausibly state a constitutional violation, and Plaintiffs provide no clearly established constitutional law allegedly violated.

### Sergeant Gregg, Officer Robinson, Lieutenant Berry, Sheriff Babeu Sergeant Engstrom, Corporal Lujan, Officers McCabe, Western, Ybarra, and Wilson

Plaintiffs defy the Ninth Circuit Memorandum and Mandate by lumping together the remainder of individual Defendants without providing any violation of clearly established law as to any of them. As with Skedel, Lapre, and Horn, the allegations cited by Plaintiffs against Sergeant Gregg (Gragg) regarding the use of the Bearcat are conclusory and insufficient to deny qualified immunity. *Iqbal,* 129 U.S. at 675-82. Plaintiffs provide no clearly established law that Officer Robinson's providing cover for Lapre's use of gas canisters violates clearly established law. The decision in *Sjurset v. Button,* 810 F.3d 60, 619 (9th Cir. 2015) is on facts entirely different than here, and the discussion of the *Boyd* facts shows that *Boyd* also does not, factually, apply. Although Plaintiffs discuss Sergeant Engstrom's alleged activities, Plaintiffs cite to no clearly established law violated, and incorrectly assert that their second amended complaint alleges that Engstrom destroyed property. (Doc. 130, pg. 14, lls. 5-9, citing Doc. 82, ¶¶ 116-122, 138-39). Those allegations say nothing about Engstrom destroying property. Plaintiffs offer no argument or clearly established law regarding the conduct alleged as to Berry, Babeu, Lujan, McCabe, Western, Ybarra, or Wilson.

In light of controlling law, and the Ninth Circuit's Decision and Mandate, it is clear that Plaintiffs have resorted to fabricating or exaggerating allegations, have defied the Ninth Circuit's prohibition against lumping individual Defendants together, and have failed to identify clearly established law violated as to each individual Defendant. Accordingly, each individual Defendant is entitled to qualified immunity.

DATED this 18th day of June, 2020.

JELLISON LAW OFFICES, PLLC

s/James M. Jellison
James M. Jellison
*Attorney for the City and County Defendants*

I hereby certify that on June 18, 2020,
I electronically transmitted the attached document
to the Clerk's Office using the CM/ECF System for filing,
with service to the following registrant(s).

Robert T. Mills
Sean A. Woods
Mills + Woods Law PLLC
5055 North 12th Street
Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiffs*

s/James M. Jellison