**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

James W. Denby, et al.,                )      No. CV 17-00119-PHX-SPL
                                       )
       Plaintiffs,                )      **ORDER**
vs.                                    )
                                       )
City of Casa Grande, et al.,           )
                                       )
       Defendants.                )
                                       )
                                       )
                                       )
_____        )

      Pending before the Court is Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (the "Motion"). (Doc. 129) For the following reasons, the Motion will be granted in part and denied.

## I.    Background[1]

      This case arises from a search warrant executed in the City of Casa Grande. (Doc. 82) On the afternoon of December 17, 2014, the Casa Grande Police Department ("CGPD") was called to respond to a "domestic disturbance" complaint. (Doc. 82 at 6) Upon arrival, the officers learned that the dispute involved Abram Ochoa ("Ochoa"). (Doc. 82 at 7) Ochoa had outstanding warrants for his arrest due to theft and aggravated domestic

---

[1]    Unless otherwise stated, the background facts are recited as pled in Plaintiffs' Second Amended Complaint. (Doc. 82)

violence assault charges.[2] (Doc. 82 at 7) The officers were made aware that Ochoa had potentially fled to Plaintiffs' home located down the street (the "Property"). (Doc. 82 at 7) CGPD declined offers from Ochoa's girlfriend and Plaintiff Denby's son to help persuade Ochoa to leave the Property voluntarily. (Doc. 82 at 8) Shortly after arriving, CGPD requested assistance from the Pinal County Regional SWAT ("SWAT"). (Doc. 82 at 8) SWAT arrived and decided to use a "Bearcat" as a battering ram to gain access to the Property. (Doc. 82 at 10) SWAT drove the Bearcat over a chain-linked fence and into the front of the Property, breaking the windows and front door. (Doc. 82 at 10) SWAT then unsuccessfully attempted to communicate with Ochoa through the Bearcat's PA system. (Doc. 82 at 11) SWAT then fired a total of twenty-two (22) canisters of pepper spray and tear gas into the Property and deployed multiple Noise Flash Diversionary Devices ("flash-bang" devices) into the Property. (Doc. 82 at 12) SWAT then developed a tactical plan to enter the Property. (Doc. 82 at 13) During the search, SWAT team members and CGPD officers destroyed several items on the Property, such as: furniture, cushions, windows, bathroom mirrors, shower doors, toilets, televisions, artwork, and antiques. (Doc. 82 at 13-14) Ultimately, Ochoa was found outside the residence hiding under a tarp. (Doc. 82 at 14)

Plaintiffs initially filed this case in the Pinal County Superior Court, and Defendants removed the case to this Court on January 13, 2017. (Doc. 1) Plaintiffs have amended their complaint twice and allege multiple constitutional violations under 42 U.S.C. § 1983. (Docs. 31, 82) On May 1, 2018, Defendants filed a motion to dismiss, arguing that the City, County, and officers were all entitled to qualified immunity. (Doc. 83) The Court granted the motion as to the City of Casa Grande and Pinal County. (Doc. 106) After determining that factual issues precluded a finding of qualified immunity, the Court denied the officers' request for dismissal. (Doc. 106) The officers appealed that decision, and this Court stayed the proceedings until the appeal was resolved. (Docs. 107, 123) On April 14, 2020, the Ninth Circuit remanded the decision back to this Court, finding that this Court must analyze the facts as alleged in the Second Amended Complaint ("SAC") to determine whether the

---

[2]      Ochoa is also a defendant, but he has appeared separately in this case. (Doc. 68)

officers are entitled to qualified immunity. (Doc. 127) On May 28, 2020, Defendants renewed their request for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 129) In the alternative, Defendants ask that the Court consider the Motion as one for summary judgment.[3] (Doc. 129 at 17) Because the Ninth Circuit's Mandate ordered this Court to consider the issue of qualified immunity as presented to it on appeal in Defendants' motion to dismiss (Doc. 83), the Court declines to treat the Motion as one for summary judgment. (Doc. 127-1)

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a dismissal under Rule 12(b)(6) is appropriate when there is: (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Under Rule 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

When analyzing a 12(b)(6) motion based on a qualified immunity defense, a district court must consider two different questions: (1) taking the facts as true, whether the facts alleged show the officers' conduct violated a constitutional right; and (2) if so, whether the right was clearly established at the time of the alleged violation. *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (internal quotations and citations omitted). If the complaint states at least one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then the defendants are not entitled to a qualified immunity defense. *Id.* The test for qualified immunity at the motion to dismiss stage includes considering what a reasonable officer would be aware of in light of the specific context of

---

[3]   Defendants filed a motion for summary judgment prior to the Court issuing an order regarding their motion for dismissal. (Doc. 121) After Defendants filed their notice of appeal, the Court dismissed the motion for summary judgment without prejudice and stated that Defendants could refile the motion after resolution of the appeal. (Doc. 125)

the case. *Id.*

## III.   Discussion

Defendants argue that they are entitled to qualified immunity because the SAC impermissibly alleges generic constitutional violations and does not specify each individual officer's participation in any alleged constitutional violations. (Doc. 129 at 9-17) In response, Plaintiffs assert that the SAC sufficiently states each individual officer's participation in the alleged constitutional violations. (Doc. 130) The Court will review the allegations against each officer as alleged in each count of the SAC.

### A.   Count I: Unreasonable Search and Seizure

Plaintiffs assert that Defendants Lapre, Engstrom, Skedel, Gregg, and Robinson (the "Count I Defendants") violated their Fourth Amendment right to be free from unreasonable search and seizure by causing extensive damage to their property. (Doc. 82 at 16-19)

Under the Fourth Amendment, the test to determine what is necessary to "execute a warrant effectively" is reasonableness. *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005). When determining whether officers executed a search warrant unreasonably, a court must determine whether the degree of intrusion matched the underlying purpose of the intrusion. *Id.*

Here, all the parties assert that Defendants executed the search warrant for the purpose of arresting Ochoa. (Docs. 82 at 13; 129 at 5) The SAC alleges that the police were called to a house neighboring the Property due to a domestic dispute. (Doc. 82 at 6) Defendants later focused the search on Plaintiffs' home based on a statement made by Ochoa's girlfriend after he had fled the scene. (Doc. 82 at 7) The SAC alleges that Defendants knew Ochoa did not have any firearms, but he sometimes carried a stun gun. (Doc. 82 at 7) The SAC alleges that Plaintiff Denby gave Defendants the keys to the Property and the vehicles surrounding the Property, but Defendants chose to use the Bearcat to demolish the chain-linked fence and the front door of the home. (Doc. 82 at 8-11) Plaintiffs further allege that Defendants declined offers by Plaintiff Denby's son and Ochoa's girlfriend to help coax Ochoa from the home. (Doc. 82 at 8-9) Instead, Defendants

4

chose to call in SWAT. (Doc. 82 at 9) In addition, Plaintiffs assert that Defendants had several indicia that no one was in the home, but Defendants continued to destroy the Property anyway with the use of the Bearcat, twenty-two rounds of pepper spray and tear gas, and other physical force. (Doc. 82 at 9-12) Plaintiffs further assert that Defendants unreasonably destroyed furniture and other property that was "objectively too small to hide a human body." (Doc. 82 at 13) Such damage included: breaking every window in the home; breaking the bathroom toilets, which caused water damage to the Property's foundation; shattering the bathroom mirrors; destroying all the furniture and major home appliances; and destroying personal items including clothes, family pictures, antiques, and artwork. (Doc. 82 at 15-16) Ultimately, Ochoa was found outside the residence hiding under a tarp. (Doc. 13 at 14)

As to the allegations against each Defendant, first, the SAC alleges that Defendant Lapre operated the Bearcat and fired pepper spray into the Property. (Doc. 82 at 9-12) Second, the SAC alleges that Defendant Engstrom noticed movement under the tarp where Ochoa was ultimately found five hours before the Defendants entered the house, but Defendant Engstrom and the other Defendants failed to thoroughly investigate the movement before entering the house. (Doc. 82 at 8-10, 14) Third, the SAC alleges that Defendant Skedel launched at least two flash-bang devices into the Property. (Doc. 82 at 12-13) Fourth, the SAC alleges that Defendant Gregg was the officer in charge of CGPD during the search. (Doc. 82 at 11) Fifth, the SAC alleges that Defendant Robinson assisted Defendant Lapre in launching the pepper spray into the Property. (Doc. 82 at 12) Finally, the SAC alleges that all the Count I Defendants entered the home and participated in destroying the doors, windows, bathroom fixtures, furniture, and other personal property in the home. (Doc. 82 at 18)

Taken in the light most favorable to Plaintiffs, the Court finds that the SAC sufficiently alleges specific acts taken by each Count I Defendant that resulted in an unreasonable search and seizure of the Property. Given that the SAC alleges that the search took place against a suspect who was known to be unarmed with any deadly weapons, the

suspect was not known to be an immediate threat to the safety of himself or others, and the property damaged included property that was "objectively too small to hide a human body," the Court finds that the extent of the damage was disproportionate to the exigency of the circumstance.

The Court further finds that Plaintiffs' constitutional rights were clearly established at the time of the search and seizure. The Ninth Circuit has repeatedly held that individuals have a Fourth Amendment right to be free of "unnecessarily destructive behavior, beyond that necessary to execute a warrant effectively." *Mena v. City of Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000) (quoting *Liston v. County of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997)). Therefore, the Count I Defendants are not entitled to qualified immunity.

**B.     Count II: Failure to Intervene**

Plaintiffs assert that Defendants Berry, Engstrom, Gregg, Horn, Lujan, Lapre, Skedel, McCabe, Robinson, Western, Wilson, and Ybarra (the "Count II Defendants") violated their Fourth Amendment right to be free from unreasonable search and seizure by failing to intervene during the search. (Doc. 82 at 19)

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional right of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). "[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) (*reversed on other grounds*, 518 U.S. 81 (1996)). However, officers are liable for a breach of this duty only if they had "a realistic opportunity" to intercede. *Cunningham*, 229 F.3d at 1289-90.

Here, the SAC alleges that each Count II Defendant was informed of the decision to use the Bearcat and knew that the scope of the search warrant only allowed them to enter the Property for the purpose of arresting Ochoa. (Doc. 82 at 10, 18, 20) The SAC also alleges that: Defendant Gregg was in charge of the CGPD officers when SWAT arrived and acted in conjunction with SWAT in making the decision to use the Bearcat and launch the chemical munitions into the Property; Defendant Lapre was the Bravo team leader for

SWAT and drove the Bearcat; and Defendant Horn specifically called for SWAT to come barricade Ochoa in the home without first ascertaining whether Ochoa was in fact in the home or whether he had any violent intentions. (Doc. 82 at 8-11) Furthermore, the SAC alleges that Defendants Lapre, Engstrom, Skedel, Gregg, and Robinson entered the Property and participated in destroying personal property that was not objectively related to arresting Ochoa. (Doc. 82 at 13, 18)

The Court finds that Plaintiffs' allegations against Defendants Gregg and Lapre sufficiently state a claim for failure to intervene because their positions of authority during the search gave them "a realistic opportunity" to intercede during the destruction of the Property. The Court further finds that the allegation that Defendants Lapre, Engstrom, Skedel, Gregg, and Robinson went into the home to search for Ochoa also sufficiently shows that these Defendants had "a realistic opportunity" to intercede during the destruction of the Property. However, Defendant Horn's decision to call SWAT did not in itself contribute to any constitutional violation against Plaintiffs. In addition, Plaintiffs fail to allege specific facts establishing an opportunity to intervene as to Defendants Berry, Lujan, McCabe, Western, Wilson, and Ybarra. Accordingly, Count II shall be dismissed as to all Count II Defendants except Defendants Lapre, Engstrom, Skedel, Gregg, and Robinson.

**C.      Count IV: Failure to Train and Supervise**

Plaintiffs assert that Defendants Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan (the "Count IV Defendants") violated their Fourth and Fifth Amendment rights by failing to train and supervise the Defendants who participated in the search. (Doc. 82 at 23)

To plead a § 1983 claim for failure to train or supervise against an officer in his or her individual capacity, a Plaintiff must allege that the officer was deliberately indifferent to the need to train or supervise subordinates and the lack of training or supervision actually caused the constitutional harm or deprivation of rights. *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014). The fact that officers may not have been trained in every conceivable hostile situation does not render their training "inadequate." *Ting v. United*

*States,* 927 U.S. 1504, 1512 (1991).

Here, Plaintiffs allege that the Count IV Defendants failed to train and supervise the officers on how to properly inspect and clear an area when looking for a suspect. (Doc. 82 at 15) Plaintiffs also allege that the Count IV Defendants failed to train the officers on the correct amount of chemical munition to use per square foot of space and what to do when there are no signs of human activity after the initial use of chemical munition. (Doc. 82 at 15) However, Plaintiffs fall short of establishing the necessary facts to support their claim. First, the SAC fails to allege that Defendants Lujan, Berry or Engstrom had any responsibility to train and/or supervise the officers involved in the search. The SAC does allege that Defendant Horn was the City of Casa Grande police chief during the time of the search and Defendant Babeu was the Pinal County sheriff during the time of the search. (Doc. 82 at 3-4) Even assuming the duty to train and supervise can be inferred from these positions, Plaintiffs fail to allege any deliberate indifference. Similarly, the SAC alleges that Defendant Gregg was in charge of the CGPD and Defendant Lapre was the Bravo team leader for SWAT, but it does not allege facts to establish deliberate indifference. (Doc. 82 at 8-11) Therefore, the Count IV Defendants are entitled to qualified immunity.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. 129) is **granted in part** and **denied in part** as follows:

1.   Defendants Lapre, Engstrom, Skedel, Gregg, and Robinson are not entitled to qualified immunity as to Counts I and II.

2.   Defendants Horn, Berry, Lujan, McCabe, Western, Wilson, and Ybarra are entitled to qualified immunity as to Count II.

3.   Defendants Babeu, Berry, Engstrom, Gregg, Horn, Lapre, and Lujan are entitled to qualified immunity as to Count IV and Count IV is dismissed with prejudice.

///

///

4.     Defendants Horn, Berry, Lujan, McCabe, Western, Wilson, Ybarra, and Babeu are dismissed from this action with prejudice.

Dated this 30th day of June, 2020.

Honorable Steven P. Logan
United States District Judge