FILED

MAR 18 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMES W. DENBY,<br><br>   Plaintiff-Appellee,<br><br> v.<br><br>DAVID ENGSTROM; et al.,<br><br>   Defendants-Appellants. | No. 23-15658<br><br>D.C. No. 2:17-cv-00119-SPL<br><br>ORDER |

Before: MURGUIA, Chief Judge, CHRISTEN, Circuit Judge, and LEFKOW,[*] District Judge.

The Memorandum Disposition filed on February 5, 2025, is hereby amended. The amended disposition will be filed concurrently with this order.

With the filing of the Amended Memorandum Disposition, Chief Judge Murguia, Judge Christen, and Judge Lefkow vote to deny the petition for panel rehearing as moot. Chief Judge Murguia and Judge Christen also vote to deny the petition for rehearing en banc as moot, and Judge Lefkow so recommends. The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on the petition. Fed. R. App. P. 40.

The petition for panel rehearing and rehearing en banc (Dkt. 39) is DENIED. No further petitions for rehearing will be accepted.

---

  [*] The Honorable Joan H. Lefkow, United States District Judge for the Northern District of Illinois, sitting by designation.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 18 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JAMES W. DENBY, | No.    23-15658 |
| Plaintiff-Appellee, | D.C. No. 2:17-cv-00119-SPL |
| v. | |
| DAVID ENGSTROM; et al., | AMENDED MEMORANDUM* |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Submitted February 3, 2025**
San Francisco, California

Before: MURGUIA, Chief Judge, CHRISTEN, Circuit Judge, and LEFKOW,***
District Judge.

This case concerns Plaintiff James Denby's claim that the defendants

violated his Fourth and Fourteenth Amendment rights when law enforcement

---

　　\*　　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

　　\*\*　　The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

　　\*\*\*　　The Honorable Joan H. Lefkow, United States District Judge for the Northern District of Illinois, sitting by designation.

officers destroyed his house and personal property while executing a warrant to search his residence for another man, Abram Ochoa. Denby brought claims pursuant to 42 U.S.C. § 1983 against the municipality and thirteen individual officers, all but five of whom have been dismissed: David Engstrom, Rory Skedel, Chris Lapre, Brian Gragg, and Jacob Robinson (collectively, Defendants). Defendants appeal the district court's denial of their motion for summary judgment, arguing they are entitled to qualified immunity on Denby's two remaining claims: (1) that Defendants violated his Fourth and Fourteenth Amendment rights by using unnecessary force when executing a search warrant, resulting in the destruction of property, and (2) that Defendants violated his constitutional rights because they had the opportunity to intercede to stop the destruction of his property, but failed to do so.[1] The parties are familiar with the facts, and we recount them only as necessary to resolve the issues on appeal.

We have jurisdiction pursuant to 28 U.S.C. § 1291 for interlocutory orders denying qualified immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), but only "[t]o the extent the district court's order denies summary judgment on purely legal issues," *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per

---

[1] We previously affirmed the denial of Defendants' motion to dismiss on the basis of qualified immunity. *Denby v. Engstrom*, No. 20-16319, 2021 WL 2885846 (9th Cir. July 9, 2021).

curiam). Within those jurisdictional confines, this Court "review[s] *de novo* the denial of a motion for summary judgment predicated on qualified immunity." *Felarca v. Birgeneau,* 891 F.3d 809, 815 (9th Cir. 2018). We affirm.

    1. If disputed facts are viewed in Denby's favor, a jury could decide that defendants used excessive force in violation of the Fourth and Fourteenth Amendments. "[O]fficers executing a search warrant occasionally 'must damage property in order to perform their duty.'" *Liston v. County of Riverside,* 120 F.3d 965, 979 (9th Cir.), *as amended* (Oct. 9, 1997) (quoting *Dalia v. United States*, 441 U.S. 238, 258 (1979)). But "unnecessarily destructive behavior, beyond that necessary to execute [a] warrant[] effectively, violates the Fourth Amendment." *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 974 (9th Cir. 2005) (quoting *Liston*, 120 F.3d at 979).

Viewing disputed facts in Denby's favor, the degree of force and resulting property damage far exceeds that in cases in which we have affirmed a trial court's denial of qualified immunity. *See Hells Angels*, 402 F.3d at 974–75 (denying qualified immunity where officers executing a search warrant for Hells Angels insignia cut a mailbox off its post, jack-hammered the sidewalk outside the clubhouse, and broke a refrigerator); *Mena v. City of Simi Valley*, 226 F.3d 1031, 1035–41 (9th Cir. 2000) (denying qualified immunity where officers executing a search warrant for weapons broke the door of a home with a battering ram,

3

unnecessarily broke down two unlocked doors, and kicked in an open patio door). Here, the warrant authorized police to search the premises only to find and arrest Ochoa. Ochoa did not reside at Denby's residence, but officers thought he may have entered it. After officers executed the warrant, it is undisputed Denby's home sustained the following damage: all exterior windows were broken, and the chain-link fence and front door were destroyed, as were Denby's PT Cruiser and another vehicle, all furniture in the home, the appliances, televisions, cushions, pillows, window coverings, shower doors, bathroom mirrors, a toilet, artwork, heirlooms, family pictures, clothes, and antiques.[2] Many of these items were too small to hide Ochoa. *See Maryland v. Buie*, 494 U.S. 325, 334–35 (1990) (permitting sweep of home incident to arrest "only to [conduct] a cursory inspection of those spaces where a person may be found"). The district court correctly concluded that a jury could decide the use of force was unreasonable because Defendants' tactics caused the destruction of numerous objects too small to hide Ochoa, and were therefore outside the scope of the warrant. *See Hells Angels*, 402 F.3d at 971.

It is also undisputed that officers abandoned Denby's residence without notifying Denby of the danger posed by the contaminants they had used in their efforts to flush Ochoa from the home, or taking steps to decontaminate the residual

---

[2] Defendants deny that the force they used was excessive, but they do not deny that the damage resulted from their search. Hence, the question at trial will be whether Defendants' use of force was unreasonable under the circumstances.

4

tear gas and pepper spray from Defendants' use of chemical munitions. The record contains no explanation for this decision, which violated Pinal County Sheriff's Office SWAT Manual policy. Denby contends this left his home uninhabitable, injured him, prevented him from stopping water that was running from a toilet that had been shattered by the officers' tactics, and resulted in the destruction of his home.

Ochoa was not found in the home, and as the district court noted, factual disputes remain for the jury regarding whether and when the search of the home became unreasonable.[3] We do not have jurisdiction to decide "which facts the parties might be able to prove." *Foster*, 908 F.3d at 1210 (quoting *Johnson v. Jones*, 515 U.S. 304, 311 (1995)). Because the excessive force inquiry here "requires a jury to sift through disputed factual contentions, and to draw inferences

---

[3] Some of the progressively escalating tactics Defendants used to apprehend Ochoa may have been reasonable at the outset. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). But a jury could conclude that at some point over the seven-hour incident (with no response from, or sighting of, Ochoa), the continued and escalating use of force became unreasonable. *Cf. id.* at 396–97 (noting that the reasonableness calculus must account for "split-second judgments" in "tense, uncertain, and rapidly evolving" circumstances). The record evidence suggests that the officers' perceived immediacy of the threat Ochoa posed decreased over time, such that officers wandered casually through the yard and deemed it safe to approach the house's windows and doors before Ochoa was discovered in the backyard.

5

therefrom," summary judgment is not appropriate. *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012).

2. The district court sufficiently "examine[d] the specific factual allegations against each individual defendant," *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000), and correctly concluded that, viewed in Denby's favor, the evidence shows that each Defendant was at least an "integral participant" in the search of Denby's residence, *see Peck v. Montoya,* 51 F.4th 877, 891 (9th Cir. 2022).

<u>Engstrom, Lapre, and Skedel:</u> Viewed in the light most favorable to Denby, the unexplained destruction of furniture and objects too small to hide Ochoa would support a finding that each of the entry team defendants employed unnecessarily destructive force during their search of Denby's home. *See Mena*, 226 F.3d at 1041; *Maryland*, 494 U.S. at 334–35. Even if Engstrom, Lapre, and/or Skedel did not personally use excessive force, the district court correctly identified that each could have been at least an integral participant in the use of unreasonable force because they "knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation." *Peck*, 51 F.4th at 891. Defendants conceded in their Separate Statement of Facts before the district court that the "SWAT members met to develop a plan to approach the residence, enter the structure, and clear the interior." *See* ECF No.

6

20-3 at 137 ¶ 64. A jury could conclude Engstrom, Lapre, and Skedel were part of that meeting. *Cf. Sjurset v. Button*, 810 F.3d 609, 619 (9th Cir. 2015) (holding that officers not "privy to any discussions, briefings, or collective decisions" were not integral participants).[4]

Gragg: The undisputed facts would support a finding that Gragg, who commanded the SWAT units, was an integral participant because he "set in motion a series of acts by others which [Gragg] knew or reasonably should have known would cause others to inflict" a Fourth Amendment injury. *Peck*, 51 F.4th at 891. Gragg was involved in SWAT's planning meeting and decision to enter the residence and clear the interior. A fact finder must resolve whether each decision to escalate the use of force was reasonable under the circumstances. *Avina*, 681 F.3d at 1130. Finally, the SWAT Manual states that the "designated team leader

---

[4] A jury also could find that Skedel used excessive force when deploying two noise-flash diversionary devices (NFDDs) during the entry team's search, and that Engstrom and Lapre were integral participants in that action. *See Boyd v. Benton County*, 374 F.3d 773, 777–80 (9th Cir. 2004). A jury could find Lapre used excessive force by shooting some or all of the 22 canisters of chemical munitions into a 1,300 square foot house when a K-9 unit was available, and that Skedel was an integral participant for providing armed cover to Lapre during that action. *See Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (citing *Boyd*, 374 F.3d at 780) (recognizing that officers who provide "armed backup during an unconstitutional search" satisfy the integral participant rule). Finally, a jury could find Engstrom's continued use of force was unreasonable after he noticed movement under a tarp in the backyard and failed to investigate it. *See Foster*, 908 F.3d at 1207 ("[W]e lack jurisdiction to consider questions of evidentiary sufficiency on interlocutory review.").

7

will be responsible for initiating decontamination procedures as appropriate." The record indicates that Gragg, along with SWAT team leaders Lapre and Skedel, directed or approved the abandonment of Denby's contaminated residence without following the decontamination procedures in the Pinal County Sheriff's Office SWAT Manual.

Robinson: The district court correctly concluded that a jury could find Robinson was an integral participant given his role in providing armed cover for the other Defendants during the search. *See Hopkins*, 573 F.3d at 770. Specifically, if a jury decides that Lapre's use of 22 canisters of chemical munitions constituted unreasonable force, they could also hold Robinson accountable for providing armed cover to Lapre during the deployment. Robinson "cleared the scene" after SWAT personnel took Ochoa into custody, suggesting that he had the opportunity to intervene as the officers decamped from the premises without following the SWAT Manual decontamination procedures.

3. Denby's "Fourth Amendment right to be free from unreasonably destructive searches was clearly established at the time of the search." *Denby v. Engstrom*, No. 20-16319, 2021 WL 2885846, at *3 (9th Cir. July 9, 2021). This is a case in which "a general constitutional rule already identified in the decisional law . . . appl[ies] with obvious clarity to the specific conduct in question." *Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (per curiam) (quoting *Hope v. Pelzer*, 536 U.S. 730,

741 (2002)); *see also Andrew v. White*, 604 U. S. \_\_\_\_ (2025), 2025 WL 247502, at *4 (Jan. 21, 2025) (citing *Hope* and affirming that "[g]eneral legal principles can constitute clearly established law" in the rigorous AEDPA context). Existing precedent in *Mena*, 226 F.3d at 1041, and *Hells Angels*, 402 F.3d at 974, "place[s] the . . . constitutional question beyond debate," *White v. Pauly*, 580 U.S. 73, 79 (2017). These cases specifically and clearly establish that similarly destructive force used in a home during the execution of a search warrant amounts to a constitutional violation, and the force used here went above and beyond the force used in those cases.[5] Moreover, the Pinal County Sheriff's Office SWAT Manual should have caused Defendants to question whether their act of leaving a non-suspect's residence contaminated with tear gas without informing him of the dangers was unreasonable. The district court did not err in concluding that the Defendants "had fair notice that [their] conduct was unlawful but still engaged in

---

[5] Defendants rely on *West v. City of Caldwell*, 931 F.3d 978 (9th Cir. 2019), but as this panel noted in its prior disposition, *West* is distinguishable. *West* "involved an armed and extremely violent individual barricaded inside a home who had outstanding felony arrest warrants for several violent crimes, including driving his vehicle directly at a police officer. *West* did not involve allegations that officers searched areas too small to hide a person." *Denby*, 2021 WL 2885846, at *3 (citation omitted) (citing *West*, 931 F.3d at 981–82). Unlike *West*, the force used here clearly went beyond that necessary to execute the warrant effectively. *Mena*, 226 F.3d at 1041; *Hells Angels*, 402 F.3d at 974. Moreover, the "unusual circumstances of this case" and cumulative force employed over a seven-hour period with no response from Ochoa, in combination with our precedent, make this an "obvious case in which to deny qualified immunity." *Cf. West*, 931 F.3d at 987.

9

it." *Wright v. Beck*, 981 F.3d 719, 734 (9th Cir. 2020).

    4. Finally, we affirm the district court's denial of Defendants' request for summary judgment on Denby's failure to intercede claim. "'[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen' . . . if they had an opportunity to intercede." *Cunningham*, 229 F.3d at 1289–90 (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996)). For the same reasons a jury could find each Defendant was at least an integral participant, the jury could also decide that each Defendant had a "realistic opportunity to intercede" in the violation of Denby's Fourth Amendment Rights. *See id.* at 1290; *see, e.g.*, *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (combining the integral participant and failure to intercede analysis). "By 201[4], we had clearly established that 'police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.'" *Tobias v. Arteaga*, 996 F.3d 571, 583–84 (9th Cir. 2021) (quoting *Cunningham*, 229 F.3d at 1289); *see also Bracken v. Okura*, 869 F.3d 771, 778–80 (9th Cir. 2017).

    **AFFIRMED.  Defendants-appellants to bear costs.**