1
2
3
4
5
6
7
8

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| James W. Denby; *et al.*,<br>    Plaintiffs,<br>vs.<br>City of Casa Grande; *et al.*,<br>    Defendants. | Case No.: 2:17-CV-00119-SPL<br><br>**JOINT PROPOSED FINAL<br>PRETRIAL ORDER**<br><br>(Assigned to the Hon. Steven P. Logan) |

The following is the Joint Proposed Final Pretrial Order to be considered at the Final Pretrial Conference set for July 8, 2025 at 9:00 a.m.

## 1. TRIAL COUNSEL FOR THE PARTIES

**A.    Plaintiffs**    Sean A. Woods
Robert T. Mills
Mills + Woods PLLC
5055 N. 12th St., Suite 101
Phoenix, AZ 85014
Phone: 480 999-4556
Fax: 480 566-8322

**B.    Defendants**    James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

## 2. JURISDICTION

**A.**    Jurisdiction in this case is based on 28 U.S.C. §1331, in that this is a civil action arising under the Constitution, laws, or treaties of the United States.

**B.**    Jurisdiction is not disputed.

## 3. STIPULATIONS AND UNCONTESTED FACTS AND LAW

**A.**    The following material facts are admitted by the parties and require no proof:

1.    On the afternoon of December 17, 2014, members of the Casa Grande Police Department were dispatched to a domestic disturbance, or family fight, involving Abram Ochoa at a residence located at 107 ½ West 11th Street, Casa Grande, Arizona.

2.    Ochoa was no longer at the 107 ½ West 11th Street, Casa Grande, Arizona address, but police tracked Ochoa to the subject residence located at 116 West 10th Street, Casa Grande, Arizona.

3.    Casa Grande Police Department Officers set up a perimeter around the subject residence.

4.    Casa Grande Police Lt. Kent Horn contacted Pinal County Sheriff's Dispatch requesting assistance of the regional Special Weapons and Tactics (SWAT) Team.

5.    Pinal County Sheriff's Lt. Berry, then the regional SWAT Commander, received the call, and was informed about the situation Abram Ochoa.

6.    SWAT personnel arrived and maintained a perimeter around the residence.

7.    A search warrant was issued for Ochoa's apprehension at the subject residence.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**B.**    The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:

None.

**C.**    The following issues of law are uncontested and stipulated to by the parties:

None.

Defendants were acting under the color of state law during all times relevant to this matter.

## 4.    CONTESTED ISSUES OF FACTS AND LAW

**A.**    The following are the material issues of fact to be tried and decided:

<u>Issue #1:</u> Whether Defendants' search of Plaintiffs' property was unreasonable.

<u>Plaintiffs Contend</u>: The force applied by Defendants was objectively unreasonable and far in excess of anything that could be deemed reasonable. There was no immediate threat and Ochoa was not even in Plaintiffs' house. The force applied was far in excess of that necessary to execute the search warrant.

<u>Defendants Contend</u>:  The force applied during the search was reasonable in that Ochoa was a felony suspect who had a significant criminal history, was an immediate threat to officers and others on scene, and was fleeing and or escaping apprehension and arrest.  The law enforcement officers employed a series of escalating, non-lethal tactics—including verbal commands, the deployment of a throw phone, surveillance robots, and chemical agents—before ultimately breaching and clearing the residence that involved the use of two flash bangs. Ochoa was later found concealed under a tarp in the backyard; a fact unknown to law enforcement until his discovery.

<u>Issue #2</u>: Whether Defendants violated James Denby's constitutional rights because they had the opportunity to intercede to stop the destruction of his property but failed to do so.

<u>Plaintiffs Contend</u>: At any time during the nearly seven (7) hour incident, any of the Defendants could have stopped the others – including non-defendants from using excessive force.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

<u>Defendants Contend</u>:  The force applied during the search was reasonable in that Ochoa was a felony suspect who had a significant criminal history, was an immediate threat to officers and others on scene, and was fleeing and or escaping apprehension and arrest.  The law enforcement officers employed a series of escalating, non-lethal tactics—including verbal commands, the deployment of a throw phone, surveillance robots, and chemical agents—before ultimately breaching and clearing the residence that involved the use of two flash bangs. Ochoa was later found concealed under a tarp in the backyard; a fact unknown to law enforcement until his discovery.  There was neither a reasonable opportunity to intercede, nor a constitutional duty to do so.

**Issue #3:**  Whether Plaintiff James Denby, Sr. owned the subject residence as of December 17, 2014.

<u>Plaintiffs Contend</u>: **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party. It is also subject to MIL #3 and a potential motion.** Subject to these objections, Plaintiffs contend that James Denby had at minimum full possessory interest in the property. Plaintiffs contend that James Denby was considered the owner at the time and will testify to this fact.

<u>Defendants Contend</u>:  Plaintiff James Denby, Sr. did not own the subject residence on December 17, 2014.

**Issue #4:**  Whether Defendants were responding to a domestic violence call.

<u>Plaintiffs Contend</u>: **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party.** Subject to this objection, at the time Defendants arrived at the property, they were not responding to a DV call. In fact, the Search Warrant issued in this matter along with the accompanying affidavit references a failure to appear warrant and nothing else.

<u>Defendants Contend</u>:  On the afternoon of December 17, 2014, Casa Grande Police officers were dispatched to a domestic violence involving Abram Ochoa at 107 ½ West 11th Street, Casa Grande, Arizona.  By the time police arrived to the 107 ½ address, Ochoa had fled to the subject residence at 110 West 10th Street.  Defendants contend that domestic violence calls are inherently dangerous, and constitute a serious criminal offense,

**Issue #5:**  Whether Defendants were aware of facts about Ochoa that supported their reasonable belief that Ochoa was as immediate threat.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

<u>Plaintiffs Contend:</u> **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing that this issue, and this is not an "Issue" that has to be proved by any party.** Subject to these objections, Ochoa presented no danger to the officers. He never responded to them, never threatened them, and simply hid under a tarp covering a vehicle the entire time. When apprehended, he did not resist. Ochoa was wanted on a failure to appear warrant for shoplifting. The Search Warrant and Affidavit reference nothing related to any violence potential or history of violence. Also, his girlfriend who reported the alleged DV did not report any physical abuse but did report that she did not see him with any weapons that day. Furthermore, this is subject to Plaintiffs' MIL on Ochoa's criminal history.

<u>Defendants Contend:</u>  Responding Officers and Deputies knew that in addition to fleeing a domestic violence scene, Ochoa had an active felony arrest warrant, a history of felony criminal activity, a history of violence, had vowed to never return to prison, and was a methamphetamine abuser who had allegedly stabbed his brother two weeks prior.   Defendants reasonably believed Ochoa was an immediate threat.

**Issue #6:**  Whether Ochoa was fleeing or escaping from apprehension and arrest.

<u>Plaintiffs Contend:</u>  **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party. Defendants' contentions go beyond the issue presented.** The issue is simply whether he was fleeing. Plaintiffs contend that Ochoa made no attempts to escape or flee from Plaintiffs property.

<u>Defendants Contend:</u>  Responding Officers and Deputies were aware that Ochoa had fled into the residence at 110 West 10th Street, Casa Grande, Arizona.  A resident of the address, Plaintiffs' son, William Denby, Jr., initially denied Ochoa's presence in the residence, but upon further questioning, recanted and admitted that Ochoa had run into the home and was still in William Jr.'s room.

**Issue #7:**  Whether Casa Grande Officers sought Ochoa's voluntary removal from the subject residence before using force or summoning SWAT assistance.

<u>Plaintiffs Contend:</u>  **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party.** Subject to these objections, Defendants had ample opportunity to seek voluntary removal. Ochoa's girlfriend offered to talk to him over the PA; William Denby offered to go inside the house to look for Ochoa; James Denby gave his keys to the officers, drew them a map, and explained to them what doors were locked; and, James Denby told the officers and deputies on scene that any firearms were inaccessible because they were

behind a locked bedroom door, they were in a safe, or had trigger locks preventing their use. Ochoa was not in the house. The Search Warrant and Affidavit mention nothing about Ochoa's "violent history". There was no barricaded situation. There were no exigent circumstances. There were no indicators that met the guidelines to escalate the situation by requesting SWAT assistance or intervention.

Defendants Contend:  The police told Ochoa via patrol vehicle PA system to exit the residence, but he did not comply.   Officers also learned firearms were present in the home.  Based on these developing facts, and Ochoa's known violent history, flight, and refusal to surrender creating a heightened risk of injury for both officers on-scene and Ochoa himself, Casa Grande Officers requested SWAT assistance.

**Issue #8:**  Whether regional SWAT personnel sought Ochoa's voluntary removal from the subject residence before using force or obtaining a judicial warrant to search the subject residence for Ochoa.

Plaintiffs Contend:  **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party**. Subject to these objections, Defendants had ample opportunity to seek voluntary removal. Ochoa's girlfriend offered to talk to him over the PA; William Denby offered to go inside the house to look for Ochoa; James Denby gave his keys to the officers, drew them a map, and explained to them what doors were locked; and, James Denby told the officers and deputies on scene that any firearms were inaccessible because they were behind a locked bedroom door, they were in a safe, or had trigger locks preventing their use. Ochoa was not in the house. The Search Warrant and Affidavit mention nothing about Ochoa's "violent history". There was no barricaded situation. There were no exigent circumstances. There were no indicators that met the guidelines to escalate the situation by requesting SWAT assistance or intervention. SWAT almost immediately began employing force on the residence with the bearcat and chemical munitions.

Defendants Contend:  Regional SWAT Team members began to arrive, awaited a search warrant and in the meantime, used a car key given to them to move a vehicle out of the driveway, and continued to use a PA system to order Ochoa to exit the residence.  Ochoa did not comply.

**Issue #9:**  Whether law enforcement personnel observed Ochoa in the subject residence in addition to the information provided by William Denby, Jr.

Plaintiffs Contend:  **Plaintiffs object to this "Issue" as it is a compound issue and there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**any party.** Subject to these objections, Plaintiffs contend that Ochoa was never in the house.

Defendants Contend:  Law enforcement personnel observed Ochoa attempting to exit the subject residence and then immediately returning inside.   This observation was reported to other law enforcement personnel on scene.

**Issue #10:**  Whether law enforcement personnel on scene obtained a valid search warrant to enter the subject residence, search for Ochoa, and effect the existing arrest warrant.

Plaintiffs Contend:  There is only one search warrant and affidavit in evidence. The search warrant authorized law enforcement to search the residence and apprehend Ochoa only.

Defendants Contend:  The officers obtained a search warrant to enter the home and arrest Ochoa.   The combined warrants represented a judicial command to law enforcement personnel to locate, apprehend, and arrest Ochoa, and created a duty for law enforcement to comply with the command.

**Issue #11:**  Whether law enforcement personnel followed a series of escalating, non-lethal options starting with those causing minimal damage until Ochoa's failure to surrender resulted in a dynamic entry.

Plaintiffs Contend:  **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party.** Subject to these objections, Plaintiffs contend that "non-lethal" is not part of the analysis in this case. What is part of the analysis is that the force used was destructive and unreasonable in violation of Plaintiffs' constitutional rights. Regardless, a concussion that is powerful enough to destroy a toilet or grenades that are powerful enough to shatter windows, shower doors, or cause nails to pop loose from studs cannot be considered "non-lethal".

Defendants Contend:  After obtaining the warrant, a vehicle called a "Bearcat" was driven over a chain link fence to get close enough to the residence to break two windows so that a "throw phone" could be placed in the residence to try to contact Ochoa.  Ochoa did not use the phone or exit the residence, but officers noted movement inside the residence at the south portion of the home.  The individual Defendants did not operate the Bearcat, or introduce the throw phones. Robots were then placed into the residence to allow SWAT members to safely see what was happening inside. One robot observed a large portion of the interior but could not clear two rooms on the north side or several rooms with closed doors.  Ochoa still did not exit the residence and was warned that he had five minutes to do so before

increased levels of force would become necessary to remove him.   Receiving no response, Sergeant Lapre deployed OC (Pepper Spray) into the residence toward the high parts of the walls, ceiling, and attic space.   After receiving no response, Lapre deployed CS, a micro powder irritant of a different kind, into the residence.  OC and CS are non-lethal irritants designed to encourage a barricaded subject to exit the building without exposing law enforcement, or himself, to the risk of serious bodily injury or death.  Large amounts of chemical can be necessary in smaller spaces where a barricaded subject has hidden in places difficult for the chemical to penetrate or where physical barriers in the residence prevent chemical agents from fully reaching all interior spaces.  After no response, the officers finally decided to physically enter the residence to locate and arrest Ochoa.  All of these activities were for a legitimate law enforcement purpose and none of the force was gratuitously applied outside the scope of such purpose.

**Issue #12:** Whether law enforcement personnel decided to physically enter the subject residence to locate and arrest Ochoa.

Plaintiffs Contend: They did enter the residence despite knowing that movement had been seen under a tarp covering a vehicle outside the residence much earlier in the day. Law enforcement personnel did not investigate this movement until after they had entered the house, destroyed property, and exited the house. Ochoa was found under this tarp.

Defendants Contend:  After no response, the officers finally decided to physically enter the residence to locate and arrest Ochoa.  The entry team included Sergeants Skedel, Lapre, and Engstrom, but not Gragg or Robinson.  To reduce the risk of serious bodily injury or death to the entry team, Sergeant Rory Skedel deployed two noise flash diversionary devices ("flashbangs") into parts of the residence where no innocent persons, or fire-creating accelerants, had been seen or were otherwise known to be present--a bathroom behind a locked door, and a room with a propped-up mattress.  The flashbang deployment did not injure anyone or cause any fires.  Though SWAT personnel believed Ochoa was still in the residence, officers did not locate him.  He was later found outside the residence hiding under a tarp covering a car.  He was arrested there without further incident. All of these activities were for a legitimate law enforcement purpose and none of the force was gratuitously applied outside the scope of such purpose.  Skedel, Lapre, and Engstrom did not search areas aside from areas that, based on their training and experience, Ochoa could have reasonably be hidden in.

**Issue #13:** The nature and extent of damage caused by law enforcement use of force on property.

Plaintiffs Contend:   The real property and personal property was destroyed by Defendants. This is subject to Damages jury instructions and should not be rewritten

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

8

here to fit any of the parties' narrative. Expanding this issue to discuss the types of recoverable monetary compensation here is an inappropriate location. The nature and extent of damage caused is a separate and distinct analysis than the calculation of what that damage entailed monetarily. Non-economic damages are recoverable in Plaintiffs' claims. Plaintiffs contend that all personal property was destroyed and that the real property was damaged so badly that a rebuild of the house is necessary.

Defendants Contend:    As noted in *Dalia v. U.S.,* a search of property pursuant to a warrant often entails damage to the property during the course of the search execution.    Such is the case here.    None of the physical damage, however, was gratuitously inflicted, and was always tethered to the legitimate law enforcement purpose of abiding by the warrant commands, and doing so in a way that maximizes the safety of officers and suspect alike.    If a jury finds for plaintiff on liability, non-economic losses are not recoverable where the issue is property damage, and the alleged property damage in this case was capable of remediation sooner than claimed by Plaintiff, and for much less than claimed by Plaintiff.

**Issue #14**:    Whether Plaintiff took reasonable measures to mitigate any of his claimed damages.

Plaintiff Contend:    **Plaintiff objects to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party. It is also subject to Plaintiffs' MIL #2 and #3 and a potential motion. The issue of homeownership has never been raised in the entirety of this litigation.** There is no evidence that Plaintiffs failed to mitigate their damages. Furthermore, Plaintiffs could not interfere with the police activities such as to stop tear gas or pepper spray from entering his property; to stop a bearcat from rolling over his fence and into his home; to stop Defendants from smashing every window of the property; to stop defendants from blowing up his toilet; to stop defendants from destroying two of his vehicles; to stop defendants from destroying all of his personal property; or to stop defendants from damaging the exterior of his home or his rv gate amongst other claims. There is no duty to mitigate damages where the tortfeasor intended the harm that was caused.  *See Cobb v. Snohomish Cnty.,* 935 P.2d 1384, 1390 (Wash. 1997).

Defendants Contend:  Plaintiff seeks a rebuild of a home that he did not own at the time the damage occurred.  Even then, Plaintiff has avoided repairs that could have, and should have, taken place to render the portion of the home habitable.  Although Plaintiff had personal property cleaned, he nonetheless declined to collect that property and instead abandoned it.

**Issue #15**:    Whether Plaintiff is entitled to punitive damages.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Plaintiffs Contend:  Defendants' actions were recklessly indifferent to Plaintiffs' constitutional rights. They were far outside the scope of necessary force to apprehend Ochoa. He was unarmed, had no access to firearms, was one man against many armed officers who had completely surrounded the property for hours and were wandering through the property grounds unprotected for hours, had displayed no response in any way to law enforcement's and Defendants' actions, and was apprehended peacefully outside the residence. The Defendants' actions were extreme and outrageous especially knowing that there was movement under a tarp earlier in the day, they failed to investigate the movement, and Ochoa was eventually apprehended in that exact location after the Defendants and fellow law enforcement personnel completely destroyed Plaintiffs' property.

Defendants Contend:  Defendants did not know Plaintiff prior to the subject incident and that there was no existing animus toward him.   They further contend that the actions, decisions, and conduct was not motivated by a malicious intent to harm Plaintiff or his property outside the scope of legitimate law enforcement objectives, the threat posed by Ochoa, and the generally accepted outcome to complete the missions, and minimize harm to a suspect while maintaining the safety of law enforcement personnel. These aims are achieved through the use of law enforcement tools and uses of force as exemplified in this case.  Factually, no reasonable jury could conclude that punitive damages are appropriate when considering the legal standards for such an award

**B.**     The following are the issues of law to be determined:

**Issue #1**:     Whether any Defendant violated the Fourth Amendment to the United States Constitution based on their individual use of force during the search.

Plaintiffs Contend:   The force applied by Defendants was objectively unreasonable and far in excess of anything that could be deemed reasonable. There was no immediate threat and Ochoa was not even in Plaintiffs' house. The force applied was far in excess of that necessary to execute the search warrant. At any time during the nearly seven (7) hour incident, any of the Defendants could have stopped the others – including non-defendants from using excessive force. The force used was destructive and unreasonable in violation of Plaintiffs' constitutional rights. Concussions that are powerful enough to destroy a toilet or grenades that are powerful enough to shatter windows, shower doors, or cause nails to pop loose from studs cannot be considered reasonable. All of the internal structure of the property was coated in CS and OC spray/gas/dust. All of the personal property was damaged or destroyed. The law enforcement officers and deputies including Defendants did nothing to ventilate the property or warn any of the residents or owners that the property was dangerous to enter, causing physical harm to James Denby when he entered the property after law enforcement disappeared. Movement was seen under a tarp covering a vehicle early on in the incident and was not investigated by officers

despite being feet from the tarp. Ochoa was found under that tarp only after defendants and other law enforcement personnel had used every destructive mechanism in their arsenal and only after the house and personal property had been completely destroyed.

<u>Defendants Contend</u>.  The force applied during the search was reasonable in that Ochoa was a felony suspect who had a significant criminal history, was an immediate threat to officers and others on scene, and was fleeing and or escaping apprehension and arrest.  The law enforcement officers employed a series of escalating, non-lethal tactics—including verbal commands, the deployment of a throw phone, surveillance robots, and chemical agents—before ultimately breaching and clearing the residence that involved the use of two flash bangs. Ochoa was later found concealed under a tarp in the backyard; a fact unknown to law enforcement until his discovery.   Defendants further contend that none of them violated the Fourth Amendment to the Constitution, either by a personal use of force, or an alleged failure to intervene or integral participation in any Constitutional violation.

**Issue #2:**    Whether Defendants are entitled to qualified immunity.

<u>Plaintiffs Contend</u>:
This is an issue of law that has been decided by not only this Court, but also affirmed through the Ninth Circuit. Defendants are not entitled to qualified immunity.

<u>Defendants Contend</u>: The force applied during the search was reasonable in that Ochoa was a felony suspect who had a significant criminal history, was an immediate threat to officers and others on scene, and was fleeing and or escaping apprehension and arrest.  The law enforcement officers employed a series of escalating, non-lethal tactics—including verbal commands, the deployment of a throw phone, surveillance robots, and chemical agents—before ultimately breaching and clearing the residence that involved the use of two flash bangs. Ochoa was later found concealed under a tarp in the backyard; a fact unknown to law enforcement until his discovery.   Defendants further contend that none of them violated the Fourth Amendment to the Constitution, either by a personal use of force, or an alleged failure to intervene or integral participation in any Constitutional violation; and that none of them, when their individual conduct is analyzed as required by Ninth Circuit case law, violated clearly established law.  Each individual Defendant is entitled to qualified immunity.

**Issue #3:**    Whether punitive damages may be considered by the jury.

<u>Plaintiffs Contend</u>:  Defendants' actions were recklessly indifferent to Plaintiffs' constitutional rights. They were far outside the scope of necessary force to apprehend Ochoa. He was unarmed, had no access to firearms, was one man against many armed officers who had completely surrounded the property for hours and were wandering through the property grounds unprotected for hours, had displayed

no response in any way to law enforcement's and Defendants' actions, and was apprehended peacefully outside the residence. The Defendants' actions were extreme and outrageous especially knowing that there was movement under a tarp earlier in the day, they failed to investigate the movement, and Ochoa was eventually apprehended in that exact location after the Defendants and fellow law enforcement personnel completely destroyed Plaintiffs' property.

Defendants Contend:   The Defendants did not know James Denby prior to the subject incident and that there was no existing animus toward him.   Defendants contend that their actions were all for a legitimate law enforcement/safety purpose and that the search was limited to the scope of the warrants.   Defendants further contend that none of their actions or conduct were not motivated by a malicious, intentional or reckless intent to harm outside the scope of legitimate law enforcement objectives, the threat posed by Ochoa, and the generally accepted outcome to minimize harm to property and the suspect while maintaining the safety of law enforcement personnel.   These aims are achieved through the use of law enforcement tools employed in this case.   The conduct of Defendants do not rise to the standard for an award of punitive damages, and no reasonable jury could conclude otherwise under the totality of the facts and circumstances of this law enforcement encounter.   Defendants contend the proper standard for assessing punitive damages is by clear and convincing evidence.

**Issue #4:**     Whether the individual Defendants can be held responsible for the acts or omissions of other Deputies or Officers.

Plaintiffs Contend:   This is not a vicarious liability issue. It is established law that police officers have a duty to intervene when they have a reasonable opportunity and they know that another officer is violating the constitutional rights of a person.

Defendants Contend:       This is a Constitutional claim in which there is an absence of vicarious liability under §1983.

**Issue #5:**     Whether Plaintiff has standing to assert any Constitutional violation.

Plaintiffs Contend:  **This is subject to Plaintiffs' MIL #3**. Furthermore, this issue has never been raised in nearly nine (9) years of litigation. Mr. Denby, Ms. Logston, and Ms. Torres all lived in the property. At the time, Logston's and Torres' names were on the deed, but Mr. Denby was responsible for all aspects of the house – including paying property taxes, maintaining the property, and held the insurance policy for the house. Insurance is subject to Plaintiffs' MIL #2, but for purposes of resolution of issues pre-trial, this Court can review the relevant documents from insurance. Furthermore, Logston and Torres quitclaimed their interests in the property on December 16, 2015. Mr. Denby and Ms. Torres will both testify that the house was supposed to be recorded in Mr. Denby's name prior to the event, but

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

that it was just an oversight. Finally, Ms. Torres was a listed plaintiff in this case – as was Ms. Logston. Ms. Torres was dismissed **without prejudice**, is still living, is available to testify, and with a simple amendment can be allowed to be a Plaintiff again. There is absolutely no prejudice to adding her back as a Plaintiff. Defendants have known about her since the nascent stages of this litigation, chose to do no discovery related to her, and waited until the 11th hour to spring this ownership issue. Defendants have filed four separate appeals, multitudes of motions to dismiss and for summary judgment, and have never raised this issue until now. It should be well-established or law of the case that Jim is in reality and for purposes of this litigation, the owner of the property.

<u>Defendants Contend</u>   This is a Constitutional claim in which there is a property damage claim under §1983 and the Fourth Amendment.   Such rights under the Fourth Amendment are personal.   Plaintiff was not the owner of the home at the time of this event and, as such, he is not a real Plaintiff in interest having standing to make a Constitutional claim or to obtain damages.   When Plaintiff did obtain ownership of the home, he took the home in the condition he received it and cannot seek damages for alleged past damage to the home by any of the individual Defendants.

**Issue #6:**   Whether Plaintiff may obtain emotional distress or non-economic damages

<u>Plaintiffs Contend</u>:  Arizona recognizes such damages as anxiety and loss of enjoyment of life. Property loss in Arizona is not limited to economic loss. In *Thomas v. Goudreault*, 163 Ariz. 159, 786 P.2d 1010 (App. 1989) the Arizona Court of Appeals held that a tenant could recover damages for emotional distress from a landlord who failed to properly maintain and repair the leased property. In so holding the Court reasoned that:

In *Farr v. Transamerica Occidental Life Ins. Co.*, 145 Ariz. 1, 699 P.2d 376 (App. 1984), this court held that emotional distress damages could be awarded in an action for bad faith breach of an insurance contract. We rejected the argument that because there was no intentional infliction of emotional distress and no outrageous conduct the plaintiffs were not entitled to an instruction on emotional distress. It is not necessary to assert intentional infliction of emotional distress as the exclusive tort to recover damages for emotional or mental distress.

The primary reason for precluding recovery of mental distress damages is that to permit such recovery could open the door to fictitious claims. *See Crisci v. Security Insurance Co.*, 66 Cal.2d 425, 434, 58 Cal. Rptr. 13, 19, 426 P.2d 173, 179 (1967). We concluded in Farr that once a claimant has proven a loss of property, he can also recover damages for emotional distress. This principle is well established when the loss involves an interference with real property rights such as a tortious interference

with the use and enjoyment of land. *See Acadia, California, Ltd. v. Herbert*, 54 Cal.2d 328, 5 Cal. Rptr. 686, 353 P.2d 294 (1960); *Herzog v. Grosso*, 41 Cal.2d 219, 259 P.2d 429 (1953). The principle that once property damages have been established, emotional distress damages may follow is similarly applicable in the instant case, since without question the alleged acts of the Goudreaults constituted an interference with the Thomases' use and enjoyment of the leased property.

A tenant who is not provided with necessary services and maintenance of the leased premises as required under the Act suffers property damage because the value of his leasehold is decreased by the absence of adequate water, heat, cooling or proper maintenance of the building. However, the more immediate damage that he suffers is the annoyance and discomfort of living in inadequate housing. *See Stoiber*, 101 Cal. App.3d 903, 162 Cal. Rptr. 194 (1980); *Brewer*, 287 Or. 435, 600 P.2d 398 (1979); *Hilder*, 144 Vt. 150, 478 A.2d 202 (1984). Whether this condition was intentionally or negligently caused by the landlord is not relevant to the actual damages suffered by the tenant.

<u>Defendants Contend</u>:    This case is about damage to property.    Plaintiff cannot obtain damages for emotional distress or other non-economic harm arising from damage to property.  The only remaining claim upon which damages may be based is the Fourth Amendment excessive force on property claim.

**<u>Issue #7</u>:**    Whether Defendants are the cause of Plaintiffs' claimed damages.

<u>Plaintiffs Contend</u>:  Ochoa never entered the residence. Ochoa did not pull the trigger on the grenade launchers. Ochoa did not drive the bearcat. Ochoa did not break windows. Ochoa did not deploy NFDDs. Ochoa never threatened anyone. Ochoa hid under a tarp. That is the extent of what Ochoa did. All physical destruction was solely at the hands of the Individual Defendants and law enforcement personnel.

<u>Defendants Contend</u>:    Ochoa's decision to enter the property was the cause of damage in this matter.    The jury may considered Ochoa's conduct in causing Plaintiffs' claimed injury.

## 5.  LIST OF WITNESSES

**A.**    List of Witnesses

**<u>Plaintiff</u>**

(i)    Witnesses who shall be called at trial:

a.  <u>James W. Denby</u>

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

c/o Mills + Woods Law PLLC

Mr. Denby is the Plaintiff in this action and will testify as a fact witness. He will testify about his home in Casa Grande, which has for generations been in his family – among the original settlers of the area. He will testify as to the events that occurred on the day of the occurrence at issue, the damage done to his home and personal property, and their current condition. He will testify as to his life in the home both before and after the occurrence, including the difficulty and impossibility of performing tasks on the property due to the damage done by Defendants.

b.  Peggy Huff
    c/o Mills + Woods Law PLLC

Ms. Huff is James Denby's close friend. She has knowledge of the condition of Mr. Denby's property before the incident, how Mr. Denby lived his life prior, the condition of the property following the incident, the issues that Mr. Denby has dealt with since the incident, and how Mr. Denby has lived following the incident.

c.  William Denby
    c/o Mills + Woods Law PLLC

William Denby is the Plaintiffs' son and will testify as a fact witness. He will testify about the Plaintiffs' home in Casa Grande, which has for generations been in his family – among the original settlers of the area. He will testify as to the events that occurred on the day of the occurrence at issue, the damage done to the home and personal property, and their current condition. He will testify as to his life in the home both before and after the occurrence, including the difficulty and impossibility of performing tasks on the property due to the damage done by Defendants.

d.  Jon Passey
    Capital Property Specialists
    2450 S. Gilbert Rd., Suite 100
    Chandler AZ  85286

Mr. Passey will be called to testify as an expert witness. He prepared a report dated May 15, 2022. His expertise includes residential and commercial real estate construction, remediation,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

and mitigation. He will opine that the existing structure of Plaintiffs' home should be demolished and rebuilt. He will further estimate that the baseline cost of this is approximately $284,488.75 as of May 15, 2022.

e. <u>Mark R. Hafkey</u>
P.O. Box 344
Raymon. CA. 93653

Mr. Hafkey will be called to testify as an expert witness in the area of police policies, practices and procedures. He prepared a report dated May 15, 2022. He will testify that the conduct of the Defendant officers was grossly excessive and unreasonable under the 4th Amendment.

f. <u>Benjamyn Marks</u>
Indoor Science
503.608.2810
benjamyn.marks@gmail.com
www.linkedin.com/in/benjamynmarks

Mr. Marks will be called to testify as an expert witness in the area of tear gas contamination and remediation. He signed a Declaration dated May 12, 2022. He will testify as to reasonable safety and other procedures to remediate the tear gas contamination of Plaintiffs' home.

g. <u>Tim Tipton</u>
(405) 833-4912
TTipton179@gmail.com

Mr. Tipton will be called to testify as a rebuttal expert witness. He prepared a report on [DATE] in response to Defendants' Expert Report of Nathan Auvenshine.

h. <u>Joanna Wilson</u>
Address: 509 W 2nd St, Casa Grande, AZ 85122
Phone: (520) 421-2020

Ms. Wilson is the proprietor of the Boots and Saddle Motel and is a friend of Mr. Denby. She will testify as to Mr. Denby's hotel stays following the incident and was present with Mr. Denby

during the majority of the incident and can testify to the actions she saw during the incident.

i.   <u>Abram Ochoa</u>
ASPC Tucson, Santa Rita Unit
ABRAM P. OCHOA 201115
PO Box 24401
Tucson, AZ 85734
United States

Mr. Ochoa will be called to testify regarding his knowledge of the incident, his criminal history, his dispute with his girlfriend on the date of the incident and his location and action in connection with the incident.

j.   <u>David Engstrom</u>
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Engstrom is a Defendant in this matter and is expected to testify to his actions and omissions during the incident. He is further expected to testify regarding his interactions with Abram Ochoa.

k.   <u>Christopher Lapre</u>
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Lapre is a Defendant in this matter and is expected to testify to his actions and omissions during the incident.

l.   <u>Sergeant Brian Gragg</u>
c/o James M. Jellison
Jellison Law Offices, PLLC

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Gragg is a Defendant in this matter and is expected to testify to his actions and omissions during the incident.

m. <u>Rory Skedel</u>
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Skedel is a Defendant in this matter and is expected to testify to his actions and omissions during the incident.

n. <u>Jacob H. Robinson</u>
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Robinson is a Defendant in this matter and is expected to testify to his actions and omissions during the incident.

(ii)     Witnesses who may be called at trial:

a. <u>Keith Passig</u>
National Vendor
kpassig@nationalvendor.com

Mr. Passig is a manager with National Vendor and is likely to have discoverable information regarding the damage the Defendants acts or omissions caused to the Residence and the property within. He is expected to testify regarding the personal property contents and the value of the same.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

b.  <u>Joe Rezzonico</u>
Rezzonico Enterprises
9354 Morning Glory Lane
Highlands Ranch, CO 80130

In 2015-16 Mr. Rezzonico performed an appraisal of the damage done to Plaintiffs' property. He prepared a report of that appraisal. He concluded that given the damage to the property Plaintiffs' home will have to be demolished and rebuilt at a cost of $263,969.84. Mr. Rezzonico further determined that the damage to the contents of the property amounted to $70,433.94.

c.  <u>Nathan Auvenshine</u>
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Auvenshine is expected to testify consistent to his expert report he authored in this matter for Defendants related to police practices, policies, and procedures.

d.  <u>Ross Frazier</u>
F.I.X. Inc
480.209.1406
ross@fix24-7.com

Mr. Frazier will testify as to the damages caused to the property and to Mr. Denby's personal property. He will testify as to remediation performed on both. He will testify as to the invoiced amount to Mr. Denby for his company's (Monster Medical LLC d/b/a Fix Restoration) invoicing, work performed, and subsequent lawsuit filed against Mr. Denby.

e.  <u>Adela Castillo</u>

It is anticipated that Ms. Castillo will testify as to her relationship with Abram Ochoa. It is further anticipated that Castillo will testify as to her recollection of the events on the day of the incident.

f.  <u>Logan Perrill</u>

J. Logan Perrill is expected to testify regarding the cost of repairs attributable to the activities of law enforcement personnel on the subject date, and any amounts provided to Plaintiff(s) with the intent to effect repairs.

g.  <u>James F. O'Toole</u>
James F. O'Toole Inc.
PO Box 1371
Carefree, AZ  85377

Mr. O'Toole prepared a written estimate of the cost to demolish and rebuild Plaintiffs' home shortly after Defendants effectively destroyed it. He estimated that the cost to demolish the dwelling was $35,194.17, and that the cost to rebuild was $260,778.03.

h.  <u>Tracy Herbert</u>
Arizona Indoor Air Quality & Environmental Testing L.LC.
11458 East Ramblewood Avenue
Mesa, Arizona 85212
Phone: 480-823-2326
E-mail: azlndooriaq@gmail.com

Tracy Herbert authored a report regarding hazardous conditions in James Denby's home on December 29, 2014. Mr. Herbert is expected to testify as to the findings of the visual inspection and recommendations for removing any contamination.

i.  <u>Elizabeth Torres</u>
c/o Mills + Woods PLLC

Elizabeth Torres is James Denby's sister. She has knowledge of the condition of Mr. Denby's property before the incident, how Mr. Denby lived his life prior, the condition of the property following the incident, the issues that Mr. Denby has dealt with since the incident, and how Mr. Denby has lived following the incident.

j.  <u>Garric Berry</u>
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1

5055 North 12th Street, Suite 101<br>Phoenix, AZ 85014<br>480.999.4556<br>MILLS + WOODS LAW, PLLC

Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Berry was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

k.  Christopher Fox
    c/o James M. Jellison
    Jellison Law Offices, PLLC
    18801 N. Thompson Peak Parkway
    Suite D235
    Scottsdale, AZ 85255
    D: 480-912-1539
    E: jim@jellisonlaw.com

Mr. Fox was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

l.  Kent Horn
    c/o James M. Jellison
    Jellison Law Offices, PLLC
    18801 N. Thompson Peak Parkway
    Suite D235
    Scottsdale, AZ 85255
    D: 480-912-1539
    E: jim@jellisonlaw.com

Mr. Horn was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

m.  Francisco Lujan
    c/o James M. Jellison
    Jellison Law Offices, PLLC
    18801 N. Thompson Peak Parkway
    Suite D235
    Scottsdale, AZ 85255
    D: 480-912-1539
    E: jim@jellisonlaw.com

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1    Mr. Lujan was a law enforcement officer on scene in this matter
2    and is expected to testify to his observations, actions and
     omissions during the incident.
3

4    n.   Mark Mccabe
          c/o James M. Jellison
5         Jellison Law Offices, PLLC
          18801 N. Thompson Peak Parkway
6         Suite D235
          Scottsdale, AZ 85255
7         D: 480-912-1539
          E: jim@jellisonlaw.com
8

9    Mr. Mccabe was a law enforcement officer on scene in this
10   matter and is expected to testify to his observations, actions and
     omissions during the incident.
11

12   o.   JJ Ybarra
          c/o James M. Jellison
13        Jellison Law Offices, PLLC
          18801 N. Thompson Peak Parkway
14        Suite D235
          Scottsdale, AZ 85255
15        D: 480-912-1539
          E: jim@jellisonlaw.com
16

17   Mr. Ybarra was a law enforcement officer on scene in this matter
18   and is expected to testify to his observations, actions and
     omissions during the incident.
19

20   p.   Brian Walsh
          c/o James M. Jellison
21        Jellison Law Offices, PLLC
          18801 N. Thompson Peak Parkway
22        Suite D235
          Scottsdale, AZ 85255
23        D: 480-912-1539
          E: jim@jellisonlaw.com
24

25   Mr. Walsh was a law enforcement officer on scene in this matter
26   and is expected to testify to his observations, actions and
     omissions during the incident.
27

28   q.   Christopher Western

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Western was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

r.  Michael Wilson
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Wilson was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

(iii)  Witnesses who are unlikely to be called at trial:

a.  Greg Zimmerman
P.O Box 5402
Carefree, Arizona 85337
602.531.7541

Mr. Zimmerman is an architect who performed an analysis of structural damage to Mr. Denby's home on March 1, 2016. He is expected to testify as to the structural integrity of the home at that time as well as the need to remove or replace components of the home.

**Defendant**

(i)  Lay Witnesses who shall be called at trial:

### 1.     Pinal County Sheriff, Mark Lamb[1]

It is anticipated that Sheriff Lamb will testify as to his training and experience; his job duties as Sheriff of Pinal County, and the policies, procedures, and practices for the Pinal County Sheriff's Office.

### 2.     Pinal County former Sheriff, Paul Babeu

It is anticipated that former Sheriff Babeu will testify as to his training and experience; his job duties when Sheriff of Pinal County, and the policies, procedures, and practices for the Pinal County Sheriff's Office.

### 3.     City of Casa Grande, M. Wilson

It is anticipated that Officer Wilson will testify as to his background, education and experience in law enforcement. It is further anticipated that Wilson will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

### 4.     City of Casa Grande, Corporal F. Lujan

It is anticipated that Corporal Lujan will testify as to his background, education and experience in law enforcement. It is further anticipated that Lujan will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

### 5.     City of Casa Grande, Kent Horn

It is anticipated that Officer Horn will testify as to his background, education and experience in law enforcement. It is further anticipated that Horn will testify in accordance with his job duties as a Lieutenant and the subject incident on December 17, 2014.

### 6.     City of Casa Grande, D. Engstrom

It is anticipated that Officer Engstrom will testify as to his background, education and experience in law enforcement. It is further anticipated that Sergeant Engstrom will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

### 7.     City of Casa Grande, Mark McCabe

It is anticipated that Officer McCabe will testify as to his background, education and experience in law enforcement. It is further anticipated that McCabe will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

---

[1] At this time, law enforcement witnesses should be contacted through counsel.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

### 8.    City of Casa Grande, Jacob Robinson

It is anticipated that Officer Robinson will testify as to his background, education and experience in law enforcement. It is further anticipated that Robinson will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

### 9.    City of Casa Grande, C. Western

It is anticipated that Officer Western will testify as to his background, education and experience in law enforcement. It is further anticipated that Western will testify in accordance with his job duties and arresting/booking record of Abram Ochoa in relation to the incident on December 17, 2014.

### 10.    City of Casa Grande, Sgt. Gragg

It is anticipated that Gragg will testify as to his background, education and experience in law enforcement. It is further anticipated that Gragg will testify in accordance with his job duties with the City of Casa Grande; and in accordance with his involvement to the subject incident.

### 11.    City of Casa Grande, JJ Ybarra

It is anticipated that Officer Ybarra will testify as to his background, education and experience in law enforcement. It is further anticipated that Ybarra will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

### 12.    City of Casa Grande, C. Fox

It is anticipated that Officer Fox will testify as to his background, education and experience in law enforcement. It is further anticipated that Fox will testify in accordance with his job duties and incident report in relation to the date of the incident on December 17, 2014 and any prior encounters with Abram Ochoa.

### 13.    City of Casa Grande, Detective B. Walsh

It is anticipated that Detective Walsh will testify as to his background, education and experience in law enforcement. It is further anticipated that Walsh will testify in accordance with his involvement to the subject incident including the authored of the search warrant.

### 14.    Pinal County, Lt. Garric Berry

It is anticipated that Berry will testify as to his background, education and experience in law enforcement. It is further anticipated that Berry will testify in accordance with his job duties as a Lieutenant and incident report in relation to the incident on December 17, 2014.

### 15.    Pinal County, Christopher Lapre

It is anticipated that Lapre will testify as to his background, education and experience in law enforcement. It is further anticipated that Lapre will testify in accordance with his job duties as a Sergeant and incident report in relation to the incident on December 17, 2014.

### 16.    Pinal County, Sgt. Rory Skedel

It is anticipated that Skedel will testify as to his background, education and experience in law enforcement. It is further anticipated that Skedel will testify in accordance with his job duties as a Sergeant and incident report in relation to the date of the incident on December 17, 2014.

### 17.    L. Ross Frazier, Monster Medical, LLC, dba Flood Impact Xperts ("FIX")

Mr. Frazier is expected to testify concerning the written contract between FIX and Plaintiff Denby for services of: Mitigation; Supplemental Services Asbestos, Contents Services, Contents Storage Fee, AZIAQ; Asbestos Testing/Lab, Waste Management Asbestos Disposal and Demo for Asbestos Removal.  Mr. Frazier is also expected to testify concerning the company's billing procedures, the processes of obtaining necessary permits to complete surrounding the requested work on the subject building, the storage of Denby's personal property, and the facts associated with the related action of *Monster Medical, LLC, dba Flood Impact Xperts ("FIX") v. James W. Denby*, Maricopa County Superior Court Case No. CV2020-092303.  Additionally, Mr. Frazier is expected to testify concerning that upon the completion of the requested demo work, the City inspected and red-tagged the subject building stating that FIX would need to obtain a DEMO permit for proceed with further work. FIX halted their services when Plaintiff filed litigation against law enforcement for the damage to the home and against his insurance company to receive the funds to rebuild or replace the home.

### 18.    Merle C. Favinger, AIC, Silverado Claims Service

Mr. Favinger is expected to testify regarding his observations and evaluation of the subject building.  Mr. Favinger is also expected to testify in accordance with the Silverado Claims Service Estimate, dated January 5, 2015.

### 19.    John Koester, Monster Medical, LLC, dba Flood Impact Xperts ("FIX")

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mr. Koester is expected to testify concerning the Work Order Agreement between FIX and Plaintiff, the role he played in the events concerning the subject property, his observations, communications and facts associated with the related action of *Monster Medical, LLC, dba Flood Impact Xperts ("FIX") v. James W. Denby*, Maricopa County Superior Court Case No. CV2020-092303.

**20.    Jared Rowell, Monster Medical, LLC, dba Flood Impact Xperts ("FIX")**

Mr. Rowell is expected to testify concerning the estimates between FIX and Plaintiff, the role he played in the events concerning the subject property, his observations, communications and facts associated with the related action of *Monster Medical, LLC, dba Flood Impact Xperts ("FIX") v. James W. Denby*, Maricopa County Superior Court Case No. CV2020-092303.

Defendants' Expert Witnesses who shall be called at trial:

**1.    Captain Nathan "Nate" Auvenshine**
**Redeemed Training and Consulting, LLC**
**P.O. Box 27843**
**Prescott Valley, AZ 86312**

Captain Auvenshine will testify in accordance with his expert report prepared by him which sets forth his opinions to date, the basis for his opinions and other information he relied upon in preparing the Report, as well as his deposition terstimony.   Specifically, Captain Auvenshine's Report contains the following:

(1) A complete statement of all opinions Captain Auvenshine will express and the basis and reasons for them, including the methods used by Defendants in this case and their conformity with law enforcement and SWAT practices in similar situations;

(2) The facts or data considered by Captain Auvenshine in forming his opinions;

(3) Any exhibits that will be used to summarize or support his opinions;

(4) Captain Auvenshine's qualifications, including a list of all publications authored in the previous ten (10) years;

(5) A list of all other cases in which, during the previous four (4) years, Captain Auvenshine testified as an expert at trial or by deposition.

**2.  David Spiegel**
**Spiegel Property Damage Consulting and Forensics**
**P.O. Box 7577**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**La Verne, CA 91750**

Mr. Spiegel is expected to testify in accordance with his expert report prepared by him which sets forth his opinions to date, the basis for his opinions and other information he relied upon in preparing the Report, as well as the testimony in his deposition.

    (1)   A complete statement of all opinions Mr. Spiegel will express and the basis and reasons for them;

    (2)   The facts or data considered by Mr. Spiegel in forming his opinions;

     (3) Any exhibits that will be used to summarize or support his opinions;

    (4)   Mr. Spiegel's qualifications, including a list of all publications authored in the previous ten (10) years;

    (5)   A list of all other cases in which, during the previous four (4) years, Mr. Spiegel testified as an expert at trial or by deposition.

**3.**     **Wade Sticht, PE**
         **Senior Engineer I & West Regional Lead**
         **J.S. Held, LLC**
         **265 N. Main Street. Ste. D**
         **Kaysville, UT 84037**

Mr. Sticht is expected to testify in accordance with his expert prepared by him which sets forth his opinions to date, the basis for his opinions and other information he relied upon in preparing the Report, as well as his deposition testimony.  Specifically, Mr. Sticht's Report contains the following:

        (1)   A complete statement of all opinions Mr. Sticht will express and the basis and reasons for them;

    (2)   The facts or data considered by Mr. Sticht in forming his opinions;

    (3)   Any exhibits that will be used to summarize or support his opinions;

    (4)   Mr. Sticht's qualifications, including a list of all publications authored in the previous ten (10) years;

    (5)   A list of all other cases in which, during the previous four (4) years, Mr. Sticht testified as an expert at trial or by deposition.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Witnesses who may be called at trial:

**1.    Adela Castillo**

It is anticipated that Ms. Castillo will testify as to her domestic violence problems and transpired of the relationship with Abram Ochoa.  It is further anticipated that Castillo will testify as to her recollection to the subject incident.

**2.    Defendant Abram Ochoa**

It is anticipated that Mr. Ochoa will testify as to the transpired events the date of the subject incident on December 17, 2014.  It is further anticipated that Ochoa will testify as to his relationship with Ms. Castillo, and any prior history with Plaintiff James Denby.

**3.    J. Logan Perrill**
       **Property Field Claims Adjuster**
       **American Family Insurance**

J. Logan Perrill is expected to testify regarding the cost of repairs attributable to the activities of law enforcement personnel on the subject date, and any amounts provided to Plaintiff(s) with the intent to effect repairs.   Additionally, Perrill is further expected to testify in accordance with the Perrill letter dated April 23, 2015.

**4.    Mark E. Orr, P.E.**
       **Principal Engineer**
       **EFI Global**

Mr.  Orr is expected to testify regarding the nature and extent of property damage attributable to the activities of law enforcement personnel on the subject date, his observations and evaluation of the site,   and in accordance with his Structural Engineering Report dtd January 30, 2015, including any attached documents, evaluations, and photographs.

**5.    Michele A. Bogdon, P.E.**
       **Senior Engineer**
       **EFI Global**

Ms. Bogdon is expected to testify regarding Mr. Orr's review of the nature and extent of property damage attributable to the activities of law enforcement personnel on the subject date, his observations and evaluation of the site, and in accordance with the Structural Engineering Report dtd January 30, 2015, including any attached documents, evaluations, and photographs.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**6.      John Sweet**
     **American Technologies Inc.**

Ms. Sweet is expected to testify regarding the method of chemical munition remediation regarding the alleged property damage at the subject residence.

(ii)     Witnesses who are unlikely to be called at trial:

**1.   William Denby, Jr.**

Mr. Denby is expected to testify regarding his communications regarding Ochoa's entry into the subject residence, and his knowledge of Ochoa.

**2.      Plaintiff James Denby**
     **c/o counsel**

It is anticipated that Plaintiff Denby will testify as to the allegations contained in Plaintiffs' Complaint, Plaintiffs' First Amended Complaint, and Second Amended Complaint; the ownership of the subject residence; and his efforts, or lack of efforts, in home remediation.

**B.**      Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call shall be listed on that party's list of witnesses; the party cannot rely on the witness having been listed or subpoenaed by another party.

**6. LIST OF EXHIBITS**

**A.**      The following exhibits are admissible in evidence and may be marked in evidence by the Courtroom Deputy:[2]

---

[2] In keeping with this Court's instructions, Defendant will object with the following key numbers instead of narrative: Key Number (1) – lack of relevance under Fed.R.Evid. 401-402; Key Number (2) – more prejudicial than probative, misleading, confusing under Fed.R.Evid. 403; Key Number (3) improper character evidence under Fed.R.Evid. 404; Key Number (4) lack of foundation for admission; Key Number (5) – improper expert

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Plaintiffs' Exhibits:

| PLAINTIFFS' EXHIBITS | | D OBJ | P OBJ |
|---|---|---|---|
| 1. | CGPD PHOTOS | 4, lack of completeness | |
| 2. | DENBY PHOTOS | 1, 2, 4 | |
| 3. | CANISTERS | | |
| 4. | CAD REPORT | | |
| 5. | BANNER MEDICAL | 1, 2, 4, 6, 10 | |
| 6. | ADDITIONAL PHOTOS | 1, 2, 4 | |
| 7. | SEARCH WARRANT | | |
| 8. | ACIC | | 6 |
| 9. | QUITCLAIM CORRECTION DEED | | 1,2,7,10 |
| 10. | HOTEL RECEIPTS | 4 | |
| 11. | FOOD AND HOTEL AND LAUNDRY RECEIPTS | 4 | |
| 12. | FOOD AND MISC RECEIPTS | 4 | |
| 13. | COMBINED PROPERTY LIST | 4 | |
| 14. | JIM PERSONAL PROPERTY LIST | 4, 6 | |
| 15. | NATIONAL VENDOR TOTAL PAGE | | 2,10 |
| 16. | NATIONAL VENDOR - PERSONAL PROPERTY | | 2,10 |
| 17. | NATIONAL VENDOR PERSONAL PROPERTY REPORT | | 2,10 |
| 18. | SUPPLEMENTAL INVENTORY | 4, 6 | |
| 19. | 'TOTAL LOSS' INVENTORY | 4, 6 | |
| 20. | REZZONICO APPRAISAL REPORT | 4, 5, 6 | 2,10 |
| 21. | OCHOA DECLARATION | 4, 6, 7 | |
| 22. | TIPTON CV | 1, 2, 4, 5, 6, 7, 10 | |
| 23. | TIPTON TESTIMONY | 1, 2, 4, 5, 6, 7, 10 | |
| 24. | 200330 - SUMMONS AND COMPL - MONSTER MEDICAL V. DENBY | | 1,2,10 |
| 25. | ATI REPORT | 4, 5, 6 | 2,10 |
| 26. | ATI - TEAR GAS DECONTAM PROCEDURES | 4, 5, 6 | 2,10 |
| 27. | JOANNA WILSON APRIL 29 2015 EMAIL | 4, 5, 6 | |
| 28. | CC-DENBY- 001- 033 - NOTICES OF CLAIM | 1, 2, 4, 6, 7, FRE 408 | |

opinion under Fed.R.Evid. 701-703; Key Number (6) – hearsay under Fed.R.Evid. 801-803; Key Number (7) – lack of authentication under Fed.R.Evid. 901; Key Number (8) – lack of proper disclosure under Fed.R.Civ.P. 26(a); Key Number (9) – lack of disclosure under this Court's Scheduling Order; Key Number (10) – subject to a pending motion in limine.

| 29. | CGPD REPORT | | 6 |
| 30. | PCSO REPORT | | 6 |
| 31. | BEN MARKS CV | 1, 2, 4, 5, 6, 7, 10 | |
| 32. | BEN MARKS LIST OF CASES | 1, 2, 4, 5, 6, 7, 10 | |
| 33. | HAFKEY CV | 1, 2, 4, 5, 6, 7, 10 | |
| 34. | HAFKEY - LIST OF TESTIMONY | 1, 2, 4, 5, 6, 7, 10 | |
| 35. | PINAL SWAT MANUAL | | |
| 36. | PASSEY CAPITAL PROPERTY CV | 4, 6, 7 | |
| 37. | PASSEY INDIVIDUAL CV | 4, 6, 7 | |
| 38. | AUVENSHINE EXHIBIT 5 | 6 | |
| 39. | NFDDS | 1, 2, 4 | |
| 40. | GARRIC BERRY DEC | | |
| 41. | DAVID ENGSTROM DEC | | |
| 42. | CHRISTOPER FOX DEC | | |
| 43. | BRIAN GRAGG DEC | | |
| 44. | KENT HORN DEC | | |
| 45. | CHRISTOPHER LAPRE DEC | | |
| 46. | FRANCISCO LUJAN DEC | | |
| 47. | MARK MCCABE DEC | | |
| 48. | JACOB ROBINSON DEC | | |
| 49. | JJ YBARRA DEC | | |
| 50. | RORY SKEDEL DEC | | |
| 51. | BRIAN WALSH DEC | | |
| 52. | CHRISTOPHER WESTERN DEC | | |
| 53. | MICHAEL WILSON DEC | | |
| 54. | Reserved | | |
| 55. | Reserved | | |
| 56. | Reserved | | |
| 57. | Reserved | | |
| 58. | Reserved | | |
| 59. | Reserved | | |
| 60. | Reserved | | |
| 61. | Reserved | | |
| 62. | Reserved | | |
| 63. | Reserved | | |
| 64. | Reserved | | |
| 65. | Reserved | | |
| 66. | Reserved | | |
| 67. | Reserved | | |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

| 68. | Reserved | | |
|-----|----------|---|---|
| 69. | Reserved | | |
| 70. | Reserved | | |
| 71. | Reserved | | |
| 72. | Reserved | | |
| 73. | Reserved | | |
| 74. | Reserved | | |
| 75. | Reserved | | |
| 76. | Reserved | | |
| 77. | Reserved | | |
| 78. | Reserved | | |
| 79. | Reserved | | |
| 80. | Reserved | | |

Defendants' Exhibits:

| **Defendant's Exhibits** | | **P OBJ** | **D OBJ** |
|-----|----------|---|---|
| 81. | American Family - 2015.04.23 - Personal Property $5,271.22 | 1,2,4,6,7,10 | |
| 82. | American Family - 2017.08.07 Complaint | 1,2,4,6,7,10 | |
| 83. | American Family - 2017.08.16 - Payment $24,369.68 | 1,2, 4, 6, 10 | |
| 84. | American Family - Custodian of Records Affidavit | 1,2, 4, 6, 10 | |
| 85. | Discovery - 2018.01.03 - Ps Responses to Ds Discovery Requests | 1, 2, 4, 6, 10 | |
| 86. | Dispatch Call | 4, 6 | |
| 87. | Estimate - American Family Structural Estimate | 1,2,4,5 6,10 | |
| 88. | Estimate - Flood Impact Xperts (FIX) | 1,2,4,5 6,10 | |
| 89. | Estimate – Silverado | 1,2,4,5 6,10 | |
| 90. | Expert - Auvenshine CV | 1, 2, 4, 5, 6, 7, 10 | |
| 91. | Expert - Auvenshine Expert Report | 1, 2, 4, 5, 6, 7, 10 | |
| 92. | Expert - Spiegal CV | 1, 2, 4, 5, 6, 7, 10 | |
| 93. | Expert - Spiegal David List of Expert Cases | 1, 2, 4, 5, 6, 7, 10 | |
| 94. | Expert - Spiegal Preliminary Report | 1, 2, 4, 5, 6, 7, 10 | |
| 95. | Expert - Spiegal Property Damage Review of Docs | 1, 2, 4, 5, 6, 7, 10 | |
| 96. | Expert - Sticht CV | 1, 2, 4, 5, 6, 7, 10 | |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

| Defendant's Exhibits | | P OBJ | D OBJ |
|---|---|---|---|
| 97. | Expert - Sticht Report - Structural Damage Evaluation | 1, 2, 4, 5, 6, 7, 10 | |
| 98. | Expert - Auvenshine Depo Ex. 5 - Google Earth Residence (Clean Version) | 4, 6 | |
| 99. | Incident Report – CGPD | 2, 4, 6, 7 | |
| 100. | Incident Report PCSO | 2, 4, 6, 7 | |
| 101. | Narrative Report - Berry (PCSO) | 2, 4, 6, 7 | |
| 102. | Narrative Report - Engstrom (CGPD) | 2, 4, 6, 7 | |
| 103. | Narrative Report - Espino (CGPD) | 2, 4, 6, 7 | |
| 104. | Narrative Report - Fox (CGPD) | 2, 4, 6, 7 | |
| 105. | Narrative Report - Hill (CGPD) | 2, 4, 6, 7 | |
| 106. | Narrative Report - Lapre (PCSO) | 2, 4, 6, 7 | |
| 107. | Narrative Report - Lawson (CGPD) | 2, 4, 6, 7 | |
| 108. | Narrative Report - Lujan (CGPD) | 2, 4, 6, 7 | |
| 109. | Narrative Report - Lujan 2 (CGPD) | 2, 4, 6, 7 | |
| 110. | Narrative Report - McCabe (CGPD) | 2, 4, 6, 7 | |
| 111. | Narrative Report - Robinson (CGPD) | 2, 4, 6, 7 | |
| 112. | Narrative Report - Skedel (PCSO) | 2, 4, 6, 7 | |
| 113. | Narrative Report - Walsh (CGPD) | 2, 4, 6, 7 | |
| 114. | Narrative Report - Western (CGPD) | 2, 4, 6, 7 | |
| 115. | Narrative Report - Wilson (CGPD) | 2, 4, 6, 7 | |
| 116. | Narrative Report - Ybarra (CGPD) | 2, 4, 6, 7 | |
| 117. | Ochoa - 2001.09.15 - CGPD Booking [Probable Cause] | 1,2,3,4,6,7,10 | |
| 118. | Ochoa - 2003.01.25 - PCSO IR 030125114 [Involvement] | 1,2,3,4,6,7,10 | |
| 119. | Ochoa - 2004.01.04 - PCSO Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 120. | Ochoa - 2004.12.29 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 121. | Ochoa - 2005.10.10 - CGPD Booking [Probable Cause] | 1,2,3,4,6,7,10 | |
| 122. | Ochoa - 2008.08.13 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 123. | Ochoa - 2008.10.31 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 124. | Ochoa - 2009.06.28 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 125. | Ochoa - 2009.09.23 - Ak Chin PD Booking [Probable Cause] | 1,2,3,4,6,7,10 | |
| 126. | Ochoa - 2010.08.10 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

| Defendant's Exhibits | | P OBJ | D OBJ |
|---|---|---|---|
| 127. | Ochoa - 2010.10.25 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 128. | Ochoa - 2011.01.26 - PCAD Booking [Summons Arrest] | 1,2,3,4,6,7,10 | |
| 129. | Ochoa - 2011.01.28 - PCAD Incident Report (J11012801) | 1,2,3,4,6,7,10 | |
| 130. | Ochoa - 2011.03.18 - PCAD Booking [Summons Arrest] | 1,2,3,4,6,7,10 | |
| 131. | Ochoa - 2013.05.03 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 132. | Ochoa - 2014.01.08 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 133. | Ochoa - 2014.04.24 - PCSO Booking [PCSO Warrant] | 1,2,3,4,6,7,10 | |
| 134. | Ochoa - 2014.07.02 - PCAD Incident Report (J14070218) | 1,2,3,4,6,7,10 | |
| 135. | Ochoa - 2014.12.17 - CGPD Arrest Booking Record | 1,2,3,4,6,7,10 | |
| 136. | Ochoa - 2014.12.17 - PCSO Incident Report (141217108) | 1,2,3,4,6,7,10 | |
| 137. | Ochoa - 2014.12.18 - CDPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 138. | Ochoa - 2014.12.18 - PCAD Incident Report (J14121802) | 1,2,3,4,6,7,10 | |
| 139. | Ochoa - PCAD Inmate Data | 1,2,3,4,6,7,10 | |
| 140. | Photos - CGPD (In Their Entirety) | 9 | |
| 141. | Quit Claim Deed (2015) | 1,2,4,6,7,10 | |
| 142. | Quit Claim Deed of Correction (2017) | 1,2,4,6,7,10 | |
| 143. | Report - Asbestos Analysis Report (EMSL Analytical) | 1,2,4,5,6,7,10 | |
| 144. | Report - EFI Global Damage Report | 1,2,4,5,6,7,10 | |
| 145. | Report - EFI Global Structural Engineering | 1,2,4,5,6,7,10 | |
| 146. | FIX Action – Complaint | 1,2,4,6,7,10 | |
| 147. | FIX Action - Denby's Answer & Counterclaim | 1,2,4,6,7,10 | |
| 148. | FIX Action - FIX Reply to Counterclaim | 1,2,4,6,7,10 | |
| 149. | FIX Action - Status Report | 1,2,4,6,7,10 | |
| 150. | FIX Action - FIX Initial Disclosure | 1,2,4,6,7,10 | |
| 151. | FIX Action - 6. Disclosure (Denby) | 1,2,4,6,7,10 | |
| 152. | FIX Action - AZIAQ Testing to FIX [Fix_Denby 192] | 1,2,4,6,7,10 | |
| 153. | FIX Action - FIX 01.01.19 Invoice (Ex. A to Complaint) | 1,2,4,6,7,10 | |

| Defendant's Exhibits | | P OBJ | D OBJ |
|---|---|---|---|
| 154. | FIX Action - FIX Estimate $13,229.37 [Denby_FIX 77-89] | 1,2,4,6,7,10 | |
| 155. | FIX Action - FIX Estimate $46,629.19 [Denby.FIX 37-45] | 1,2,4,6,7,10 | |
| 156. | FIX Action - FIX Frazier Communication Re Testing of Dirt [Denby_FIX 50] | 1,2,4,6,7,10 | |
| 157. | Fix Action - FIX Letter Re Cannisters [00174] | 1,2,4,6,7,10 | |
| 158. | FIX Action - FIX Work Order Agreement | 1,2,4,6,7,10 | |
| 159. | Action - Personal Property Inventory [FIX_Denby 201-216] | 1,2,4,6,7,10 | |
| 160. | FIX Action - Testing of Dirt [FIX.Denby 069-070] | 1,2,4,6,7,10 | |
| 161. | Fix Action - Waste Management Invoice [FIX_Denby 190-191] | 1,2,4,6,7,10 | |
| 162. | FIX Action - Young's Woodworking & Restoration [FIX_Denby 217] | 1,2,4,6,7,10 | |
| 163. | Denby-Fix Settlement Agreement | 1,2,4,6,7,10 | |
| 164. | Reserved | | |
| 165. | Reserved | | |

**B.**     As to the following exhibits, the parties have reached the following stipulations:

Plaintiffs' Exhibits:

None.

Defendants' Exhibits:

None.

**C.**     As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated below:

Plaintiffs' Exhibits:

See objections stated above.

Defendants' Exhibits:

See objections stated above.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**D.**     Each party hereby acknowledges by signing this Joint Proposed Final Pretrial

Order that any objections not specifically raised herein are waived.

## 7.  LIST OF DEPOSITIONS[3]

**A.**     Deposition Designations:[4]

Plaintiff may use the following deposition testimony at trial:

**<u>Nathan Auvenshine</u>**
Cover Page
4:15-20
5:14-19
9:6-10
9:22-25
12:2-3
14:3-8
14:16-25
15:9-12
15:15-24
16:12-17
18:13-20
21:14-19
21:22-22:2
22:12-15
25:23-26:4
26:19-27:15
28:2-7
31:11-18
32:16-33:17
34:9-20
35:6-36:4
36:12-17
37:3-5
37:10-38:5
38:7-12

[3] The parties reserve the right to use prior depositions on the relevant subject matter with testifying witnesses in accordance with this Court's orders and the rules of civil procedure.

[4] By providing deposition designations to be read at trial, the parties reserve the right to assert all valid objections, including but not limited to hearsay, related to the reading of deposition designations.

39:12-23
40:4-13
40:22-41:1
41:5-11
41:14-42:12
42:16-22
43:1-22
46:9-25
47:5-11
47:18-24
48:10-17
48:19-49:4
50:4-14
50:20-23
51:1-4
51:19-24
52:17-53:4
56:3-10
56:20-57:14
57:18-58:6
58:20-59:9
59:11-60:9
60:12-17
61:24-62:22
63:4-9
63:15-18
64:24-65:23
66:2-15
67:5-70:18
70:23-71:5
71:12-17
72:3-15
73:8-75:1
79:6-19
79:25-80:9
82:5-24
83:2-17
83:24-84:1
84:9-13
86:22-24
87:3-8
87:15-92:9
93:11-98:19
99:14-100:17

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

100:23-102:4
104:19-106:9
107:18-24
108:5-15
108:22-109:13
109:21-110:20
111:4-8
111:15-24
112:1-3
115:25-116:11
116:17-117:11
120:2-5
121:1-122:6
122:20-125:25
126:20-127:16
127:21-131:14
132:9-17
132:19-133:5
133:19-25
134:17-136:3
136:17-138:21
139:3-17
140:16-21
141:11-142:5
148:1-24
149:1-10
149:15-150:17
151:4-11
151:14-16
151:19-152:20
153:10-17
154:5-19
155:1-10
155:19-156:25
157:19-21
157:23-158:15
158:21-159:21
163:1-164:14
167:10-19
170:4-16

**Jon David Spiegel**
Cover Page
4:8-11

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

6:8-17
6:23-7:2
8:20-25
9:22-11:6
11:14(starting at "It")-14:25
15:19-16:24
17:4-17
18:2-15
20:21-21:23
22:3-7
22:14-26:3
26:11-16
26:19-27:5
27:8-12
27:14-20
27:24-28:3
29:1-19
29:21-25
30:9-12
30:19-24
32:8-25
33:11-16
34:3-13
34:17-35:8
35:17-36:7
37:11-21
39:10-17
39:19-40:5

**Wade Ray Sticht**
Cover Page
4:8-10
5:14-19
6:3-6
6:23-7:9
7:12-8:1
8:11-11:13
11:16-20
11:22-14:23
15:2-25
16:7-9
16:18-18:14
19:7-14
19:20-21:1

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

21:3-25
24:6-12
24:24-25:5
25:7-18
25:20-28:3
28:10-29:12
30:3(starting at "But")-16
30:23-31:25
32:13-33:17
33:23-34:20
35:1-14
36:23-37:3
37:11-38:3
39:9-18

**Jonathan Passey**
Cover Page
4:7-9
21:5-15
23:9-24:22
72:11-74:20
75:12-76:6
76:14-77:11
77:18-78:7
79:20-80:6
80:8-16
80:20-81:10
82:22-83:10
86:10-17

**Mark Hafkey**
Cover Page
4:12-13
5:22-6:4
29:16-52:11
65:15-66:14
69:11-15
71:18-72:3
73:4-23
77:2-23
83:8-16
84:16-88:9
88:17-89:3
89:12-90:16

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

91:7-11
91:16-93:1
93:14-98:25
100:5-101:13
106:17-114:3
114:6-115:17
116:5-117:13
117:16-118:25
119:14-120:6
120:15-19
120:22-122:25
123:6-124:13
124:17-125:23

Defendants may use the following deposition excerpts at trial, in their entirety, or

as counter-designations depending on any presentation by Plaintiff:

**Jonathan Passey:**
Cover page
Pg. 4, lls. 7-20
Pg. 9, lls. 18-21
Page 14, lls. 3-4; 9-16
Page 15, lls. 14-23
Page 16, lls. 13-24
Page 18, lls. 19-22
Page 22, lls. 23-25
Page 23, lls. 1-4; 9-12; 16-25
Page 24, lls. 1-25
Page 25, lls. 22-24
Page 26, lls. 8-25
Page 27, lls. 1-6; 24-25
Page 28, ll. 1-21
Page 29, lls. 4-25
Page 30, lls. 1-25
Page 31, lls. 1-13
Page 32, lls. 7-25
Page 33, lls. 1-23
Page 35, lls. 1-8; 18-19
Page 36, lls. 14-22
Page 37, lls. 21-24
Page 38, lls. 5-7
Page 39, lls. 23-25
Page 40, lls. 1-17; 23-25

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Page 41, lls. 1-25
Page 42, lls. 1-22
Page 43, lls. 1-16
Page 44, lls. 22-25
Page 45, lls. 1-3; 19-25
Page 46, lls. 1-22
Page 47, lls. 1-4
Page 48, lls. 20-25
Page 49, ll. 1; lls. 8-22
Page 50, lls. 17-23
Page 51, ll. 25
Page 52, lls. 1-13
Page 53, lls. 21-25
Page 54, lls. 2-23
Page 55, lls. 11-25
Page 56, lls. 1-25
Page 57, lls. 1-25
Page 58, lls. 1-29
Page 62, lls. 24-25
Page 63, lls. 24-25
Page 64, lls. 19-23
Page 66, lls. 6-25
Page 67, lls. 1-25
Page 68, lls. 1; 8-13
Page 69, lls. 1-7
Page 74, lls. 7-20
Page 76, lls. 7-10
Page 78, lls. 4-7
Page 86, lls. 3-20
Page 87, lls. 16-25
Page 88, lls. 1-9

**<u>Mark Hafkey</u>**
Cover Page
Page 4, lls. 12-14
Page 5, lls. 1-3
Page 10, lls. 13-20
Page 11, lls. 4-25
Page 12, lls. 17-28
Page 14, lls. 18-24
Page 16, lls. 10-12
Page 17, lls. 15-25
Page 18, lls. 1-6
Page 19, lls. 2-25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Page 20, lls. 1-25
Page 21, lls. 1-4
Page 24, lls. 5-9
Page 28, lls. 20-25
Page 29, lls. 1-15
Page 32, lls. 15-22
Page 34, ll. 25
Page 35, lls. 1-25
Page 36, lls. 1-8
Page 37, lls. 7-25
Page 38, lls. 1-25 ;
Page 39, lls. 1-6 ; 14-21
Page 40, lls. 2-6
Page 41, lls. 4-25
Page 42, lls. 1-19
Page 43, lls. 24-25
Page 44, lls. 1-7
Page 47, lls. 20-24
Page 48, lls. 14-16
Page 53, lls. 1-12
Page 57, lls. 9-15
Page 58, lls. 5-22
Page 60, lls. 12-18
Page 66, lls. 19-25
Page 67, lls. 6-15
Page 74, lls. 1-25
Page 75, lls. 1-25
Page 76, lls. 1-5
Page 78, lls. 5-10
Page 79, lls. 13-25
Page 80, lls. 1-18
Page 84, lls. 9-25
Page 87, lls. 10-17
Page 89, lls. 4-23
Page 90, lls. 17-25
Page 92, lls. 19-25
Page 93, ll. 1
Page 101, lls. 16-25
Page 102, lls. 5-16
Page 106, lls. 18-25
Page 120, lls. 22-25
Page 121, lls. 1-17
Page 124, lls. 9-21
Page 125, lls. 14-20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**Wade Sticht**
Cover Page
Page 4, lls. 8 – 10; 23-25
Page 7, lls. 21-23
Page 8, lls. 11-22
Page 9, lls. 1 – 25
Page 13, lls. 17 – 25
Page 14, lls. 1-10 ; 21-23
Page 16, lls. 12 – 25
Page 17, lls. 1-5
Page 18, lls. 2-19
Page 19, lls. 20-25
Page 20, lls. 1-7
Page 23, lls. 11-12
Page 27, lls. 21 – 25
Page 28, lls. 1-3
Page 32, lls. 21 – 24
Page 33, lls. 23-25
Page 34, lls. 1-6
Page 35, lls. 23-25
Page 36, lls. 1-11
Page 41, lls. 17-25
Page 42, lls. 1-9
Page 44

**Jon Spiegel**
Cover Page
Page 4, lls. 8-11
Page 5, lls. 11-25
Page 6, lls. 1-10
Page 7, lls. 1 – 12
Page 10, lls. 17-25
Page 11, lls. 7-22
Page 13, lls. 6-20
Page 14, lls. 5-18
Page 16, lls. 13-24
Page 18, lls. 16 – 25
Page 19, lls. 1-10
Page 20, lls. 4-8
Page 21, lls. 24-25
Page 22, lls. 1-2
Page 31, lls. 14-25 ;
Page 32, lls. 1-7

Page 33, lls. 5-16
Page 34, lls. 3-13
Page 39, lls. 10-11; 14-17
Page 40, lls. 7-9 ; 20-25
Page 41, ll. 1
Page 42, lls. 4-20
Page 45

**<u>Nate Auvenshine</u>**
Cover Page
Page 4, lls. 15-17
Page 5, lls. 16-25
Page 6, lls. 1-25
Page 7, lls. 1-25
Page 8, lls. 1-25
Page 9, lls. 1-25
Page 10, lls. 1-25
Page 11, lls. 1-25
Page 12, lls. 1-25
Page 13, lls. 25
Page 14, lls. 1-13
Page 15, lls. 13-25
Page 16, lls. 1-6
Page 17, lls. 3-5; 19-24
Page 18, lls. 13-25
Page 19, lls. 1-25
Page 20, lls. 1-20
Page 21, lls. 1-25
Page 22, lls. 1-25
Page 23, lls. 1-17
Page 27, lls. 24-25
Page 28, lls. 1-3; 6-7 ; 9-16 ; 19-25
Page 29, lls. 1-24;
Page 30, lls. 24-25
Page 31, lls. 1-25
Page 32, lls. 1-8
Page 33, lls. 15-25
Page 34, lls. 1-25
Page 35, lls. 1-25
Page 36, lls. 1-17
Page 39, lls. 24-25
Page 40, lls. 1-13
Page 42, lls. 16-17 ; 20-22
Page 46, lls. 7-25

46

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Page 47, lls. 1-14
Page 54, lls. 15-17 ; 19-24
Page 56, lls. 12-25
Page 57, lls. 1-8
Page 59, lls. 12-25
Page 60, lls. 2-9 ;12-25
Page 61, lls. 1-9
Page 64, lls. 10-23
Page 65, lls. 9-23
Page 74, lls. 12-19
Page 80, lls. 11-25
Page 81, lls. 1-25
Page 82, lls. 1-25
Page 83, lls. 1-25
Page 84, lls. 1-8 ; 16-25
Page 85, lls. 1-25
Page 86, lls. 1-21
Page 87, lls. 3-8
Page 91, lls. 11-25
Page 92, lls. 1-3 ; 10-25
Page 93, lls. 1-20
Page 96, lls. 9-12 ; 17-25
Page 97, lls. 1-25
Page 98, lls. 1-13
Page 101, lls. 11-17
Page 103, lls. 2-25
Page 104, lls. 1-25
Page 105, ll. 25
Page 106, lls. 1-7 ; 14-25
Page 107, lls. 1-21
Page 112, lls. 5-25
Page 113, lls. 1-8
Page 114, lls. 7-20
Page 115, lls. 2-25
Page 116, lls. 1-9
Page 117, lls. 12-25
Page 118, lls. 1-25
Page 119, lls. 1-5
Page 122, ll. 25
Page 123, lls. 1-25
Page 124, lls. 1-25
Page 125, lls. 1-25
Page 126, lls. 1-19
Page 127, lls. 17-25

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Page 128, lls. 1-25
Page 129, lls. 1-17
Page 131, lls. 15-25
Page 132, ll. 1
Page 133, lls. 1-2 ; 4-5 ; 11-13
Page 134, lls. 4-25
Page 135, lls. 1-5
Page 136, lls. 4-24
Page 137, lls. 6-17
Page 141, lls. 1-3
Page 142, lls. 11-25
Page 143, lls. 1-25
Page 144, lls. 1-10 ; 17-25
Page 145, lls. 1-20
Page 164, lls. 21-25
Page 165, lls. 1-25
Page 166, lls. 1-18 ; 23-25
Page 167, lls. 1-25
Page 168, lls. 1-25
Page 169, lls. 1-25
Page 170, lls. 1-10 ; 21-25
Page 171, lls. 1-9
Page 172

**B.**    Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that any deposition not listed as provided herein will not be allowed at trial, absent showing of good cause.

## 8. MOTIONS IN LIMINE

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that Motions in Limine are being filed separately and will be responded to in accordance with the Order Setting Final Pretrial Conference.

## 9. LIST OF PENDING MOTIONS

**A.**    There are no pending Motions other than Motions in Limine; Defendants reserve the right to bring a discovery dispute motion over a recently discovered disclosure

issue more fully described below.  The parties continue to meet and confer and may be able to resolve the issue without the necessity of filing a discovery motion.

**B.**    One of Plaintiffs' Motions in Limine may require separate briefing depending on this Court's decision. This may necessitate an Amendment to the Complaint.

**C.**    Defendants expect to file a timely Petition for Writ of Certiorari.  Once filed, Defendants reserve the right to seek a stay of this action through this Court, the Ninth Circuit Court of Appeals and/or the U.S. Supreme Court

## 10. JURY DEMAND

**A.**    A jury trial has been requested. The parties stipulate that the request was timely and properly made.

## 11. JURY TRIAL PLEADINGS

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that Joint Proposed Jury Instructions, Joint Proposed Voir Dire Questions and Lists, and Joint Proposed Forms of Verdict have been filed separately in accordance with the Order Setting Final Pretrial Conference and are incorporated herein by reference.

## 12. BENCH TRIAL PLEADINGS

N/A

## 13. ESTIMATED LENGTH OF TRIAL

15 Days

4 hours – Jury Selection (if applicable)

4 hours – Opening Statements

40 hours – Plaintiff's Case (including rebuttal, if any)

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

40 hours – Defendant's Case

5 hours – Closing arguments

93 hours – Total

## 14. PROPOSED TRIAL DATES

**Plaintiff proposes the following blocks of trial dates:**

September 9 through September 12, 2025

September 16 through September 19, 2025

September 23 through September 26, 2025

**Defendants propose the following blocks of dates:[5]**

November 3 through November 21, 2025

January 12 through January 30, 2026

February 2 through February 20, 2026

## 15. PROCEDURES FOR EXPEDITING TRIAL

The parties have discussed all available procedures for expediting trial, and report as follows:   The parties expect to use the courtroom's technology to display exhibits, and once trial dates are set will arrange pre-trial meetings with Court IT.

## 16. CERTIFICATIONS

By signing this Joint Proposed Final Pretrial Order, the undersigned   counsel   for each of the parties in this action do hereby certify and acknowledge the following:

---

[5] Based on the numbers of expert witnesses, and the impact the age of this case will have on locating and issuing subpoenas to witnesses, Defendants expect both sides will require the additional time to reasonable assure all key witnesses will be available for trial.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1. All discovery has been completed, with the exception of the dispute in item 5 below.

2. The identity of each witness has been disclosed to opposing counsel.

3. Each exhibit list herein: (1) is in existence; (2) is numbered; and (3) has been disclosed and shown to opposing counsel.

4. The parties have complied *in all respects* with the mandates of the Court's Rule 16 Case Management Order and the Order Setting Final Pretrial Conference.

5. The Parties have made all of the disclosures required by the Federal Rules of Civil Procedure, with the exception of a settlement agreement between Plaintiff and a home remediation company that is anticipated by Defendants to bear on damages. Defendants have only recently learned of the lawsuit leading to this agreement, the parties have met and conferred on the issue and continue to do so, and Defendants anticipate filing a discovery motion based on the recent discovery and non-disclosure of this document if an agreement on this document's disclosure cannot be reached.

6. The parties acknowledge that once this Joint Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to the Order can be made without leave of Court.

## 17. MODIFICATION OF FINAL PRETRIAL ORDER

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that the Court may, in order to prevent manifest injustice or for good cause shown, at the trial of the action or prior thereto upon application of counsel for either party, made in good faith, or upon the motion of the Court, modify the Final Pretrial Order upon such conditions

as the Court may deem just and proper.


**APPROVED AS TO FORM AND CONTENT:**


| _/s/ Sean A. Woods_ | _/s/ James Jellison (w/ permission)_ |
|:---:|:---:|
| Attorney for Plaintiffs | Attorney for Defendants |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556