(A)     PRELIMINARY INSTRUCTIONS

1.5 Claims and Defenses (Disputed)

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiffs assert that the individual defendants violated their constitutional rights by using unreasonable and destructive force while executing a search warrant for Abram Ochoa at James Denby's home located at 116 West 10th Street, Casa Grande, Arizona on December 17, 2014. The plaintiffs also claim that each of the individual defendants had the opportunity to intervene to stop the unreasonable and destructive force.

The defendants assert the force applied during the search was reasonable because Ochoa was a felony suspect who had a significant criminal history, was an immediate threat to officers and others on scene, and was fleeing or escaping apprehension and arrest.  The individual defendants, with arrest and search warrants having been issued for Ochoa, employed a series of escalating, non-lethal tactics—including verbal commands, the deployment of a throw phone, surveillance robots, and chemical agents—before ultimately breaching and clearing the residence.  All individual Defendants responded properly, and none of their conduct was unreasonable under the Fourth Amendment.

The plaintiff has the burden of proving his claims.

PLAINTIFFS OBJECTIONS: Plaintiff objects to Defendants' insert. There is absolutely no evidence that Ochoa was an immediate threat to officers and others at the scene. None of Ochoa's claimed history indicates that he was a danger to any of the Defendants. He had never been charged with attacking a police officer.

1.2     DUTY OF JURY (COURT READS AND PROVIDES WRITTEN
INSTRUCTIONS AT THE BEGINNING OF TRIAL) (STIPULATED)

Members of the jury: You are now the jury in this case. It is my duty to instruct you on
the law.

These instructions are preliminary instructions to help you understand the principles that
apply to civil trials and to help you understand the evidence as you listen to it. You will
be allowed to keep this set of instructions to refer to throughout the trial. These
instructions are not to be taken home and must remain in the jury room when you leave in
the evenings. At the end of the trial, these instructions will be collected and I will give
you a final set of instructions. It is the final set of instructions that will govern your
deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will
apply the law as I give it to you. You must follow the law as I give it to you whether you
agree with it or not. And you must not be influenced by any personal likes or dislikes,
opinions, prejudices or sympathy. That means that you must decide the case solely on the
evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an
opinion regarding the evidence or what your verdict should be.

1.6 Burden of Proof—Preponderance of the Evidence (Stipulated)

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

1.7    BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE
(STIPULATED)

When a party has the burden of proving any claim or defense by clear and convincing
evidence, it means that the party must present evidence that leaves you with a firm belief
or conviction that it is highly probable that the factual contentions of the claim or defense
are true. This is a higher standard of proof than proof by a preponderance of the evidence,
but it does not require proof beyond a reasonable doubt.

1.8 Two or More Parties—Different Legal Rights (Disputed)

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.


Defendants' objections.   Although a standard instruction, this instruction fails to properly instruct the jury on the importance of evaluating constitutional liability on an individualized basis when there are more than one individual Defendants, as well as many non-Defendants.   Defendants offer the alternative, modified version of 1.8 below.


DF Alternative Instruction - 1.8 Two or More Parties—Different Legal Rights

You should decide the case as to each defendant separately.  To prove his claims against each individual defendant, the plaintiff must prove that each individual defendant, through the official's own individual actions, has violated the Constitution.

The overall instructions, however, apply to all parties.


PLAINTIFFS' OBJECTIONS: Unduly emphasizes one component of Plaintiffs' duty. The model instruction, submitted by Plaintiffs, accurately states the law. The elements instructions guide and instruct as to how the jury must analyze each defendant's actions. Defendants' proposed instruction is an attempt to introduce the elements to be proved prematurely. Defendants are conflating the elements instructions with the preliminary instructions which will only confuse the jury.

1.9 What is Evidence (Stipulated)

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I [may instruct] [have instructed] you to accept as proved.

1.10 What is Not Evidence (Stipulated)

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered.  In addition, some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

1.11   EVIDENCE FOR LIMITED PURPOSE (Disputed)

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and not for any other purpose.]

PLAINTIFFS' OBJECTION: Depends on the evidence and rulings of the Court. Should only be used if appropriate under the circumstances.

## 1.12   DIRECT AND CIRCUMSTANTIAL EVIDENCE (STIPULATED)

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

1.13 Ruling on Objections (Stipulated)

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

## 1.14 Credibility of Witnesses (Stipulated)

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

1.15 Conduct of the Jury (Stipulated)

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence

that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result, requiring the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately, by sending a note through the [clerk] [bailiff] signed by any one or more of you.

## 1.16   PUBLICITY DURING TRIAL (STIPULATED)

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

1.17 No Transcript Available to Jury (Stipulated)

I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

1.18 Taking Notes (Stipulated)

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you.  When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

1.19 Plaintiffs Proposed Instruction: Questions to Witnesses by Jurors During Trial
(Disputed)

When attorneys have finished their examination of a witness, you may ask
questions of the witness.  Questions must be submitted in writing anonymously when
jurors are in the juror room.  If the rules of evidence do not permit a particular question, I
will advise you.  After your questions, if any, the attorneys may ask additional questions.

Defendants' Objections:  This version of 1.19 is too brief and vague to properly instruct
the jury.   Defendants propose the following alternative instruction:

1.19    DEFENDANTS' ALTERNATE PROPOSED INSTRUCTION: QUESTION TO
WITNESSES BY JURORS (DISPUTED)

You will be allowed to propose written questions to witnesses after the lawyers have
completed their questioning of each witness. You may propose questions in order to
clarify the testimony, but you are not to express any opinion about the testimony or argue
with a witness. If you propose any questions, remember that your role is that of a neutral
fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a
form provided by the court. Do not sign the question. I will review the question with the
attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording
submitted by the juror. This might happen either due to the rules of evidence or other
legal reasons, or because the question is expected to be answered later in the case.  If I do
not ask a proposed question, or if I rephrase it, do not speculate as to the reasons.  Do not
give undue weight to questions you or other jurors propose. You should evaluate the
answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting
that you do so. It will often be the case that a lawyer has not asked a question because it
is legally objectionable or because a later witness may be addressing that subject.

1.20 Bench Conferences and Recesses (Stipulated)

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess.  Please understand that while you [are] [were] waiting, we [are] [were] working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum.  I [may] [did] not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

## 1.21 Outline of Trial (Stipulated)

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendants may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

2.0 Cautionary Instructions (Stipulated)

At the End of Each Day of the Case:

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom.  This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case.  This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers.  You also must not communicate with anyone, in any way, about this case.  And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

At the Beginning of Each Day of the Case:

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here.  So you must not learn any additional information about the case from sources outside the courtroom.  To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

[ALTERNATIVE 1 (in open court): if you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands].  I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break.  Thank you for your careful adherence to my instructions.]

[ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned about or shared any information about this case outside of this courtroom? . . . Thank you for your careful adherence to my instructions.]

2.2 Stipulations of Fact (STIPULATED)

The parties have agreed to certain facts [to be placed in evidence as Exhibit ___]
[that will be read to you].  You must therefore treat these facts as having been proved.

2.4 Deposition in Lieu of Live Testimony (DISPUTED)

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of [name of witness] was taken on [date]. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

Defendants' objections:  Defendants content this instruction should only be given as applicable.

(B)    DENBY FINAL INSTRUCTIONS

## 2.13    EXPERT OPINION (STIPULATED)

You have heard testimony from [name] who testified to opinions and the reasons for [his] [her] opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## 2.16    EVIDENCE IN ELECTRONIC FORMAT (STIPULATED)

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].) If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

### 3.1 Duty to Deliberate (STIPULATED)

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

### Comment

A jury verdict in a federal civil case must be unanimous, unless the parties stipulate otherwise.  *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1451 (9th Cir. 1995) (citing *Johnson v. Louisiana*, 406 U.S. 356, 369-70 n.5 (1972)); *see also* Fed. R. Civ. P. 48(b). A federal civil jury must also unanimously reject any affirmative defenses before it may find a defendant liable and proceed to determine damages. *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 (9th Cir. 2002).

3.2 Consideration of Evidence—Conduct of the Jury (STIPULATED)

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

> These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

3.3 Communication with Court (STIPULATED)

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Comment**

For guidance on the general procedures regarding jury questions during deliberations, *see* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.A (2013).

3.4 Readback or Playback (DISPUTED)
**Comment**

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of a witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

> Because a request has been made for a [readback] [playback] of the testimony of [*witness's name*] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation but must be considered in the context of all the evidence presented.

Although a court has broad discretion to read back excerpts or the entire testimony of a witness when requested by a deliberating jury, precautionary steps should be taken. Absent the parties' stipulation to a different procedure, the jury should be required to hear the readback in open court, with counsel for both sides present, and after giving the admonition set out above.  *See United States v. Newhoff*, 627 F.3d 1163, 1167 (9th Cir. 2010); *see also* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.C (2013).

**Defendants' Objection:**  Defendants object to giving the read-back instruction as it tends to unfairly emphasize portions of testimony.

3.5 Return of Verdict (STIPULATED)

A verdict form has been prepared for you.  [*Explain verdict form as needed.*] After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.

**Comment**

The judge may also wish to explain to the jury the particular form of verdict being used.

3.6 Additional Instructions of Law (STIPULATED)[1]

At this point I will give you an additional instruction.  By giving an additional instruction at this time, I do not mean to emphasize this instruction over any other instruction.

You are not to attach undue importance to the fact that this instruction was read separately to you.  You must consider this instruction together with all of the other instructions that were given to you.

[*Insert text of new instruction.*]

You will now retire to the jury room and continue your deliberations.

## Comment

Use this instruction for giving an additional instruction to a jury while it is deliberating.  If the jury has a copy of the instructions, send the additional instruction to the jury room.  Unless the additional instruction is by consent of both parties, both sides must be given an opportunity to take exception or object to it.  If this instruction is used, it should be made a part of the record. The judge and attorneys should make a full record of the proceedings.

*See* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.1.B (2013).

---

[1] As necessary based on trial developments

3.7 Deadlocked Jury (DISPUTED)

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case.  I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience.  Each of you must decide the case for yourself, but only after you consider the evidence impartially with the other jurors.  During your deliberations, you should not be unwilling to reexamine your own views and change your opinion if you become persuaded that it is wrong.  However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of the other jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence.  All of you share an equal desire to arrive at a verdict.  Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole.  You should not single out any part of any instruction, including this one, and ignore others.  They are all equally important.

You may now return to the jury room and continue your deliberations.

**Comment**

Before giving any supplemental jury instruction to a deadlocked jury, the Committee recommends the court review JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES § 5.5 (2013); *see also Warfield v. Alaniz*, 569 F.3d 1015, 1029 (9th Cir. 2009) (finding no error in standard *Allen* charge issued to deadlocked jury).

**Defendants' Objection:**  Defendants object to a deadlocked jury instruction prior to trial commencing because the circumstances under which such an instruction is given is dependent on whether it is prejudicial to receiving a true unanimous verdict, as opposed to assisting the jury to arrive at a unanimous verdict.

3.8 Continuing Deliberations After Juror is Discharged (STIPULATED)[2]

[One] [Some] of your fellow jurors [has] [have] been excused from service and will not participate further in your deliberations. You should not speculate about the reason the [juror is] [jurors are] no longer present.

You should continue your deliberations with the remaining jurors.  Do not consider the opinions of the excused [juror] [jurors] as you continue deliberating.  All the previous instructions given to you still apply, including the requirement that all the remaining jurors unanimously agree on a verdict.

## Comment

A court may not seat a jury of fewer than six nor more than twelve jurors.  *See* Fed. R. Civ. P. 48. The selection of alternate jurors in civil trials has been discontinued. *See* Advisory Committee Note, Fed. R. Civ. P. 47(b) (1991).

---

[2] As necessary based on trial developments

3.9 Post-Discharge Instruction (STIPULATED)

Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings.  Now that the case is over, you are free to discuss it with any person you choose.  By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

[If you do decide to discuss the case with anyone, I would suggest you treat it with a degree of solemnity in that whatever you do decide to say, you would be willing to say in the presence of the other jurors or under oath here in open court in the presence of all the parties.]

[Finally, always bear in mind that if you do decide to discuss this case, the other jurors fully and freely stated their opinions with the understanding they were being expressed in confidence.  Please respect the privacy of the views of the other jurors.]

[Finally, if you would prefer not to discuss the case with anyone, but are feeling undue pressure to do so, please feel free to contact the courtroom deputy, who will notify me, and I will assist.]

### Comment

*See* JURY INSTRUCTIONS COMMITTEE OF THE NINTH CIRCUIT, A MANUAL ON JURY TRIAL PROCEDURES, § 6.1 (2013).

*Added Dec. 2019*

## 9.1 Section 1983 Claim—Introductory Instruction

The plaintiff brings his claims under the federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

**<u>Defendants' Objections:</u>**  Defendants do not object to the use or text of Model Instruction 9.1 but do not believe it is necessary to repeat the instruction for each, individual Defendant provided the Court otherwise instructs the jury that they must make an individualized analysis of the facts and law as to each Defendant.   Defendants believe that can be accomplished in Model Instruction 9.3 as proposed by Defendants below.

**Plaintiffs' Proposed 9.3 Section 1983 Claim Against Defendant in Individual Capacity—Elements and Burden of Proof (Disputed)**

In order to prevail on a § 1983 claim against defendants the plaintiff must prove each of the following elements by a preponderance of the evidence:

1.    the defendant acted under color of state law; and

2.    the acts of the defendant deprived the plaintiff of particular rights under the United States Constitution as explained in later instructions; and

3.    The defendant's conduct was an actual cause of the claimed injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated that the individual defendants acted under color of state law.

The defendant's conduct is an actual cause of a plaintiff's injury only if the injury would not have occurred 'but for' that conduct, and the conduct has a sufficient connection to the result.

If you find the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements the plaintiff is required to prove under Instruction[s] 9.12, 9.18, or Failure to Intervene, your verdict should be for the plaintiff.  If, on the other hand, you find that the plaintiff has failed to prove any one or more of these elements, your verdict should be for the defendant(s).

**Defendants' Objections:**  Defendants object to the use or text of Model Instruction 9.3 as written by Plaintiff, and do not believe it is necessary to repeat the instruction for each, individual Defendant provided the Court otherwise instructs the jury that they must make an individualized analysis of the facts and law as to each Defendant. The instruction, as written by Plaintiff, incorrectly suggests that a failure to intervene can be found without finding that such alleged failure to intervene does not have to be, itself, a violation of the Constitution.  Such an instructions is contrary to the U.S. Supreme Court's language in *Ashcroft.*  The law of the case, as detailed by the Ninth Circuit at DktEntry 40 is that Denby has two remaining claims: "(1) that Defendants violated his Fourth and Fourteenth Amendment rights by using *unnecessary force* when executing a search warrant *resulting in the destruction of property*, and (2) that Defendant violated his constitutional rights because they had an opportunity to intercede to stop the *destruction of his property*, but failed to do so." DktEntry 40, pg. 2 (emphasis added).  Plaintiff's proposed verdict forms, and his jury instructions on the case elements, seek to expand this case beyond what the Ninth Circuit has recognized it to be – a case of Fourth Amendment excessive force

resulting in property destruction and failure to intercede to stop the destruction of property. Defendants believe Model Instruction 9.3 as proposed by Defendants below, is more appropriate and legally correct.

**DF Alternative Instruction - 9.3 SECTION 1983 CLAIM AGAINST DEFENDANT IN INDIVIDUAL CAPACITY - ELEMENTS AND BURDEN OF PROOF (PL) (Disputed)**

In order to prevail on a § 1983 claim against the defendants, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1.     The defendant acted under color of state law; and
2.     The acts of the defendant deprived the plaintiff of particular rights the United States Constitution as explained in later instructions; and
3.     The defendant's conduct was an actual cause of the claimed injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation. The parties have stipulated, and I instruct you, that the defendants were acting under color of state law in their search for, and arrest of, Ochoa.

The defendant's conduct is an actual cause of a plaintiff's injury only if the injury would not have occurred 'but for' that conduct, and the conduct has a sufficient connection to the result.

If you find the plaintiff has proved each of these elements, and if you find that the plaintiff has proved all the elements the plaintiff is required to prove under Instructions related to plaintiff's claim under the Fourth Amendment of the United States Constitution, your verdict should be for plaintiff.   If, on the other hand, you find that the plaintiff has failed to prove any one or more of these elements or the following elements under Instructions related to plaintiff's claim under the Fourth Amendment of the United States Constitution, your verdict should be for the defendants.

You are reminded that you must decide the case as to each defendant separately.  To prove his claims against each individual defendant, the plaintiff must prove that each individual defendant, through the official's own individual actions, has violated the Constitution.[3]  Law enforcement officers may not be held liable under the Fourth Amendment for any act or omission of other law enforcement officers unless the defendant law enforcement officer, himself, has violated the Constitution through his acts or omissions.

**PLAINTIFFS' OBJECTION:** Plaintiffs' instruction adequately addresses these concerns. The above model instruction specifically instructs the jury that they must find a

---

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009); *Cunningham v. Gates,* 229 F.3d 1271, 1282 (9th Cir. 2000); *Denby v. Lujan,* 798 Fed.Appx. 1001, 1002 (9th Cir. 2020).

constitutional violation. The Failure to Intervene instruction instructs the jury that they *cannot* rule for a Plaintiff if there was no *other* underlying constitutional violation by a third party/other defendant.

## 9.12 Particular Rights—Fourth Amendment—Unreasonable Search—Generally – (Disputed)

As previously explained, plaintiff has the burden of proving that the acts of defendant [DEFENDANT NAME] deprived plaintiff of particular rights under the United States Constitution. In this case, plaintiff alleges Defendant [DEFENDANT NAME] deprived plaintiff of rights under the Fourth Amendment to the Constitution when Defendant [DEFENDANT NAME] used unreasonable and destructive force while executing a search warrant for Abram Ochoa at James Denby's home located at 116 West 10th Street, Casa Grande, Arizona on December 17, 2014.

Under the Fourth Amendment, a person has the right to be free from an unreasonable search of his residence and vehicles.    To prove that the individual defendants deprived plaintiff of this Fourth Amendment right, plaintiff must prove the following additional elements by a preponderance of the evidence:

First, the individual defendants searched plaintiff James Denby's residence and vehicles;

Second, in conducting the search, the individual defendants acted intentionally; and,

Third, the search was unreasonable.

Plaintiff does not need to prove Defendant [DEFENDANT NAME]  intended to violate Plaintiff's Fourth Amendment rights.

In determining whether the search was unreasonable, consider all of the circumstances, including:

(a)    the scope of the particular intrusion;
(b)    the manner in which it was conducted;
(c)    the justification for initiating it; and
(d)    the place in which it was conducted.

If the search was conducted pursuant to a search warrant, then also consider whether the actual search conducted exceeded the terms of the warrant.

**Defendants' Objections:**  Defendants object to the use or text of Model Instruction 9.12 as written by Plaintiff, and do not believe it is necessary to repeat the instruction for each, individual Defendant provided the Court otherwise instructs the jury that they must make an individualized analysis of the facts and law as to each Defendant.  Defendants further object to this instruction as inapplicable to this case.  The law of the case, as detailed by

the Ninth Circuit at DktEntry 40 is that Denby has two remaining claims: "(1) that Defendants violated his Fourth and Fourteenth Amendment rights by using *unnecessary force* when executing a search warrant *resulting in the destruction of property*, and (2) that Defendant violated his constitutional rights because they had an opportunity to intercede to stop the *destruction of his property*, but failed to do so." DktEntry 40, pg. 2 (emphasis added). Plaintiff's proposed verdict forms, and his jury instructions on the case elements, seek to expand this case beyond what the Ninth Circuit has recognized it to be – a case of Fourth Amendment excessive force resulting in property destruction and failure to intercede to stop the destruction of property. Accordingly, Defendants offer jury instructions that focus on the remaining claims as recognized by the Ninth Circuit Court of Appeals. The failure to intercede claims can be addressed by Defendants' verdict forms in the context of deciding whether each individual Defendant engaged in conduct that resulted in the Fourth Amendment unreasonable destruction of property. Plaintiff's remaining claims are Fourth Amendment use of unreasonable force resulting in destruction of property, or failure to intervene in unreasonable force resulting in the destruction of property, and not a general unreasonable search, whether incident to arrest (Model Instruction 9.13/9.14); without consent (9.15), without exigent circumstances (9.16), without emergency aid (9.17), or by means of judicial deception (9.17A). This instruction fails to address the *Graham* factors, or any other factors unique to an excessive force case. Defendants offer an alternative instruction based on case law specific to excessive force and upon Instruction 9.25 as modified for that law, the nature of Plaintiff's claim, and the facts of the case.

DF Alternative Instruction – 9.24 and 9.25 (modified) based on Fourth Amendment Excessive Force on Property (Disputed)

### 9.24 and 9.25 Particular Rights (Modified as —Fourth Amendment—Excessive Force in Search of Property based on Law of the Case)

In general, a search of property is unreasonable under the Fourth Amendment if a police officer uses excessive force in conducting the search, defending himself or others during the search, or attempting to stop or apprehend a fleeing or escaping suspect during the search.   To establish an unreasonable use of force during the search in this case, the plaintiff must prove by a preponderance of the evidence that the individual defendant deputies or officers used unreasonable force.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

Officers executing search warrants on occasion *must* damage property in order to perform their duty.[4]  Officers executing a search warrant may not, however, engage in the gratuitous or unnecessary destruction of searched property, that is not associated with any legitimate law enforcement purpose.[5]

In determining whether the officer[s] used excessive force in this case, consider all of the circumstances known to the officer[s] on the scene, including:

(1)     the nature of the crime or other circumstances known to the officer[s] at the time force was applied;

(2)     whether the suspect posed an immediate threat to the safety of the officer[s] or to others;

(3)     whether the suspect was actively resisting arrest or attempting to evade arrest by flight;

---

[4] *Dalia v. U.S.*, 441 U.S. 238, 258 (1979).

[5] *Mena v. City of Simi Valley,* 226 F.3d 1031 (9th Cir. 2000).

(4)    whether the force used was reasonably calculated to conduct the arrest of the suspect safely and effectively

(5)    the amount of time the officer[s] had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(6)    the relationship between the need for the use of force and the amount of force used;

(7)    whether the suspect was considered a barricaded suspect within the property to be searched;[6]

(8)    the severity of the security problem at issue;

(9)    the availability of alternative methods to take the suspect into custody;

(10)    the number of lives at risk (motorists, pedestrians, police officers) and the parties' and suspect's relative culpability; *i.e.,* which party created the dangerous situation, and which party is more innocent;

(11)    whether it was practical for the officer[s] to give warning of the imminent use of force, and whether such warning was given;

(12)    whether the officer[s] were responding to a domestic violence disturbance;]

(13)    whether a reasonable officer would have or should have accurately perceived a mistaken fact;

(14)    whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.   "Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

**PLAINTIFFS' OBJECTION:** The 9th Circuit, in this case, clearly held "Defendants deny that the force they used was excessive, but they do not deny that the damage resulted from their search.   Hence, the question at trial will be whether Defendants' use of force was ***unreasonable under the circumstances***." Defendants are trying to reframe the issues. The

---

[6] *Fisher v. City of San Jose*, 558 F.3d 1069, 1080 (9th Cir. 2009).

issue has always been whether each of the individual Defendants' actions were unreasonable. The 9th Circuit amended memorandum further cements that notion. Even Defendants' proposed instruction repeatedly references the standard as being unreasonable. The additional proposed elements are Defendants' attempts to add to Plaintiffs' burden and are not consistent with case law or the model instructions. Additionally, they are designed to confuse the jury and are prejudicial to Plaintiffs.

Furthermore, the 9th Circuit in this case held:

Some of the progressively escalating tactics Defendants used to apprehend Ochoa may have been reasonable at the outset. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). But a jury could conclude that at some point over the seven-hour incident (with no response from, or sighting of, Ochoa), the continued and escalating use of force became unreasonable. *Cf. id*. at 396–97 (noting that the reasonableness calculus must account for "split-second judgments" in "tense, uncertain, and rapidly evolving" circumstances). The record evidence suggests that the officers' perceived immediacy of the threat Ochoa posed decreased over time, such that officers wandered casually through the yard and deemed it safe to approach the house's windows and doors before Ochoa was discovered in the backyard

**9.18 Particular Rights—Fourth Amendment—Unreasonable Seizure of Property—
Generally – [DEFENDANT NAME] (Disputed)**

As previously explained, the plaintiff has the burden of proving that the acts of
Defendant [DEFENDANT NAME] deprived the plaintiff of particular rights under the
United States Constitution.  In this case, the plaintiff alleges the defendant deprived the
plaintiff of rights under the Fourth Amendment to the Constitution when Defendant
[DEFENDANT NAME] caused damage to Plaintiff's property in a manner that
meaningfully interfered with Plaintiff's right to possess the property.

Under the Fourth Amendment, a person has the right to be free from an
unreasonable seizure of the person's property.  In order to prove the defendant[s]
deprived the plaintiff of this Fourth Amendment right, the plaintiff must prove the
following additional elements by a preponderance of the evidence:

    1.     Defendant [DEFENDANT NAME] seized the plaintiff's property;

    2.     in seizing the plaintiff's property, Defendant [DEFENDANT NAME]
          acted intentionally; and

    3.     the seizure was unreasonable.

A person "seizes" the property of the plaintiff when the person takes possession of
or controls the property in a manner that meaningfully interferes with the plaintiff's right
to possess the property.

Plaintiff James Denby does not need to prove Defendant [DEFENDANT NAME]
intended to violate Plaintiff James Denby's Fourth Amendment rights.

A seizure done pursuant to a search warrant is "unreasonable" if the search
conducted exceeds the terms of the warrant.


**Defendants' Objections:**  Defendants object to the use or text of Model Instruction 9.12
as written by Plaintiff, and do not believe it is necessary to repeat the instruction for each,
individual Defendant provided the Court otherwise instructs the jury that they must make
an individualized analysis of the facts and law as to each Defendant.  Defendants further
object to this instruction as inapplicable to this case.  The law of the case, as detailed by
the Ninth Circuit at DktEntry 40 is that Denby has two remaining claims: "(1) that
Defendants violated his Fourth and Fourteenth Amendment rights by using *unnecessary
force* when executing a search warrant *resulting in the destruction of property*, and (2) that
Defendant violated his constitutional rights because they had an opportunity to intercede
to stop the *destruction of his property*, but failed to do so."  DktEntry 40, pg. 2 (emphasis

added).   Plaintiff's proposed verdict forms, and his jury instructions on the case elements, seek to expand this case beyond what the Ninth Circuit has recognized it to be – a case of Fourth Amendment excessive force resulting in property destruction and failure to intercede to stop the destruction of property.      Accordingly, Defendants offer jury instructions that focus on the remaining claims as recognized by the Ninth Circuit Court of Appeals.   The failure to intercede claims can be addressed by Defendants' verdict forms in the context of deciding whether each individual Defendant engaged in conduct that resulted in the Fourth Amendment unreasonable destruction of property.   Plaintiff's remaining claims are Fourth Amendment use of unreasonable force resulting in destruction of property, or failure to intervene in unreasonable force resulting in the destruction of property,  and not a general unreasonable search, whether incident to arrest (Model Instruction 9.13/9.14); without consent (9.15), without exigent circumstances (9.16), without emergency aid (9.17), or by means of judicial deception (9.17A).   This instruction fails to address the *Graham* factors, or any other factors unique to an excessive force case. Defendants offer an alternative instruction based on case law specific to excessive force and upon Instruction 9.25 as modified for that law, the nature of Plaintiff's claim, and the facts of the case.

DF Alternative Instruction – 9.24 and 9.25 (modified) based on Fourth Amendment Excessive Force on Property (Disputed)

### 9.24 and 9.25 Particular Rights (Modified as —Fourth Amendment—Excessive Force in Search of Property)

In general, a search of a person's property is unreasonable under the Fourth Amendment if a police officer uses excessive force in conducting the search, defending himself or others during the search, and attempting to stop or apprehend a fleeing or escaping suspect during the search.   To establish an unreasonable use of force during the search in this case, the plaintiff must prove by a preponderance of the evidence that the individual defendant deputies or officers used unreasonable force on his property.

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

Officers executing search warrants on occasion *must* damage property in order to perform their duty.[7]  Officers executing a search warrant may not, however, engage in the gratuitous destruction of searched property, that is not associated with any legitimate law enforcement purpose.[8]

In determining whether the officer[s] used excessive force in this case, consider all of the circumstances known to the officer[s] on the scene, including:

(1)    the nature of the crime or other circumstances known to the officer[s] at the time force was applied;

(2)    whether the suspect posed an immediate threat to the safety of the officer[s] or to others;

(3)    whether the suspect was actively resisting arrest or attempting to evade arrest by flight;

(4)    whether the force used was reasonably calculated to conduct the arrest of the suspect safely and effectively

---

[7] *Dalia v. U.S.*, 441 U.S. 238, 258 (1979).

[8] *Mena v. City of Simi Valley,* 226 F.3d 1031 (9th Cir. 2000).

(5)    the amount of time the officer[s] had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

(6)    the relationship between the need for the use of force and the amount of force used;

(7)    whether the suspect was considered a barricaded suspect within the property to be searched;[9]

(8)    the severity of the security problem at issue;

(9)    the availability of alternative methods to take the suspect into custody;

(10)    the number of lives at risk (motorists, pedestrians, police officers) and the parties'and suspect's relative culpability; *i.e.,*which party created the dangerous situation, and which party is more innocent;

(11)    whether it was practical for the officer[s] to give warning of the imminent use of force, and whether such warning was given;

(12)    whether the officer[s] were responding to a domestic violence disturbance;]

(13)    whether a reasonable officer would have or should have accurately perceived a mistaken fact;

(14)    whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.   "Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.

---

[9] *Fisher v. City of San Jose*, 558 F.3d 1069, 1080 (9th Cir. 2009).

**PLAINTIFFS' OBJECTION:** The 9th Circuit, in this case, clearly held "Defendants deny that the force they used was excessive, but they do not deny that the damage resulted from their search. Hence, the question at trial will be whether Defendants' use of force was ***unreasonable under the circumstances***." Defendants are trying to reframe the issues. The issue has always been whether each of the individual Defendants' actions were unreasonable. The 9th Circuit amended memorandum further cements that notion. Even Defendants' proposed instruction repeatedly references the standard as being unreasonable. The additional proposed elements are Defendants' attempts to add to Plaintiffs' burden and are not consistent with case law or the model instructions. Additionally, they are designed to confuse the jury and are prejudicial to Plaintiffs.

Furthermore, the 9th Circuit in this case held:

Some of the progressively escalating tactics Defendants used to apprehend Ochoa may have been reasonable at the outset. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). But a jury could conclude that at some point over the seven-hour incident (with no response from, or sighting of, Ochoa), the continued and escalating use of force became unreasonable. *Cf. id.* at 396–97 (noting that the reasonableness calculus must account for "split-second judgments" in "tense, uncertain, and rapidly evolving" circumstances). The record evidence suggests that the officers' perceived immediacy of the threat Ochoa posed decreased over time, such that officers wandered casually through the yard and deemed it safe to approach the house's windows and doors before Ochoa was discovered in the backyard

**Plaintiffs' Proposed Particular Rights—Fourth Amendment—Failure to Intervene – (Disputed)**

As previously explained, the plaintiff James Denby has the burden of proving that the acts of defendant [DEFENDANT NAME] deprived the plaintiff of particular rights under the United States Constitution.  In this case, the plaintiff alleges the defendant deprived the plaintiff of rights under the Fourth Amendment to the Constitution when Defendant [DEFENDANT NAME] failed to intervene to stop the unreasonable and destructive force applied by one or more of his fellow officers.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen".[10]

To prove that Defendant [DEFENDANT NAME] failed to intervene to stop the unreasonable and excessive force that deprived plaintiff James Denby of his Fourth Amendment rights, plaintiff James Denby must prove the following additional elements by a preponderance of the evidence:

First that Defendant [DEFENDANT NAME] knew or had reason to know that defendants or other officers (other than [DEFENDANT NAME]) were using excessive or unreasonable force;

Second, that Defendant [DEFENDANT NAME] had an opportunity to intercede or intervene;

Third, Defendant [DEFENDANT NAME] failed to intercede or intervene to stop the excessive or unreasonable force used by any of his fellow officers.

---

[10] "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (quotations omitted) (*quoting United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994)).  "[O]fficers can be held liable for failing to intercede [ ] if they had an opportunity to intercede." *Id*. (citation omitted).  "[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *Koon*, 34 F.3d at 1447 n.25, rev'd on other grounds, 518 U.S. 81 (1996).   Moreover, liability under § 1983 extends to officers "who perform functions 'integral' to an unlawful search, even if their individual actions do not themselves rise to the level of a constitutional violation." *Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011). Officers that provide armed backup during an unconstitutional search are integral to that search. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) (each officer involved in the search operation was an integral participant).

**<u>Defendants' Objections:</u>**    There does not appear to be a model jury instruction on this topic in the Ninth Circuit, and Defendants object to this instruction as "failure to intervene" constitutional liability has never been accepted as a theory of constitutional liability by the U.S. Supreme Court and creates liability without the defendant having committed a separate constitutional violation, which is contrary to the Court's decision in *Ashcroft v. Iqbal.*  Additionally, Plaintiff's instruction is vague and does not properly advise the jury as to which use of force, defendants were supposed to have interceded in.  Without waiving this objection, Defendants offer the alternative instruction below which, after the presentation of evidence, will need to be modified as to each, individual Defendants..

**DF Alternative Instruction – Failure to Intervene (Disputed)**

Police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.  Importantly, however, officers can be held liable for failing to intercede only if they had a reasonable opportunity to intercede.

[Plaintiff] contends that [third person] violated [plaintiff's] [specify right] and that [defendant] should be liable for that violation because [defendant] failed to intervene to stop the violation.   Defendant is liable for that violation if plaintiff has proven all of the following four things by a preponderance of the evidence:

First: [Third person] violated [plaintiff's] [specify right].[11]

Second: [Defendant] had a duty to intervene.

Third: [Defendant] had a reasonable opportunity to intervene.

Fourth: [Defendant] failed to intervene.


Source:  *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000), as amended (Oct. 31, 2000)




**PLAINTIFFS' OBJECTION:** Defendants' proposed alternative is in substance almost exactly the same as Plaintiffs' proposed instruction. However, Defendants added a fourth element as the "Second" element requiring the jury to decide if the Defendant in question had a duty or not to intercede. Case law is clear that Police Officers have a duty to intercede.[12]

---

[11] This element may need to be precisely identified as to each individual Defendant-Officer/Deputy at the conclusion of trial, but before the jury is instructed.

[12] "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (quotations omitted) (*quoting United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994))

## 5.1 Damages—Proof (Disputed)

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, you must determine the plaintiff's damages.  The plaintiff has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant.  You should consider the following:

The loss of enjoyment of life experienced and that with reasonable probability will be experienced in the future;

The mental, physical and emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

The reasonable value of necessary medical care, treatment, and services received to the present time;

The reasonable value of necessary services other than medical and expenses required up to the present time;

The reasonable value of necessary repairs to any property that was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired;

Such sum as will reasonably compensate for any loss of use of any damaged property during the time reasonably required for its replacement.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

### Comment

If liability is not disputed, this instruction should be modified accordingly.

Source

Personal Property: Permanent Damage: Diminution in value. *S. A. Gerrard Co. v. Fricker*, 27 P.2d 678 (Ariz. 1933); *State v. Brockell*, 928 P.2d 650 (Ariz. Ct. App. 1996). If goods have no market value, their actual worth to the owner is the test. Articles used in furnishing a home have a value when so used that is not fairly estimated by their value as secondhand goods on the market. *Devine v. Buckler*, 603 P.2d 557 (Ariz. Ct. App. 1979). Repairable Damage: (A) Diminution in value or (B) if the property is repaired or restored, the reasonable cost of repair or restoration, with allowance for any difference between the original value and the value after repairs, plus loss of use during the repairs. *Oliver v. Henry*, 260 P.3d 314 (Ariz. Ct. App. 2011).

**Defendants' Objection:** Defendants object as Plaintiff's claim is for Fourth Amendment excessive force and the damages for this claim are limited to the use of force that he alleges destroyed property. The law of the case, as detailed by the Ninth Circuit at DktEntry 40 is that Denby has two remaining claims: "(1) that Defendants violated his Fourth and Fourteenth Amendment rights by using *unnecessary force* when executing a search warrant *resulting in the destruction of property*, and (2) that Defendant violated his constitutional rights because they had an opportunity to intercede to stop the *destruction of his property*, but failed to do so." DktEntry 40, pg. 2 (emphasis added). Plaintiff's proposed verdict forms, and his jury instructions on the case elements, seek to expand this case beyond what the Ninth Circuit has recognized it to be – a case of Fourth Amendment excessive force resulting in property destruction and failure to intercede to stop the destruction of property. Accordingly, this case is uniquely limited to destruction of property and the damages emanating from that.

42 U.S.C. § 1983 creates "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus,* 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978), quoting *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). See also *Smith v. Wade,* 461 U.S. 30, 34, 103 S.Ct. 1625, 1628, 75 L.Ed.2d 632 (1983); *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 258–259, 101 S.Ct. 2748, 2755–2756, 69 L.Ed.2d 616 (1981). When § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts. See *Smith v. Wade, supra,* 461 U.S., at 34, 103 S.Ct., at 1628; *Carey v. Piphus, supra,* 435 U.S., at 257–258, 98 S.Ct., at 1048–1049. In *Childress v. Costco Wholesale Corp.,* 978 F.3d 664 (9th Cir. 2020) the Ninth Circuit referred the issue of whether emotional distress damages could be awarded for property damage or loss to the forum state. In Arizona, property loss in tort cases is limited to economic injury, and excludes emotional distress damages. *Kaufman v. Langhofer,* 223 Ariz. 249, 252 (App. 2009); *see also, Robinson v. U.S.*, 175 F.Supp.2d 1215 (N.D. Cal. 2001). Accordingly, on Plaintiff's Fourth Amendment claim for excessive use of force on property, Defendants offer the following alternative instruction.

**DF Alternative Instruction Re:  Damages:   5.1/5.2 (modified) (Disputed)**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. If you find for the plaintiff on the plaintiff's excessive force on property claim, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant.  You should consider the following:

The lesser of the following:

1.     the reasonable cost of necessary repairs to any property that was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired; or

2.     the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.

It is for you to determine what damages, if any, have been proved.
Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

**Response to Defendants' Objection and Objection to Defendants' Proposed Alternative Instruction:** Defendants' objection misstates the law. Plaintiff's proposed instruction is taken directly from the Ninth Circuit Model Civil Jury Instructions No. 5.1. This instruction is consistent with Arizona law on recoverable tort damages. See, e.g., Revised Arizona Jury Instructions (Civil) 8th Edition, Personal Injury Damages 1, which includes such damages as anxiety and loss of enjoyment of life. Contrary to Defendants' assertion, property loss in Arizona is not limited to economic loss. In *Thomas v. Goudreault*, 163 Ariz. 159, 786 P.2d 1010 (App. 1989) the Arizona Court of Appeals held that a tenant could recover damages for emotional distress from a landlord who failed to properly maintain and repair the leased property. In so holding the Court reasoned that:

In *Farr v. Transamerica Occidental Life Ins. Co*., 145 Ariz. 1, 699 P.2d 376 (App. 1984), this court held that emotional distress damages could be awarded in an action for bad faith breach of an insurance contract. We rejected the argument that because there was no intentional infliction of emotional distress and no outrageous conduct the plaintiffs were not entitled to an instruction on emotional distress. It is not necessary to assert intentional infliction of emotional distress as the exclusive tort to recover damages for emotional or mental distress.

The primary reason for precluding recovery of mental distress damages is that to permit such recovery could open the door to fictitious claims. *See Crisci v. Security Insurance Co*., 66 Cal.2d 425, 434, 58 Cal. Rptr. 13, 19, 426 P.2d 173, 179 (1967). We concluded in Farr that once a claimant has proven a loss of property, he can also recover damages for emotional distress. This principle is well established when the loss involves an interference with real property rights such as a tortious interference with the use and enjoyment of land. *See Acadia, California, Ltd. v. Herbert*, 54 Cal.2d 328, 5 Cal. Rptr. 686, 353 P.2d 294 (1960); *Herzog v. Grosso*, 41 Cal.2d 219, 259 P.2d 429 (1953). The principle that once property damages have been established, emotional distress damages may follow is similarly applicable in the instant case, since without question the alleged acts of the Goudreaults constituted an interference 167*167 with the Thomases' use and enjoyment of the leased property.

A tenant who is not provided with necessary services and maintenance of the leased premises as required under the Act suffers property damage because the value of his leasehold is decreased by the absence of adequate water, heat, cooling or proper maintenance of the building. However, the more immediate damage that he suffers is the annoyance and discomfort of living in inadequate housing. *See Stoiber*, 101 Cal. App.3d 903, 162 Cal. Rptr. 194 (1980); Brewer, 287 Or. 435, 600 P.2d 398 (1979); *Hilder*, 144 Vt. 150, 478 A.2d 202 (1984). Whether this condition was intentionally or negligently caused by the landlord is not relevant to the actual damages suffered by the tenant.

S*ee also Jeter v. Mayo Clinic Arizona*, 211 Ariz. 386, 121 P.3d 1256 (App.2005). *Kaufman v. Langhofe*r, cited by Defendants, is inapposite. That case was an action for veterinary malpractice arising from the death of a pet bird. The Court held that the Plaintiff could not recover emotional distress damages. The Court reasoned that the Plaintiff did not suffer any direct harm as a result of the malpractice because the veterinarian's professional "duty" was owed to the pet. In the present case there is no dispute that Plaintiff suffered direct harm as a result of Defendants' conduct.

## 5.2 Measures of Types of Damages (Disputed)

In determining the measure of damages, you should consider:

The loss of enjoyment of life experienced and that with reasonable probability will be experienced in the future;

The mental, physical and emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

The reasonable value of necessary medical care, treatment, and services received to the present time;

The reasonable value of necessary services other than medical and expenses] required up to the present time;

The reasonable value of necessary repairs to any property that was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired;

Such sum as will reasonably compensate for any loss of use of any damaged property during the time reasonably required for its replacement.

## Comment

Insert only the appropriate bracketed items from this instruction into Instruction 5.1 (Damages—Proof). Additional paragraphs may have to be drafted to fit other types of damages. Particular claims may have special rules on damages. *See, e.g.*, Instructions 7.11 (Maintenance and Cure—Elements and Burden of Proof), 11.13 (Age Discrimination—Damages—Back Pay—Mitigation), and 11.14 (Age Discrimination—Damages—Willful Discrimination—Liquidated Damages).

Punitive and compensatory damages are subject to caps in Title VII cases. *See* 42 U.S.C. 1981a(b)(3). Regarding the amount of damages available under Title VII, *see Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148 (9th Cir. 1999). The cap does not apply to front pay and back pay. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848 (2001). *See also Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir. 2000) (defining front pay and back pay); Introductory Comment to Chapter 10.

In Title VII and ADA cases, the court, not the jury, determines the amount of back pay. *Lutz v. Glendale Union High School*, 403 F.3d 1061, 1069 (9th Cir. 2005); *see also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415-16 (1975). Under the Family Medical

Leave Act, the court, not the jury, determines the amount of front pay. *Traxler v. Multnomah Cnty*., 596 F.3d 1007, 1011-14 (9th Cir. 2010).

**Defendants' Objection:**  Defendants object as Plaintiff's claim is for Fourth Amendment excessive force and the damages for this claim are limited to the use of force that he alleges destroyed property.   The law of the case, as detailed by the Ninth Circuit at DktEntry 40 is that Denby has two remaining claims: "(1) that Defendants violated his Fourth and Fourteenth Amendment rights by using *unnecessary force* when executing a search warrant *resulting in the destruction of property*, and (2) that Defendant violated his constitutional rights because they had an opportunity to intercede to stop the *destruction of his property*, but failed to do so."  DktEntry 40, pg. 2 (emphasis added).   Plaintiff's proposed verdict forms, and his jury instructions on the case elements, seek to expand this case beyond what the Ninth Circuit has recognized it to be – a case of Fourth Amendment excessive force resulting in property destruction and failure to intercede to stop the destruction of property. Accordingly, this case is uniquely limited to destruction of property and the damages emanating from that.

42 U.S.C. § 1983 creates "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978), quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). See also *Smith v. Wade*, 461 U.S. 30, 34, 103 S.Ct. 1625, 1628, 75 L.Ed.2d 632 (1983); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258–259, 101 S.Ct. 2748, 2755–2756, 69 L.Ed.2d 616 (1981). When § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts. See *Smith v. Wade, supra*, 461 U.S., at 34, 103 S.Ct., at 1628; *Carey v. Piphus, supra*, 435 U.S., at 257–258, 98 S.Ct., at 1048–1049.   In *Childress v. Costco Wholesale Corp.*, 978 F.3d 664 (9th Cir. 2020) the Ninth Circuit referred the issue of whether emotional distress damages could be awarded for property damage or loss to the forum state.   In Arizona, property loss in tort cases is limited to economic injury, and excludes emotional distress damages. *Kaufman v. Langhofer*, 223 Ariz. 249, 252 (App. 2009); *see also, Robinson v. U.S.*, 175 F.Supp.2d 1215 (N.D. Cal. 2001).   Accordingly, on Plaintiff's Fourth Amendment claim for excessive use of force on property, Defendants offer the following alternative instruction.

DF Alternative Instruction Re:  Damages:   5.1/5.2 (modified) (Disputed)

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered. If you find for the plaintiff on the plaintiff's excessive force on property claim, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant.  You should consider the following:

The lesser of the following:

1.      the reasonable cost of necessary repairs to any property that was damaged plus the difference between the fair market value of the property immediately before the occurrence and its fair market value after it is repaired; or

2.      the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

**Response to Defendants' Objection and Objection to Defendants' Proposed Alternative Instruction:** Defendants' objection misstates the law. Plaintiff's proposed instruction is taken directly from the Ninth Circuit Model Civil Jury Instructions No. 5.1. This instruction is consistent with Arizona law on recoverable tort damages. See, e.g., Revised Arizona Jury Instructions (Civil) 8th Edition, Personal Injury Damages 1, which includes such damages as anxiety and loss of enjoyment of life. Contrary to Defendants' assertion, property loss in Arizona is not limited to economic loss. In *Thomas v. Goudreault*, 163 Ariz. 159, 786 P.2d 1010 (App. 1989) the Arizona Court of Appeals held that a tenant could recover damages for emotional distress from a landlord who failed to properly maintain and repair the leased property. In so holding the Court reasoned that:

In *Farr v. Transamerica Occidental Life Ins. Co*., 145 Ariz. 1, 699 P.2d 376 (App. 1984), this court held that emotional distress damages could be awarded in an action for bad faith breach of an insurance contract. We rejected the argument that because there was no intentional infliction of emotional distress and no outrageous conduct the plaintiffs were not entitled to an instruction on emotional distress. It is not necessary to assert intentional infliction of emotional distress as the exclusive tort to recover damages for emotional or mental distress.

The primary reason for precluding recovery of mental distress damages is that to permit such recovery could open the door to fictitious claims. *See Crisci v. Security Insurance Co.,* 66 Cal.2d 425, 434, 58 Cal. Rptr. 13, 19, 426 P.2d 173, 179 (1967). We concluded in Farr that once a claimant has proven a loss of property, he can also recover damages for emotional distress. This principle is well established when the loss involves an interference with real property rights such as a tortious interference with the use and enjoyment of land. *See Acadia, California, Ltd. v. Herbert*, 54 Cal.2d 328, 5 Cal. Rptr. 686, 353 P.2d 294 (1960); *Herzog v. Grosso*, 41 Cal.2d 219, 259 P.2d 429 (1953). The principle that once property damages have been established, emotional distress damages may follow is similarly applicable in the instant case, since without question the alleged acts of the Goudreaults constituted an interference 167*167 with the Thomases' use and enjoyment of the leased property.

A tenant who is not provided with necessary services and maintenance of the leased premises as required under the Act suffers property damage because the value of his leasehold is decreased by the absence of adequate water, heat, cooling or proper maintenance of the building. However, the more immediate damage that he suffers is the annoyance and discomfort of living in inadequate housing. *See Stoiber*, 101 Cal. App.3d 903, 162 Cal. Rptr. 194 (1980); *Brewer*, 287 Or. 435, 600 P.2d 398 (1979); *Hilder*, 144 Vt. 150, 478 A.2d 202 (1984). Whether this condition was intentionally or negligently caused by the landlord is not relevant to the actual damages suffered by the tenant.

*See also Jeter v. Mayo Clinic Arizona*, 211 Ariz. 386, 121 P.3d 1256 (App.2005). *Kaufman v. Langhofer*, cited by Defendants, is inapposite. That case was an action for veterinary malpractice arising from the death of a pet bird. The Court held that the Plaintiff could not recover emotional distress damages. The Court reasoned that the Plaintiff did not suffer any direct harm as a result of the malpractice because the veterinarian's professional "duty" was owed to the pet. In the present case there is no dispute that Plaintiff suffered direct harm as a result of Defendants' conduct.

### 5.3     DAMAGES – MITIGATION (Disputed)

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1.     that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.     the amount by which damages would have been mitigated.

**<u>PLAINTIFFS' OBJECTION:</u>** There is no evidence that Plaintiffs failed to mitigate their damages. Plaintiffs could not interfere with the police activities such as to stop tear gas or pepper spray from entering his property; to stop a bearcat from rolling over his fence and into his home; to stop Defendants from smashing every window of the property; to stop defendants from blowing up his toilet; to stop defendants from destroying two of his vehicles; to stop defendants from destroying all of his personal property; or to stop defendants from damaging the exterior of his home or his rv gate amongst other claims.

## 5.5 Punitive Damages (Disputed)

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.

In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.

You may impose punitive damages against one or more of the defendants and not others and may award different amounts against different defendants. Punitive damages may be awarded even if you award plaintiff only nominal, and not compensatory, damages.

## Comment

Punitive damages are not available in every case.  For example, punitive damages are not available against municipalities, counties, or other governmental entities unless expressly authorized by statute.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-71 (1981); *see also Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 771 (9th Cir. 2018) ("There is a 'presumption against the imposition of punitive damages on governmental entities.'") (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 785 (2000)).  Punitive damages may, however, be available against governmental employees acting in their individual capacities.  *See Monell v. New York City Dept. of Soc. Services,* 436 U.S. 658 (1978); *City of Newport,* 453 U.S. at 254.  In diversity cases, look to state law for an appropriate instruction.

Whether and under what criterion punitive damages are available depends upon the substantive standards applicable to the underlying claim for relief, and, therefore, the third paragraph of this instruction should be modified accordingly.

As to § 1983 claims, "[i]t is well-established that a 'jury may award punitive damages . . . either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993).  In *Dang v. Cross,* the Ninth Circuit held this "statement of the law of punitive damages is incomplete, however.  The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases. . . . [M]alicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages and foster 'deterrence and punishment over and above that provided by compensatory awards.' . . . Such acts are therefore all proper predicates for punitive damages under § 1983." 422 F.3d 800, 807 (9th Cir. 2005) (citing *Smith v. Wade,* 416 U.S. 30, 49 (1983)).  The *Dang* court held it was reversible error to decline to instruct that "oppressive acts" were an alternative basis for punitive damages in a § 1983 case.

Punitive damages are available even when the plaintiff is unable to show compensable injury.  See Smith v. Wade, 461 U.S. 30, 55 n.21 (1983); *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1120 (9th Cir. 2008); *Davis v. Mason County*, 927 F.2d 1473, 1485 (9th Cir. 1991), *superseded by statute on other grounds as stated in Davis v. City of San Francisco*, 976 F.2d 1536 (9th Cir. 1992), *vacated in part on other grounds by* 984 F.2d 345 (9th Cir. 1993) (order).

Whether punitive damages need to be proved by a preponderance of the evidence or clear and convincing evidence also depends on the standards applicable to the underlying claim for relief.  For example, several states in the Ninth Circuit require proof by clear and convincing evidence before punitive damages are awarded on a state law claim. *See, e.g., White v. Ford Motor Co.*, 312 F.3d 998, 1011 (9th Cir. 2002) (applying Nevada's clear and convincing standard).  On the other hand, a preponderance

of the evidence standard has been upheld for punitive damages in certain federal claims. *See, e.g., In re Exxon Valdez,* 270 F.3d 1215, 1232 (9th Cir. 2001) (holding that preponderance standard applied to punitive damages claim in maritime case, citing *Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 23 n.11 (1991)).

If punitive damages are available and evidence of the defendant's financial condition is offered in support of such damages, a limiting instruction may be appropriate. *See* Instruction 1.11 (Evidence for Limited Purpose) and numbered paragraph (3) in Instruction 1.10 (What Is Not Evidence).

Regarding degree of reprehensibility and punitive damages generally, *see Philip Morris USA v. Williams*, 549 U.S. 346, 353-54 (2007), *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996), *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991); *see also Morgan v. Woessner*, 997 F.2d 1244, 1256 (9th Cir. 1993) ("*Haslip* said that instructions should be fashioned to describe the proper purposes of punitive damages so that the jury understands that punitive damages are not to compensate the plaintiff, but to punish the defendant and to deter the defendant and others from such conduct in the future.").  *See also White v. Ford Motor Co.*, 500 F.3d 963, 972 (9th Cir. 2007) (holding that trial court's failure to give a "harm to nonparties" instruction violated due process and was reversible error after *Williams*).  Bracketed language in the fourth paragraph of the instruction addresses this requirement when evidence concerning harm to nonparties is admitted on the issue of degree of reprehensibility.

Regarding whether to instruct the jury concerning the relationship of any award of punitive damages to compensatory damages, the Ninth Circuit noted in *White v. Ford Motor Co.* that this inquiry "is markedly different from the jury's determination of a specific amount of punitive damages; its purpose is to aid in ascertaining the constitutional *ceiling*.  Unlike the initial damage calculation, determining the constitutional ceiling on a punitive damage award is a question of law, properly reserved for the court." 500 F.3d at 974 (emphasis in original).  The court also observed that, although "states are certainly free to incorporate the reasonable relationship concept into jury instructions, . . . it is also constitutionally permissible for a district court to delay the reasonable relationship inquiry until the judge's post-verdict review." *Id.* Because Nevada chose the latter course, it was not error in *White* for the district court to decline a "relationship inquiry" instruction.  *Id.*

Regarding the constitutional due process issues involved in the "relationship inquiry," *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003), referring to *Gore* and *Haslip* and stating that "[s]ingle-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and

retribution, than awards with ratios in range of 500 to 1, or, in this case, of 145 to 1." In *State Farm*, the Court went on to say that "because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'" *Id.* (quoting *Gore*, 517 U.S. at 582.) For an application of the *State Farm* ratio principles in the context of a 42 U.S.C. § 1981 case, *see Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 774-77 (9th Cir. 2005). *But see Exxon Shipping Co. v. Baker*, 554 U.S. 471, 513 (2008) (applying federal maritime common law to conclude punitive damages could not exceed 1:1 ratio in maritime cases).

*Revised March 2025*

**Defendants' Objections:**  Defendants' assert that clear and convincing evidence is the proper standard for the imposition of punitive damages.  *See,* Comments to Model Instruction 5.5.  Defendants assert that the evidence will be insufficient for the submittal of a punitive damages instruction.  Defendants offer the following alternative instruction without waiving any argument regarding the unavailability of punitive damages under the facts of this case.

**5.5    PUNITIVE DAMAGES (MODIFIED) (DF) (DISPUTED)**

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future.  Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by clear and convincing evidence that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff.  Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.  An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party.  In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct.  You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.

Punitive damages may not be awarded against any defendant for the acts or omissions of any other person.

**Plaintiff's Objection to Defendants' Alternative Instruction.** Defendants alternative instruction regarding punitive damages is incomplete and misstates the law. See Response above.

**Plaintiff's Objection to Defendants' Alternative Punitive Damages Instruction.** Defendant does not cite authority for the inclusion of the last sentence. Plaintiff believes that the language of the model instruction that: " In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff"is consistent with the law and the evidence and should be included in the instruction.

## REVISED ARIZONA JURY INSTRUCTIONS (CIVIL) 7TH STANDARD 9
### (Disputed)

Insurance

In reaching your verdict, you should not consider [or discuss] whether a party was or was not covered by insurance. Insurance or the lack of insurance has no bearing on whether or not a party was at fault, or the damages, if any, a party has suffered.

**SOURCE**: Modified version of the insurance instruction proposed in 87 VA. L. REV. 1857, at 1910 (Dec. 2001). See also JUDICIAL COUNCIL OF CALIFORNIA CIVIL JURY INSTRUCTIONS (200304), CACI No. 105.

**USE NOTE:** 87 VA. L. REV. 1857, at 1911 states that: "The proposed instruction could be offered to jurors on a routine basis as part of the ordinary jury instructions, or it could be reserved for occasions on which a jury asks a question about insurance. The latter strategy would avoid introducing the topic of insurance to a jury that had previously not considered it. In light of the high frequency of insurance talk among jurors in the Arizona Jury Project and the reluctance of some of them to ask the court about insurance, however, simply ignoring the topic generally will not prevent it from being raised. The alternative strategy of routinely incorporating the instruction in the jurors' normal instruction package promises to be the most effective way to combat misinformation about, and inappropriate influence from, jury discussions about insurance."

This instruction may need to be modified or omitted in those cases where the collateral source rule has been abrogated by statute. *See, e.g.*, A.R.S. § 12-565.

Arizona Superior Court judges have differing views as to whether to use the insurance instruction just situationally or routinely.

(December 2015)

**Defendants' Objections:**  Defendants object to this instruction because it is inconsistent with the proof of liability insurance that may be properly introduced into a trial. Fed.R.Evid. 411, for example, provides that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control."   Rule 411 is not exhaustive in its examples of when liability insurance, or the receipt of monies

from insurance, may or may not be admissible.   The instruction is not only an incorrect statement of federal evidentiary rules, but is premature to consider as a final instruction.


**Plaintiff's Response to Defendants' Objection re Insurance Instruction**: plaintiff's Instruction correctly states the law, including the collateral source rule, which is recognized by both Federal and Arizona Law. It is established law that this Court must follow Ninth Circuit and Arizona law when determining the applicability of the collateral source rule in this case. *In re Air Crash Disaster Near Cerritos*, Cal. on Aug. 31, 1986, 982 F.2d 1271, 1277 (9th Cir. 1992) ("A federal court applies state law in matters involving the collateral source rule."). *Udd v. City of Phoenix*, No. CV-18-01616-PHX-DWL (D. Ariz. Mar 30, 2020).

## 5.6 Nominal Damages (STIPULATED)

The law that applies to this case authorizes an award of nominal damages. If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.