**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James W Denby, et al., | No. CV-17-00119-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| City of Casa Grande, et al., | |
| Defendants. | |

Before the Court are Plaintiff James Denby's three Motions in Limine (Docs. 238, 239, 240) and Defendants' Responses (Doc. 244, 245, 246). After considering the parties' briefing and oral arguments at the July 8, 2025 Final Pretrial Conference, the Court now rules as follows.

**I.    BACKGROUND**

This action arises from a December 2014 incident at a residence owned by Plaintiff James W. Denby ("Plaintiff") in Casa Grande, Arizona. (Doc. 82 at 6). At approximately 3:05 P.M. on the afternoon of December 17, 2014, the Casa Grande Police Department ("CGPD") responded to a "domestic disturbance" complaint at a house near Plaintiff's. (*Id.*). Upon arrival, the officers learned the dispute involved Abram Ochoa ("Mr. Ochoa"), who had at least one outstanding arrest warrant for an unrelated incident. (*Id*. at 7). The officers were made aware that Mr. Ochoa had potentially fled to Plaintiff's residence down the street (the "Residence"). (*Id.*). CGPD declined offers from Mr. Ochoa's girlfriend and Plaintiff Denby's son to help persuade Mr. Ochoa to leave the Residence voluntarily. (*Id*.

at 8). The officers used a loudspeaker PA system to attempt communication with Mr. Ochoa, but they did not receive any response from the Residence. (*Id.*).

Shortly after arriving, CGPD requested assistance from the Pinal County Regional SWAT ("SWAT"). (Doc. 82 at 7). SWAT arrived approximately one hour later and decided to use a "Bearcat" as a battering ram to gain access to the Residence. (*Id.* at 10). SWAT drove the Bearcat over a chain-linked fence and into the front of the Residence, breaking the windows and front door. (*Id.* at 11). SWAT then unsuccessfully attempted to communicate with Mr. Ochoa through the Bearcat's PA system and through a tactical phone deployed through the broken windows and wall. (*Id.*). At approximately 5:00 P.M., a judge signed a search warrant for the Residence, permitting officers to enter the Residence for the sole purpose of arresting Mr. Ochoa. (*Id.*). Over the course of several hours, SWAT deployed robots, fired a total of twenty-two (22) canisters of pepper spray and tear gas, and deployed multiple Noise Flash Diversionary Devices ("NFDDs" or "flash grenades") into the Residence. (*Id.* at 11–12). Through it all, the officers did not see Mr. Ochoa nor any signs of movement or response from inside the Residence. (Doc. 82 at 13). Next, SWAT developed a tactical plan to enter the Residence and act on the search warrant. (*Id.* at 13). They entered at 9:47 P.M., nearly seven hours after they first arrived at the Residence. (*Id.*). During the search, SWAT team members and CGPD officers destroyed several items in the Residence, including furniture, cushions, pillows, windows, window coverings, bathroom mirrors, shower doors, toilets, televisions, artwork, and antiques. (*Id.* at 13–14). At approximately 10:03 P.M.—seven hours after CGPD was originally dispatched to the area—Mr. Ochoa was found outside the Residence and hiding under a tarp on the property. (*Id.* at 14). Mr. Ochoa had apparently been hiding under the tarp during the entire incident. (*Id.*).

Although Plaintiffs initially filed this case in state court, Defendants removed it to this Court on January 13, 2017. (Doc. 1). Plaintiffs amended their complaint twice. (See Docs. 31, 82). Plaintiff James Denby is the only remaining Plaintiff. Three of Plaintiffs' five original claims have been dismissed, along with several of the originally named

Defendants. (See Docs. 21, 118, 136). Only Defendants Engstrom, Robinson, Lapre, Gregg, Skedel, (collectively, the "Officer Defendants") and Defendant Ochoa remain, and only three claims remain: (i) violation of Plaintiff's Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983 (Count I) against the Officer Defendants; (ii) failure to intervene with respect to a constitutional violation (Count II) against the Officer Defendants; and (iii) trespass (Count V) against Defendant Ochoa. (Doc. 82 at 16–26).

On July 8, 2025, the Court held the Final Pretrial Conference and took Plaintiffs' three Motions in Limine under advisement. (Doc. 247).

## II.   LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area," *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009), and "the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "[A] ruling on a motion *in limine* is essentially a preliminary opinion that falls entirely within the discretion of the district court." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (citation omitted). Such rulings are "not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 (2000). A motion in limine "must identify the evidence at issue and state with specificity why such evidence is inadmissible." *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525 PSG (PJWx), 2010 U.S. Dist. LEXIS 141013, at *3 (C.D. Cal. May 19, 2010).

## III.   DISCUSSION

### a.   Motion in Limine No. 1 (Doc. 238)

Plaintiff requests the Court exclude evidence or reference of the prior criminal records of Abram Ochoa, the subject of the search warrant, including Exhibits 117–139. (Doc. 238 at 1). Plaintiff argues that there is no evidence that the Defendant Officers in this case were provided documents or other information about Ochoa's prior criminal history at the time of the incident. (*Id.*). As such, Plaintiff argues that this information has no

3

bearing on the reasonableness of the officers' use of excessive force, and thus should be exclude as irrelevant. (*Id*. at 1–2). Furthermore, Plaintiff argues that even if the Court determined the prior criminal records were relevant, the records should still be excluded under Federal Rule of Evidence ("FRE") 403. (*Id*. at 2). Plaintiff asserts that "many of these exhibits are so remote in time from the date of the incident that they would only serve to add to the confusion, and prejudice Plaintiffs," pointing to booking records from more than a decade ago, including as early as 2001, and reports for a suicide attempt. (*Id*. at 2–3). Plaintiff argues that these records lack foundation and refer to issues that are non-violent or are so remote in time that they could not have been known at the time of the incident, and that any probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. (*Id*. at 3–4). At the Final Pretrial Conference, Defendants indicated that the criminal record exhibits were relevant to the Defendants' assessment of the immediacy of the threat posed by Ochoa. However, they were unable to identify specific exhibits that were relevant and conceded that some of the exhibits may be irrelevant.

Evidence may not be admitted at trial unless it is relevant, as defined by Rule 401 of the Federal Rules of Evidence. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The particular facts of the case determine the relevancy of a piece of evidence. *See* 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 401.04 [2][a] (Joseph M. McLaughlin ed., 2d ed. 2000) ("Relevance is not inherent in any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.").

Several of the proposed exhibits of Ochoa's criminal records are likely irrelevant under any circumstances, even if Defendants were aware of Ochoa's criminal past and used that information to assess the danger he posed, whether he was a flight risk, and what use of force was appropriate. As Plaintiff notes, several of the exhibits are extremely remote in

4

time or for non-violent offenses. (Doc. 238 at 3). For example, "Ex. 118 is a Pinal County report from 01/25/2003 for a suicide attempt," Ex. 117 is a booking record from 2001, and several other exhibits are booking records for drug related-offenses, probation violations, or failures to appear. (*Id*.). "Ex. 129 is a jail record wherein Ochoa feared for his life because of a threat from another inmate on 1/28/2011." (*Id*.). Other exhibits (136–139) are records related to this case or incidents following this case, which would have no bearing on law enforcement's knowledge at the time of the incident. (*Id*.). Thus, several of the exhibits should be excluded as irrelevant regardless of Defendants' knowledge of Ochoa's criminal history and perceived dangerousness. Moreover, exposing the jury to these records poses an undue risk of prejudice, confusing the issues, and wasting time, and thus FRE 403 also weighs in favor of exclusion.

The only record this Court is inclined to find relevant and admissible is the arrest warrant for Ochoa that was outstanding at the time of the incident and was mentioned in Detective Brian Walsh's Affidavit for Search Warrant. (Doc. 238-1). The Court finds this warrant may likely be relevant to the Defendants' assessment of the threat posed by Defendant Ochoa in conducting their search. As such, the Court will grant Plaintiff's Motion in Limine No. 1 in part to exclude evidence and discussion of Defendant Ochoa's criminal records, with the exception of the arrest warrant outstanding at the time of the incident. Should Defendants identify other specific criminal records they believe are relevant to the case and not unfairly prejudicial, Defendants may identify those exhibits and request the Court reconsider their admissibility at trial. *See Ohler*, 529 U.S. at 758 n.3 ("However, *in limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial.").

### b. Motion in Limine No. 2

Plaintiff's Motion in Limine No. 2 seeks to exclude all evidence and discussion about Plaintiff's insurance. (Doc. 239). Plaintiff argues that any insurance settlement or settlement with an insurer via a lawsuit is precluded by the collateral source rule, which "allows a plaintiff to seek full recovery from a tortfeasor even though an independent

source has compensated the plaintiff in full or in part of the loss." (*Id.* at 2 (citation omitted)). Plaintiff further argues that because evidence about Plaintiff's home insurance is irrelevant to the issue of damages under the collateral source rule, any introduction of insurance evidence would be highly prejudicial, risk confusing the jury, and would waste time, and thus should be inadmissible under FRE 403. (*Id.* at 3). Defendants' Response and arguments at the Final Pretrial Conference indicate that they think Plaintiff had a duty to mitigate his damages by seeking to repair, rather than replace, his home, and that evidence relating to Plaintiff's insurance and related lawsuits is relevant to that issue. (*See* Doc. 245 at 3).

"Under the collateral source rule, 'benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages.'" *McLean v. Runyon*, 222 F.3d 1150, 1155–56 (9th Cir. 2000). While the Ninth Circuit has not considered the issue of whether the collateral source rule is applicable to damages questions in federal § 1983 actions, other Circuit Courts have found that it is, and district courts within the Ninth Circuit have found the same. *See Gill v. Maciejewski*, 546 F.3d 557, 564 (8th Cir. 2008); *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986); *Forbes v. Cnty. of Orange*, SACV 11-1330 JGB, 2013 U.S. Dist. LEXIS 202026, at *27 (C.D. Cal. Aug. 4, 2013); *Castellanos v. Maya*, Case No. 15-cv-00272-JSW, 2016 U.S. Dist. LEXIS 77382, at *2 (N.D. Cal. June 14, 2016). This Court will follow suit.

"Although the federal collateral source rule determines the damages available to Plaintiff, it is not a rule of evidence." *Forbes*, 2013 U.S. Dist. LEXIS 202026, at *27 (citations omitted). "The evidentiary, as opposed to the substantive, aspects of the collateral source rule are governed by the Federal Rules of Evidence, particularly Rules 401, 402, and 403." *Id*. (citations omitted). Information about Plaintiff's insurance coverage, insurance settlement offers, and lawsuit with his insurance carrier bears little relevance to the present case, as Defendants' liability for damages is not limited by any insurance coverage Plaintiff may receive under the collateral source rule. Thus, the Court finds it appropriate to exclude this information under FRE 401.

To the extent Defendants argue that such information is relevant to show that "Plaintiff could have repaired his residence in 2015 instead of now seeking a complete replacement home" and that Plaintiff rejected early remediation efforts "despite his duty to reasonably mitigate his damages," (Doc. 245 at 3), the Court is unpersuaded. Under the "duty to mitigate" or "doctrine of avoidable consequences," a party injured by the tort of another is not entitled to damages "for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort." Restatement (Second) of Torts § 918(1) (1979) (emphasis added); *see also Fulton v. Woodford*, 498 P.2d 564 (Ariz. Ct. App. 1972) ("The doctrine of avoidable consequences precludes a plaintiff from recovering damages for losses he could have avoided by reasonable conduct on his part."). The harm Plaintiff seeks to recover for—the damage to his residence—occurred as a direct result of Defendants' conduct. Plaintiff's later acceptance of insurance payments to repair his residence in 2015 does not alter the actual damages he is seeking to recover. The "duty to mitigate" does not impose a duty to accept a lesser or potentially insufficient insurance payment for a party's past-suffered damages. As such, the Court finds that insurance evidence is irrelevant to the present case. Moreover, to the extent any information about Plaintiff's insurance coverage is relevant, the Court finds it difficult to see how any probative value would outweigh the risk of unfair prejudice to Plaintiff, which also warrants exclusion under FRE 403. Accordingly, Plaintiff's Motion in Limine No. 2 will be granted.

### c. Motion in Limine No. 3

Plaintiff's Motion in Limine No. 3 requests the Court exclude all argument, discussion, and evidence relating to Plaintiff James Denby's ownership of the Residence. (Doc. 240 at 1). This Motion is related to the parties' contested Fifth Issue of Law—"Whether Plaintiff has standing to assert any Constitutional violation"—included in the Joint Pretrial Order. (Doc. 237-1 at 12–13). Plaintiff's ownership of the home is relevant to the issue of standing because he must have constitutionally protected possessory interest in the property that was destroyed or damaged in order to bring a Fourth Amendment claim.

*See Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) ("A 'seizure' of property, we have explained, occurs when 'there is some meaningful interference with an individual's *possessory interests* in that property.'" (emphasis added)); *Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted."). Plaintiff argues that this evidence and discussion should be prohibited because (1) standing is an issue of law outside the purview of the jury; (2) Plaintiff has been the recorded owner of the property deed since December 2015, and he was in rightful possession of, had full control over, and held an insurance policy for the Residence on the date of the incident; and (3) Defendants have assented to or waived their standing argument, as this case has been active for 12 years. (*Id.*).

Plaintiff asserts that on the date of the incident, his sister and mother were recorded on the deed to the home, and that he lived in the home with them. (*Id.* at 2; Doc. 237-1 at 12). In the parties' Joint Pretrial Order, in which they disagreed on the issue of standing, Plaintiff asserts that "the house was supposed to be recorded in Mr. Denby's name prior to the event," but that he, his sister, and mother failed to record the deed in his name until December 16, 2015 due to an oversight. (Doc. 237-1 at 12). At the time of the incident, Plaintiff asserts that he "was responsible for all aspects of the house – including paying property taxes, maintaining the property, and held the insurance policy for the house." (*Id.*). In the Joint Pretrial Order, Defendants contend that "Plaintiff was not the owner of the home at the time of this event and, as such, he is not a real Plaintiff in interest having standing to make a Constitutional claim or to obtain damages." (Doc. 237-1 at 13). Additionally, Defendants emphasized that they raised the issue of standing in their answer and that this issue is not an evidentiary issue appropriate for determination on a motion in limine. (Doc. 246 at 2).

In requesting the Court exclude evidence and discussion about Plaintiff's ownership of the Residence, Plaintiff is essentially requesting the Court rule on the issue of Fourth Amendment standing. As such, it is ostensibly a partial summary judgment motion to decide an element of his claim—standing—disguised as a motion in limine.

While Article III standing is jurisdictional and must be assessed by the Court before reaching the merits, "[t]he concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief." *Terrence Byrd v. United States*, 584 U.S. 395, 410–11 (2018). "Because Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim." *Id*. Thus, the Court need not address this issue prior to allowing the parties to proceed to trial, and it is inappropriate for the Court to exclude evidence or discussion of this issue outside of dispositive motions practice. While either party could have brought these issues up in a dispositive motion earlier in the litigation, "[a] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir. 2013), *aff'd*, 135 S. Ct. 907 (2015) (citing *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001)). Plaintiff's Motion in Limine No. 3 will therefore be denied.

Lastly, Plaintiff argues that any issues relating to home ownership can be easily remedied by adding his sister Elisabeth Torres, who was the recorded owner of the Residence and a former plaintiff in this action, back to this action as a plaintiff. A motion in limine is not the appropriate channel to request the addition of a party. If Plaintiff wishes the Court to consider such a request, Plaintiff shall file a Motion for Leave to Amend the Complaint setting forth the justifications for the addition of Elisabeth Torres to this action. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion in Limine No. 1 re. Ochoa's Criminal Record (Doc. 238) is **granted in part** as set forth in this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine No. 2 re. Insurance (Doc. 239) is **granted**.

///

///

1  **IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine No. 3 re. Home
2  Ownership (Doc. 240) is **denied**.

3  Dated this 21st day of July, 2025.

_____
Honorable Steven P. Logan
United States District Judge