Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| James W. Denby; *et al.*, | Case No.: 2:17-CV-00119-SPL |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** |
| City of Casa Grande; *et al.*, | |
| Defendants. | Oral Argument Requested |
| | (Assigned to the Hon. Michael T Liburdi) |

Through counsel undersigned, Plaintiffs James W. Denby and Elizabeth Torres (collectively, "Plaintiffs") hereby respond in opposition to Defendants'[1] Motion to Dismiss Plaintiffs' Third Amended Complaint (the "Motion"). This Response is supported by the Motion to Amend, the relevant parts of the record in this matter, and the Memorandum of Points and Authorities that follows.

## MEMORANDUM OF POINTS AND AUTHORITIES

As a threshold matter, Plaintiffs acknowledges that there are only two remaining claims in this case against Defendants – one for violation of Plaintiffs' Fourth Amendment right against search and seizure and excessive force, and two for Failure to Intervene.

---

[1] The Defendants are collectively Engstrom, Robinson, Lapre, Gragg, and Skedel.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

Plaintiffs are not advancing either a *Monell*[2] claim, a Fifth Amendment Takings Clause claim, or a claim for injunctive relief and to the extent the Third Amended Complaint (the "TAC") may appear to advance those claims/theories of liability, Plaintiffs agree that they make no such claims.

## I.    <u>INTRODUCTION</u>

On December 17, 2014, Abram Ochoa was being pursued by officers of the Casa Grande Police Department. Doc. 256 at ¶¶ 24-27. Police chased Ochoa into Plaintiffs' home before surrounding it. *Id.* at ¶¶ 30-37. Police then laid siege to the home for approximately seven hours. *See* Doc. 256. During that time, police used a battering ram to knock down a fence and door and wall of Plaintiffs' home. *Id.* at ¶¶ 69-70, 73. Police attempted to use tactical phones to communicate with Ochoa – with no result. *Id.* at ¶¶ 76-77, Police attempted to yell surrender commands – with no result. *Id.* at ¶ 74. Police used two robots to clear most of the house. *Id.* at ¶¶ 83-85, 97-99. Police then blew Plaintiffs' home away with over 22 canisters of OC and CS spray – with no result. *Id.* at ¶ 95. Finally, police decided to go into the house – and when they did, they learned Ochoa was not in the house. *Id.* at ¶¶ 102, 117. The police ransacked the house and destroyed it when they searched. *Id.* at ¶¶ 104-117. The police officers destroyed Plaintiffs' personal property. *Id.* The house was completely destroyed and rendered completely uninhabitable. *Id.* at ¶ 130.

## II.    <u>LEGAL STANDARD</u>

The legal standard for Motions to Dismiss pursuant to Rule 12(b)(6) are regularly cited and well known to this Court. When resolving a Motion to Dismiss, a Court must accept as true all factual allegations in the complaint and construe those allegations, ***as well as the reasonable inferences that can be drawn from them***, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Further, in the context of a motion to dismiss, the court properly resolves any doubts in the plaintiff's favor. *Jenkins*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

---

[2] In fact, Plaintiffs cleaned up the TAC to remove any holdover Counts that referenced *Monell* liability including the previous Count III for specific *Monell* liability and Count IV for Failure to Train and Supervise under 42 U.S.C. § 1983.

*v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). This is true even when a defendant seeks dismissal based on qualified immunity. *See e.g.*, *Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012).

Federal Rule of Civil Procedure "8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The United States Supreme Court has explained that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Id*. at 555-56; *Twombly*, 550 U.S. at 570. (To avoid dismissal a complaint need include "only enough facts to state a claim for relief that is plausible on its face.")

## III.    **INDIVIDUALIZED ANALYSIS OF QUALIFIED IMMUNITY**

### A.    **The Law-of-the-case Doctrine Applies in This Case.**

Once again, the Defendants are raising the issue of Qualified Immunity. This is the *eighth* time this issue has been raised. As discussed herein, the issue has been raised to the highest levels of our judicial system. After the Ninth Circuit affirmed this Court's denial of qualified immunity following the seventh motion by Defendants, the Supreme Court denied certiorari.

While the Ninth Circuit's Amended Memorandum filed on March 18, 2025 in Appeal No. 23-15658 is Not for Publication and is not precedent except for certain scenarios, it is applicable to this case under Ninth Circuit Rule 36-3(a):

> **(a) Not Precedent.** Unpublished dispositions and orders of this Court are not precedent, ***except when relevant under the doctrine of law of the case*** or rules of claim preclusion or issue preclusion.

(emphasis added)

In *Zeyen v. Bonneville*, the Ninth Circuit "clarified the standard district courts must apply before reconsidering a predecessor judge's prior ruling." *Zeyen v. Bonneville Joint Dist.,# 93*, 114 F.4th 1129 (9th Cir. 2024). The law-of-the-case doctrine "'generally

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case' *Musacchio v. United States*, 577 U.S. 237, 244-45, 136 S.Ct. 709, 193 L.Ed.2d 639 (2016)" *Id.* The *Zeyen* Court held that the law-of-the case doctrine:

> was "founded upon the sound public policy that litigation must come to an end," and serves many purposes including "aid[ing] in the efficient operation of court affairs" and "advanc[ing] the principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided." *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004) (per curiam) (internal citations and quotation marks omitted).

*Id.* Exactly as in this case, the *Zeyen* Court involved a change of Judge. The *Zeyen* Court held that:

> The law of the case doctrine serves additional purposes when a new district judge is assigned to the case and is asked to reconsider the former judge's decision. Among other things, "the doctrine increases confidence in the adjudicatory process: reconsideration of previously litigated issues, absent strong justification, spawns inconsistency and threatens the reputation of the judicial system." *Ellis v. United States*, 313 F.3d 636, 647 (1st Cir. 2002) (citing *Geoffrey C. Hazard, Jr., Preclusion as to Issues of Law: The Legal System's Interest*, 70 Iowa L. Rev. 81, 88 (1984) (collecting cases)).

*Id.* The *Zeyen* Court further held that:

> "judges who too liberally second-guess their co-equals effectively usurp the appellate function and embolden litigants to engage in judge-shopping and similar forms of arbitrage." *Id.* (citing *United States v. Erwin*, 155 F.3d 818, 825 (6th Cir. 1998)). Consistent with this principle, "judges who sit in the same court should not attempt to overrule the decisions of each other." *Castner v. First Nat'l Bank of Anchorage*, 278 F.2d 376, 379 (9th Cir. 1960) (citation and quotation marks omitted). As one district judge has noted, the issue of reconsidering a decision of a different judge of the same court is a complicated one: "It is assuredly more likely that two judges will see an issue differently than it is that the same judge will see the same issue differently across time." *Baldwin v. United States*, 823 F. Supp. 2d 1087, 1099 (D. N. Mar. I. 2011). Accordingly, when faced with such a situation, judges must—in light of the overarching "principles of comity and uniformity"—make every effort "'to preserve the orderly functioning of the judicial process.'" *Castner*, 278 F.2d at 379-80 (quoting *T.C.F. Film Corp. v. Gourley*, 240 F.2d

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

711, 714 (3d Cir. 1957)); accord *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 530 (9th Cir. 2000).

*Id.*  The *Zeyen* Court clarified inconsistencies in prior decisions and across the different Circuit Courts and set the standard for when a district judge may review an interlocutory order by a prior judge in the same case:

> A second district judge should not reconsider the ruling of a predecessor unless: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial."

*Id.* at 1138.

This Court should note that the facts and claims in this case have been exhaustively briefed in myriad dispositive motions – seven (7) of them – over the nine (9) years this case has been on the docket.  As of today, the case has been pending for 3,274 days. Defendants did not even Answer the Complaint until 1,743 days into this litigation. Defendants filed four motions to dismiss, three motions for summary judgment, four appeals, and one Writ of Certiorari to the United States Supreme Court. The first two consolidated appeals lasted 366 days between appeal and mandate. The second appeal lasted 425 days between appeal and mandate. The final appeal lasted 718 days between the April 28, 2023 appeal and mandate. Defendants filed their Writ of Certiorari on June 16, 2025.  The Supreme Court Denied the Petition on November 17, 2025.

Each of the dispositive motions were focused on whether Defendants were entitled to Qualified Immunity. Initially, the Ninth Circuit sent the case back to the Honorable Judge Steven Logan to conduct an individual analysis of each of the Defendants' actions and whether, after performing that analysis, they were entitled to Qualified Immunity. Honorable Judge Logan did so and found that each of the Defendants were not entitled to Qualified Immunity. Doc. 136. Defendants appealed, the Ninth Circuit ruled that the Defendants were not entitled to Qualified Immunity, and discovery commenced. On October 31, 2022 Defendants then filed a Motion for Summary Judgment on Qualified

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Immunity (Doc. 201). On April 5, 2023 this Court ruled that the Defendants were not entitled to Qualified Immunity (Doc. 216). Defendants appealed again to the Ninth Circuit. On February 5, 2025, the Ninth Circuit affirmed this Court's ruling found in Doc. 216. On March 18, 2025, the Ninth Circuit issued an Amended Memorandum affirming this Court's ruling found in Doc. 216. This was the ruling that prompted Defendants to file a petition for writ of certiorari with the United States Supreme Court which was ultimately denied.

Defendants' persistence in filing dispositive motions related to Qualified Immunity regardless of raising this issue already multiple times to not only the Ninth Circuit, but also the United States Supreme Court should be deemed vexatious and simply a delay tactic – especially after the Supreme Court denied their Petition following the last Ninth Circuit memorandum affirming this Court's decision. Defendants are trying to re-litigate issues that have been decided at the highest level.

The Defendants, in footnote 5 of their Motion state "Despite the amount of time and energy spent in litigation, the newly-minted complaint supersedes all previous versions and must be addressed anew." This is not so. Plaintiffs' TAC does not raise any new issues or facts related to the actions of the Defendants – including no edits to those allegations or claims other than to remove the names of other defendants that had already been dismissed. The only substantive amendments in the TAC are to re-add Elizabeth Torres as a Plaintiff, to add a specific allegation relating to her ownership at the time of the events in controversy and to add allegations relating to ownership indicia of Mr. James Denby. Plaintiffs are now being forced to re-litigate the issues of Qualified Immunity after having to brief and defend seven (7) previous dispositive motions on the same exact subject, evidence, and case law.

1.    **The Decisions of this Court, the Ninth Circuit, and the Supreme Court are Not Erroneous and do Not Work a Manifest Injustice.**

Under *Zeyen*, the Ninth Circuit held that for a second District Court Judge to revisit the first Judge's decision, it would require that the "previous decision be both clearly erroneous and that its enforcement would work a manifest injustice before a second judge can justify revisiting the previous decision." *Id.* It is impossible to argue that the previous

decisions by the Honorable Judge Steven Logan were erroneous. The Ninth Circuit affirmed his decision on Qualified Immunity. The Ninth Circuit denied a request for *en banc* review after its affirmation, and the United States Supreme Court denied Defendants' petition for writ of certiorari. For this Court to decide that the decisions of Honorable Judge Steven Logan were erroneous, it would *also* have to find that the Ninth Circuit's decision and the Supreme Court's denial of certiorari were erroneous. It cannot do so. Even if it did, the enforcement would have to work a manifest injustice, and this Court would have to not only show why it was erroneous, but also how it works that injustice. This factor of the standard is clearly not met.

### 2.    Change in the Law

The second factor the *Zeyen* Court set is whether intervening controlling authority makes reconsideration appropriate.  To Plaintiffs' knowledge and research, there has been no new case law or controlling authority in any Court since the Ninth Circuit's memorandum regarding the application of Qualified Immunity in circumstances such as in this case. Notably, Defendants do not argue that there is new case law or controlling authority that would change the analysis in this case.

### 3.    Substantially Different Evidence

The final factor the *Zeyen* Court set is whether substantially different evidence has been adduced at a subsequent trial. *Id. T*here is no new evidence presented by Defendants at all. The evidence for trial in this case was set at the Final Trial Management Conference on July 8, 2025, and in the Joint Pretrial Statement filed by both Plaintiffs and Defendants on June 13, 2025. Accordingly, and because Defendants cannot argue that new evidence exists, there is nothing to support even a re-analysis of this case under pre-existing law.

### B.    EACH DEFENDANT, BASED ON AN INDIVIDUALIZED ANALYSIS OF HIS OWN CONDUCT, IS NOT ENTITLED TO QUALIFIED IMMUNITY

Even though *Zeyen* applies, Plaintiffs – despite briefing these issues over and over again – will still respond to each of the arguments presented by the Defendants. In determining whether to grant qualified immunity, a court considers "(1) whether there has

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011) (internal citation omitted).

### 1. Clearly Established Law Precluded Unreasonable Use of Force Against Plaintiffs' Property

"'[U]nnecessarily destructive behavior, beyond that necessary to execute a warrant effectively, violates the Fourth Amendment.'" *See Mena v. City of Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000) (quoting *Liston v. County of Riverside*, 120 F.3d 965, 979 (9th Cir. 1997)) (reasonable officer would have known that breaking down unlocked doors was unlawful); *see also Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) ("unnecessary destruction of property or use of excessive force can render a search unreasonable."); *Chuman v. Wright*, 76 F.3d 292 (9th Cir.1996) (excessive force claim recognized where officers stormed the residence and caused unnecessary property damage during search).

Under the Fourth Amendment, the test to determine what is necessary to "execute a warrant effectively" is reasonableness. *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005). To determine whether officers unreasonably executed a search warrant, courts must determine whether the degree of intrusion matched the underlying purpose of the intrusion. *Id.* Courts adopt the perspective of a reasonable police officer on the scene. *Liston*, 120 F.3d at 976. The reasonableness inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); *see also Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

"In determining the need for force, we pay 'careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir.2003) (quoting *Graham*, 490 U.S. at 396). "[T]he most important single element" when assessing the reasonableness of the use of force is "whether the suspect poses an immediate threat to the safety of the officers or others." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir.1994). The question of reasonableness "is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of *all* the relevant circumstances. *Hammer v. Gross*, 932 F.2d 842 (9th Cir. 1991) (emphasis in original).

In *Mena v. City of Simi Valley*, 226 F.3d 1031 (9th Cir. 2000), the Ninth Circuit held that police officers were not entitled to qualified immunity, even where they were investigating a drive-by shooting and were informed that the suspect was still armed with the handgun used in the shooting, because the officers used unnecessarily destructive force to effectuate the search, such as breaking down or kicking unlocked doors. *Id.* at 1034-36, 1041; *see also Chuman v. Wright*, 76 F.3d 292 (9th Cir.1996) (excessive force claim was recognized where officers stormed the residence and caused unnecessary property damage during search).

       **2.**    <u>**The use of force by the police against Plaintiffs' property in executing the search warrant for Ochoa was not objectively reasonable, in light of all the facts and circumstances confronting the police.**</u>

Police officers have a duty to intercede when their fellow officers violate the constitutional right of a suspect or other citizen. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). "[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows." *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

81 (1996). Officers are liable for a breach of this duty if they had a 'realistic opportunity' to intercede. *Cunningham*, 229 F.3d at 1289-90.

Moreover, liability under § 1983 extends to officers "who perform functions 'integral' to an unlawful search, even if their individual actions do not themselves rise to the level of a constitutional violation." *Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011). Officers that provide armed backup during an unconstitutional search are integral to that search. *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) (each officer involved in the search operation was an integral participant). Additionally, officers who do not enter a residence while other officers search the inside, "can nevertheless be a 'full, active participant' in the search." *Id.* (quoting *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989)).In *Saucier v. Katz*, the Supreme Court established a two-part analysis to determine if qualified immunity applied in a lawsuit "against an officer for an alleged violation of a constitutional right" holding first that it "must be whether a constitutional right would have been violated on the facts alleged" and second, whether or not the right was clearly established. 533 U.S. 194, 200, 121 S. Ct. 2151, 2155, 150 L. Ed. 2d 272 (2001). To determine whether a right is clearly established, the reviewing court must consider whether a reasonable officer would recognize that his or her conduct violates that right under the circumstances faced, and in light of the law that existed at that time. *Id.* at 202, 121 S.Ct. at 2156. As the Supreme Court has explained:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal citations omitted). However, "[i]n order to find that the law was clearly established... **we need not find a prior case with identical, or even 'materially similar'**

**facts. Our task is to determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful.**" *Flores v. Morgan Hill Unified Sch. Dist.,* 324 F.3d 1130, 1136–37 (9th Cir.2003) (emphasis added) (citing *Hope,* 536 U.S. at 740, 122 S.Ct. 2508) (emphasis added). Thus, the specific, alleged conduct in this case need not have been previously and explicitly deemed unconstitutional, but existing case law must have made it clear.

> Precedent directly on point is not necessary to demonstrate that a right is clearly established. Rather, if the unlawfulness is apparent in light of preexisting law, then the standard is met. In addition, even if there is no closely analogous case law, ***a right can be clearly established on the basis of common sense.***"

*Wilson v. Maricopa County*, 484 F. Supp. 2d 1015, 1018 (D. Ariz. 2006) (citing *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir.2001) (emphasis added).

The Court must review the Defendants' actions under the Fourth Amendment's objective reasonableness standard, balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *See Graham v. Connor,* 490 U.S. 386, 395, 396 (1989). The "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The *Graham* test includes an examination of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Robinson v. Solano County,* 278 F.3d 1007, 1014 (9th Cir. 2002) (citing *Graham,* 490 U.S. at 397). In considering "the severity of the crime, the most important [factor], is the need for the force." *Miller v. Clark County,* 340 F.3d 959, 964 (9th Cir. 2003). The force used is "permissible only when a strong government interest *compels* the employment of such force." *Tekle v. United States,* 457 F.3d 1088, 1094 (9th Cir. 2006) (internal quotation

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

marks and citations omitted) (emphasis in original); *see also Drummond v. City of Anaheim,* 343 F.3d 1052, 1057 (9th Cir. 2003).

Here, Ochoa's girlfriend told police that Ochoa was **NOT** in the possession of a firearm or any lethal weapon. Doc. 259 at ¶ 29. Police learned that Ochoa only had a search warrant for failing to appear. *Id.* at ¶ 45. Ochoa did not make any threats or otherwise pose any danger to the police nor the public. *Id.* at ¶ 101. Nonetheless, the Defendants' laid siege to Plaintiffs' property for seven (7) hours. *Id.* at ¶ 160. Their use of chemical munitions and Noise Flash Diversionary Devices ("NFDDs") were wanton acts of reckless disregard and deliberate indifference and by all sense of interpretation, were wholly unreasonable under the totality of the circumstances test set forth in *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865 (1989). When judging the objective reasonableness of use of force, this court may not use 20/20 hindsight. *See id.* at 396–97. The court must adopt the perspective of a reasonable police officer on the scene. *See id.*

### 1.    The Individual Defendants' Conduct

#### a.    Sgt. Rory Skedel

Plaintiffs have alleged that Sgt. Skedel was aware that the decision was made to use the Bearcat as a battering ram. Doc. 256 at ¶ 71. He was aware that the use of the Bearcat as a battering ram was a constitutional violation. *Id.* at ¶ 72. It is reasonable to infer that as a member of the SWAT team onsite, he was aware that the Bearcat had been used to drive over a fence, driven into walls of the Home, and used to break windows and the front door of the Home. *Id.* at ¶ 73. It is reasonable to infer that he was aware there was no response or movement from inside of the Home. *Id.* at ¶¶ 74-77.

Skedel knew that a tactical phone had been dropped into the home through "freshly demolished windows and wall" and that Ochoa did not respond. *Id.* at ¶¶ 76-77. As a member of the SWAT team, he was aware that a medium robot was deployed into the Home and that after scanning a majority of the Home, nobody was found to be inside. *Id.* at ¶¶ 83-84. He was aware that negotiators did not make contact with anyone inside the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Home. *Id.* at ¶ 85. Sgt. Skedel was aware that multiple canisters of "OC" spray[3] were fired into the Home and that no voices, coughing, or movements were heard within the Home. *Id.* at ¶¶ 88-90. Sgt. Skedel was aware that the SWAT team escalated from OC spray to "CS" gas.[4] *Id.* at ¶ 92-94. The SWAT team launched at least 22 canisters of OC and CS gas. *Id.* at ¶¶ 95. It is reasonable to infer that as a SWAT team member, Sgt. Skedel was aware that the canisters are enough to envelop and cover approximately 1297 square feet. *Id.* at ¶ 96. As a SWAT team member, it is reasonable to infer that Sgt. Skedel was aware that another tactical robot was deployed into the home with no result. *Id.* at ¶ 97. He also knew that flash bang grenades were used and that in the nearly five and half hours after the SWAT team arrived, no response had been received from Ochoa. *Id.* at ¶ 65, 100. Regardless, Sgt. Skedel joined other members of the SWAT team by participating in the raid on Plaintiffs' home. In the process, he fired two more flash bang grenades. *Id.* at ¶ 104. SWAT team members, including Sgt. Skedel, demolished Plaintiffs' personal property, including furniture that was too small for any human body to hide in, cushions, pillows, windows, window coverings, shower doors and bathroom mirrors, toilets, televisions, artwork, heirlooms, antiques, ceilings, and walls. *Id.* at ¶¶ 106-115.

Deployment of motorized battering rams to enter dwellings is a *per se* unconstitutional method of conducting a 'search' under the Fourth Amendment if employed without the explicit permission of a federal magistrate. *Langford v. Superior Court*, 43 Cal. 3d 21, 233 Cal. Rptr. 387, 729 P.2d 822 (1987), *reh'g denied*, (Feb. 26, 1987). Skedel and other defendants made the decision to use a Bearcat as a battering ram. Doc. 256 at ¶¶ 74-78, 134. Assuming that well-pled allegations are true and making all reasonable inferences in Plaintiffs' favor, as this Court must at this stage, it is clear that Plaintiffs have adequately pled violations of Fourth Amendment rights. Further, it cannot be denied that the Sgt. Skedel is, at a minimum, an "integral participant" in the acts. It is

---

[3] OC spray is commonly referred to as pepper spray. Doc. 256 at ¶ 89.
[4] CS gas is commonly referred to as tear gas. *Id.* at ¶ 93.

well established that this type of behavior violates the Fourth Amendment. Therefore, Sgt. Skedel is not entitled to qualified immunity.

### b.   Sgt. Chris Lapre

Lapre arrived on scene at 3:38 p.m. Doc. 256 at ¶ 54. At approximately 4:21 p.m. the SWAT teams assembled. *Id.* at ¶ 65. Lapre was the Bravo Team leader and took a position in the Bearcat. *Id.* at ¶ 68. The SWAT team, including Lapre as its leader, decided to use the Bearcat as a battering ram. *Id.* at ¶¶ 69-73. Driving the Bearcat, Lapre demolished Denby's fence and rammed it into Plaintiffs' home, breaking the windows and the front door. *Id.* at ¶ 73. It is reasonable to infer that in order to do so, Lapre had to make multiple runs at the Home – breaking multiple windows and doors. Lapre knew that the Bearcat's P.A. system was used to announce the SWAT team presence and that there was no response from within the home. *Id.* at ¶¶ 74-75. Lapre knew that the SWAT team dropped in a tactical phone through the demolished windows and walls. *Id.* at ¶¶ 76-77. As a leader of the SWAT team and a team member that sat in the Bearcat, Lapre knew that there was no response on the tactical phone. *Id.* at ¶ 77.

Likewise, as leader of the SWAT team, Lapre was aware of the decisions to deploy CS and OC canisters. *Id.* at ¶ 78. Lapre was aware that the medium robot was deployed into the Home and scanned the Home for Ochoa - but did not find him. *Id.* at ¶¶ 83-84. Lapre was aware that negotiators had not made contact with anyone in the Home. *Id.* at ¶ 85. Lapre knew that the Bearcat's P.A. system was used to make an announcement that Ochoa had 5 minutes to exit the premises and that there was no response or movement inside of the home. *Id.* at ¶¶ 86-87.

Despite the fact that there was no response and no evidence that there was anyone inside of the home, Lapre began firing OC canisters into the home. *Id.* at ¶ 88-90. It is reasonable to infer that after firing OC spray into the home, Lapre knew that there was no one there. There were no voices or coughing. *Id.* at ¶ 91. Lapre then changed from OC to CS gas canisters. *Id.* at ¶¶ 92-94. In total, Lapre fired in excess of twenty-two canisters of CS and OC gas. *Id.* at ¶ 95. As SWAT leader, it is reasonable to infer that Lapre knew that

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

one canister of either gas would be enough for the Denby home. 21.17 times over. As leader of the Bravo SWAT team, it can be inferred that Lapre knew that a flash-bang grenade was used at the same time the chemical gas was used. *Id.* at ¶ 98. As a leader of the Bravo SWAT team, it can be inferred that Lapre knew that another tactical robot was deployed into the home and that the robot searched the home until 8:21 p.m. when the robot's batteries died. *Id.* at ¶¶ 97, 99.

As the leader of the Bravo SWAT team, it is reasonable to infer that Lapre entered the home with the other SWAT team members and searched for Ochoa. *Id.* at ¶¶ 102-103. It is reasonable to infer that Lapre knew that Skedel was going to utilize more flash-bang grenades but did not intervene or challenge the decision. *Id.* at ¶ 104.

Plaintiffs alleged that the SWAT team entered the home and unreasonably destroyed his personal property. *Id.* at ¶¶ 106-108. During the search, SWAT team members, including Sgt. Lapre demolished Plaintiffs' personal property, including furniture that was too small for any human body to hide in, cushions, pillows, windows, window coverings, shower doors and bathroom mirrors, toilets, televisions, artwork, heirlooms, antiques, ceilings, and walls. *Id.* at ¶¶ 109-116, 131-132. Plaintiffs have alleged enough facts, which at this stage of litigation must be assumed to be true and all reasonable inferences drawn in their favor, to support a finding that Sgt. Lapre violated Plaintiffs' rights. As such, this Court should find that Sgt. Lapre is not entitled to qualified immunity.

### c.    Sgt. Brian Gragg, Ofc. Robinson, Sgt. David Engstrom,

Plaintiffs' allegations against Sgt. Gragg include that he was the officer in charge of the scene before the SWAT team arrived. Doc. 256 at ¶ 66. It is also alleged that Sgt. Gragg knew that the SWAT team was going to use the Bearcat as a battering ram and that doing so would be a constitutional violation. *Id.* at ¶¶ 71-72.

Plaintiffs alleged that Officer Robinson was an integral participant in the use of excessive force. Plaintiffs alleged that Robinson provided security for Lapre as he deployed chemical munitions into the Denby home. *Id.* at ¶ 90. *Sjurset v. Button*, 810 F.3d 609 (9th Cir., 2015) (analyzing *Boyd* where the 9th Circuit held that officers who provided backup

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

during a search in which one officer threw a lethal "flash-bang" device into a dark room were "integral participant[s]" for the purpose of the plaintiff's excessive-force claim, *Boyd*, 374 F.3d at 780).

Plaintiffs included numerous allegations against Engstrom. Engstrom managed to track Mr. Ochoa to the backyard of the Home via fresh footprints, despite not knowing what type of shoes Mr. Ochoa wore. *Id.* at ¶ 31. At 3:16 PM Engstrom reported that Ochoa opened the back door to the Home. *Id.* at ¶ 32. One minute later, Engstrom reported that Ochoa exited the Home and immediately went back inside. *Id.* at ¶ 33. Engstrom saw movement coming from a tarp covering a car in the backyard. *Id.* at ¶¶ 57-59. Engstrom advised the tactical channel of the movement and someone responded that there was "a dog loose in the area" and Engstrom did not investigate the tarp further. *Id.* at ¶¶ 59-64. Additionally, Plaintiffs did not learn until Defendants filed their Motion for Summary Judgment that Engstrom was a member of the SWAT entry team. *See* Doc. 92-1 at Ex. C. Plaintiffs alleged that the SWAT team entered the home and unreasonably destroyed Plaintiffs' personal property. Doc. 256 at ¶¶ 106-108. Plaintiffs alleged that the only purpose of the entrance to the home was to search for Ochoa, but during the search, officers searched through and destroyed Plaintiffs' personal property. *Id.* at ¶ 107-108. During the search, SWAT team members, including Engstrom, demolished Plaintiffs' personal property, including furniture that was too small for any human body to hide in, cushions, pillows, windows, window coverings, shower doors and bathroom mirrors, toilets, televisions, artwork, heirlooms, antiques, ceilings, and walls. *Id.* at ¶¶ 109-116, 130-131.

## IV.   <u>**ELIZABETH TORRES' CLAIMS ARE NOT UNTIMELY.**</u>

In granting Plaintiff leave to amend the Second Amended Complaint in order to re-add Elizabeth Torrez as a named Plaintiff, Judge Logan reasoned:

> Defendants assert that a claim by Elizabeth Torres "may not even pass muster under the statutes of limitation." (Doc. 251 at 9). However, it is possible that the relation-back doctrine applies. An amendment to a complaint adding a new plaintiff relates back to the original complaint when: "1) the original complaint gave the defendant adequate notice of the claims of the newly

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1    proposed plaintiff; 2) the relation back does not unfairly prejudice the
2    defendant; and 3) there is an identity of interests between the original and
     newly proposed plaintiff." *Immigrant Assistance Project of Los Angeles*
3    *Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 857 (9th Cir. 2002).
4    Moreover, there is a clear purpose to re-adding Elizabeth Torres as a plaintiff
     in this action: establishing standing through ownership of the house. The
5    Court finds that the amendment likely is not futile.

6    Order at p. 7.

7        Elizabeth Torres has been added to the Complaint for the sole reason that she was

8    the record owner of the Residence at the time Defendants destroyed it.  She was a named

9    co-Plaintiff in the original Complaint and in the Amended Complaint. She was brought

10   back in as a named Plaintiff because Defendants first raised the issue of standing in June

11   2025, eight-and-a-half years after this case commenced.

12       The Third Amended Complaint (the "TAC") truthfully alleges that Elizabeth,

13   along with her mother Wilma Logston, now deceased, were the named grantees listed on

14   the deed of the residence at issue in this case (the "Residence") at the time of Defendants'

15   siege and destruction of that residence.  See Ex. 1 ¶ 15.

16       Ms. Torres' Claims relate back to the original Complaint, and are, therefore, timely.

17   The Ninth Circuit has held that:

18       An amendment adding a party plaintiff relates back to the date of the original
19       pleading only when: 1) the original complaint gave the defendant adequate
         notice of the claims of the newly proposed plaintiff; 2) the relation back does
20       not unfairly prejudice the defendant; and 3) there is an identity of interests
         between the original and newly proposed plaintiff.

21   *Rosenbaum v. Syntex Corp.,* 95 F.3d 922, 935 (9th Cir.1996) (citing *Besig v. Dolphin*

22   *Boating & Swimming Club*, 683 F.2d 1271, 1278-79 (9th Cir.1982)). These requirements

23   are easily met here. First, Ms. Torres was actually named in the original Complaint, so

24   Defendants were aware of her claims. Second, relation back does not unfairly prejudice

25   defendants. As noted above, Ms. Torres was re-added as a named Plaintiff simply because

26   Defendants raised the issue of standing very late in the game. No additional discovery is

27   required. Defendants do not dispute that her name was on the deed at the time they

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

destroyed the Residence. Third, there is an identity of interest between the original and newly proposed Plaintiff. In fact they are one and the same.

Defendants' assertion that Ms. Torres' claims are barred by the statute of limitations is likewise meritless. Judge Logan, in his March 29, 2019 Order granting in part and denying in part Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, dismissed Ms. Torres' claims without prejudice. In his October 8, 2025 Order Judge Logan granted Plaintiffs leave to amend the Complaint to re-add Elizabeth Torres as a named Plaintiff on the grounds that her claims may relate back to the original Complaint. There is nothing inconsistent in these rulings. The issue here is not "tolling" of the statute of limitations, as Defendants argue.  The issue is, rather, whether Ms. Torres' claims "relate back" to the original Complaint. "Tolling" and "relation back" are two distinct legal concepts. In *Immigrant Assistance Project, LA County v. I.N.S.*, 306 F.3d 842 (9th Cir. 2002), the Ninth Circuit held that the statute of limitation was not tolled with respect to certain plaintiffs who sought to be added to a second amended complaint. *Id.* at 856. However, the Court held that the claims of those plaintiffs were nonetheless timely because they related back to the original complaint. *Id.*  The Court explained that there was an identity of interest between the new and the original plaintiffs because they were "similarly situated." *Id.* at 858-59.  The Court further reasoned that because the new plaintiffs were similarly situated to the original plaintiffs, there was no prejudice to the defendants, and that the original complaint had given the defendants adequate notice of the class of potential plaintiffs. *Id.*

## V.    PLAINTIFF DENBY HAS STANDING TO ASSERT A CLAIM FOR DAMAGES TO THE RESIDENCE.

Jim Denby's omission from the deed to the Residence at the time Defendants destroyed it was a mere technicality. Denby was not, as Defendants suggest, a mere "renter or lessee." Jim had lived in the Residence for decades at the time of its destruction. There was no lease. He did not pay rent. He lived there as if he were sole owner of the Residence, and the individuals whose names were on the lease believed and considered him to be the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

actual owner of the Residence. His interest was clarified when those individuals subsequently quit claimed their interest in the Residence to him.

It is undisputed that Jim had full and unlimited rights to possess, use and enjoy the Residence on the date Defendants destroyed it, and into the unlimited future.[5] He not only enjoyed the benefits, but also bore the burdens, of ownership. Jim paid the property taxes on the Residence. He was the named insured on the homeowner's insurance policy covering the Residence at the time of the incident, and he paid all the premiums. *See* Doc. 249, p. 2. He took care of all the maintenance and repairs on the property, and otherwise appeared to all the world as the owner of the Residence. Any damage to the Residence was by definition damage to Jim's possessory right and interest in the Residence.

Even a tenant has an interest in the leased property sufficient to bring an action for damage thereto. *Thomas v. Goudreault*, 163 Ariz. 159, 786 P.2d 1010 (Ariz. App. 1989); *see Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) ("A 'seizure' of property, we have explained, occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'"). *Mobil Oil Corp. v. Phoenix Central Christian Church*, 138 Ariz. 397 (App. 1983), cited by Defendants, is inapposite. That was an eminent domain case. The issue was the value of a lessee's interest where only a portion of the leasehold property was condemned. *Id.* at 400. There was no question that the lessee had standing.

If not first-party standing, Jim has at least third-party standing to bring claims for damage to the Residence proper. "A litigant is granted third-party standing because the tribunal recognizes that her interests are aligned with those of the party whose rights are at issue and that the litigant has a sufficiently close connection to that party to assert claims on that party's behalf." *See Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1166 n.1 (9th Cir. 2002) (Berzon, J., concurring) ("[T]hird-party standing recognizes a wide range of relationships in which the third-parties' interests are sufficiently aligned with

---

[5] Defendants do not dispute that Jim Denby was the actual owner of the furniture and other personal property in the Residence.

the interests of the rights-holder that standing is appropriate."); *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 747 (5th Cir. 1994); *Harris v. Evans*, 20 F.3d 1118, 1124-25 (11th Cir. 1994) (en banc) ("Courts have repeatedly emphasized that the key to third-party standing analysis is whether the interests of the litigant and the third party are properly aligned...."); *Canfield Aviation, Inc. v. Nat'l Transp. Safety Bd.*, 854 F.2d 745, 748 (5th Cir.1988); *cf. Newdow*, 542 U.S. at 15, 124 S.Ct. 2301; *Craig*, 429 U.S. at 195, 97 S.Ct. 451; *Pony v. County of Los Angeles*, 433 F.3d 1138, 1147-48 (9th Cir. 2006).

Though Elizabeth and her and Jim's (now deceased) mother were the individuals named on the deed to the Residence, Elizabeth will testify that it was her and their mother's understanding and intention at the time that Jim was the sole owner, *see* Doc. 256 at ¶ 16, and that his omission from the deed was a mere oversight. True to this understanding and intention, on December 16, 2015 Elizabeth and her mother executed a quitclaim deed to Jim as sole owner of the Residence. *Id.* at ¶¶ 17-18. Though that deed was later declared to be invalid, Elizabeth and her mother properly corrected it on July 10, 2017. *Id.* at ¶¶ 19-20. However, due to an inadvertent oversight, the corrected deed failed to amend the date of the change back to December 2014, the time of the incident. *Id.* at ¶ 20. This is not, as Defendants suggest, inadmissible extrinsic evidence. This is evidence of the alignment of Jim's and Elizabeth's interest in the Residence.

## I.    **CONCLUSION**

For all the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.

**RESPECTFULLY SUBMITTED** this 3rd day of December 2025.

**MILLS + WOODS LAW, PLLC**

By    */s/ Sean A. Woods*
    Sean A. Woods
    Robert T. Mills
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014
    *Attorneys for Plaintiffs*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2025, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

James M. Jellison, Esq.
jim@jellisonlaw.com
**JELLISON LAW OFFICES, PLLC**
admin@jellisonlaw.com
18801 N Thompson Peak Parkway, Ste. D235
Scottsdale, AZ 85255
*Attorneys for Defendants David and Jane Doe Engstrom, Jacob H. Robinson, Christopher and Jane Doe Lapre, Sgt. Gragg and Jane Doe Gragg, and Rory Skedel*


_____ */s/ Ben Dangerfield* _____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556