**JELLISON LAW OFFICES, PLLC**
18801 North Thompson Peak Parkway
Suite D235
Scottsdale, Arizona 85255
Telephone: 480.659.4244
JAMES M. JELLISON, ESQ., #012763
E: jim@jellisonlaw.com
E: admin@jellisonlaw.com
Attorney for Defendants David Engstrom, Jacob Robinson, Christopher Lapre, Brian Gragg, and Rory Skedel

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

James W. Denby, *et. al.*,

Plaintiffs,

vs.

City of Casa Grande, et. al.,

Defendants.

Case No.: 2:17-cv-00119-SPL

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

**(Oral Argument Requested)**

Although alleged in the Third Amended Complaint ("TAC"), and not withdrawn as a result of the parties' LRCiv. 12.1 meeting, Plaintiffs' Response abandons their *Monell* claims, Fifth Amendment Takings claim, and any request for injunctive relief. Accordingly, this Reply need only address the application of the statute of limitations as to Plaintiff Torres, the limitations on damages for Plaintiff Denby, and qualified immunity.

## I. TORRES' FAILURE TO AMEND HER COMPLAINT, AND DECISION TO SLEEP ON HER RIGHTS FOR OVER SIX YEARS AFTER BEING DISMISSED, DEPRIVE HER OF THE BENEFIT OF RELATION-BACK.

In the Response, Plaintiff Torres does not dispute that she was dismissed without prejudice based on her failure to plausibly plead standing, failure to amend the complaint despite being granted leave to do so, or that she made no effort to re-file a complaint or reappear in this case over the last six years. *See,* Doc. 269, pgs. 16-18. While Torres and Denby argue the introduction of a lack of standing defense was newly-minted by Defendants in 2025 and thus

required Ms. Torres to be brought back into the case, that is simply not true. Defendants raised lack of standing as to Ms. Torres in 2018 (Doc. 83, pg. 3, nt. 1), this Court allowed Ms. Torres to amend her complaint to allege standing (Doc. 106), and after Torres declined that invitation, Defendants raised standing in their Answer as to Denby and Logston. (Doc. 148, pg. 4 of 5).

Plaintiff Torres does not dispute that dismissal without prejudice results in being treated, legally, as if she never existed in the case; with her remedy refiling the claim in district court subject to the statute of limitations. *See,* Doc. 269, pgs. 16-18. Plaintiff Torres was dismissed without prejudice which left her with a choice to either amend the complaint by this Court's deadline or re-file. *See e.g., Weissmueller v. Breg Inc.*, No. CV-14-02802-PHX-JJT, 2016 WL 3916166, at *5 (D. Ariz. July 20, 2016). Plaintiff Torres does not dispute that she is well-beyond the statute of limitations as to her constitutional claims. The dismissal of the original complaint as to Torres without prejudice, and after the statute of limitations has run, forecloses her ability to remedy the deficiency underlying the dismissal. *Ahmed v. Dragovich*, 297 F.3d 201, 207 (3rd Cir. 2002), *cited in Brennan v. Kulick* 407 F.3d 603, 606 (3rd Cir. 2005). Plaintiff Torres also does not dispute this analysis, or these authorities. Instead, she argues that the statute of limitations does not apply because her re-introduction into the case "relates back" to the original complaint. Under the circumstances of this case - based on the authorities above and those cited below - relation back is not available to Plaintiff Torres.

Amendments adding a plaintiff are not directly addressed in Fed.R.Civ.P. 15(c), so courts must apply the rule by analogy. *See,* Rule 15(c) advisory committee note (1966). Because allowing untimely plaintiffs to join an action violates the applicable statute of limitations, amendments adding plaintiffs should only relate back in narrow circumstances that respect the policies underlying the statute of limitations. Here, Torres was dismissed with leave to amend the complaint, failed to amend the complaint to assert facts demonstrating her ownership of the subject residence, failed to amend while all of the necessary facts were in her possession, and

then "sat on" her rights for over six years with Plaintiff Denby, not Torres, bringing her into the litigation for his own strategic purposes. Under these circumstances, Torres has forfeited the benefit of relation back.

The relation back doctrine embodies the interplay between two conflicting policy choices: the policy behind Federal Rule of Civil Procedure 15, and the policies underlying the statutes of limitation. *See, Krupski v. Costa Crocier S.p.A.,* 130 S.Ct. 2485, 2494 (2010). As the Supreme Court has observed, statutes of limitation "represent a public policy about the privilege to litigate." *Chase Sec. Corps. v. Donaldson,* 325 U.S. 304, 314 (1945). By barring claims after a certain amount of time has passed, statutes of limitation compel plaintiffs to file claims within a specified period. *Id.* at 313. Statutes of limitation represent the policy choice that "the right to be free of stale claims [brought] in time comes to prevail over the right to prosecute them." *Burnett v. N.Y. Centr. R.R.,* 380 U.S. 424, 428 (1965). The statutes of limitation not only lay stale claims to rest, but also prevent prejudice to defendants by requiring that plaintiffs responsibly bring their actions before "evidence has been lost, memories have faded, and witnesses have disappeared." *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974). Statutes of limitation function by requiring plaintiffs to timely file suits and by punishing delay. *Wood v. Carpenter,* 101 U.S. 135, 139 (1879). The Supreme Court has also made clear that "a plaintiff who 'has slept on his rights' should generally be barred from asserting those rights once the limitations period has passed." *Am. Pipe,* 414 U.S.at 554; *see also, Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 352 (1983) ("[l]imitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights . . ."). "[T]he purpose of relation back [is] to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure . . . for resolving disputes on their merits." *Krupski,* 130 S.Ct. at 2494. These countervailing purposes

create a tension between the application of relation back, and the statutes of limitation. *See, Yorden v. Flaste,* 374 F.Supp. 516, 520 (D. Del. 1974); *Krupski, id.*

While courts, relying solely on Rule 15, should liberally allow amendment to be made to avoid adjudication based on technicalities, amendments changing or adding parties relate back only in particular circumstances. Fed.R.Civ.P. 15(c) addresses this by allowing relation back only when the policies behind the statute of limitations are not violated. *See Young v. Lepone,* 305 F.3d 1, 14 (1st Cir. 2002); *Yorden,* 374 F.Supp. at 520. Indeed, Rule 15 distinguishes amendments adding new claims, Rule 15(c)(1)(B), and amendments changing or adding parties, Rule 15(c)(1)(C). The latter rule allows amendments adding or changing defendants to relate back only when certain conditions are met. In addition to the requirements of Rule 15(c)(1)(B), Rule 15(c)(1)(C) requires, first, a new defendant must have “received such notice of the action that it will not be prejudiced in defending on the merits,” and, second, “knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.” Rule 15(c)(1)(C)(i)&(ii). These two requirements of the Rule reflect the purpose of the statutes of limitation by ensuring that a defendant is not prejudiced by delay of an untimely claim, and the defendants’ interest in repose by ensuring that plaintiffs have not sat on their rights. *See, Nelson v. City of Allegheny,* 60 F.3d 1010, 1014 (3rd Cir. 1995); *see also, Brewer v. Federated Equity Mgmt. Co.,* 233 F.R.D. 429, 435 (W.D. Pa 2005). Applying these requirements to a new plaintiff, by analogy, obliges the new plaintiff to bring their suits in a timely fashion when able, while preventing tardy plaintiffs from using relation back as an avenue for springing untimely suits on unsuspecting defendants. *See, Nelson,* 60 F.3d at 1015 (denying new plaintiffs the benefit of relation back, the court held that the new plaintiffs “sat on their rights” and then “[sought] to take advantage of the rule to perform an end-run around the statute of limitations”). Here, Torres does what is proscribed; instead of trying to amend or

refile, she waited over six years and, having been brought back under Rule 15, now seeks to do an "end-run" around the statute of limitations; a major surprise and disruption to Defendants.

The Ninth Circuit is also concerned about prejudice when dealing with new plaintiffs. In *Besig v. Dolphin Boating and Swimming Club,* 683 F.2d 1271, 1278 (9th Cir.1982), the Ninth Circuit explained:

> An amendment equitably may relate back when the prior complaint has given adequate notice of the facts supporting a claim. Relation back imposes no prejudice when an amendment restates a claim with no new facts. Notice from a previous complaint seldom is adequate when substituting plaintiffs, unless the change merely brings in the real party in interest or accomplishes some similar technical result. New, unrelated plaintiffs generally are unable to assert a cause of action sufficiently confined to the facts stated in the original pleadings to support an inference of adequate notice. Defendants usually are prejudiced by the different identity of plaintiffs, if by nothing else.

*See also Avila v. INS,* 731 F.2d 616, 620 (9th Cir. 1984) ("In deciding whether an amendment relates back to the original claim, notice to the opposing party of the existence and involvement of the new plaintiff is the critical element."). In a case cited by Plaintiff Torres, *In re Syntex Corp. Securities Litigation,* 95 F.3d 922, 935 (9th Cir. 1996), the Ninth Circuit explained that an "amendment adding a party plaintiff relates back to the date of the original pleading only when: 1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interest between the original and newly proposed plaintiff." *Id.* at 935. The Ninth Circuit in that case affirmed the district court's dismissal of the first amended complaint because it did not relate back to the original. The original complaint was brought on behalf of plaintiffs who had bought the defendant's stock between November of 1991 and May of 1992. Plaintiffs then amended the complaint to assert claims on behalf of plaintiffs who purchased the defendant's stock between November 1991 and August of 1992. The Ninth Circuit found that the amended complaint did not relate back to the original because the "claims of the proposed

plaintiffs are different because the newly proposed class members bought stock at different values and after different disclosure statements" were made by the defendants and analysts. *Id.* at 935. Therefore, the Ninth Circuit concluded the new plaintiffs could have different interests than the original plaintiffs.

Here, Plaintiffs Torres and Denby are at odds. Fourth Amendment rights are personal and may not be asserted vicariously. *Alderman v. U.S.*, 394 U.S. 165, 174 (1969); *Feliz v. Cty. Of Orange,* 2012 WL 12887770 (E.D. Cal., March 13, 2012). The Fourth Amendment standing law applies to claims made against public officials and public entities. *See Longoria v. Pinal Cty.*, No. CV-15-00043-PHX-SRB, 2015 WL 13654010, at *2 (D. Ariz. Apr. 15, 2015); *Carlson v. Cnty. of L.A.*, No. CV 13-01472-JAK DFM, 2015 WL 365994, at *14 (C.D. Cal. Jan. 27, 2015). In order to prevail on the Fourth Amendment claim as to real property damage, Torres must prove she is the owner of the residence, as shown in the operative deed at the time of the SWAT warrant execution. As to personal property allegedly damaged, Denby has always claimed it was his, and Defendants are unaware of Torres' stance on that subject. Denby's Fourth Amendment real property damage claim, however, depends on his ability to prove that although Torres and Logston were the deeded owners of the real property, he was the true homeowner by virtue of some verbal or written agreement to that effect; and therefore he is the one with Fourth Amendment standing. Like the new plaintiffs in *Syntex Corp.,* Torres has different interests than Denby.

Torres left the case over six years ago, choosing to avoid amending the complaint to allege a basis for standing. Ms. Logston died before she could explain her role, and Defendants are forever precluded from knowing her position regarding Denby's recent claims regarding homeownership. Indeed, Ms. Logston's unavailability is the type of prejudice that the statute of limitations seeks to prevent. Defendants are further prejudiced because with Ms. Torres out of the case for six years, and Ms. Logston out of the case during the discovery

period, the issues raised in the Third Amended Complaint are now different, and are undiscovered. This lack of opportunity to engage in discovery, with trial scheduled to commence during April, 2025, further prejudices the ability for Defendants to defend themselves; to the point of depriving them of due process.

Contrary to Plaintiffs' assertions, none of the *Syntex* elements appear in this case: 1) the original complaint did not give the Defendants adequate notice of the claims of the newly proposed plaintiff because the allegations as to Ms. Torres were so deficient, her basic standing could not even be ascertained; 2) the relation-back unfairly prejudices the Defendants because Ms. Torres "sat on her rights," and waited, after a key witness died, after discovery was closed, and even after the parties had created a Final Pretrial Order and were prepared to go to trial on the issues without Torres' involvement; and 3) there is no identity of interest between Torres and Denby because they can only prevail on the lion-share of claimed damages by taking mutually exclusive positions as to real property ownership. Here, under these facts, the policies underlying the statute of limitations overcome the policies supporting relation back under Rule 15.

Defendants finish where they started regarding Ms. Torres. The undeniable difference between this matter, and *Nelson, Besig, Avila,* and *Syntex* is that Torres is not a "new plaintiff" in the sense that those cases dealt with a new plaintiff. Torres was an original plaintiff who was dismissed without prejudice and given a chance to amend to add the very facts she now alleges regarding her standing. She declined to do so, allowing the deadlines and the limitations period to drift away. She stayed away from this case for over six years, never refiling, and sitting on her rights since. As a dismissed party, her remedy was to amend or re-file. *See e.g., Weissmueller v. Breg Inc.*, No. CV-14-02802-PHX-JJT, 2016 WL 3916166, at *5 (D. Ariz. July 20, 2016). In either event, the statute of limitations applies to her as a prior, dismissed party, and there is no relation-back doctrine available under this unique set of facts.

## II. DENBY OFFERS NO AUTHORITY SHOWING HE IS ENTITLED TO FOURTH AMENDMENT DAMAGES AS TO REAL PROPERTY.

The Response does not claim that Plaintiff Denby was a titled owner of the residential real property at the time of the alleged damage. Instead, Plaintiff Denby argues that he *treated* the real property as his own, and that the true owners of the property *considered him* to be the owner and thus quitclaimed the property to him in 2015, and again in 2017 – after the events giving rise to this case. This parol evidence, however, is contrary to the plain language of the deed, which lists the sole owners as Plaintiff Torres and former Plaintiff Logston. The parol evidence rule bars the use of extrinsic evidence to show that real property was conveyed subject to use or ownership that does not appear in the conveyance instrument. *See IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 67-68, ¶¶ 20-21 (App. 2011). It is not a rule of evidence; it is a rule of substantive contract law. *Rental Development Corp. of America v. Rubenstein Construction Co.,* 96 Ariz. 133, 136–137 (1964). As noted above, Ms. Logston is deceased, and is therefore unavailable to offer testimony on these newly raised issues. In any event, parol evidence does not render Plaintiff Denby the real property owner such that he has standing to obtain damages for injury to the real property. Plaintiffs offer no authority supporting an ability to rely on such parol evidence to establish ownership in a manner contrary to the deed.

Notwithstanding the above, Plaintiff Denby alternatively argues that *Thomas v. Goudreault,* 163 Ariz. 159 (App. 1989) allows a *tenant* to bring an action for damages to real property he or she does not own. *Thomas* does not hold that a tenant of real property can recover damages to leased real property tortiously inflicted by a third party. *Thomas* was a dispute between a landlord (the property owner), and the tenant. In *Thomas,* the court held a tenant who is not provided necessary services and maintenance of leased premises as required under the Arizona Residential Landlord and Tenant Act, A.R.S. §§ 33–1301 to –1381 (2007

& Supp. 2009), could recover emotional distress damages even if the landlord had not committed a "culpable" violation of the Act. 163 Ariz. at 167. In so holding, the court explained when a tenant is not provided necessary services and maintenance, the tenant suffers property damage because the *value of the leasehold* is decreased by the absence of such services and maintenance. *Id.* (emphasis added). The court also recognized the "more immediate damage that he suffers is the annoyance and discomfort of living in inadequate housing." *Id.* This is a far cry from asserting that a person who does not own real property, can recover for damage to that real property in a Fourth Amendment claim against law enforcement officials. The fact remains that only persons with an ownership or valid leasehold interest in the property at the time of the taking are entitled to compensation, albeit upon differing measures. *See Boyd v. Atchison, T. & S.F. Ry. Co.,* 39 Ariz. 154, 159 (1931) ("[T]he right of damages is personal to the owner, and does not pass with a deed."); *Cardi Am. Corp. v. All Am. House & Apartment Movers, L.L.C.,* 221 Ariz. 85, 86, ¶ 6 (App.2009) ("In the absence of a contractual provision to the contrary, a tenant has a compensable property interest in the unexpired term of a lease upon condemnation.") (citations omitted).

Plaintiff Denby then pivots to an entirely new theory – that he can recover under the Fourth Amendment based on a "third-party standing" argument. Again, an entirely new argument. However, none of the seven cases cited by Plaintiff Denby (Doc. 269, pg. 20 of 21), holds that a tenant or lessee, or someone claiming homeownership in contravention of a deed stating the contrary, has third-party standing for damage to the home in a Fourth Amendment excessive force case. Again, the closest thing to this case is the complete condemnation of leasehold property, to which the tenant or lessee may claim the value, if any, of the leasehold interest. *See, Cardi Am. Corp., supra.* Denby does not allege a leasehold; rather, he alleges damage to personal property and emotional distress. This is all he can recover.

Moreover, Plaintiffs Torres and Denby have converging legal theories of recovery. Torres has standing as to damage to real property emanating from her deeded ownership of the home on December 17, 2014, while Plaintiff Denby's claim to damage to the real property is based on his competing position that he was the "sole owner" of the residence, notwithstanding his absence on the Torres/Logston deed. He is not aligned with Torres under the TAC's allegations, and therefore cannot claim third-party standing under any of his cited authorities.

## III. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY UNDER AN INDIVIDUALIZED ASSESSMENT OF THEIR ACTUAL, WELL-PLED CONDUCT AND A DETERMINATION OF WHETHER THAT CONDUCT VIOLATED CLEARLY ESTABLISHED CONSTITUTIONAL LAW.

Defendants, too, are interested in this Court following the law of the case. In *Denby v. Lujan*, 798 F. App'x 1001, 1002 (9th Cir. 2020), the Ninth Circuit noted that "the district court failed to 'carefully examine the specific factual allegations against each individual defendant,' *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000), in determining if Plaintiffs' claims were adequately pled." Defendants do not believe that was accomplished in either this Court's Order at Doc. 216 or the Ninth Circuit's decision at 2025 WL 841608 (9th Cir. 2025). The fact remains, however, that Plaintiffs' TAC is a new pleading that supersedes all prior versions, and Defendants raise qualified immunity again because of the new pleading, the new plaintiff, and the new case law from this Circuit that emphasizes, albeit in the Fifth Amendment context, that from a policy standpoint, the exercise of police powers stands above an innocent property owner's interest in obtaining compensation for damaged or destroyed property.

Clearly established law in the Fourth Amendment must be particular to provide essential notice at the "'hazy border between excessive and acceptable force.'" *Mullenix v. Luna*, 577 U.S. 7, 18 (2015) (*per curiam*)). Use of force on property in executing a warrant to apprehend a fleeing felon is an area of constitutional law that is lacking in that essential notice, or guidance. That is why the Defendants are passionate about asserting qualified immunity in this case at every opportunity.

Albeit in the Fifth Amendment Takings context, the Ninth Circuit recently held that "when law enforcement officers destroy or damage private property in the necessary and reasonable defense of public safety, such destruction is exempt from the scope of the federal Takings Clause." *Pena v. City of Los Angeles*, No. 24-2422, 2025 WL 3074588, *13 (9th Cir. Nov. 4, 2025). This appears to be the majority rule. *Bennis v. Michigan,* 516 U.S. 442, 443–44 (1996); *Lech v. Jackson*, 791 F. App'x 711, 719 (10th Cir. 2019); *Bachmann v. United States*, 134 Fed. Cl. 694, 696 (Fed. Cl. 2017); *Johnson v. Manitowoc Cty.*, 635 F.3d 331, 333–34, 336 (7th Cir. 2011); *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008); *Lawmaster v. Ward*, 125 F.3d 1341, 1344–46, 1351 (10th Cir. 1997). For the same policy reasons expressed in the Fifth Amendment context, it is important in the Fourth Amendment context to ensure that the concept of a "necessary and reasonable defense of public safety" has been clearly established before denying a public safety official qualified immunity for such a use of force.

"It is plain that while the destruction of property in carrying out a search is not favored, it does not necessarily violate the [F]ourth amendment." *U.S. v. Becker*, 929 F.2d 442, 446 (9th Cir. 1991). "[O]fficers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States,* 441 U.S. 238, 258 (1979). That being said, there is very little case law that provides clear prohibitions on conduct, or defines what is "necessary and reasonable defense of public safety" when pursuing a wanted

felon. Assuming *arguendo,* that a sole Ninth Circuit case is sufficient to provide clearly established law, *Mena v. City of Simi Valley,* 226 F.3d 1031 (9th Cir. 2000) prohibits the gratuitous use of force on property, with no apparent law enforcement objective; and *Maryland v. Buie,* 494 U.S. 325, 334-35 (1990) does not permit a residential search for a person to include spaces where a person could not be. In this case, there are no plausible allegations that support the former prohibition, and the latter, if applied, would be based only after the entry into the residence, and all actions preceding the entry would be subject to qualified immunity. In *West v. Caldwell,* 931 F.3d 978, 987 (9th Cir. 2019), the Ninth Circuit held that "the need for specificity of precedent in the Fourth Amendment context, and controlling cases establishing that officers can sometimes damage a home during a search without violating the occupant's Fourth Amendment rights, this is not an obvious case in which to deny qualified immunity without any controlling precedent clearly establishing that Defendants violated Plaintiff's rights." In cases where damage and destruction are expected, it is especially important that this Court recognize qualified immunity if no case clearly proscribes the conduct alleged as to each individual Defendant.

Plaintiffs' approach – that "everyone knew everything; and was constitutionally obligated to stop everything" – requires this Court to step outside of the analysis of well-pled, plausibly stated facts, into a realm not endorsed by any case addressing qualified immunity. The focus should be on the conduct of each individual, and whether that conduct violates clearly established law deciding that the Constitution was violated under the particularized facts present. To be "clearly established," the law must be such that "*every* reasonable official would [have understood] that what he is doing violates that right." *Riechle v. Howards*, 566 U.S. 658, 663 (2012) (internal citation omitted) (emphasis added). To overcome qualified immunity, "[p]laintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular*

*conduct* was unlawful. To achieve that kind of notice, the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).

**Rory Skedel** – Sgt. Skedel deployed two NFDDs as part of a dynamic entry that allegedly damaged some personal property; probably most notably, and likely, the toilet. For clearly established law as to Sgt. Skedel, Plaintiffs cite to *Langford v. Superior Court,* 43 Cal.3d 21 (1987), a case decided exclusively under California law regarding Bearcats. A constitutional right may be "clearly established by controlling authority or a robust consensus of cases of persuasive authority." *DeFrancesco v. Robbins*, 136 F.4th 933, 939 (9th Cir. 2025). A state law decision from California is neither.

**Chris Lapre –** Sgt. Lapre rode in the Bearcat, and fired numerous rounds of OC and CS gas cannisters into the residence in order to flush out Ochoa. Plaintiffs cite no cases providing clearly established law violated as to Sgt. Lapre specifically. As of 2019, the Ninth Circuit could not say how much chemical munitions may be used during a SWAT search for a wanted felon. *See West v. Caldwell, supra.*

**Sgt. Gragg, Sgt. Engstrom, and Officer Robinson –** For these Defendants, Plaintiffs do exactly what the Ninth Circuit said not to do in *Denby v. Lujan*; namely, lump them all together for their qualified immunity analysis. Plaintiffs do not allege that any of these persons actually used force on the residence, do not offer any clearly established law that any of them, individually, violated, and does not identify clearly established law that would have constitutionally mandated their intervention in anyone else's actions. *See Penaloza v. City of Rialto,* 836 Fed.Appx. 547, 549-50 (9th Cir. 2020).

Plaintiffs have not met their burden to show clearly established law violated as to any Defendant remaining in this case. *Shafer v. Santa Barbara,* 868 F.3d 1110 (9th Cir. 2017).

## IV. CONCLUSION.

For all of the foregoing reasons, Plaintiffs' Complaint must be dismissed in its entirety.

DATED this 23rd day of December, 2025.

JELLISON LAW OFFICES, PLLC

s/James M. Jellison
James M. Jellison
*Attorney for Defendants Engstrom, Robinson, Lapre, Gragg, and Skedel*

I hereby certify that on December 23, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

Robert T. Mills
Sean A. Woods
Mills + Woods Law PLLC
5055 North 12th Street
Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiffs*

s/James M. Jellison