IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James W Denby, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> City of Casa Grande, et al., <br><br> Defendants. | No. CV-17-00119-PHX-SPL <br><br> **ORDER** |

Before the Court is Defendants Engstrom, Robinson, Lapre, Gragg, and Skedel's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 267), Plaintiffs James W. Denby and Elizabeth J. Torres' Response (Doc. 269), and Defendants' Reply (Doc. 274). The Court now rules as follows.[1]

**I.   BACKGROUND**

   **A.  Factual History**

This action arises from a December 2014 incident, during which police officers and a SWAT team executed a search warrant in Plaintiffs James Denby and Elizabeth Torres' ("Plaintiffs") home. (Doc. 256). Defendants Engstrom, Robinson, Lapre, Gragg, and Skedel (collectively, "Defendants") were all officers employed by the City of Casa Grande Police Department or the Pinal County Sheriff's Office. (*Id.* at 2–3, ¶¶ 7–11). On the

---

[1]   Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

afternoon of December 17, 2014, the Casa Grande Police Department ("CGPD") responded to a "domestic disturbance" complaint at a nearby house. (*Id.* at 4, ¶ 24). The disturbance involved Defendant Abram Ochoa ("Ochoa"), who had multiple arrest warrants. (*Id.* ¶ 27). The officers learned that Ochoa fled to Plaintiffs' residence (the "Residence").[2] (*Id.* at 5, ¶ 30). The officers believed that Ochoa was inside the Residence. (*Id.* ¶ 37). Minutes after arriving, CGPD requested assistance from the Pinal County Regional SWAT ("SWAT"). (*Id.* at 6, ¶ 51).

After one hour, Defendant Engstrom noticed movement coming from a tarp in the backyard, but no one investigated further. (*Id.* at 7, ¶ 57–63). Meanwhile, two SWAT teams arrived and used a Bearcat armored vehicle to drive over a fence and into the front of the Residence, breaking down the windows and doors. (*Id.* at 8, ¶¶ 65, 67, 73). SWAT attempted to communicate with Ochoa and launched chemical munitions into the Residence. (*Id.* ¶¶ 76, 78). A judge signed a search warrant, permitting officers to enter the Residence and curtilage for the sole purpose of arresting Ochoa. (*Id.* at 9, ¶¶ 79–82). Over the next several hours, SWAT deployed robots, fired twenty-two canisters of pepper spray and tear gas, and deployed Noise Flash Diversionary Devices into the Residence. (*Id.* at 9–10, ¶¶ 83, 84, 95, 98, 102, 104). SWAT eventually entered the Residence to search for Ochoa, and during that process, destroyed several items including furniture, cushions, pillows, windows, window coverings, bathroom mirrors, shower doors, toilets, televisions, artwork, and antiques. (*Id.* at 11, ¶¶ 103, 109–15). At approximately 10:03 P.M., Ochoa was found hiding under a tarp in the backyard. (*Id.* at 12, ¶ 121–23). He had apparently been hiding there during the entire incident. (*Id.*).

### B. Procedural History

Plaintiff James Denby, his sister Plaintiff Elizabeth Torres, and their mother Wilma

---

[2] At the time, Plaintiffs James Denby and Elizabeth Torres, as well as their mother Wilma Logston, "resided at" the Residence. (Doc. 256 at 3, ¶ 13). "Elizabeth Torres and Wilma Logston were the named grantees listed in the deed of the Residence." (*Id.* ¶ 15). However, Plaintiffs allege that Denby, Torres, and Logston "all understood and intended that James Denby was the sole owner of the Residence." (*Id.* ¶ 16).

Logston initially filed this case in state court, and Defendants removed it to this Court in January 2017. (Doc. 1). The original three plaintiffs amended their complaint twice. (*See* Docs. 31, 82). Plaintiffs Torres and Logston were later dismissed, leaving James Denby as the only Plaintiff for a large portion of this litigation. (*See* Docs. 106, 188).

On May 1, 2018, Defendants filed a Motion to Dismiss the Second Amended Complaint ("SAC"), arguing that the City, County, and officers were all entitled to qualified immunity. (Doc. 83). The Court granted the motion as to the City of Casa Grande and Pinal County. (Doc. 106). After determining factual issues precluded a finding of qualified immunity, the Court denied the officers' request for dismissal. (*Id.*). The officers appealed that decision, and this Court stayed the proceedings until the appeal was resolved. (Docs. 107, 123). On April 14, 2020, the Ninth Circuit remanded the decision, finding that the Court was required to analyze the facts as alleged in the SAC to determine whether the officers were entitled to qualified immunity. (Doc. 127). The Court then denied Defendants' Motion to Dismiss (Doc. 129), determining that Defendants were not entitled to qualified immunity as to Counts I and II. (Doc. 136). Defendants appealed (Docs. 137, 140), and the Ninth Circuit affirmed the decision, finding that the Court did not err by denying qualified immunity to Defendants on Counts I and II. (Doc. 142).

On October 31, 2022, Defendants filed a Motion for Summary Judgment, again arguing that Defendants are entitled to qualified immunity. (Doc. 201). The Court denied the Motion for Summary Judgment, determining that Defendants are not entitled to qualified immunity. (Doc. 216). Defendants appealed (Doc. 219), and the Ninth Circuit affirmed. (Doc. 229).

On July 8, 2025, the Court held a Final Pretrial Conference and set a four-week jury trial.[3] (ME 247, 250). One month later, Plaintiff Denby, who was the only Plaintiff at the time, filed a Motion for Leave to File a Third Amended Complaint. (Doc. 249). Plaintiff Denby sought only to re-add his sister Elizabeth Torres as a plaintiff after the parties

---

[3] The four-week jury trial is scheduled to begin on April 28, 2026. (Doc. 262).

3

discovered that Plaintiff Denby was not listed on the deed to the Residence at the time of the incident. (*See id.*). The Court granted the Motion (Doc. 255), and Plaintiffs Denby and Torres filed the Third Amended Complaint ("TAC"). (Doc. 256). The TAC is filed against Defendants Engstrom, Robinson, Lapre, Gregg, Skedel, and Defendant Ochoa.[4] (*Id.*). It includes three claims: violation of Plaintiff's Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983 against the Officer Defendants (Count I); failure to intervene with respect to a constitutional violation against the Officer Defendants (Count II); and Trespass against Defendant Ochoa (Count III). (Doc. 256 at 14–18). On November 20, 2025, the Officer Defendants filed the instant Motion to Dismiss the TAC. (Doc. 267).

## II.   LEGAL STANDARD

### A. Rule 12(b)(1)

A Rule 12(b)(1) motion to dismiss challenges the court's subject matter jurisdiction to hear the claims at issue. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and may only hear cases falling within that jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Subject matter jurisdiction 'can never be forfeited or waived[,]' and federal courts have a continuing 'independent obligation to determine whether subject-matter jurisdiction exists.'" *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

### B. Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8." *Jones v. Mohave Cnty.*, No. CV 11-8093-PCT-JAT, 2012 WL 79882, at *1 (D. Ariz. Jan. 11, 2012); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016) ("Rule 12(b)(6) provides the one and only method for testing" whether Rule 8 pleading standards have been met); *Hefferman v. Bass*, 467 F.3d 596, 599–600 (7th Cir. 2006) (Rule 12(b)(6) "does not

---

[4] The Clerk of Court entered default against Defendant Ochoa on August 1, 2017. (Doc. 67.)

4

stand alone," but implicates Rules 8 and 9). Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation." *Jones*, 2012 WL 79882, at *1 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III.    DISCUSSION

Defendants make several arguments in support of their Motion to Dismiss Plaintiffs' TAC. First, Defendants assert that Plaintiffs' Complaint fails to state a plausible *Monell* claim. (Doc. 267 at 6–7). As Plaintiffs clarify in their Response, the TAC does not include a *Monell* claim. (Doc. 269 at 2; *see* Doc. 256). Thus, the Court will not address that argument. Next, Defendants again argue that they are entitled to qualified immunity. (Doc. 269 at 7–16). Third, Defendants argue that Plaintiff Torres' claims are barred by the statute of limitations. (*Id.* at 16–18). Fourth, Defendants argue that Plaintiff Denby lacks standing to claim damages to real property. (*Id.* at 18–20). Finally, Defendants argue that Plaintiffs lack standing for equitable or injunctive relief. (*Id.* at 20–21). As to the last argument, Plaintiffs assert that they are not advancing a claim for injunctive relief and "agree that they make no such claims." (Doc. 269 at 2). In light of that agreement, the Court will not assess their standing to claim equitable or injunctive relief.

The Court will address Defendants' arguments regarding the statute of limitations

as to Plaintiff Torres' claims, Plaintiff Denby's Fourth Amendment standing, and whether the Defendants are entitled to qualified immunity.

### A. Statute of Limitations

In the Motion to Dismiss the TAC, Defendants argue that Plaintiff Torres has asserted her claims well-beyond the the two-year statute of limitations period. (Doc. 267 at 17). Defendants assert that Plaintiff Torres' remedy was "to re-file a new action" after she was dismissed from this case. (*Id.*). Defendants address the relation-back doctrine in their Reply, simply asserting that it "is not available to Plaintiff Torres." (Doc. 274 at 2). Defendants appear to argue that the relation back doctrine does not apply because Plaintiff Torres was previously a party to the case and was dismissed before being re-added as a plaintiff in the TAC. (*Id.* at 7).

Defendants do not provide any authority directly addressing that issue. Defendants point out that "Torres is not a 'new plaintiff'" because she was originally a plaintiff in the case. (*Id.*). Defendants also highlight that Plaintiff Torres was "dismissed without prejudice and given a chance to amend to add the very facts she now alleges regarding her standing" but did not do so. (*Id.*). It is true that "a new complaint [cannot] relate back to an action previously dismissed and therefore procedurally unrelated." *Young v. Rorem*, 977 F.2d 594 (9th Cir. 1992). But Defendants do not provide authority establishing that an amended complaint adding a plaintiff who was previously dismissed within the same action may not relate back to the original complaint. (*See* Docs. 267, 274). The Court is not aware of any such authority and will decline to make a ruling to this effect absent more persuasive authority. *See United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) ("[O]ur system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.") (internal quotations, brackets, and citation omitted).

In response, Plaintiffs argue that Plaintiff Torres' claims are not untimely because they relate back to the original complaint. (Doc. 269 at 17–18). Under Rule 15, an amendment to a pleading "relates back to the date of the original pleading when . . . the

amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Claims arise out of the same conduct, transaction, or occurrence if they 'share a common core of operative facts' such that the plaintiff will rely on the same evidence to prove each claim." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (citation omitted). An amendment to a complaint adding a new plaintiff relates back to the original complaint when: "1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff." *Rosenbaum v. Syntex Corp.*, 95 F.3d 922, 935 (9th Cir. 1996) (citing *Besig v. Dolphin Boating & Swimming Club*, 683 F.2d 1271, 1278–79 (9th Cir. 1982)). "Notice is the critical inquiry" in this analysis. *Besig*, 683 F.2d at 1278.

As to the first factor, Defendants had notice of Plaintiff Torres' claims because she was originally included as a plaintiff in this action. (*See* Docs. 1, 82). In *Besig*, the Ninth Circuit explained that when substituting plaintiffs, notice from a previous complaint is not adequate to allow relation back "unless the change merely brings in the real party in interest or accomplishes some similar technical result." 685 F.2d at 1278. That is exactly the case here. Plaintiff Torres was re-added to this action because she was listed on the deed to the Residence at the time of the incident. (Doc. 255 at 6). In addition, the amendment adding Plaintiff Torres to the case did not change the facts surrounding the claims. Plaintiff Torres, along with Plaintiffs Denby and Logston, asserted the two claims brought against Defendants in the TAC in the original complaint, first amended complaint, and second amended complaint. (Doc. 1-1 at 24, 27; Doc. 31 at 15, 18; Doc. 82 at 16, 19); *see Int'l Bhd. of Teamsters v. Am. West Airlines, Inc.*, No. CIV-95-2924-PHX-RGS, 1997 WL 809760, at *3 (D. Ariz. Sept. 25, 1997) ("Clearly, the original complaint gave [Defendant] adequate notice of the claim asserted by the new plaintiffs because the identical claim was raised in the original complaint. Moreover, the factual allegations surrounding this claim are identical.").

7

  Second, relation back does not unfairly prejudice Defendants. Defendants argue that they are prejudiced because "Ms. Torres 'sat on her rights,' and waited, after a key witness died, after discovery was closed, and even after the parties had created a Final Pretrial Order and were prepared to go to trial on the issues without Torres' involvement." (Doc. 274 at 7). Although the Court appreciates that Plaintiff Torres has been added at a late stage in this case, Defendants do not explain how relation back would create unfair prejudice. The factual allegations behind Counts I and II are unchanged and the reasons that Plaintiff Torres was added as a Plaintiff in the TAC are related only to ownership of the Residence. (Doc. 256). Plaintiffs concede that "Elizabeth Torres has been added to the Complaint for the sole reason that she was the record owner of the Residence" at the time of the incident. (Doc. 269 at 17). Defendants do not show unfair prejudice, and none is conceivable to the Court. *See Besig*, 685 F.2d at 1278 ("Relation back imposes no prejudice when an amendment restates a claim with no new facts.").

  Third, there is an identity of interests between Plaintiff Denby and Plaintiff Torres. Defendants argue that there is no identity of interests "because [Plaintiffs] can only prevail on the lion-share of claimed damages by taking mutually exclusive positions as to real property ownership." (Doc. 274 at 7). Specifically, Defendants explain that "Denby's Fourth Amendment real property damage claim . . . depends on his ability to prove that although Torres and Logston were the deeded owners of the real property, he was the true homeowner." *Id.* at 6. The identity of interest requirement is met when plaintiffs are "similarly situated" and the "circumstances giving rise to the claim [are] the same" in the amended complaint and original complaint. *Immigrant Assistance Project of Los Angeles Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 858 (9th Cir. 2002). Plaintiff Torres and Denby's interests in the house and the property therein are similar and the circumstances giving rise to their claims are the same. Therefore, the identity in interest requirement is met. Plaintiff Denby's Fourth Amendment standing is separate issue that will be addressed by the Court below.

  All three requirements for relation back are met here. Most importantly to this

analysis, Defendants had notice of Plaintiff Torres' claims, even though she was previously dismissed for failing to adequately allege standing. (*See* Doc. 106); *see Besig*, 683 F.2d at 1278. For those reasons, the Court finds that the claims in the TAC relate back to the original complaint. Plaintiff Torres' claims are not barred by the statute of limitations.

### B. Fourth Amendment Standing

Next, Defendants argue that Plaintiff Denby does not have Fourth Amendment standing to sue based on the damage to real property because he did not own the Residence at the time of the incident. (Doc. 267 at 18). Defendants assert, without providing any authority, that "the alleged use of force on the real property in violation of the Fourth Amendment is 'personal' to the property owner only." (*Id.* at 20).

While Article III standing is jurisdictional and must be assessed by the Court before reaching the merits, "[t]he concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief." *Terrence Byrd v. United States*, 584 U.S. 395, 410–11 (2018). "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). "A 'seizure' of property, we have explained, occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

A possessory interest does not necessarily mean an ownership interest. "The Fourth Amendment shields not only actual owners, but also anyone with sufficient possessory rights over the property searched." *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1186–87 (9th Cir. 2015) (collecting cases discussing "what types of possessory rights create standing under the Fourth Amendment"). The Ninth Circuit has explained that "a defendant who lacks an ownership interest may still have standing to challenge a search, upon a showing of 'joint control' or 'common authority' over the property searched." *United States v. Thomas*, 447 F.3d 1191, 1198 (9th Cir. 2006) (comparing several United States Supreme Court cases). With respect to seizures, other district courts have also distinguished between

ownership interests and possessory interests: "[A] seizure of property occurs within the meaning of the Fourth Amendment 'when there is some meaningful interference with an individual's *possessory* interests in that property.' Even if plaintiff's alleged purchase of the Property . . . were somehow invalid or void, he may still have had a possessory interest in the Property." *Wik v. Village of Holley*, 22-CV-6414DGL, 2023 WL 6958794, at *13 (W.D. N.Y. Oct. 20, 2023) (citing *Jacobsen*, 466 U.S. at 113); *see also VienPhuong Ti Ho v. City of Long Beach*, No. 19-cv-9430, 2020 WL 8617674, at *19 (C.D. Cal. Nov. 10, 2020), *report and recommendation adopted*, 2020 WL 8608522 (C.D. Cal. Nov. 10, 2020) ("[T]he facts alleged in the [complaint] appear to show that Plaintiff had at least a possessory interest in the disputed property.").

Here, Plaintiffs have adequately alleged that Plaintiff Denby had a possessory interest in the Residence. Plaintiffs allege that Elizabeth Torres and Wilma Logston "were the named grantees listed in the deed" (Doc. 256 at 3 ¶ 15) but also state that they "intended that James Denby was the sole owner of the Residence." (*Id.* ¶ 16).[5] Further, Plaintiffs allege that Plaintiff Denby held the home insurance policy, was responsible for maintaining the property, and paid all the property taxes. (*Id.* at 4, ¶¶ 21–23). These facts plausibly show that Plaintiff Denby had a possessory interest in the Residence. This is sufficient to establish Fourth Amendment standing at the pleading stage. *See VienPhuong Ti Ho*, 2020 WL 8617674, at *19 ("Even if Plaintiff's peaceful possession of the disputed real property . . . is insufficient to support a Fourth Amendment claim . . . Defendants have not conclusively shown that Plaintiff lacked some possessory interest in the property sufficient to give her standing under the Fourth Amendment."). Because Plaintiffs have alleged that Plaintiff Denby had a possessory interest in the Residence, the Court will deny Defendants' Motion as to this claim.

//

---

[5] Defendants assert that the Court should not consider extrinsic evidence in construing the deed to the Residence. (Doc. 267 at 19–20). However, the deed is not before the Court for interpretation.

**C. Qualified Immunity**

Finally, Defendants argue in the Motion to Dismiss that "[e]ach Defendant, based on an individualized analysis of their own conduct, is entitled to qualified immunity." (Doc. 267 at 7). Defendants have raised the qualified immunity defense several times before this Court and the Ninth Circuit. (*See* Docs. 83, 107, 129, 137, 201, 219). Defendants assert that they "raise qualified immunity again because of the new pleading, new plaintiff, and the new case law from this Circuit . . . in the Fifth Amendment context." (Doc. 274 at 10). However, Defendants do not identify any new facts supporting their arguments. (Doc. 267). Indeed, the factual allegations supporting Counts I and II in the TAC remain unchanged, except for those relating to the ownership of the Residence. (*See* Doc. 249-2). Defendants also do not argue that the re-addition of Plaintiff Torres to the case has in any way changed the qualified immunity analysis. (*Id.*)

The only new argument Defendants assert surrounds a recent Ninth Circuit case, *Pena v. City of Los Angeles*, 158 F.4th 1033 (9th Cir. 2025). Defendants explain that in *Pena*, the Ninth Circuit held that "when law enforcement officers destroy or damage private property in the necessary and reasonable defense of public safety, such destruction is exempt from the scope of the federal Takings Clause." (Doc. 267 at 9 (citing *Pena*, 158 F.4th at 1048)). As Defendants acknowledge, this case relates the Fifth Amendment. *See Pena*, 158 F.4th at 1035–48. Plaintiffs concede they are not bringing a Fifth Amendment Takings Clause claim.[6] (Doc. 269 at 1–2). Thus, this case law does not change the qualified immunity analysis.

In the Motion to Dismiss the TAC, Defendants once again rely on *West v. City of*

---

[6] In the TAC, Plaintiffs allege that they bring the action "for violations of the United States Constitution, including without limitation the Fourth, fifth, and Fourteenth Amendments." (Doc. 256 at 1, ¶ 1). Plaintiffs further allege that the officer Defendants "violated the Fourth Amendment of the United States Constitution by causing Plaintiffs' property to be search and seized without probable cause thereby depriving Plaintiffs of their rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States." (*Id.* at 16, ¶ 154). However, Plaintiffs concede that they are not bringing a claim under the Fifth Amendment. (Doc. 269 at 1–2).

*Caldwell*, 931 F.3d 978 (9th Cir. 2019) to argue that their conduct was not clearly unreasonable. (Doc. 267 at 10–11). But the Ninth Circuit squarely addressed this argument on appeal, explaining that *West* is distinguishable from the facts at hand. (Doc. 142-1 at 9). As to Defendants' arguments regarding failure to intervene (Doc. 267 at 11–12), the Ninth Circuit affirmed this Court's previous determination that "the complaint plausibly alleged that each individual defendant had a realistic opportunity to intercede during the destruction of plaintiffs' property." (Doc. 142-1 at 10). The same is true of the TAC. (*See* Doc. 256).

In sum, this issue has already been considered several times by this Court and the Ninth Circuit. Now, Defendants have raised qualified immunity again without providing any reasons why the Court should arrive at a different conclusion. With no new relevant authority or facts, the Court declines to reexamine its own rulings and the Ninth Circuit's decisions. Therefore, the Court will deny Defendants Motion to Dismiss based on qualified immunity.

## IV.    CONCLUSION

For all the reasons explained above, the Court will deny Defendants Engstrom, Robinson, Lapre, Gragg, and Skedel's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 267). Plaintiffs agree that the TAC does not include a *Monell* claim or claims for equitable and injunctive relief. (Doc. 269 at 2). Thus, Defendants' arguments on those issues need not be addressed by the Court.

Defendants' arguments as to the statute of limitations, Fourth Amendment standing, and qualified immunity fail. First, Plaintiff Torres' claims are not barred by the statute of limitations because they relate back to the original complaint. Second, Plaintiffs have sufficiently alleged that Plaintiff Denby has Fourth Amendment standing as to the real property. Finally, Defendants are not entitled to qualified immunity. Therefore, the Motion to Dismiss Plaintiffs' TAC is denied.

//

//

Accordingly,

**IT IS ORDERED** that Defendants Engstrom, Robinson, Lapre, Gragg, and Skedel's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 267) is **denied**.

**IT IS FURTHER ORDERED** that the parties shall update the pretrial documents to reflect the addition of Elizabeth Torres as a plaintiff. The parties should account for the modifications made on the record at the Final Pretrial Conference. (ME 250). In reviewing the updated pretrial documents, the Court will not revisit issues that have already been ruled upon. The parties shall have until **February 2, 2026,** to jointly file updated pretrial documents, including the Joint Pretrial Order, Statement of the Case, Joint Voir Dire, Jury Instructions, and the Verdict Form.

Dated this 14th day of January, 2026.

Honorable Steven P. Logan
United States District Judge