MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| James W. Denby; *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> David Engstrom; *et al.*, <br><br> Defendants. | Case No.: 2:17-CV-00119-SPL <br><br> **JOINT (REVISED) PROPOSED FINAL PRETRIAL ORDER** |

The following is the Joint Proposed Final Pretrial Order. A Final Pretrial Conference was held on July 8, 2025 at 9:00 a.m. and the Joint Proposed Pretrial Order at Doc. 237 was adopted by the Court that same day. (Docs. 247, 250). Pursuant to this Court's Order January 14, 2026 Order (Doc. 275), the parties submit this revised Proposed (Final) Pretrial Order.

On August 8, 2025, Plaintiff James Denby moved for leave to file a third amended complaint adding Elizabeth Torres as a Party-Plaintiff. (Docs. 249; 249-1 to 249-2). The motion was opposed. (Doc. 251). On October 8, 2025, the Court granted Plaintiff's motion. (Doc. 255). On October 28, 2025, this matter was reassigned from District Judge Stephen P. Logan to District Judge Michael T. Liburdi. (Doc. 258). Pursuant to a November 10, 2025 status conference, Judge Liburdi proposed a new trial setting, which

he adopted in a later minute entry.  (Docs. 261, 262). Judge Liburdi also extended the time for Defendants to respond to the Third Amended Complaint to November 20, 2025.  (Doc. 262).

On November 20, 2025, Defendants filed their Motion to Dismiss the Third Amended Complaint.    (Docs. 264, 267).    Plaintiffs opposed.  (Doc. 269).    Prior to Defendants' December 23, 2025 reply (Doc. 274), the case was reassigned on December 12, 2025 from District Judge Liburdi to District Judge Logan.  (Doc. 171).  On January 14, 2026, the Court denied Defendants' Motion, and ordered a new set of pretrial filings to be submitted no later than February 2, 2026.  (Doc. 275).

Defendants then filed a Motion for Rule 16 Case Management Conference on January 21, 2026. (Doc 276). Defendants also filed a Motion for Extension of Time to File Updated Pretrial Documents on January 21, 2026. (Doc. 277). Defendants then Answered the Third Amended Complaint on January 29, 2026. (Docs. 278, 279). This Court then ordered an in-person status conference set for February 18, 2026. (Doc. 280). The status conference was held and this Court ordered that updated pretrial documents be filed no later than March 24, 2026. (Doc. 282). Defendants then submitted discovery requests and notices of deposition. (Docs. 283-285). Plaintiffs filed a Motion for Protective Order related to the notices of deposition. (Doc. 286). Defendants then file an Emergency Motion for Extension of Time of the Discovery and Final Pretrial Documents Deadline. (Doc. 287). Plaintiff responded. (Doc. 288). An order was issued requiring Defendants to Respond to Plaintiff's Motion for Protective Order. Defendants responded on March 6, 2026. (Doc. 291). That same day Defendants filed a Motion for Extension of Time to Complete

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

2

Discovery Motion to Reopen Expert Discovery and Disclosure. (Doc. 292). Plaintiffs replied in support of their Motion for Protective Order on March 9, 2026. (Doc. 293). This Court granted the Protective order to the extent that the Court will not require Plaintiffs to be deposed. (Doc. 294). In that same order, this Court denied Defendants' Emergency Motion for a 30-day Extension of the Discovery and Final Pretrial Documents Deadline. *Id.* That order set March 24, 2026 as the deadline to file updated pretrial documents. *Id.*

The parties submit this revised Joint (Final) Pretrial Order in conformity with the current deadline.

**Defendants' Separate Statement**

Notwithstanding the above, Defendants preserve their objections as to the limitations on discovery imposed since the allowance of the Third Amended Complaint. This concern is exacerbated by information recently received drawing into question whether the new Plaintiff, Elizabeth Torres, had the capacity to join as a party in this case during 2025, is capable of appearing or testifying at trial, and may require appointment of a guardian to ensure her interests are properly protected during the trial of this matter. Upon information and belief, Plaintiffs' counsel has not communicated directly with Ms. Torres in connection with the Third Amended Complaint, or at times after, and, if so, has not informed opposing counsel, or this Court, of Ms. Torres' mental and/or physical health limitations.   Defendants possess no evidence and see nothing in the record that supports Mr. Torres' competency to acknowledge that Mills + Woods would represent her when filing the motion for leave amend in August of 2025.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

On March 18, 2026, Defendants' counsel was informed by a process server that an attempt to serve a witness subpoena on Plaintiff Torres at her last known address could not be completed.  The resident, Torres' daughter, stated she would be willing to provide an update on Torres' condition and provided a telephone number.   On March 20 2026 and March 22, 2026, Defendants' investigator interviewed Torres' two daughters, the second of whom holds a power of attorney for Torres.   The daughters confirmed Torres had been living in a "memory care" facility since 2024, and that they were unaware Torres had been brought into this litigation.   The sister holding power of attorney stated that her first contact with Denby's counsel was approximately 3 months ago during which Plaintiffs' counsel stated he would like Ms. Torres to testify, and was told about her residency in a memory care facility.   The sisters confirmed Ms. Torres' dementia and Alzheimer's diagnoses. During the March 20 and 22, 2026 interviews they also confirmed Torres' diagnoses and when asked the pointed question of whether Torres was capable of testifying at trial stated that, depending on the day, her long-term memory could be good, but that only her doctors could answer the question about her competency to testify.   The sisters willingly participated in the investigator interviews, provided their contact information, and under circumstances where the investigator and witnesses were polite and professional. Plaintiffs' counsel had disclosed none of Ms. Torres' circumstances to Defendants' counsel or the Court.   Whether Ms. Torres was contacted or consulted about being a party in this case, has been actively involved in preparing for trial, was involved at all in answering recent written discovery, or is competent to appear at trial, or to testify, remains unanswered.

**PLAINTIFFS SEPARATE STATEMENT**

Plaintiffs' counsel has represented Ms. Torres since December 2016. During this time, Plaintiffs' counsel has had no reason to question her competency to testify about the issues raised in this case and still has no reason to question the same. She was originally a Plaintiff in this case, has always been listed as a witness in this case, and is now reinstated as a Plaintiff. Unfortunately, because of the length of time this case has been open, Ms. Torres' health has declined. She resides in an assisted living facility and has been diagnosed with early stages of dementia and Alzheimer's. Despite this, Plaintiffs' counsel still has no concerns about her recall of the events surrounding this case and prior. Plaintiffs' counsel has met with Ms. Torres in person recently and without waiving privilege, do not question her fitness to testify about the events at issue in this case. Potential accommodations may be necessary.

Recently, Ms. Torres' family has reported that they have been repeatedly contacted by a person claiming he is with Pinal County. This person has pressured and questioned the family members about Ms. Torres, her ownership, her current status, financial questions, her whereabouts, how to contact Ms. Torres, and more. It is not known whether this person is a member of Defendants' counsel's office or a hired investigator by the same. Ms. Torres' daughter, Suzanne Jackson, is Ms. Torres' medical and financial Power of Attorney and has been contacted by this person. Ms. Torres' daughter, Natalie, has also been contacted by this person. Furthermore, it has been reported that a process server has shown up to serve documents on Ms. Torres. Notably, none of these contacts were

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

disclosed by Defendants' counsel to Plaintiffs' counsel. Defendants admit that they tried to subpoena a Plaintiff in this case.

**1. TRIAL COUNSEL FOR THE PARTIES**

    **A.**    **Plaintiffs**    Sean A. Woods
Robert T. Mills
Mills + Woods PLLC
5055 N. 12th St., Suite 101
Phoenix, AZ 85014
Phone: 480 999-4556
Fax: 480 566-8322

    **B.**    **Defendants[1]**    James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

**2. JURISDICTION**

    **A.**    Jurisdiction in this case is based on 28 U.S.C. §1331, in that this is a civil action arising under the Constitution, laws, or treaties of the United States.   There are no pendent state law claims.

    **B.**    Jurisdiction is not disputed.

**3. STIPULATIONS AND UNCONTESTED FACTS AND LAW**

    **A.**    The following material facts are admitted by the parties and require no proof:

---

[1] Defendants Engstrom, Gragg, Robinson, Lapre, and Skedel participated, through counsel, in the Revised, Proposed Final Pretrial Order.   Pro per Defendant Ochoa, did not participate, and undersigned does not represent Ochoa.

1. On the afternoon of December 17, 2014, members of the Casa Grande Police Department were dispatched to a domestic disturbance, or family fight, involving Abram Ochoa at a residence located at 107 ½ West 11th Street, Casa Grande, Arizona.

2. Ochoa was no longer at the 107 ½ West 11th Street, Casa Grande, Arizona address, but police tracked Ochoa to the subject residence located at 116 West 10th Street, Casa Grande, Arizona.

3. Casa Grande Police Department Officers set up a perimeter around the subject residence.

4. Casa Grande Police Lt. Kent Horn contacted Pinal County Sheriff's Dispatch requesting assistance of the regional Special Weapons and Tactics (SWAT) Team.

5. Pinal County Sheriff's Lt. Berry, then the regional SWAT Commander, received the call, and was informed about the situation Abram Ochoa.

6. SWAT personnel arrived and maintained a perimeter around the residence.

7. A search warrant was issued for Ochoa's apprehension at the subject residence.

8. The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:

None.

**B.** The following issues of law are uncontested and stipulated to by the parties:

None.

Defendants were acting under the color of state law during all times relevant to this matter.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

7

## 4. CONTESTED ISSUES OF FACTS AND LAW

**A.**    The following are the material issues of fact to be tried and decided:

**Issue #1:** Whether Defendants' search of Plaintiffs' property was unreasonable.

<u>Plaintiffs Contend</u>: The force applied by Defendants was objectively unreasonable and far in excess of anything that could be deemed reasonable. There was no immediate threat and Ochoa was not even in Plaintiffs' house. The force applied was far in excess of that necessary to execute the search warrant.

<u>Defendants Contend</u>:  The force applied during the search was reasonable in that Ochoa was a felony suspect who had a significant criminal history, was an immediate threat to officers and others on scene, and was fleeing and or escaping apprehension and arrest.  The law enforcement officers employed a series of escalating, non-lethal tactics—including verbal commands, the deployment of a throw phone, surveillance robots, and chemical agents—before ultimately breaching and clearing the residence that involved the use of two flash bangs. Ochoa was later found concealed under a tarp in the backyard; a fact unknown to law enforcement until his discovery.   Damage is anticipated in warrant-based searches, and any property damage in this case was incidental to reasonable and necessary actions.

**Issue #2**: Whether Defendants violated James Denby's constitutional rights because they had the opportunity to intercede to stop the destruction of his property but failed to do so.

<u>Plaintiffs Contend</u>: At any time during the nearly seven (7) hour incident, any of the Defendants could have stopped the others – including non-defendants from using excessive force.

<u>Defendants Contend</u>:  The force applied during the search was reasonable in that Ochoa was a felony suspect who had a significant criminal history, was an immediate threat to officers and others on scene, and was fleeing and or escaping apprehension and arrest.  The law enforcement officers employed a series of escalating, non-lethal tactics—including verbal commands, the deployment of a throw phone, surveillance robots, and chemical agents—before ultimately breaching and clearing the residence that involved the use of two flash bangs. Ochoa was later found concealed under a tarp in the backyard; a fact unknown to law enforcement until his discovery.  There was neither a reasonable opportunity to intercede, nor a constitutional duty to do so.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**Issue #3:** Whether Plaintiff James Denby, Sr. owned the subject residence as of December 17, 2014.

Plaintiffs Contend: **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party.** Subject to these objections, Plaintiffs contend that James Denby had at minimum full possessory interest in the property. Plaintiffs contend that James Denby was considered the owner at the time and will testify to this fact. Plaintiff James Denby had all indicia of ownership, paid property taxes, maintained the property for approximately forty (40) years at the time of this Incident and has continued to do so to the best of his ability. Plaintiff Elisabeth Torres will testify that James Denby was always considered the owner of the property.

Defendants Contend:  Contrary to Plaintiff Denby's contention in Doc. 237, Plaintiff James Denby, Sr.'s Third Amended Complaint raises facts placing the contention at issue.  Plaintiff James Denby, Sr. did not own the subject residence on December 17, 2014.  Plaintiffs' Third Amended Complaint admits that Plaintiff Torres and former Plaintiff Logston were the deeded owners of the real property at the time of the December 17, 2014 warrant execution.  Plaintiffs however, make new allegations in the Third Amended Complaint including the process and adverse issues associated with a later quitclaim to Plaintiff Denby, Denby being the holder of homeowner's insurance on the property, Denby's alleged sole responsibility for property maintenance, and Denby's alleged payment of property tax bills for a certain period of time as extraneous evidence of his ownership notwithstanding the deed.   Defendants have had no opportunity to discover these new allegations pursuant to Fed.R.Civ.P. 30-36 and, therefore, cannot provide factual information beyond the allegations.   Defendants contest that parol evidence is allowed under Arizona law to prove real property ownership contrary to a clear and unambiguous deed.

**Issue #3:**  Whether Plaintiff Elizabeth Torres owned the subject residence as of December 17, 2014.

Plaintiffs Contend:  Elisabeth Torres and Wilma Logston were named on the deed of the property, but James Denby was considered the owner of the property by both of them as evidenced by a quitclaim deed that was filed. Plaintiff James Denby had all indicia of ownership, paid property taxes, maintained the property for approximately forty (40) years at the time of this Incident and has continued to do so to the best of his ability. Plaintiff Elisabeth Torres will testify that James Denby was always considered the owner of the property. In fact, Ms. Torres was not even living on the property at the time of the Incident.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Defendants Contend:  Elizabeth Torres and Wilma Logston owned the subject residence and real property as of December 17, 2014.  Plaintiff James Denby, Sr. did not own the subject residence on December 17, 2014.  Plaintiffs' Third Amended Complaint admits that Plaintiff Torres and former Plaintiff Logston were the deeded owners of the real property at the time of the December 17, 2014 warrant execution.  Plaintiffs however, make new allegations in the Third Amended Complaint including the process and adverse issues associated with a later quitclaim to Plaintiff Denby, Denby being the holder of homeowner's insurance on the property, Denby's alleged sole responsibility for property maintenance, and Denby's alleged payment of property tax bills for a certain period of time as extraneous evidence of his ownership notwithstanding the deed.   Defendants have had no opportunity to discover these new allegations pursuant to Fed.R.Civ.P. 30-36 and, therefore, cannot provide factual information beyond the allegations.  Plaintiffs do not know if Elizabeth Torres claims are entitled to damages to real property in light of the competing allegations in the Third Amended Complaint, or whether she claims entitlement to damages for any personal property and, if so, which items and at what value.

**Issue #4:**  Whether Defendants were responding to a domestic violence call.

Plaintiffs Contend:  **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party.** Subject to this objection, at the time Defendants arrived at the property, they were not responding to a DV call. In fact, the Search Warrant issued in this matter along with the accompanying affidavit references a failure to appear warrant and nothing else.

Defendants Contend:  On the afternoon of December 17, 2014, Casa Grande Police officers were dispatched to a domestic violence involving Abram Ochoa at 107 ½ West 11th Street, Casa Grande, Arizona.  By the time police arrived to the 107 ½ address, Ochoa had fled to the subject residence at 110 West 10th Street.  Defendants contend that domestic violence calls are inherently dangerous, and constitute a serious criminal offense,

**Issue #5:**  Whether Defendants were aware of facts about Ochoa that supported their reasonable belief that Ochoa was as immediate threat.

Plaintiffs Contend: **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party.** Subject to these objections, Ochoa presented no danger to the officers. He never responded to them, never threatened them, and simply hid under a tarp covering a vehicle the entire time. When apprehended, he did not resist. Ochoa was wanted on a failure to appear

10

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

warrant for shoplifting. The Search Warrant and Affidavit reference nothing related to any violence potential or history of violence. Also, his girlfriend who reported the alleged DV did not report any physical abuse but did report that she did not see him with any weapons that day. Furthermore, this is subject to Plaintiffs' MIL on Ochoa's criminal history.

Defendants Contend:  Responding Officers and Deputies knew that in addition to fleeing a domestic violence scene, Ochoa had an active felony arrest warrant, a history of felony criminal activity, a history of violence, had vowed to never return to prison, and was a methamphetamine abuser who had allegedly stabbed his brother two weeks prior.   Defendants reasonably believed Ochoa was an immediate threat.   This information is part of the "totality of the circumstances" necessary for the jury to assess the use of force. *See, Barnes v. Felix,* 605 U.S. 73 (2025).

**Issue #6:**  Whether Ochoa was fleeing or escaping from apprehension and arrest.

Plaintiffs Contend:  **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party. Defendants' contentions go beyond the issue presented.** The issue is simply whether he was fleeing. Plaintiffs contend that Ochoa made no attempts to escape or flee from Plaintiffs property.

Defendants Contend:  Responding Officers and Deputies were aware that Ochoa had fled into the residence at 110 West 10th Street, Casa Grande, Arizona.  A resident of the address, Plaintiffs' son, William Denby, Jr., initially denied Ochoa's presence in the residence, but upon further questioning, recanted and admitted that Ochoa had run into the home and was still in William Jr.'s room.  From the officers' perspective, it would be clear that Ochoa had fled and was hiding.   This information is part of the "totality of the circumstances" necessary for the jury to assess the use of force. *See, Barnes v. Felix,* 605 U.S. 73 (2025).

**Issue #7:**    Whether the Casa Grande Officers and/or the Pinal County Sheriff's personnel sought Ochoa's voluntary removal from the subject residence before using force or summoning SWAT assistance.

Plaintiffs Contend:  **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party.** Subject to these objections, Defendants had ample opportunity to seek voluntary removal. Ochoa's girlfriend offered to talk to him over the PA; William Denby offered to go inside the house to look for Ochoa; James Denby gave his keys to the officers, drew them a map, and explained to them what doors were locked; and, James Denby told the officers and deputies on scene that any firearms were inaccessible because they were

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

behind a locked bedroom door, they were in a safe, or had trigger locks preventing their use. Ochoa was not in the house. The Search Warrant and Affidavit mention nothing about Ochoa's "violent history". There was no barricaded situation. There were no exigent circumstances. There were no indicators that met the guidelines to escalate the situation by requesting SWAT assistance or intervention.

Defendants Contend:  The police told Ochoa via patrol vehicle PA system to exit the residence, but he did not comply.   Officers also learned firearms were present in the home.  Based on these developing facts, and Ochoa's known violent history, flight, and refusal to surrender creating a heightened risk of injury for both officers on-scene and Ochoa himself, Casa Grande Officers requested SWAT assistance. Defendants contend this factual issue is raised in Plaintiffs' Third Amended Complaint where they allege Plaintiffs demanded, by and through Casa Grande and Pinal County personnel, that Ochoa remove himself from the residence, that he remained in the residence despite the demands made on behalf of Plaintiffs by the City and County, that the City and County had to physically remove Ochoa from the residence, and that Ochoa's physical invasion of the home caused damage to Plaintiffs.  These allegations were admitted by Defendants.  There is no contested fact issue on these points.

**Issue #8:**  Whether regional SWAT personnel sought Ochoa's voluntary removal from the subject residence before using force or obtaining a judicial warrant to search the subject residence for Ochoa.

Plaintiffs Contend:  **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party**. Subject to these objections, Defendants had ample opportunity to seek voluntary removal. Ochoa's girlfriend offered to talk to him over the PA; William Denby offered to go inside the house to look for Ochoa; James Denby gave his keys to the officers, drew them a map, and explained to them what doors were locked; and, James Denby told the officers and deputies on scene that any firearms were inaccessible because they were behind a locked bedroom door, they were in a safe, or had trigger locks preventing their use. Ochoa was not in the house. The Search Warrant and Affidavit mention nothing about Ochoa's "violent history". There was no barricaded situation. There were no exigent circumstances. There were no indicators that met the guidelines to escalate the situation by requesting SWAT assistance or intervention. SWAT almost immediately began employing force on the residence with the bearcat and chemical munitions.

Defendants Contend:  Regional SWAT Team members began to arrive, awaited a search warrant and in the meantime, used a car key given to them to move a vehicle out of the driveway, and continued to use a PA system to order Ochoa to exit the residence.  Ochoa did not comply.  Defendants contend this factual issue is raised in Plaintiffs' Third Amended Complaint where they allege Plaintiffs demanded, by and

through Casa Grande and Pinal County personnel, that Ochoa remove himself from the residence, that he remained in the residence despite the demands made on behalf of Plaintiffs by the City and County, that the City and County had to physically remove Ochoa from the residence, and that Ochoa's physical invasion of the home caused damage to Plaintiffs. These allegations were admitted by Defendants. There is no contested fact issue on these points.

**Issue #9:**    Whether law enforcement personnel observed Ochoa in the subject residence in addition to the information provided by William Denby, Jr.

Plaintiffs Contend:  **Plaintiffs object to this "Issue" as it is a compound issue and there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party.** Subject to these objections, Plaintiffs contend that Ochoa was never in the house.

Defendants Contend:  Law enforcement personnel observed Ochoa attempting to exit the subject residence and then immediately returning inside. This observation was reported to other law enforcement personnel on scene. Defendants contend this factual issue is raised in Plaintiffs' Third Amended Complaint where they allege Plaintiffs demanded, by and through Casa Grande and Pinal County personnel, that Ochoa remove himself from the residence, that he remained in the residence despite the demands made on behalf of Plaintiffs by the City and County, that the City and County had to physically remove Ochoa from the residence, and that Ochoa's physical invasion of the home caused damage to Plaintiffs. These allegations were admitted by Defendants. Additionally, Plaintiffs' Third Amended Complaint alleges that Sergeant Engstrom and Officer Wilson actually observed Ochoa attempt to leave the residence, but instead went back inside. These allegations were admitted to by Defendants. There is no contested fact issue on these points.

**Issue #10:**  Whether law enforcement personnel on scene obtained a valid search warrant to enter the subject residence, search for Ochoa, and effect the existing arrest warrant.

Plaintiffs Contend:  There is only one search warrant and affidavit in evidence. The search warrant authorized law enforcement to search the residence and apprehend Ochoa only.

Defendants Contend:  The officers obtained a search warrant to enter the home and arrest Ochoa. The combined warrants represented a judicial command to law enforcement personnel to locate, apprehend, and arrest Ochoa, and created a duty for law enforcement to comply with the command.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

13

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**Issue #11:**  Whether law enforcement personnel followed a series of escalating, non-lethal options starting with those causing minimal damage until Ochoa's failure to surrender resulted in a dynamic entry.

Plaintiffs Contend:  **Plaintiffs object to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party.** Subject to these objections, Plaintiffs contend that "non-lethal" is not part of the analysis in this case. What is part of the analysis is that the force used was destructive and unreasonable in violation of Plaintiffs' constitutional rights. Regardless, a concussion that is powerful enough to destroy a toilet or grenades that are powerful enough to shatter windows, shower doors, or cause nails to pop loose from studs cannot be considered "non-lethal".

Defendants Contend:  After obtaining the warrant, a vehicle called a "Bearcat" was driven over a chain link fence to get close enough to the residence to break two windows so that a "throw phone" could be placed in the residence to try to contact Ochoa.  Ochoa did not use the phone or exit the residence, but officers noted movement inside the residence at the south portion of the home.  The individual Defendants did not operate the Bearcat, or introduce the throw phones.  Robots were then placed into the residence to allow SWAT members to safely see what was happening inside. One robot observed a large portion of the interior but could not clear two rooms on the north side or several rooms with closed doors.  Ochoa still did not exit the residence and was warned that he had five minutes to do so before increased levels of force would become necessary to remove him.   Receiving no response, Sergeant Lapre deployed OC (Pepper Spray) into the residence toward the high parts of the walls, ceiling, and attic space.   After receiving no response, Lapre deployed CS, a micro powder irritant of a different kind, into the residence.  OC and CS are non-lethal irritants designed to encourage a barricaded subject to exit the building without exposing law enforcement, or himself, to the risk of serious bodily injury or death.  Large amounts of chemical can be necessary in smaller spaces where a barricaded subject has hidden in places difficult for the chemical to penetrate or where physical barriers in the residence prevent chemical agents from fully reaching all interior spaces.  After no response, the officers finally decided to physically enter the residence to locate and arrest Ochoa.  All of these activities were for a legitimate law enforcement purpose and none of the force was gratuitously applied outside the scope of such purpose.

**Issue #12:**  Whether law enforcement personnel decided to physically enter the subject residence to locate and arrest Ochoa.

Plaintiffs Contend: They did enter the residence despite knowing that movement had been seen under a tarp covering a vehicle outside the residence much earlier in

14

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

the day. Law enforcement personnel did not investigate this movement until after they had entered the house, destroyed property, and exited the house. Ochoa was found under this tarp.

Defendants Contend:  After no response, the officers finally decided to physically enter the residence to locate and arrest Ochoa.  The entry team included Sergeants Skedel, Lapre, and Engstrom, but not Gragg or Robinson.  To reduce the risk of serious bodily injury or death to the entry team, Sergeant Rory Skedel deployed two noise flash diversionary devices ("flashbangs") into parts of the residence where no innocent persons, or fire-creating accelerants, had been seen or were otherwise known to be present--a bathroom behind a locked door, and a room with a propped-up mattress.  The flashbang deployment did not injure anyone or cause any fires.  Though SWAT personnel believed Ochoa was still in the residence, officers did not locate him.  He was later found outside the residence hiding under a tarp covering a car.  He was arrested there without further incident. All of these activities were for a legitimate law enforcement purpose and none of the force was gratuitously applied outside the scope of such purpose.  Skedel, Lapre, and Engstrom did not search areas aside from areas that, based on their training and experience, Ochoa could have reasonably be hidden in.

**Issue #13:**  The nature and extent of damage caused by law enforcement use of force on property.

Plaintiffs Contend:  The real property and personal property was destroyed by Defendants. This is subject to Damages jury instructions and should not be rewritten here to fit any of the parties' narrative. Expanding this issue to discuss the types of recoverable monetary compensation here is an inappropriate location. The nature and extent of damage caused is a separate and distinct analysis than the calculation of what that damage entailed monetarily. Non-economic damages are recoverable in Plaintiffs' claims. Plaintiffs contend that all personal property was destroyed and that the real property was damaged so badly that a rebuild of the house is necessary.

Defendants Contend:  As noted in *Dalia v. U.S.,* a search of property pursuant to a warrant often entails damage to the property during the course of the search execution.   Such is the case here.  None of the physical damage, however, was gratuitously inflicted, and was always tethered to the legitimate law enforcement purpose of abiding by the warrant commands, and doing so in a way that maximizes the safety of officers and suspect alike.  If a jury finds for plaintiff on liability, non-economic losses are not recoverable where the issue is property damage, and the alleged property damage in this case was capable of remediation sooner than claimed by Plaintiff, and for much less than claimed by Plaintiff.

**Issue #14:**    Whether Plaintiffs took reasonable measures to mitigate any of their claimed damages.

15

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Plaintiff Contend:    **Plaintiff objects to this "Issue" as there are no separate jury instructions that will be issued to the jury instructing them to decide this issue, and this is not an "Issue" that has to be proved by any party. It is also subject to Plaintiffs' MIL #2 and #3 and a potential motion. The issue of homeownership has never been raised in the entirety of this litigation.** There is no evidence that Plaintiffs failed to mitigate their damages. Furthermore, Plaintiffs could not interfere with the police activities such as to stop tear gas or pepper spray from entering his property; to stop a bearcat from rolling over his fence and into his home; to stop Defendants from smashing every window of the property; to stop defendants from blowing up his toilet; to stop defendants from destroying two of his vehicles; to stop defendants from destroying all of his personal property; or to stop defendants from damaging the exterior of his home or his rv gate amongst other claims. The majority of Plaintiffs' personal property was destroyed – even after cleaning attempts. There is no duty to mitigate damages where the tortfeasor intended the harm that was caused. *See Cobb v. Snohomish Cnty.,* 935 P.2d 1384, 1390 (Wash. 1997). Additionally, following the filing of the Third Amended Complaint, Plaintiffs responded to voluminous additional discovery from Defendants related to both James Denby and Elizabeth Torres.

Defendants Contend:  This issue of homeowner is a standing issue that was raised as an affirmative defense long ago.   The ownership issue is the reason Plaintiffs sought, and were allowed, leave to amend the Third Amended Complaint, which includes new fact issues regarding home ownership.  Plaintiff Denby seeks a rebuild of a home that he did not own at the time the damage occurred.   Even then, Plaintiff has avoided repairs that could have, and should have, taken place to render the portion of the home habitable.  Although Plaintiff had personal property cleaned, he nonetheless declined to collect that property and instead abandoned it.  Failure to mitigate is a defense recognized by the Ninth Circuit, and applies to the failure to remediate that could have been accomplished here. *See,* Ninth Circuit Model Jury Instruction (Civil), § 5.3 (and supporting comments and/or authorities).

Plaintiff Torres was a partial deeded owner of the home along with non-party Wilma Logston.  Plaintiff Torres was dismissed from this action as a party nearly seven (7) years ago, and before discovery was authorized in this case.   Defendants have not received any updated disclosure regarding Ms. Torres, nor had the opportunity to discover Plaintiff Torres' damage claim through the due process afforded by Fed.R.Civ.P. 30-36, or to challenge any Torres-related damage issue after discovery pursuant to Fed.R.Civ.P. 56.  Defendants do not know the scope of Torres' claimed damages, or whether she took reasonable steps to mitigate those damages.

**Issue #15**:    Whether Plaintiff is entitled to punitive damages.

16

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Plaintiffs Contend:  Defendants' actions were recklessly indifferent to Plaintiffs' constitutional rights. They were far outside the scope of necessary force to apprehend Ochoa. He was unarmed, had no access to firearms, was one man against many armed officers who had completely surrounded the property for hours and were wandering through the property grounds unprotected for hours, had displayed no response in any way to law enforcement's and Defendants' actions, and was apprehended peacefully outside the residence. The Defendants' actions were extreme and outrageous especially knowing that there was movement under a tarp earlier in the day, they failed to investigate the movement, and Ochoa was eventually apprehended in that exact location after the Defendants and fellow law enforcement personnel completely destroyed Plaintiffs' property.

Defendants Contend:  Defendants did not know Plaintiffs prior to the subject incident and that there was no existing animus toward him.   They further contend that the actions, decisions, and conduct was not motivated by a malicious intent to harm Plaintiffs or the property outside the scope of legitimate law enforcement objectives, the threat posed by Ochoa, and the generally accepted outcome to complete the missions, and minimize harm to a suspect while maintaining the safety of law enforcement personnel. These aims are achieved through the use of law enforcement tools and uses of force as exemplified in this case.  Factually, no reasonable jury could conclude that punitive damages are appropriate when considering the legal standards for such an award

**Issue #16:**  Whether Plaintiff Denby held the home insurance policy solely and paid for same solely.

Plaintiffs Contend:   Plaintiffs object to this issue. This is subject to a Motion in Limine ruling. Insurance is not a factor in this trial. Furthermore, discovery responses were provided to Defendants. James Denby is the sole named person on the Homeowner's policies for decades.

Defendants Contend:  This issue was raised by the Plaintiffs in the Third Amended Complaint and relied on by the Court in denying, in part, the motion to dismiss the Third Amended Complaint, and therefore renders it relevant, notwithstanding the posture of the case before the Third Amended Complaint.  Insurance is now a factor in this trial. Defendants have not received sufficient updated disclosure regarding insurance procurement, payment, or any arrangement between Denby, Torres and Logston regarding insurance coverage or who would handle any claims issues. Defendants have not had the opportunity to discover this factual issue newly raised in the Third Amended Complaint, and utilized by the Court on its Rule 12(b) decision on standing, through the due process afforded by Fed.R.Civ.P. 30-36, or to challenge this issue after discovery pursuant to Fed.R.Civ.P. 56.   Defendants have not discovered the scope or nature of this newly inserted factual issue.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**Issue #18:** Whether Plaintiff Denby was solely responsible for maintaining the real property.

Plaintiffs Contend:    Plaintiff James Denby was solely responsible for maintaining the real property. Both James Denby and Elizabeth Torres will testify to the same. Defendants were provided responses to their discovery requests issued after the status conference held on February 18, 2026.

Defendants Contend:  This issue was raised by the Plaintiffs in the Third Amended Complaint and relied on by the Court in denying, in part, the motion to dismiss the Third Amended Complaint, and therefore renders it relevant, notwithstanding the posture of the case before the Third Amended Complaint. Defendants have not received sufficient updated disclosure regarding home or property maintenance, payment of same, or any arrangement between Denby, Torres and Logston regarding this newly inserted factual issue.   Defendants have not had the opportunity to discover this factual issue newly raised in the Third Amended Complaint, and utilized by the Court on its Rule 12(b) decision on standing, through the due process afforded by Fed.R.Civ.P. 30-36, or to challenge this issue after discovery pursuant to Fed.R.Civ.P. 56.   Defendants have not discovered the scope or nature of this newly inserted factual issue.

**Issue #19:**   Whether Plaintiff Denby was solely responsible for paying property taxes.

Plaintiffs Contend:   Plaintiff James Denby was solely responsible for property taxes for many years. Both James Denby and Elizabeth Torres will testify to the same. Defendants were provided responses to their discovery requests issued after the status conference held on February 18, 2026.

Defendants Contend:  This issue was raised by the Plaintiffs in the Third Amended Complaint and relied on by the Court in denying, in part, the motion to dismiss the Third Amended Complaint, and therefore renders it relevant, notwithstanding the posture of the case before the Third Amended Complaint. Defendants have not received sufficient updated disclosure regarding property taxes, payment of same, or any arrangement between Denby, Torres and Logston regarding this newly inserted factual issue.   Defendants have not had the opportunity to discover this factual issue newly raised in the Third Amended Complaint, and utilized by the Court on its Rule 12(b) decision on standing, through the due process afforded by Fed.R.Civ.P. 30-36, or to challenge this issue after discovery pursuant to Fed.R.Civ.P. 56.   Defendants have not discovered the scope or nature of this newly inserted factual issue.

**Issue #20:**  The nature, meaning, and effect of the original deeds and any quitclaim deed following December 17, 2014.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Plaintiffs Contend:    Plaintiffs object to this "issue". It is the same in substance as Issue 3. Subject to those objections, Elisabeth Torres and Wilma Logston were named on the deed of the property, but James Denby was considered the owner of the property by both of them as evidenced by a quitclaim deed that was filed. Plaintiff James Denby had all indicia of ownership, paid property taxes, maintained the property for approximately forty (40) years at the time of this Incident and has continued to do so to the best of his ability. Plaintiff Elisabeth Torres will testify that James Denby was always considered the owner of the property.

Defendants Contend:    Defendants have not received any updated disclosure regarding the position taken by Denby and Torres regarding the interpretation of the deed as of December 17, 2014, or the nature, meaning, and effect of that original deed or any following attempts to execute a quitclaim deed among Torres, Logston, and Denby.    The Third Amended Complaint newly alleges some actual written, verbal, tacit, or other form of agreement that Denby was the home owner, notwithstanding the plain language of the deed.  Defendants have not had the opportunity to discover this factual issue newly raised in the Third Amended Complaint, and utilized by the Court on its Rule 12(b) decision on standing, through the due process afforded by Fed.R.Civ.P. 30-36, or to challenge this issue after discovery pursuant to Fed.R.Civ.P. 56.   Defendants have not discovered the scope or nature of this newly inserted factual issue.   The Court has as well.  In its January 14, 2026 Order, the Court noted that "Defendants assert that the Court should not consider extrinsic evidence in construing the deed . . . However , the deed is not before the Court for interpretation."   (Doc. 275, pg. 10 of 13, nt. 5).  However, the issue may be presented upon facts pursuant to Rule 56, and to the jury if a Rule 56 ruling does not address the issue of using extrinsic evidence to contradict an unambiguous deed.   Accordingly, the Court recognizes this issues as one that cannot be resolved under Rule 12(b), but may later come before the Court, or jury, for resolution.

**Issue #21:**  Torres reasons for sitting on her rights, and waiting over six years to participate in prosecuting a claim.

Plaintiffs Contend:    Plaintiffs object to this issue in its entirety. Plaintiff Torres is a plaintiff in this case. Furthermore, discovery responses were sent to Defendants after the status conference held on February 18, 2026. Ms. Torres understood and believed that Jim Denby owned the Property.

Defendants Contend:  Defendants have not received any updated disclosure or had an opportunity to discover the underlying facts through the due process afforded by Fed.R.Civ.P. 30-36, or to challenge this issue after discovery pursuant to Fed.R.Civ.P. 56.

19

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**Issue #22:** The scope, nature, and character of Plaintiffs' alleged extrinsic evidence to show Plaintiff Denby was the true owner of the real property, notwithstanding the unambiguous language of the deed.

Plaintiffs Contend:    Plaintiffs object to this issue in its entirety. It is duplicative of multiple other issues. Furthermore, discovery responses were sent to Defendants after the status conference held on February 18, 2026.

Defendants Contend:  Defendants have not received any updated disclosure or had an opportunity to discover the underlying facts through the due process afforded by Fed.R.Civ.P. 30-36, or to challenge this issue after discovery pursuant to Fed.R.Civ.P. 56.

**Issue #23:**  Whether Plaintiff Torres is competent to participate in pursuing her claims and/or testifying at trial.

Plaintiffs Contend: Plaintiff's counsel has represented Ms. Torres since 2016 and hhasnever had any reason to question her competency to testify as to the issues raised in this case. Plaintiffs' counsel has met with her in person very recently, and still has no reason to question her competency to testify as to the issues raised in this matter.

Defendants Contend:  Defendants have learned only within the last few days that Ms. Torres has resided at a memory care facility since 2024, and suffers from serious medical and mental health care issues that will prevent her presence at trial, her ability to travel to the trial, and to provide competent testimony.  Upon information and belief, Plaintiff, and counsel, have been aware of Ms. Torres' condition for some time, and concealed that information while moving to bring her into this case through the motion to amend, responding to discovery, and resisting deposition. Ms. Torres' daughters were interviewed and noted that whether Ms. Torres can testify in this matter is an issue to address with her "doctors." Ms. Torres could have been brought into this case after dismissal in 2019, and Plaintiffs' decision to wait has created a previously undisclosed prejudice that should have prevented her inclusion in this case.  Defendants cannot adequately defend this case if Ms. Torres is unable to testify.

**Issue #24:** Whether Plaintiffs, by and through the City of Casa Grande and Pinal County, demanded that Ochoa remove himself from their residence.

Plaintiffs Contend: Ochoa was not in the Plaintiff's residence on the day of the incident.

Defendants Contend: See Plaintiffs' Third Amended Complaint where they allege Plaintiffs demanded, by and through Casa Grande and Pinal County personnel, that

Ochoa remove himself from the residence, that he remained in the residence despite the demands made on behalf of Plaintiffs by the City and County, that the City and County had to physically remove Ochoa from the residence on behalf of Plaintiffs, and that Ochoa's physical invasion of the home caused damage to Plaintiffs. These allegations were admitted by Defendants. These allegations were admitted to by Defendants. There is no contested fact issue on these points.

**Issue #25:** Whether Ochoa had to be physically removed from the residence based on his invasion of the home, and later concealment to avoid apprehension.

Plaintiffs Contend: Ochoa was not in the Plaintiff's residence on the day of the incident.

Defendants Contend: See Plaintiffs' Third Amended Complaint where they allege Plaintiffs demanded, by and through Casa Grande and Pinal County personnel, that Ochoa remove himself from the residence, that he remained in the residence despite the demands made on behalf of Plaintiffs by the City and County, that the City and County had to physically remove Ochoa from the residence on behalf of Plaintiffs, and that Ochoa's physical invasion of the home caused damage to Plaintiffs. These allegations were admitted by Defendants. These allegations were admitted to by Defendants. There is no contested fact issue on these points.

**Issue #26:** Whether Ochoa's physical invasion of the Plaintiffs' residence is the direct and proximate cause of damage to the residence, and damage amount caused by his trespass.

Plaintiffs Contend: Ochoa was not in the Plaintiff's residence on the day of the incident. Even if he was, that did not justify the destruction of Plaintiff's residence by Defendants. Defendants' conduct was an intervening and superseding cause.

Defendants Contend: See Plaintiffs' Third Amended Complaint where they allege Plaintiffs demanded, by and through Casa Grande and Pinal County personnel, that Ochoa remove himself from the residence, that he remained in the residence despite the demands made on behalf of Plaintiffs by the City and County, that the City and County had to physically remove Ochoa from the residence on behalf of Plaintiffs, and that Ochoa's physical invasion of the home caused damage to Plaintiffs. These allegations were admitted by Defendants. These allegations were admitted to by Defendants. There is no contested fact issue on these points other than the amount of damages.

**B.**    The following are the issues of law to be determined:

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**Issue #1**:    Whether any Defendant violated the Fourth Amendment to the United States Constitution based on their individual use of force during the search.

Plaintiffs Contend:   The force applied by Defendants was objectively unreasonable and far in excess of anything that could be deemed reasonable. There was no immediate threat and Ochoa was not even in Plaintiffs' house. The force applied was far in excess of that necessary to execute the search warrant. At any time during the nearly seven (7) hour incident, any of the Defendants could have stopped the others – including non-defendants from using excessive force. The force used was destructive and unreasonable in violation of Plaintiffs' constitutional rights. Concussions that are powerful enough to destroy a toilet or grenades that are powerful enough to shatter windows, shower doors, or cause nails to pop loose from studs cannot be considered reasonable. All of the internal structure of the property was coated in CS and OC spray/gas/dust. All of the personal property was damaged or destroyed. The law enforcement officers and deputies including Defendants did nothing to ventilate the property or warn any of the residents or owners that the property was dangerous to enter, causing physical harm to James Denby when he entered the property after law enforcement disappeared. Movement was seen under a tarp covering a vehicle early on in the incident and was not investigated by officers despite being feet from the tarp. Ochoa was found under that tarp only after defendants and other law enforcement personnel had used every destructive mechanism in their arsenal and only after the house and personal property had been completely destroyed.

Defendants Contend.  The force applied during the search was reasonable in that Ochoa was a felony suspect who had a significant criminal history, was an immediate threat to officers and others on scene, and was fleeing and or escaping apprehension and arrest.  The law enforcement officers employed a series of escalating, non-lethal tactics—including verbal commands, the deployment of a throw phone, surveillance robots, and chemical agents—before ultimately breaching and clearing the residence that involved the use of two flash bangs. Ochoa was later found concealed under a tarp in the backyard; a fact unknown to law enforcement until his discovery.   Defendants further contend that none of them violated the Fourth Amendment to the Constitution, either by a personal use of force, or an alleged failure to intervene or integral participation in any Constitutional violation.

**Issue #2**:    Whether Defendants are entitled to qualified immunity.

Plaintiffs Contend:
This is an issue of law that has been decided by not only this Court, but also affirmed through the Ninth Circuit. Defendants are not entitled to qualified immunity.

Defendants Contend: The force applied during the search was reasonable in that Ochoa was a felony suspect who had a significant criminal history, was an

22

immediate threat to officers and others on scene, and was fleeing and or escaping apprehension and arrest. The law enforcement officers employed a series of escalating, non-lethal tactics—including verbal commands, the deployment of a throw phone, surveillance robots, and chemical agents—before ultimately breaching and clearing the residence that involved the use of two flash bangs. Ochoa was later found concealed under a tarp in the backyard; a fact unknown to law enforcement until his discovery. Defendants further contend that none of them violated the Fourth Amendment to the Constitution, either by a personal use of force, or an alleged failure to intervene or integral participation in any Constitutional violation; and that none of them, when their individual conduct is analyzed as required by Ninth Circuit case law, violated clearly established law. Each individual Defendant is entitled to qualified immunity. Defendants continue to have the responsibility to raise qualified immunity under Rule 56 as to Ms. Torres (as or if necessitated by further discovery) and Rule 50 during trial and intend on doing so.

**Issue #3**:        Whether punitive damages may be considered by the jury.

Plaintiffs Contend: Defendants' actions were recklessly indifferent to Plaintiffs' constitutional rights. They were far outside the scope of necessary force to apprehend Ochoa. He was unarmed, had no access to firearms, was one man against many armed officers who had completely surrounded the property for hours and were wandering through the property grounds unprotected for hours, had displayed no response in any way to law enforcement's and Defendants' actions, and was apprehended peacefully outside the residence. The Defendants' actions were extreme and outrageous especially knowing that there was movement under a tarp earlier in the day, they failed to investigate the movement, and Ochoa was eventually apprehended in that exact location after the Defendants and fellow law enforcement personnel completely destroyed Plaintiffs' property.

Defendants Contend: The Defendants did not know Plaintiffs prior to the subject incident and that there was no existing animus toward him. Defendants contend that their actions were all for a legitimate law enforcement/safety purpose and that the search was limited to the scope of the warrants. Defendants further contend that none of their actions or conduct were not motivated by a malicious, intentional or reckless intent to harm outside the scope of legitimate law enforcement objectives, the threat posed by Ochoa, and the generally accepted outcome to minimize harm to property and the suspect while maintaining the safety of law enforcement personnel. These aims are achieved through the use of law enforcement tools employed in this case. The conduct of Defendants do not rise to the standard for an award of punitive damages, and no reasonable jury could conclude otherwise under the totality of the facts and circumstances of this law enforcement encounter. Defendants contend the proper standard for assessing punitive damages is by clear and convincing evidence.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

23

**Issue #4:**    Whether the individual Defendants can be held responsible for the acts or omissions of other Deputies or Officers.

Plaintiffs Contend:   This is not a vicarious liability issue. It is established law that police officers have a duty to intervene when they have a reasonable opportunity and they know that another officer is violating the constitutional rights of a person.

Defendants Contend:        This is a Constitutional claim in which there is an absence of vicarious liability under §1983.   The elements of failure to intervene must be faithfully observed as to each Defendant individually and qualified immunity applied individually as well to ensure that vicarious liability is not imported erroneously as a theory of liability as to any individual Defendant in this matter.

**Issue #5:**    Whether either Plaintiff has standing to assert any Constitutional violation.

Plaintiffs Contend:   At the time, Logston's and Torres' names were on the deed, but Mr. Denby was responsible for all aspects of the house – including paying property taxes, maintaining the property, and held the insurance policy for the house. Insurance is subject to Plaintiffs' MIL #2, but for purposes of resolution of issues pre-trial, this Court can review the relevant documents from insurance. Furthermore, Logston and Torres quitclaimed their interests in the property on December 16, 2015. Mr. Denby and Ms. Torres will both testify that the house was supposed to be recorded in Mr. Denby's name prior to the event, but that it was just an oversight. Finally, Ms. Torres is a plaintiff in this case.

Defendants Contend   Standing was raised by motion with Plaintiff Torres resulting in her dismissal before discovery, and was also raised as to Denby in the first Answer filed in this case.   Additionally, the deeds showing Denby's lack of real property ownership were exchanged with Denby.  This is a Constitutional claim in which there is a property damage claim under §1983 and the Fourth Amendment. Such rights under the Fourth Amendment are personal.   Plaintiff was not the owner of the home at the time of this event and, as such, he is not a real Plaintiff in interest having standing to make a Constitutional claim or to obtain damages. When Plaintiff did obtain ownership of the home, he took the home in the condition he received it and cannot seek damages for alleged past damage to the home by any of the individual Defendants.

Plaintiff Torres was a partial deeded owner of the home along with non-party Wilma Logston.  Plaintiff Torres was dismissed from this action as a party nearly seven (7) years ago, and before discovery was authorized in this case.   Defendants have not received any updated disclosure regarding Ms. Torres, nor had the opportunity to discover Plaintiff Torres' damage claim through the due process

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

afforded by Fed.R.Civ.P. 30-36, or to challenge any Torres damage issue after discovery pursuant to Fed.R.Civ.P. 56.    Defendants do not know the scope of Torres' claimed damages, or whether she took reasonable steps to mitigate those damages.  Defendants understand that Torres is likely incapable of appearing at trial or testifying.

**Issue #6:**    Whether either Plaintiff may obtain emotional distress or non-economic damages

Plaintiffs Contend:  Arizona recognizes such damages as anxiety and loss of enjoyment of life. Property loss in Arizona is not limited to economic loss. In *Thomas v. Goudreault*, 163 Ariz. 159, 786 P.2d 1010 (App. 1989) the Arizona Court of Appeals held that a tenant could recover damages for emotional distress from a landlord who failed to properly maintain and repair the leased property. In so holding the Court reasoned that:

In *Farr v. Transamerica Occidental Life Ins. Co.*, 145 Ariz. 1, 699 P.2d 376 (App. 1984), this court held that emotional distress damages could be awarded in an action for bad faith breach of an insurance contract. We rejected the argument that because there was no intentional infliction of emotional distress and no outrageous conduct the plaintiffs were not entitled to an instruction on emotional distress. It is not necessary to assert intentional infliction of emotional distress as the exclusive tort to recover damages for emotional or mental distress.

The primary reason for precluding recovery of mental distress damages is that to permit such recovery could open the door to fictitious claims. *See Crisci v. Security Insurance Co.*, 66 Cal.2d 425, 434, 58 Cal. Rptr. 13, 19, 426 P.2d 173, 179 (1967). We concluded in Farr that once a claimant has proven a loss of property, he can also recover damages for emotional distress. This principle is well established when the loss involves an interference with real property rights such as a tortious interference with the use and enjoyment of land. *See Acadia, California, Ltd. v. Herbert*, 54 Cal.2d 328, 5 Cal. Rptr. 686, 353 P.2d 294 (1960); *Herzog v. Grosso*, 41 Cal.2d 219, 259 P.2d 429 (1953). The principle that once property damages have been established, emotional distress damages may follow is similarly applicable in the instant case, since without question the alleged acts of the Goudreaults constituted an interference with the Thomases' use and enjoyment of the leased property.

A tenant who is not provided with necessary services and maintenance of the leased premises as required under the Act suffers property damage because the value of his leasehold is decreased by the absence of adequate water, heat, cooling or proper maintenance of the building. However, the more immediate damage that he suffers is the annoyance and discomfort of living in inadequate housing. *See Stoiber*, 101 Cal. App.3d 903, 162 Cal. Rptr. 194 (1980); *Brewer*, 287 Or. 435, 600 P.2d 398 (1979); *Hilder*, 144 Vt. 150, 478 A.2d 202 (1984). Whether this condition was

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

intentionally or negligently caused by the landlord is not relevant to the actual damages suffered by the tenant.

Defendants Contend:   This case is about damage to property.   Plaintiff cannot obtain damages for emotional distress or other non-economic harm arising from damage to property.  The only remaining claim upon which damages may be based is the Fourth Amendment excessive force on property claim.

Plaintiff Torres was a partial deeded owner of the home along with non-party Wilma Logston.  Plaintiff Torres was dismissed from this action as a party nearly seven (7) years ago, and before discovery was authorized in this case.   Defendants have not received any updated disclosure regarding Ms. Torres, nor had the opportunity to discover Plaintiff Torres' damage claim through the due process afforded by Fed.R.Civ.P. 30-36, or to challenge any Torres damage issue after discovery pursuant to Fed.R.Civ.P. 56.   Defendants do not know the scope of Torres' claimed damages, or whether she took reasonable steps to mitigate those damages.

**Issue #7:**      Whether Defendants are the cause of Plaintiffs' claimed damages.

Plaintiffs Contend:  Ochoa never entered the residence. Ochoa did not pull the trigger on the grenade launchers. Ochoa did not drive the bearcat. Ochoa did not break windows. Ochoa did not deploy NFDDs. Ochoa never threatened anyone. Ochoa hid under a tarp. That is the extent of what Ochoa did. All physical destruction was solely at the hands of the Individual Defendants and law enforcement personnel.

Defendants Contend:      Ochoa's decision to enter the property was the cause of damage in this matter.   Defendants contend this factual issue is raised in Plaintiffs' Third Amended Complaint where they allege Plaintiffs demanded, by and through Casa Grande and Pinal County personnel, that Ochoa remove himself from the residence, that he remained in the residence despite the demands made on behalf of Plaintiffs by the City and County, that the City and County had to physically remove Ochoa from the residence, and that Ochoa's physical invasion of the home caused damage to Plaintiffs.  These allegations were admitted by Defendants.   Additionally, Plaintiffs' Third Amended Complaint alleges that Sergeant Engstrom and Officer Wilson actually observed Ochoa attempt to leave the residence, but instead went back inside.  These allegations were admitted to by Defendants.  There is no contested fact issue on these points, and Ochoa is responsible for damages as a matter of law.

**Issue #8:**      Whether Torres' claims are barred by the statute of limitations.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Plaintiffs Contend:    Torres' claims relate back to the filing of the original Complaint. (Doc. 275). Plaintiff Torres responded to voluminous discovery issued by Defendants following the February 18, 2026 status conference. This Court granted the Protective order to the extent that the Court will not require Plaintiffs to be deposed. (Doc. 294). Defendants have received updated disclosures regarding Plaintiff Torres.

Defendants Contend:    Although denied under the Rule 12(b)(6) standard, the statute of limitations issue, and whether the purposes of the statute compared to those of relation back render the statute of limitations enforceable may also implicate fact issues.  Plaintiff Torres was dismissed without prejudice which left her with a choice to either amend the complaint by this Court's deadline or re-file. *See e.g., Weissmueller v. Breg Inc.*, No. CV-14-02802-PHX-JJT, 2016 WL 3916166, at *5 (D. Ariz. July 20, 2016).  Plaintiff Torres did not dispute during the Rule 12(b) phase that she is well-beyond the statute of limitations as to her constitutional claims. The Supreme Court has also made clear that "a plaintiff who 'has slept on his rights' should generally be barred from asserting those rights once the limitations period has passed." *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974); *see also, Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 352 (1983) ("[l]imitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights . . .").  "[T]he purpose of relation back [is] to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure . . . for resolving disputes on their merits." *Krupski,* 130 S.Ct. at 2494.   These countervailing purposes create a tension between the application of relation back, and the statutes of limitation.  *See, Yorden v. Flaste,* 374 F.Supp. 516, 520 (D. Del. 1974).  In resolve this tension for purposes of Rule 56, or at trial, facts regarding why Ms. Torres has re-appeared after six years are necessary, but not yet discovered. Defendants have not received any updated disclosure regarding Ms. Torres, nor had the opportunity to discover Plaintiff Torres' bases for delay through the due process afforded by Fed.R.Civ.P. 30-36, or to challenge Torres' claim of timeliness after discovery pursuant to Fed.R.Civ.P. 50 and/or 56.

**Issue #9:**    Whether extrinsic evidence may be relied upon to claim real property ownership in the face of an unambiguous deed or title showing the owners of the real property.

Plaintiffs Contend:  Yes. Even a tenant can bring claims for damage to leased property. It is undisputed that Plaintiff had full and unlimited rights to possess, use and enjoy the residence on the date Defendants destroyed it and into the unlimited future. He not only enjoyed the benefits but also bore the burdens of ownership. Plaintiff paid the taxes. He was the named insured on the homeowner's insurance policy and paid all the premiums. He took care of all the maintenance and repairs on the property. The law is clear that even a mere tenant has a valuable interest in

27

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

the leased property and can bring an action to recover for damage thereto. *In Thomas v. Goudreault,* 163 Ariz. 159, 786 P.2d1010 (App. 1989) the Arizona Court of Appeals held that a tenant could recover damages for emotional distress from a landlord who failed to properly maintain and repair the leased property. This Court can also find Denby has third-party standing – the technical legal title owners were Denby's sister, Elisabeth Torres, and his mother. Plaintiff's mother is now deceased. Ms. Torres will testify that it was the family's intent that Plaintiff own the residence and that his omission from the deed was an oversight. "A litigant is granted third-party standing because the tribunal recognizes that her interests are aligned with those of the party whose rights are at issue and that the litigant has a sufficiently close connection to that party to assert claims on that party's behalf. *See Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1166 n. 1 (9th Cir.2002) (Berzon, J., concurring) ("[T]hird-party standing recognizes a wide range of relationships in which the third-parties' interests are sufficiently aligned with the interests of the rights-holder that standing is appropriate."); *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743,747 (5th Cir.1994); *Harris v. Evans*, 20 F.3d 1118, 1124-25 (11th Cir.1994) (enbanc) ("Courts have repeatedly emphasized that the key to third-party standing analysis is whether the interests of the litigant and the third party are properly aligned...."); *Canfield Aviation, Inc. v. Nat'l Transp. Safety Bd.*,854 F.2d 745, 748 (5thCir.1988); *cf. Newdow*, 542 U.S. at 15, 124 S.Ct. 2301; *Craig*, 429 U.S. at 195, 97 S.Ct.451." *Pony v. County of Los Angeles*, 433 F.3d 1138, 1147-48 (9th Cir. 2006)

Defendants Contend:    Plaintiffs' Third Amended Complaint raises at least four areas in which Plaintiffs allege Plaintiff James Denby was the true owner of the real property/residence in question, notwithstanding a deed clearly identifying Torres and Logston as the sole owners.   The Court did not reach this issue under Rule 12(b) because, of course, the deed was not attached to the Third Amended Complaint and made available for interpretation.    That is a task suited for consideration under Rule 56.   The parol evidence rule bars the use of extrinsic evidence to show that real property was conveyed subject to use or ownership that does not appear in the conveyance instrument. *See IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 67-68, ¶¶ 20-21 (App. 2011). It is not a rule of evidence; it is a rule of substantive contract law. *Rental Development Corp. of America v. Rubenstein Construction Co.,* 96 Ariz. 133, 136–137 (1964).  Defendants have not received sufficient updated disclosure on this issue, nor had the opportunity to discover Plaintiffs' alleged parol evidence, or whether that evidence overcomes the above authorities. Defendants have not yet been afforded the due process provided under Fed.R.Civ.P. 30-36, or to challenge Plaintiffs' alleged "ownership" theory after discovery pursuant to Fed.R.Civ.P. 56.

**Issue #10:**    Whether Plaintiff James Denby's recovery is limited as a non-owner.

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Plaintiffs Contend:  No. Even a tenant can bring claims for damages to leased property. Even a tenant can bring claims for damage to leased property. It is undisputed that Plaintiff had full and unlimited rights to possess, use and enjoy the residence on the date Defendants destroyed it and into the unlimited future. He not only enjoyed the benefits but also bore the burdens of ownership. Plaintiff paid the taxes. He was the named insured on the homeowner's insurance policy and paid all the premiums. He took care of all the maintenance and repairs on the property. The law is clear that even a mere tenant has a valuable interest in the leased property and can bring an action to recover for damage thereto. In Thomas v. Goudreault, 163 Ariz. 159, 786 P.2d1010 (App. 1989) the Arizona Court of Appeals held that a tenant could recover damages for emotional distress from a landlord who failed to properly maintain and repair the leased property. This Court can also find Denby has third-party standing – the technical legal title owners were Denby's sister, Elisabeth Torres, and his mother. Plaintiff's mother is now deceased. Ms. Torres will testify that it was the family's intent that Plaintiff own the residence and that his omission from the deed was an oversight. "A litigant is granted third-party standing because the tribunal recognizes that her interests are aligned with those of the party whose rights are at issue and that the litigant has a sufficiently close connection to that party to assert claims on that party's behalf. See Coal. of Clergy, Lawyers, & Professors v. Bush, 310 F.3d 1153, 1166 n. 1 (9th Cir.2002) (Berzon, J., concurring) ("[T]hird-party standing recognizes a wide range of relationships in which the third-parties' interests are sufficiently aligned with the interests of the rights-holder that standing is appropriate."); Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops, 24 F.3d 743,747 (5th Cir.1994); Harris v. Evans, 20 F.3d 1118, 1124-25 (11th Cir.1994) (enbanc) ("Courts have repeatedly emphasized that the key to third-party standing analysis is whether the interests of the litigant and the third party are properly aligned...."); Canfield Aviation, Inc. v. Nat'l Transp. Safety Bd.,854 F.2d 745, 748 (5thCir.1988); cf. Newdow, 542 U.S. at 15, 124 S.Ct. 2301; Craig, 429 U.S. at 195, 97 S.Ct.451." Pony v. County of Los Angeles, 433 F.3d 1138, 1147-48 (9th Cir. 2006)

Defendants Contend:    Fourth Amendment rights are personal and may not be asserted vicariously. *Alderman v. U.S.*, 394 U.S. 165, 174 (1969); *Feliz v. Cty. Of Orange,* 2012 WL 12887770 (E.D. Cal., March 13, 2012).  The Fourth Amendment standing law applies to claims made against public officials and public entities. *See Longoria v. Pinal Cty.*, No. CV-15-00043-PHX-SRB, 2015 WL 13654010, at *2 (D. Ariz. Apr. 15, 2015); *Carlson v. Cnty. of L.A.*, No. CV 13-01472-JAK DFM, 2015 WL 365994, at *14 (C.D. Cal. Jan. 27, 2015).  Regarding real property, one who stands in the position of renter or lessee only, measures his or her damages based on the fair market value *of the lease* before and after a taking. *Mobil Oil Corp. v. Phoenix Cent. Christian Church*, 138 Ariz. 397, 400 (App. 1983). Thus, a party who does not stand in the position of an owner is not entitled to damages related to the destruction or taking of the property that they occupy.  *See,*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

*id.*   Plaintiff Denby is allowed damages only for personal property loss as no loss has been disclosed measured by a loss of a leasehold interest.

**Issue #11:**  Whether Plaintiffs' alleged damages for rebuild costs are barred.

Plaintiffs Contend:  No. Ninth Circuit Model Jury Instruction (Civil) 5.2, "Measure and Types of Damages" specifically provides for recovery of damages for "the reasonable value of necessary repairs to any property that was damaged...". If a teardown is necessary to rebuild, then that is part of the damages recoverable.

Defendants Contend:   Per the jury instructions offered in this case, and those contained in the Ninth Circuit Model Jury Instructions (Civ), neither Plaintiff Torres nor Plaintiff Denby are entitled to damages based on a complete tear down and rebuild of the residence.  Ninth Circuit Model Jury Instruction (Civil) 5.1/5.2 regarding measure of damages for property damage.

**Issue #12:**  Whether Plaintiff Torres is competent to prosecute her claims in this case without appointment of a guardian; or to testify at trial.

Plaintiffs Contend: Ms. Torres is competent to testify as to the matters at issue in this lawsuit. As discussed herein, potential accommodations may be necessary.

Defendants Contend:  Ms. Torres is not competent to make the decision to be involved in this case as a plaintiff, participate in discovery or trial, or to competently testify at trial.   Additionally, Plaintiffs take contradictory positions that create a conflict. Denby claims homeownership without a deed showing ownership, and based on parole or extrinsic evidence insufficient to establish standing as the homeowner, while Torres, per the Third Amended Complaint, maintains standing as the deeded homeowner.  Arguing that Denby is the homeowner is detrimental to Torres potential recovery, and arguing Torres is the deeded homeowner is detrimental to Denby's.  Ms. Torres requires an appointed guardian to ensure her interests are being protected and she is receiving conflict-free representation.  **Without waiving the claim of error associated with Torres presence in this case as a named Plaintiff, Defendants are mindful of their general ethical obligations to ensure both fairness and advocacy in all proceedings, and request the Court conduct a hearing regarding Torres's competence to bring her claims, appear at trial and testify at trial; and determine whether, in the interest of justice, Torres is entitled to a guardian.**

**Issue #13:**  Whether Defendants have been deprived of due process under the Court rules in this case.

Plaintiffs Contend: No. Deborah Denby is James Denby's ex-wife and was disclosed to Defendants through divorce paperwork retrieved and disclosed as part of Plaintiffs' responses to Defendants' discovery requests. Furthermore, as discussed herein, Ms.

Torres is competent to testify about the issues raised in this case. Accommodations may be necessary.

Defendants Contend:    Defendants have been deprived of adequate discovery, including deposition discovery of Plaintiffs.    Additionally, Plaintiffs have added entirely new witnesses that were not previously disclosed and for which Defendants have had no opportunity to conduct discovery, i.e., witness Deborah Denby below.  As noted above, Torres may not be capable of asserting her claims, appearing, or testifying in this matter.

## 5.   LIST OF WITNESSES

**A.**    List of Witnesses

**<u>Plaintiff</u>**

(i)    Witnesses who shall be called at trial:

a.   <u>James W. Denby</u>
c/o Mills + Woods Law PLLC

Mr. Denby is the Plaintiff in this action and will testify as a fact witness. He will testify about his home in Casa Grande, which has for generations been in his family – among the original settlers of the area. He will testify as to the events that occurred on the day of the occurrence at issue, the damage done to his home and personal property, and their current condition. He will testify as to his life in the home both before and after the occurrence, including the difficulty and impossibility of performing tasks on the property due to the damage done by Defendants.

b.   <u>Peggy Huff</u>
c/o Mills + Woods Law PLLC

Ms. Huff is James Denby's close friend. She has knowledge of the condition of Mr. Denby's property before the incident, how Mr. Denby lived his life prior, the condition of the property following the incident, the issues that Mr. Denby has dealt with since the incident, and how Mr. Denby has lived following the incident.

c.   <u>William Denby</u>
c/o Mills + Woods Law PLLC

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

31

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

William Denby is the Plaintiffs' son and will testify as a fact witness. He will testify about the Plaintiffs' home in Casa Grande, which has for generations been in his family – among the original settlers of the area. He will testify as to the events that occurred on the day of the occurrence at issue, the damage done to the home and personal property, and their current condition. He will testify as to his life in the home both before and after the occurrence, including the difficulty and impossibility of performing tasks on the property due to the damage done by Defendants.

d. <u>Jon Passey</u>
Capital Property Specialists
2450 S. Gilbert Rd., Suite 100
Chandler AZ  85286

Mr. Passey will be called to testify as an expert witness. He prepared a report dated May 15, 2022. His expertise includes residential and commercial real estate construction, remediation, and mitigation. He will opine that the existing structure of Plaintiffs' home should be demolished and rebuilt. He will further estimate that the baseline cost of this is approximately $284,488.75 as of May 15, 2022.

e. <u>Mark R. Hafkey</u>
P.O. Box 344
Raymon. CA. 93653

Mr. Hafkey will be called to testify as an expert witness in the area of police policies, practices and procedures. He prepared a report dated May 15, 2022. He will testify that the conduct of the Defendant officers was grossly excessive and unreasonable under the 4th Amendment.

f. <u>Benjamyn Marks</u>
Indoor Science
503.608.2810
benjamyn.marks@gmail.com
www.linkedin.com/in/benjamynmarks

Mr. Marks will be called to testify as an expert witness in the area of tear gas contamination and remediation. He signed a Declaration dated May 12, 2022. He will testify as to reasonable

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

safety and other procedures to remediate the tear gas contamination of Plaintiffs' home.

g. Tim Tipton
(405) 833-4912
TTipton179@gmail.com

Mr. Tipton will be called to testify as a rebuttal expert witness. He prepared a report on [DATE] in response to Defendants' Expert Report of Nathan Auvenshine.

h. Joanna Wilson
Address: 509 W 2nd St, Casa Grande, AZ 85122
Phone: (520) 858-9452

Ms. Wilson is the proprietor of the Boots and Saddle Motel and is a friend of Mr. Denby. She will testify as to Mr. Denby's hotel stays following the incident and was present with Mr. Denby during the majority of the incident and can testify to the actions she saw during the incident.

i. Abram Ochoa
ASPC Tucson, Santa Rita Unit
ABRAM P. OCHOA 201115
PO Box 24401
Tucson, AZ 85734
United States

Mr. Ochoa will be called to testify regarding his knowledge of the incident, his criminal history, his dispute with his girlfriend on the date of the incident and his location and action in connection with the incident.

j. David Engstrom
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mr. Engstrom is a Defendant in this matter and is expected to testify to his actions and omissions during the incident. He is further expected to testify regarding his interactions with Abram Ochoa.

k.  Christopher Lapre
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Lapre is a Defendant in this matter and is expected to testify to his actions and omissions during the incident.

l.  Sergeant Brian Gragg
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Gragg is a Defendant in this matter and is expected to testify to his actions and omissions during the incident.

m.  Rory Skedel
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Skedel is a Defendant in this matter and is expected to testify to his actions and omissions during the incident.

n.  Jacob H. Robinson
c/o James M. Jellison
Jellison Law Offices, PLLC

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Robinson is a Defendant in this matter and is expected to testify to his actions and omissions during the incident.

(ii)    Witnesses who may be called at trial:

a.  Deborah Denby
Phone: (928) 240-8320

Deborah is James Denby's ex-wife. She will testify as to the ownership of the property at the time they were married and through her divorce. She is also knowledgeable regarding the intent of the Denby family to have James Denby be the owner of the property as well as the history of the property.

b.
Keith Passig
National Vendor
kpassig@nationalvendor.com

Mr. Passig is a manager with National Vendor and is likely to have discoverable information regarding the damage the Defendants acts or omissions caused to the Residence and the property within. He is expected to testify regarding the personal property contents and the value of the same.

c.  _
Joe Rezzonico
Rezzonico Enterprises
9354 Morning Glory Lane
Highlands Ranch, CO  80130

In 2015-16 Mr. Rezzonico performed an appraisal of the damage done to Plaintiffs' property. He prepared a report of that appraisal. He concluded that given the damage to the property Plaintiffs' home will have to be demolished and rebuilt at a cost of $263,969.84. Mr. Rezzonico further determined that the damage to the contents of the property amounted to $70,433.94.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

d.  Nathan Auvenshine
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Auvenshine is expected to testify consistent to his expert report he authored in this matter for Defendants related to police practices, policies, and procedures.

e.

Ross Frazier
F.I.X. Inc
480.209.1406
ross@fix24-7.com

Mr. Frazier will testify as to the damages caused to the property and to Mr. Denby's personal property. He will testify as to remediation performed on both. He will testify as to the invoiced amount to Mr. Denby for his company's (Monster Medical LLC d/b/a Fix Restoration) invoicing, work performed, and subsequent lawsuit filed against Mr. Denby.

f.  Adela Castillo

It is anticipated that Ms. Castillo will testify as to her relationship with Abram Ochoa. It is further anticipated that Castillo will testify as to her recollection of the events on the day of the incident.

g.

Logan Perrill

J. Logan Perrill is expected to testify regarding the cost of repairs attributable to the activities of law enforcement personnel on the subject date, and any amounts provided to Plaintiff(s) with the intent to effect repairs.

h.

James F. O'Toole

36

James F. O'Toole Inc.
PO Box 1371
Carefree, AZ 85377

Mr. O'Toole prepared a written estimate of the cost to demolish and rebuild Plaintiffs' home shortly after Defendants effectively destroyed it. He estimated that the cost to demolish the dwelling was $35,194.17, and that the cost to rebuild was $260,778.03.

i.

Tracy Herbert
Arizona Indoor Air Quality & Environmental Testing L.LC.
11458 East Ramblewood Avenue
Mesa, Arizona 85212
Phone: 480-823-2326
E-mail: azlndooriaq@gmail.com

Tracy Herbert authored a report regarding hazardous conditions in James Denby's home on December 29, 2014. Mr. Herbert is expected to testify as to the findings of the visual inspection and recommendations for removing any contamination.

j.   Elizabeth Torres
c/o Mills + Woods PLLC

Elizabeth Torres is James Denby's sister. She has knowledge of the condition of Mr. Denby's property before the incident, how Mr. Denby lived his life prior, the condition of the property following the incident, the issues that Mr. Denby has dealt with since the incident, and how Mr. Denby has lived following the incident.

k.   Garric Berry
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Berry was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

37

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

l.  Christopher Fox
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Fox was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

m.  Kent Horn
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Horn was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

n.  Francisco Lujan
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Lujan was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

o.  Mark Mccabe
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Mccabe was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

p. JJ Ybarra
   c/o James M. Jellison
   Jellison Law Offices, PLLC
   18801 N. Thompson Peak Parkway
   Suite D235
   Scottsdale, AZ 85255
   D: 480-912-1539
   E: jim@jellisonlaw.com

Mr. Ybarra was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

q. Brian Walsh
   c/o James M. Jellison
   Jellison Law Offices, PLLC
   18801 N. Thompson Peak Parkway
   Suite D235
   Scottsdale, AZ 85255
   D: 480-912-1539
   E: jim@jellisonlaw.com

Mr. Walsh was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

r. Christopher Western
   c/o James M. Jellison
   Jellison Law Offices, PLLC
   18801 N. Thompson Peak Parkway
   Suite D235
   Scottsdale, AZ 85255
   D: 480-912-1539
   E: jim@jellisonlaw.com

39

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mr. Western was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

s.  Michael Wilson
c/o James M. Jellison
Jellison Law Offices, PLLC
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
D: 480-912-1539
E: jim@jellisonlaw.com

Mr. Wilson was a law enforcement officer on scene in this matter and is expected to testify to his observations, actions and omissions during the incident.

(iii)  Witnesses who are unlikely to be called at trial:

a.  – Objection Subject to Plaintiffs' MIL #2.
Greg Zimmerman
P.O Box 5402
Carefree, Arizona 85337
602.531.7541

Mr. Zimmerman is an architect who performed an analysis of structural damage to Mr. Denby's home on March 1, 2016. He is expected to testify as to the structural integrity of the home at that time as well as the need to remove or replace components of the home.

**Defendant**

(i)  Lay Witnesses who shall be called at trial:

**1.  Pinal County Sheriff, Mark Lamb[2]**

It is anticipated that Sheriff Lamb will testify as to his training and experience; his job duties as Sheriff of Pinal County, and the policies, procedures, and practices for the Pinal County Sheriff's Office.

**2.  Pinal County former Sheriff, Paul Babeu**

---

[2] At this time, law enforcement witnesses should be contacted through counsel.

It is anticipated that former Sheriff Babeu will testify as to his training and experience; his job duties when Sheriff of Pinal County, and the policies, procedures, and practices for the Pinal County Sheriff's Office.

### 3.    City of Casa Grande, M. Wilson

It is anticipated that Officer Wilson will testify as to his background, education and experience in law enforcement. It is further anticipated that Wilson will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

### 4.    City of Casa Grande, Corporal F. Lujan

It is anticipated that Corporal Lujan will testify as to his background, education and experience in law enforcement. It is further anticipated that Lujan will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

### 5.    City of Casa Grande, Kent Horn

It is anticipated that Officer Horn will testify as to his background, education and experience in law enforcement. It is further anticipated that Horn will testify in accordance with his job duties as a Lieutenant and the subject incident on December 17, 2014.

### 6.    City of Casa Grande, D. Engstrom

It is anticipated that Officer Engstrom will testify as to his background, education and experience in law enforcement. It is further anticipated that Sergeant Engstrom will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

### 7.    City of Casa Grande, Mark McCabe

It is anticipated that Officer McCabe will testify as to his background, education and experience in law enforcement. It is further anticipated that McCabe will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

### 8.    City of Casa Grande, Jacob Robinson

It is anticipated that Officer Robinson will testify as to his background, education and experience in law enforcement. It is further anticipated that Robinson will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

### 9.    City of Casa Grande, C. Western

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

41

It is anticipated that Officer Western will testify as to his background, education and experience in law enforcement. It is further anticipated that Western will testify in accordance with his job duties and arresting/booking record of Abram Ochoa in relation to the incident on December 17, 2014.

### 10.    City of Casa Grande, Sgt. Gragg

It is anticipated that Gragg will testify as to his background, education and experience in law enforcement. It is further anticipated that Gragg will testify in accordance with his job duties with the City of Casa Grande; and in accordance with his involvement to the subject incident.

### 11.    City of Casa Grande, JJ Ybarra

It is anticipated that Officer Ybarra will testify as to his background, education and experience in law enforcement. It is further anticipated that Ybarra will testify in accordance with his job duties and incident report in relation to the incident on December 17, 2014.

### 12.    City of Casa Grande, C. Fox

It is anticipated that Officer Fox will testify as to his background, education and experience in law enforcement. It is further anticipated that Fox will testify in accordance with his job duties and incident report in relation to the date of the incident on December 17, 2014 and any prior encounters with Abram Ochoa.

### 13.    City of Casa Grande, Detective B. Walsh

It is anticipated that Detective Walsh will testify as to his background, education and experience in law enforcement. It is further anticipated that Walsh will testify in accordance with his involvement to the subject incident including the authored of the search warrant.

### 14.    Pinal County, Lt. Garric Berry

It is anticipated that Berry will testify as to his background, education and experience in law enforcement. It is further anticipated that Berry will testify in accordance with his job duties as a Lieutenant and incident report in relation to the incident on December 17, 2014.

### 15.    Pinal County, Christopher Lapre

It is anticipated that Lapre will testify as to his background, education and experience in law enforcement. It is further anticipated that Lapre will testify in accordance with his job duties as a Sergeant and incident report in relation to the incident on December 17, 2014.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

42

### 16.   Pinal County, Sgt. Rory Skedel

It is anticipated that Skedel will testify as to his background, education and experience in law enforcement. It is further anticipated that Skedel will testify in accordance with his job duties as a Sergeant and incident report in relation to the date of the incident on December 17, 2014.

### 17.

### L. Ross Frazier, Monster Medical, LLC, dba Flood Impact Xperts ("FIX")

Mr. Frazier is expected to testify concerning the written contract between FIX and Plaintiff Denby for services of: Mitigation; Supplemental Services Asbestos, Contents Services, Contents Storage Fee, AZIAQ; Asbestos Testing/Lab, Waste Management Asbestos Disposal and Demo for Asbestos Removal. Mr. Frazier is also expected to testify concerning the company's billing procedures, the processes of obtaining necessary permits to complete surrounding the requested work on the subject building, the storage of Denby's personal property, and the facts associated with the related action of *Monster Medical, LLC, dba Flood Impact Xperts ("FIX") v. James W. Denby*, Maricopa County Superior Court Case No. CV2020-092303. Additionally, Mr. Frazier is expected to testify concerning that upon the completion of the requested demo work, the City inspected and red-tagged the subject building stating that FIX would need to obtain a DEMO permit for proceed with further work. FIX halted their services when Plaintiff filed litigation against law enforcement for the damage to the home and against his insurance company to receive the funds to rebuild or replace the home.

### 18.
### Merle C. Favinger, AIC, Silverado Claims Service

Mr. Favinger is expected to testify regarding his observations and evaluation of the subject building. Mr. Favinger is also expected to testify in accordance with the Silverado Claims Service Estimate, dated January 5, 2015.

### 19.
### John Koester, Monster Medical, LLC, dba Flood Impact Xperts ("FIX")

Mr. Koester is expected to testify concerning the Work Order Agreement between FIX and Plaintiff, the role he played in the events concerning the subject property, his observations, communications and facts associated with the related action of *Monster Medical, LLC, dba Flood Impact Xperts ("FIX") v. James W. Denby*, Maricopa County Superior Court Case No. CV2020-092303.

### 20.
### Jared Rowell, Monster Medical, LLC, dba Flood Impact Xperts ("FIX")

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mr. Rowell is expected to testify concerning the estimates between FIX and Plaintiff, the role he played in the events concerning the subject property, his observations, communications and facts associated with the related action of *Monster Medical, LLC, dba Flood Impact Xperts ("FIX") v. James W. Denby*, Maricopa County Superior Court Case No. CV2020-092303.

### 21. Elizabeth Torres, c/o Plaintiffs' counsel

Ms. Torres is expected to testify in accordance with her responses to discovery pursuant to Fed.R.Civ.P. 30-36. Defendants anticipate performing discovery related to Ms. Torres, including liability and damage issues when authorized by the Court.

Defendants were denied further deposition discovery from Plaintiff Torres arising from new fact and legal allegations asserted in the Third Amended Complaint, so the ability to examine her at trial is essential to the defense of this matter.

Defendants' Expert Witnesses who shall be called at trial:

1.  **Captain Nathan "Nate" Auvenshine**
    **Redeemed Training and Consulting, LLC**
    **P.O. Box 27843**
    **Prescott Valley, AZ 86312**

    Captain Auvenshine will testify in accordance with his expert report prepared by him which sets forth his opinions to date, the basis for his opinions and other information he relied upon in preparing the Report, as well as his deposition terstimony. Specifically, Captain Auvenshine's Report contains the following:

    (1) A complete statement of all opinions Captain Auvenshine will express and the basis and reasons for them, including the methods used by Defendants in this case and their conformity with law enforcement and SWAT practices in similar situations;

    (2) The facts or data considered by Captain Auvenshine in forming his opinions;

    (3) Any exhibits that will be used to summarize or support his opinions;

    (4) Captain Auvenshine's qualifications, including a list of all publications authored in the previous ten (10) years;

    (5) A list of all other cases in which, during the previous four (4) years, Captain Auvenshine testified as an expert at trial or by deposition.

2.  **David Spiegel**
    **Spiegel Property Damage Consulting and Forensics**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**P.O. Box 7577**
**La Verne, CA 91750**

Mr. Spiegel is expected to testify in accordance with his expert report prepared by him which sets forth his opinions to date, the basis for his opinions and other information he relied upon in preparing the Report, as well as the testimony in his deposition.

> (1)    A complete statement of all opinions Mr. Spiegel will express and the basis and reasons for them;

> (2)    The facts or data considered by Mr. Spiegel in forming his opinions;

> (3) Any exhibits that will be used to summarize or support his opinions;

> (4)    Mr. Spiegel's qualifications, including a list of all publications authored in the previous ten (10) years;

> (5)    A list of all other cases in which, during the previous four (4) years, Mr. Spiegel testified as an expert at trial or by deposition.

3.    **Wade Sticht, PE**
**Senior Engineer I & West Regional Lead**
**J.S. Held, LLC**
**265 N. Main Street. Ste. D**
**Kaysville, UT 84037**

Mr. Sticht is expected to testify in accordance with his expert prepared by him which sets forth his opinions to date, the basis for his opinions and other information he relied upon in preparing the Report, as well as his deposition testimony. Specifically, Mr. Sticht's Report contains the following:

> (1)    A complete statement of all opinions Mr. Sticht will express and the basis and reasons for them;

> (2)    The facts or data considered by Mr. Sticht in forming his opinions;

> (3)    Any exhibits that will be used to summarize or support his opinions;

> (4)    Mr. Sticht's qualifications, including a list of all publications authored in the previous ten (10) years;

> (5)    A list of all other cases in which, during the previous four (4) years, Mr. Sticht testified as an expert at trial or by deposition.

45

**4.**

4.     Expert to be named regarding Arizona real estate ownership.

Defendants anticipate identifying and calling an expert, to be named, on real estate ownership in the State of Arizona, interpretation of deeds, and the foundational requirements to assert ownership of real estate, as well as those assertions that are insufficient to the performance of establishing ownership in real estate.

Witnesses who may be called at trial:

**1.     Adela Castillo**

It is anticipated that Ms. Castillo will testify as to her domestic violence problems and transpired of the relationship with Abram Ochoa.  It is further anticipated that Castillo will testify as to her recollection to the subject incident.

**2.     Defendant Abram Ochoa**

It is anticipated that Mr. Ochoa will testify as to the transpired events the date of the subject incident on December 17, 2014.  It is further anticipated that Ochoa will testify as to his relationship with Ms. Castillo, and any prior history with Plaintiff James Denby.

**3.**

**J. Logan Perrill**
**Property Field Claims Adjuster**
**American Family Insurance**

J. Logan Perrill is expected to testify regarding the cost of repairs attributable to the activities of law enforcement personnel on the subject date, and any amounts provided to Plaintiff(s) with the intent to effect repairs.  Additionally, Perrill is further expected to testify in accordance with the Perrill letter dated April 23, 2015.

**4.**

**Mark E. Orr, P.E.**
**Principal Engineer**
**EFI Global**

Mr.  Orr is expected to testify regarding the nature and extent of property damage attributable to the activities of law enforcement personnel on the subject date, his observations and evaluation of the site,  and in accordance with his Structural

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

46

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Engineering Report dtd January 30, 2015, including any attached documents, evaluations, and photographs.

**5.**

**Michele A. Bogdon, P.E.**
**Senior Engineer**
**EFI Global**

Ms. Bogdon is expected to testify regarding Mr. Orr's review of the nature and extent of property damage attributable to the activities of law enforcement personnel on the subject date, his observations and evaluation of the site, and in accordance with the Structural Engineering Report dtd January 30, 2015, including any attached documents, evaluations, and photographs.

**6**

**John Sweet**
**American Technologies Inc.**

Ms. Sweet is expected to testify regarding the method of chemical munition remediation regarding the alleged property damage at the subject residence.

(ii)     Witnesses who are unlikely to be called at trial:

**1.   William Denby, Jr.**

Mr. Denby is expected to testify regarding his communications regarding Ochoa's entry into the subject residence, and his knowledge of Ochoa.

**2.     Plaintiff James Denby**
**c/o counsel**

It is anticipated that Plaintiff Denby will testify as to the allegations contained in Plaintiffs' Complaint, Plaintiffs' First Amended Complaint, and Second Amended Complaint; the ownership of the subject residence; and his efforts, or lack of efforts, in home remediation.   Defendants were denied further deposition discovery from Plaintiff Denby arising from new fact and legal allegations asserted in the Third Amended Complaint.

**B.**     Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call shall be

47

listed on that party's list of witnesses; the party cannot rely on the witness having been listed or subpoenaed by another party.

**6. LIST OF EXHIBITS**

**A.** The following exhibits, with no objections registered, are admissible in evidence and may be marked in evidence by the Courtroom Deputy, Exhibits 3, 4, 7, 8, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, and 53:[3] All other exhibits are subject to the noted objections if offered at trial.

Plaintiffs' Exhibits:

| | PLAINTIFFS' EXHIBITS | D OBJ | P OBJ |
|---|---|---|---|
| 1. | CGPD PHOTOS | 4, lack of completeness | |
| 2. | DENBY PHOTOS | 1, 2, 4 | |
| 3. | CANISTERS | | |
| 4. | CAD REPORT | | |
| 5. | BANNER MEDICAL | 1, 2, 4, 6, 10 | |
| 6. | ADDITIONAL PHOTOS | 1, 2, 4 | |
| 7. | SEARCH WARRANT | | |
| 8. | ACIC | | 6 |
| 9. | QUITCLAIM CORRECTION DEED | | 1,2,7,10 |
| 10. | HOTEL RECEIPTS | 4 | |
| 11. | FOOD AND HOTEL AND LAUNDRY RECEIPTS | 4 | |
| 12. | FOOD AND MISC RECEIPTS | 4 | |
| 13. | COMBINED PROPERTY LIST | 4 | |
| 14. | JIM PERSONAL PROPERTY LIST | 4, 6 | |
| 15. | NATIONAL VENDOR TOTAL PAGE | | 2,10 |

---

[3] In keeping with this Court's instructions, Defendant will object with the following key numbers instead of narrative: Key Number (1) – lack of relevance under Fed.R.Evid. 401-402; Key Number (2) – more prejudicial than probative, misleading, confusing under Fed.R.Evid. 403; Key Number (3) improper character evidence under Fed.R.Evid. 404; Key Number (4) lack of foundation for admission; Key Number (5) – improper expert opinion under Fed.R.Evid. 701-703; Key Number (6) – hearsay under Fed.R.Evid. 801-803; Key Number (7) – lack of authentication under Fed.R.Evid. 901; Key Number (8) – lack of proper disclosure under Fed.R.Civ.P. 26(a); Key Number (9) – lack of disclosure under this Court's Scheduling Order; Key Number (10) – subject to a pending motion in limine.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

| 16. | NATIONAL VENDOR - PERSONAL PROPERTY | | 2,10 |
|---|---|---|---|
| 17. | NATIONAL VENDOR PERSONAL PROPERTY REPORT | | 2,10 |
| 18. | SUPPLEMENTAL INVENTORY | 4, 6 | |
| 19. | 'TOTAL LOSS' INVENTORY | 4, 6 | |
| 20. | REZZONICO APPRAISAL REPORT | 4, 5, 6 | 2,10 |
| 21. | OCHOA DECLARATION | 4, 6, 7 | |
| 22. | TIPTON CV | 1, 2, 4, 5, 6, 7, 10 | |
| 23. | TIPTON TESTIMONY | 1, 2, 4, 5, 6, 7, 10 | |
| 24. | 200330 - SUMMONS AND COMPL - MONSTER MEDICAL V. DENBY | | 1,2,10 |
| 25. | ATI REPORT | 4, 5, 6 | 2,10 |
| 26. | ATI - TEAR GAS DECONTAM PROCEDURES | 4, 5, 6 | 2,10 |
| 27. | JOANNA WILSON APRIL 29 2015 EMAIL | 4, 5, 6 | |
| 28. | CC-DENBY- 001- 033 - NOTICES OF CLAIM | 1, 2, 4, 6, 7, FRE 408 | |
| 29. | CGPD REPORT | | 6 |
| 30. | PCSO REPORT | | 6 |
| 31. | BEN MARKS CV | 1, 2, 4, 5, 6, 7, 10 | |
| 32. | BEN MARKS LIST OF CASES | 1, 2, 4, 5, 6, 7, 10 | |
| 33. | HAFKEY CV | 1, 2, 4, 5, 6, 7, 10 | |
| 34. | HAFKEY - LIST OF TESTIMONY | 1, 2, 4, 5, 6, 7, 10 | |
| 35. | PINAL SWAT MANUAL | | |
| 36. | PASSEY CAPITAL PROPERTY CV | 4, 6, 7 | |
| 37. | PASSEY INDIVIDUAL CV | 4, 6, 7 | |
| 38. | AUVENSHINE EXHIBIT 5 | 6 | |
| 39. | NFDDS | 1, 2, 4 | |
| 40. | GARRIC BERRY DEC | | |
| 41. | DAVID ENGSTROM DEC | | |
| 42. | CHRISTOPER FOX DEC | | |
| 43. | BRIAN GRAGG DEC | | |
| 44. | KENT HORN DEC | | |
| 45. | CHRISTOPHER LAPRE DEC | | |
| 46. | FRANCISCO LUJAN DEC | | |
| 47. | MARK MCCABE DEC | | |
| 48. | JACOB ROBINSON DEC | | |
| 49. | JJ YBARRA DEC | | |

| | | | |
|---|---|---|---|
| 50. | RORY SKEDEL DEC | | |
| 51. | BRIAN WALSH DEC | | |
| 52. | CHRISTOPHER WESTERN DEC | | |
| 53. | MICHAEL WILSON DEC | | |
| 54. | Last Will and Testament of Lila Sell Maize | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 | |
| 55. | City of Casa Grande Trash Services | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 | |
| 56. | Property Tax Documents | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 | |
| 57. | Home Owner's Insurance Documents | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 | 10 |
| 58. | Family Historical Documents | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 | |
| 59. | Jim Denby Divorce Documents | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 | |
| 60. | Reserved | | |
| 61. | Reserved | | |
| 62. | Reserved | | |
| 63. | Reserved | | |
| 64. | Reserved | | |
| 65. | Reserved | | |
| 66. | Reserved | | |
| 67. | Reserved | | |
| 68. | Reserved | | |
| 69. | Reserved | | |
| 70. | Reserved | | |
| 71. | Reserved | | |
| 72. | Reserved | | |
| 73. | Reserved | | |
| 74. | Reserved | | |
| 75. | Reserved | | |
| 76. | Reserved | | |
| 77. | Reserved | | |
| 78. | Reserved | | |
| 79. | Reserved | | |
| 80. | Reserved | | |

Defendants' Exhibits:

| **Defendant's Exhibits** | | **P OBJ** | **D OBJ** |
|---|---|---|---|
| 81. | American Family - 2015.04.23 - Personal Property $5,271.22 | 1,2,4,6,7,10 | |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

| **Defendant's Exhibits** | | P OBJ | D OBJ |
|---|---|---|---|
| 82. | American Family - 2017.08.07 Complaint | 1,2,4,6,7,10 | |
| 83. | American Family - 2017.08.16 - Payment $24,369.68 | 1,2, 4, 6, 10 | |
| 84. | American Family - Custodian of Records Affidavit | 1,2, 4, 6, 10 | |
| 85. | Discovery - 2018.01.03 - Ps Responses to Ds Discovery Requests | 1, 2, 4, 6, 10 | |
| 86. | Dispatch Call | 4, 6 | |
| 87. | Estimate - American Family Structural Estimate | 1,2,4,5 6,10 | |
| 88. | Estimate - Flood Impact Xperts (FIX) | 1,2,4,5 6,10 | |
| 89. | Estimate – Silverado | 1,2,4,5 6,10 | |
| 90. | Expert - Auvenshine CV | 1, 2, 4, 5, 6, 7, 10 | |
| 91. | Expert - Auvenshine Expert Report | 1, 2, 4, 5, 6, 7, 10 | |
| 92. | Expert - Spiegal CV | 1, 2, 4, 5, 6, 7, 10 | |
| 93. | Expert - Spiegal David List of Expert Cases | 1, 2, 4, 5, 6, 7, 10 | |
| 94. | Expert - Spiegal Preliminary Report | 1, 2, 4, 5, 6, 7, 10 | |
| 95. | Expert - Spiegal Property Damage Review of Docs | 1, 2, 4, 5, 6, 7, 10 | |
| 96. | Expert - Sticht CV | 1, 2, 4, 5, 6, 7, 10 | |
| 97. | Expert - Sticht Report - Structural Damage Evaluation | 1, 2, 4, 5, 6, 7, 10 | |
| 98. | Expert - Auvenshine Depo Ex. 5 - Google Earth Residence (Clean Version) | 4, 6 | |
| 99. | Incident Report - CGPD | 2, 4, 6, 7 | |
| 100. | Incident Report PCSO | 2, 4, 6, 7 | |
| 101. | Narrative Report - Berry (PCSO) | 2, 4, 6, 7 | |
| 102. | Narrative Report - Engstrom (CGPD) | 2, 4, 6, 7 | |
| 103. | Narrative Report - Espino (CGPD) | 2, 4, 6, 7 | |
| 104. | Narrative Report - Fox (CGPD) | 2, 4, 6, 7 | |
| 105. | Narrative Report - Hill (CGPD) | 2, 4, 6, 7 | |
| 106. | Narrative Report - Lapre (PCSO) | 2, 4, 6, 7 | |
| 107. | Narrative Report - Lawson (CGPD) | 2, 4, 6, 7 | |
| 108. | Narrative Report - Lujan (CGPD) | 2, 4, 6, 7 | |
| 109. | Narrative Report - Lujan 2 (CGPD) | 2, 4, 6, 7 | |
| 110. | Narrative Report - McCabe (CGPD) | 2, 4, 6, 7 | |
| 111. | Narrative Report - Robinson (CGPD) | 2, 4, 6, 7 | |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

| Defendant's Exhibits | P OBJ | D OBJ |
|---|---|---|
| 112. Narrative Report - Skedel (PCSO) | 2, 4, 6, 7 | |
| 113. Narrative Report - Walsh (CGPD) | 2, 4, 6, 7 | |
| 114. Narrative Report - Western (CGPD) | 2, 4, 6, 7 | |
| 115. Narrative Report - Wilson (CGPD) | 2, 4, 6, 7 | |
| 116. Narrative Report - Ybarra (CGPD) | 2, 4, 6, 7 | |
| 117. Ochoa - 2001.09.15 - CGPD Booking [Probable Cause] | 1,2,3,4,6,7,10 | |
| 118. Ochoa - 2003.01.25 - PCSO IR 030125114 [Involvement] | 1,2,3,4,6,7,10 | |
| 119. Ochoa - 2004.01.04 - PCSO Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 120. Ochoa - 2004.12.29 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 121. Ochoa - 2005.10.10 - CGPD Booking [Probable Cause] | 1,2,3,4,6,7,10 | |
| 122. Ochoa - 2008.08.13 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 123. Ochoa - 2008.10.31 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 124. Ochoa - 2009.06.28 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 125. Ochoa - 2009.09.23 - Ak Chin PD Booking [Probable Cause] | 1,2,3,4,6,7,10 | |
| 126. Ochoa - 2010.08.10 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 127. Ochoa - 2010.10.25 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 128. Ochoa - 2011.01.26 - PCAD Booking [Summons Arrest] | 1,2,3,4,6,7,10 | |
| 129. Ochoa - 2011.01.28 - PCAD Incident Report (J11012801) | 1,2,3,4,6,7,10 | |
| 130. Ochoa - 2011.03.18 - PCAD Booking [Summons Arrest] | 1,2,3,4,6,7,10 | |
| 131. Ochoa - 2013.05.03 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 132. Ochoa - 2014.01.08 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 133. Ochoa - 2014.04.24 - PCSO Booking [PCSO Warrant] | 1,2,3,4,6,7,10 | |
| 134. Ochoa - 2014.07.02 - PCAD Incident Report (J14070218) | 1,2,3,4,6,7,10 | |
| 135. Ochoa - 2014.12.17 - CGPD Arrest Booking Record | 1,2,3,4,6,7,10 | |

| Defendant's Exhibits | P OBJ | D OBJ |
|---|---|---|
| 136. Ochoa - 2014.12.17 - PCSO Incident Report (141217108) | 1,2,3,4,6,7,10 | |
| 137. Ochoa - 2014.12.18 - CGPD Booking [Warrant Arrest] | 1,2,3,4,6,7,10 | |
| 138. Ochoa - 2014.12.18 - PCAD Incident Report (J14121802) | 1,2,3,4,6,7,10 | |
| 139. Ochoa - PCAD Inmate Data | 1,2,3,4,6,7,10 | |
| 140. Photos - CGPD (In Their Entirety) | 9 | |
| 141. Quit Claim Deed (2015) | 1,2,4,6,7,10 | |
| 142. Quit Claim Deed of Correction (2017) | 1,2,4,6,7,10 | |
| 143. Report - Asbestos Analysis Report (EMSL Analytical) | 1,2,4,5,6,7,10 | |
| 144. Report - EFI Global Damage Report | 1,2,4,5,6,7,10 | |
| 145. Report - EFI Global Structural Engineering | 1,2,4,5,6,7,10 | |
| 146. FIX Action - Complaint | 1,2,4,6,7,10 | |
| 147. FIX Action - Denby's Answer & Counterclaim | 1,2,4,6,7,10 | |
| 148. FIX Action - FIX Reply to Counterclaim | 1,2,4,6,7,10 | |
| 149. FIX Action - Status Report | 1,2,4,6,7,10 | |
| 150. FIX Action - FIX Initial Disclosure | 1,2,4,6,7,10 | |
| 151. FIX Action - 6. Disclosure (Denby) | 1,2,4,6,7,10 | |
| 152. FIX Action - AZIAQ Testing to FIX [Fix_Denby 192] | 1,2,4,6,7,10 | |
| 153. FIX Action - FIX 01.01.19 Invoice (Ex. A to Complaint) | 1,2,4,6,7,10 | |
| 154. FIX Action - FIX Estimate $13,229.37 [Denby_FIX 77-89] | 1,2,4,6,7,10 | |
| 155. FIX Action - FIX Estimate $46,629.19 [Denby.FIX 37-45] | 1,2,4,6,7,10 | |
| 156. FIX Action - FIX Frazier Communication Re Testing of Dirt [Denby_FIX 50] | 1,2,4,6,7,10 | |
| 157. Fix Action - FIX Letter Re Cannisters [00174] | 1,2,4,6,7,10 | |
| 158. FIX Action - FIX Work Order Agreement | 1,2,4,6,7,10 | |
| 159. Action - Personal Property Inventory [FIX_Denby 201-216] | 1,2,4,6,7,10 | |
| 160. FIX Action - Testing of Dirt [FIX.Denby 069-070] | 1,2,4,6,7,10 | |
| 161. Fix Action - Waste Management Invoice [FIX_Denby 190-191] | 1,2,4,6,7,10 | |
| 162. FIX Action - Young's Woodworking & Restoration [FIX_Denby 217] | 1,2,4,6,7,10 | |
| 163. Denby-Fix Settlement Agreement | 1,2,4,6,7,10 | |
| 164. Written Discovery Requests and Responses thereto by Plaintiffs based on discovery arising from Third Amended Complaint, | | |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

| Defendant's Exhibits | P OBJ | D OBJ |
|---|---|---|
| including but not limited to Responses to RFAs | | |
| | | |
| 165. Plaintiffs' Third Amended Complaint | | 6, if offered by PL |
| 166. Defendants' Answer to Third Amended Complaint | | |
| 167. Court's Order at Doc. 106 | | |
| 168. Wilma Logston's will and/or probate case documents | | |
| 169.  James Denby's American Family Insurance Deposition Transcript | | 6, if offered by PL |
| 170. Exhibit B to Denby Divorce – Husband's Property | | |
| 171. 2002.10.18 City of Casa Grande Letter to Denby | | |
| 172. 2016.05.02 Emails re: Appraisal Award | 1,2,4,5,6,7,10 | |
| 173. 2015.05.18 – American Family Letter Estimating Cost to Repair and Rebuild Residence | 1,2,4,5,6,7,10 | |
| 174. 2015.05.21 Letter from Logan Perrill re: Demanding Appraisal of Property | 1,2,4,5,6,7,10 | |
| 175. 2015.04.30 Fax from O'Toole to American Family re: Insurance Claim | 1,2,4,5,6,7,10 | |
| 176.  L. Perrill letter dated 05.18.2014 | 1,2,4,5,6,7,10 | |
| 177.  American Family Insurance Policy (covering 12-17-14) | 1,2,4,5,6,7,10 | |
| 178.  Plaintiff's Complaint | 6 | 6, if offered by PL |
| 179.  Plaintiffs' First Amended Complaint | 6 | 6, if offered by PL |
| 180. Notice of Voluntary Dismissal of Christopher Lujan and Jane Doe Lujan | 1, 2 | |
| 181. Defendant Babau's Motion to Dismiss First Amended Complaint | 6 | |
| 182. Defendant Ochoa's Answer to First Amended Complaint | 6 | 6 |
| 183. City and County Defendants Motion to Dismiss First Amended Complaint | 6 | |
| 184. Second Amended Complaint | 6 | 6, if offered by PL |
| 185. Motion to Dismiss Second Amended Complaint | 6 | |
| 186. Answer to Second Amended Complaint | 6 | |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**B.**    As to the following exhibits, the parties have reached the following stipulations:

Plaintiffs' Exhibits:

None.

Defendants' Exhibits:

None.

**C.**    As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated below:

Plaintiffs' Exhibits:

See objections stated above.

Defendants' Exhibits:

See objections stated above.

**D.**    Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that any objections not specifically raised herein are waived.

## 7. LIST OF DEPOSITIONS[4]

**A.**    Deposition Designations:[5]

Plaintiff may use the following deposition testimony at trial:

**Nathan Auvenshine**
Cover Page
4:15-20

---

[4] The parties reserve the right to use prior depositions on the relevant subject matter with testifying witnesses in accordance with this Court's orders and the rules of civil procedure.

[5] By providing deposition designations to be read at trial, the parties reserve the right to assert all valid objections, including but not limited to hearsay, related to the reading of deposition designations.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5:14-19
9:6-10
9:22-25
12:2-3
14:3-8
14:16-25
15:9-12
15:15-24
16:12-17
18:13-20
21:14-19
21:22-22:2
22:12-15
25:23-26:4
26:19-27:15
28:2-7
31:11-18
32:16-33:17
34:9-20
35:6-36:4
36:12-17
37:3-5
37:10-38:5
38:7-12
39:12-23
40:4-13
40:22-41:1
41:5-11
41:14-42:12
42:16-22
43:1-22
46:9-25
47:5-11
47:18-24
48:10-17
48:19-49:4
50:4-14
50:20-23
51:1-4
51:19-24
52:17-53:4
56:3-10
56:20-57:14
57:18-58:6

58:20-59:9
59:11-60:9
60:12-17
61:24-62:22
63:4-9
63:15-18
64:24-65:23
66:2-15
67:5-70:18
70:23-71:5
71:12-17
72:3-15
73:8-75:1
79:6-19
79:25-80:9
82:5-24
83:2-17
83:24-84:1
84:9-13
86:22-24
87:3-8
87:15-92:9
93:11-98:19
99:14-100:17
100:23-102:4
104:19-106:9
107:18-24
108:5-15
108:22-109:13
109:21-110:20
111:4-8
111:15-24
112:1-3
115:25-116:11
116:17-117:11
120:2-5
121:1-122:6
122:20-125:25
126:20-127:16
127:21-131:14
132:9-17
132:19-133:5
133:19-25
134:17-136:3

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

136:17-138:21
139:3-17
140:16-21
141:11-142:5
148:1-24
149:1-10
149:15-150:17
151:4-11
151:14-16
151:19-152:20
153:10-17
154:5-19
155:1-10
155:19-156:25
157:19-21
157:23-158:15
158:21-159:21
163:1-164:14
167:10-19
170:4-16

**Jon David Spiegel**
Cover Page
4:8-11
6:8-17
6:23-7:2
8:20-25
9:22-11:6
11:14(starting at "It")-14:25
15:19-16:24
17:4-17
18:2-15
20:21-21:23
22:3-7
22:14-26:3
26:11-16
26:19-27:5
27:8-12
27:14-20
27:24-28:3
29:1-19
29:21-25
30:9-12
30:19-24

32:8-25
33:11-16
34:3-13
34:17-35:8
35:17-36:7
37:11-21
39:10-17
39:19-40:5

**Wade Ray Sticht**
Cover Page
4:8-10
5:14-19
6:3-6
6:23-7:9
7:12-8:1
8:11-11:13
11:16-20
11:22-14:23
15:2-25
16:7-9
16:18-18:14
19:7-14
19:20-21:1
21:3-25
24:6-12
24:24-25:5
25:7-18
25:20-28:3
28:10-29:12
30:3(starting at "But")-16
30:23-31:25
32:13-33:17
33:23-34:20
35:1-14
36:23-37:3
37:11-38:3
39:9-18

**Jonathan Passey**
Cover Page
4:7-9
21:5-15
23:9-24:22

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

72:11-74:20
75:12-76:6
76:14-77:11
77:18-78:7
79:20-80:6
80:8-16
80:20-81:10
82:22-83:10
86:10-17

**Mark Hafkey**
Cover Page
4:12-13
5:22-6:4
29:16-52:11
65:15-66:14
69:11-15
71:18-72:3
73:4-23
77:2-23
83:8-16
84:16-88:9
88:17-89:3
89:12-90:16
91:7-11
91:16-93:1
93:14-98:25
100:5-101:13
106:17-114:3
114:6-115:17
116:5-117:13
117:16-118:25
119:14-120:6
120:15-19
120:22-122:25
123:6-124:13
124:17-125:23

Defendants may use the following deposition excerpts at trial, in their entirety, or as counter-designations depending on any presentation by Plaintiff:

**Jonathan Passey:**
Cover page

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Pg. 4, lls. 7-20
Pg. 9, lls. 18-21
Page 14, lls. 3-4; 9-16
Page 15, lls. 14-23
Page 16, lls. 13-24
Page 18, lls. 19-22
Page 22, lls. 23-25
Page 23, lls. 1-4; 9-12; 16-25
Page 24, lls. 1-25
Page 25, lls. 22-24
Page 26, lls. 8-25
Page 27, lls. 1-6; 24-25
Page 28, ll. 1-21
Page 29, lls. 4-25
Page 30, lls. 1-25
Page 31, lls. 1-13
Page 32, lls. 7-25
Page 33, lls. 1-23
Page 35, lls. 1-8; 18-19
Page 36, lls. 14-22
Page 37, lls. 21-24
Page 38, lls. 5-7
Page 39, lls. 23-25
Page 40, lls. 1-17; 23-25
Page 41, lls. 1-25
Page 42, lls. 1-22
Page 43, lls. 1-16
Page 44, lls. 22-25
Page 45, lls. 1-3; 19-25
Page 46, lls. 1-22
Page 47, lls. 1-4
Page 48, lls. 20-25
Page 49, ll. 1; lls. 8-22
Page 50, lls. 17-23
Page 51, ll. 25
Page 52, lls. 1-13
Page 53, lls. 21-25
Page 54, lls. 2-23
Page 55, lls. 11-25
Page 56, lls. 1-25
Page 57, lls. 1-25
Page 58, lls. 1-29
Page 62, lls. 24-25
Page 63, lls. 24-25

Page 64, lls. 19-23
Page 66, lls. 6-25
Page 67, lls. 1-25
Page 68, lls. 1; 8-13
Page 69, lls. 1-7
Page 74, lls. 7-20
Page 76, lls. 7-10
Page 78, lls. 4-7
Page 86, lls. 3-20
Page 87, lls. 16-25
Page 88, lls. 1-9

**Mark Hafkey**
Cover Page
Page 4, lls. 12-14
Page 5, lls. 1-3
Page 10, lls. 13-20
Page 11, lls. 4-25
Page 12, lls. 17-28
Page 14, lls. 18-24
Page 16, lls. 10-12
Page 17, lls. 15-25
Page 18, lls. 1-6
Page 19, lls. 2-25
Page 20, lls. 1-25
Page 21, lls. 1-4
Page 24, lls. 5-9
Page 28, lls. 20-25
Page 29, lls. 1-15
Page 32, lls. 15-22
Page 34, ll. 25
Page 35, lls. 1-25
Page 36, lls. 1-8
Page 37, lls. 7-25
Page 38, lls. 1-25 ;
Page 39, lls. 1-6 ; 14-21
Page 40, lls. 2-6
Page 41, lls. 4-25
Page 42, lls. 1-19
Page 43, lls. 24-25
Page 44, lls. 1-7
Page 47, lls. 20-24
Page 48, lls. 14-16
Page 53, lls. 1-12

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Page 57, lls. 9-15
Page 58, lls. 5-22
Page 60, lls. 12-18
Page 66, lls. 19-25
Page 67, lls. 6-15
Page 74, lls. 1-25
Page 75, lls. 1-25
Page 76, lls. 1-5
Page 78, lls. 5-10
Page 79, lls. 13-25
Page 80, lls. 1-18
Page 84, lls. 9-25
Page 87, lls. 10-17
Page 89, lls. 4-23
Page 90, lls. 17-25
Page 92, lls. 19-25
Page 93, ll. 1
Page 101, lls. 16-25
Page 102, lls. 5-16
Page 106, lls. 18-25
Page 120, lls. 22-25
Page 121, lls. 1-17
Page 124, lls. 9-21
Page 125, lls. 14-20

**Wade Sticht**
Cover Page
Page 4, lls. 8 – 10; 23-25
Page 7, lls. 21-23
Page 8, lls. 11-22
Page 9, lls. 1 – 25
Page 13, lls. 17 – 25
Page 14, lls. 1-10 ; 21-23
Page 16, lls. 12 – 25
Page 17, lls. 1-5
Page 18, lls. 2-19
Page 19, lls. 20-25
Page 20, lls. 1-7
Page 23, lls. 11-12
Page 27, lls. 21 – 25
Page 28, lls. 1-3
Page 32, lls. 21 – 24
Page 33, lls. 23-25
Page 34, lls. 1-6

Page 35, lls. 23-25
Page 36, lls. 1-11
Page 41, lls. 17-25
Page 42, lls. 1-9
Page 44

**Jon Spiegel**
Cover Page
Page 4, lls. 8-11
Page 5, lls. 11-25
Page 6, lls. 1-10
Page 7, lls. 1 – 12
Page 10, lls. 17-25
Page 11, lls. 7-22
Page 13, lls. 6-20
Page 14, lls. 5-18
Page 16, lls. 13-24
Page 18, lls. 16 – 25
Page 19, lls. 1-10
Page 20, lls. 4-8
Page 21, lls. 24-25
Page 22, lls. 1-2
Page 31, lls. 14-25 ;
Page 32, lls. 1-7
Page 33, lls. 5-16
Page 34, lls. 3-13
Page 39, lls. 10-11; 14-17
Page 40, lls. 7-9 ; 20-25
Page 41, ll. 1
Page 42, lls. 4-20
Page 45

**Nate Auvenshine**
Cover Page
Page 4, lls. 15-17
Page 5, lls. 16-25
Page 6, lls. 1-25
Page 7, lls. 1-25
Page 8, lls. 1-25
Page 9, lls. 1-25
Page 10, lls. 1-25
Page 11, lls. 1-25
Page 12, lls. 1-25
Page 13, lls. 25

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Page 14, lls. 1-13
Page 15, lls. 13-25
Page 16, lls. 1-6
Page 17, lls. 3-5; 19-24
Page 18, lls. 13-25
Page 19, lls. 1-25
Page 20, lls. 1-20
Page 21, lls. 1-25
Page 22, lls. 1-25
Page 23, lls. 1-17
Page 27, lls. 24-25
Page 28, lls. 1-3; 6-7 ; 9-16 ; 19-25
Page 29, lls. 1-24;
Page 30, lls. 24-25
Page 31, lls. 1-25
Page 32, lls. 1-8
Page 33, lls. 15-25
Page 34, lls. 1-25
Page 35, lls. 1-25
Page 36, lls. 1-17
Page 39, lls. 24-25
Page 40, lls. 1-13
Page 42, lls. 16-17 ; 20-22
Page 46, lls. 7-25
Page 47, lls. 1-14
Page 54, lls. 15-17 ; 19-24
Page 56, lls. 12-25
Page 57, lls. 1-8
Page 59, lls. 12-25
Page 60, lls. 2-9 ;12-25
Page 61, lls. 1-9
Page 64, lls. 10-23
Page 65, lls. 9-23
Page 74, lls. 12-19
Page 80, lls. 11-25
Page 81, lls. 1-25
Page 82, lls. 1-25
Page 83, lls. 1-25
Page 84, lls. 1-8 ; 16-25
Page 85, lls. 1-25
Page 86, lls. 1-21
Page 87, lls. 3-8
Page 91, lls. 11-25
Page 92, lls. 1-3 ; 10-25

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Page 93, lls. 1-20

Page 96, lls. 9-12 ; 17-25

Page 97, lls. 1-25

Page 98, lls. 1-13

Page 101, lls. 11-17

Page 103, lls. 2-25

Page 104, lls. 1-25

Page 105, ll. 25

Page 106, lls. 1-7 ; 14-25

Page 107, lls. 1-21

Page 112, lls. 5-25

Page 113, lls. 1-8

Page 114, lls. 7-20

Page 115, lls. 2-25

Page 116, lls. 1-9

Page 117, lls. 12-25

Page 118, lls. 1-25

Page 119, lls. 1-5

Page 122, ll. 25

Page 123, lls. 1-25

Page 124, lls. 1-25

Page 125, lls. 1-25

Page 126, lls. 1-19

Page 127, lls. 17-25

Page 128, lls. 1-25

Page 129, lls. 1-17

Page 131, lls. 15-25

Page 132, ll. 1

Page 133, lls. 1-2 ; 4-5 ; 11-13

Page 134, lls. 4-25

Page 135, lls. 1-5

Page 136, lls. 4-24

Page 137, lls. 6-17

Page 141, lls. 1-3

Page 142, lls. 11-25

Page 143, lls. 1-25

Page 144, lls. 1-10 ; 17-25

Page 145, lls. 1-20

Page 164, lls. 21-25

Page 165, lls. 1-25

Page 166, lls. 1-18 ; 23-25

Page 167, lls. 1-25

Page 168, lls. 1-25

Page 169, lls. 1-25

Page 170, lls. 1-10 ; 21-25
Page 171, lls. 1-9
Page 172

**B.** Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that any deposition not listed as provided herein will not be allowed at trial, absent showing of good cause.

## 8. MOTIONS IN LIMINE

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that Motions in Limine are being filed separately and will be responded to in accordance with the Order Setting Final Pretrial Conference.

## 9. LIST OF PENDING MOTIONS

**A.** There are no pending Motions; Defendants reserve the right to bring a discovery dispute motion over a recently discovered disclosure issue more fully described below. The parties continue to meet and confer and may be able to resolve the issue without the necessity of filing a discovery motion. Defendants reserve the right to raise additional motions as required considering the posture of the case, and rules of civil procedure.

## 10. JURY DEMAND

**A.** A jury trial has been requested. The parties stipulate that the request was timely and properly made.

## 11. JURY TRIAL PLEADINGS

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that Joint Proposed Jury Instructions, Joint Proposed Voir Dire Questions and Lists, and

67

Joint Proposed Forms of Verdict have been filed separately in accordance with the Order Setting Final Pretrial Conference and are incorporated herein by reference.

**12. BENCH TRIAL PLEADINGS**

N/A

**13. ESTIMATED LENGTH OF TRIAL**

15 Days

4 hours – Jury Selection (if applicable)

4 hours – Opening Statements

40 hours – Plaintiff's Case (including rebuttal, if any)

40 hours – Defendant's Case

5 hours – Closing arguments

93 hours – Total

**14. TRIAL DATES**

Trial dates have been set by this Court and are as follows:

April 28, 2026 – May 1, 2026

May 5, 2026 -May 8, 2026

May 12, 2026 – May 15, 2026

May 19, 2026 – May 22, 2026

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

### 15. PROCEDURES FOR EXPEDITING TRIAL

The parties have discussed all available procedures for expediting trial, and report as follows:   The parties expect to use the courtroom's technology to display exhibits, and once trial dates are set will arrange pre-trial meetings with Court IT.

### 16. CERTIFICATIONS

By signing this Joint Proposed Final Pretrial Order, the undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1. Plaintiff asserts all discovery has been completed.   Defendants deny that all discovery has been completed.

2. The identity of each witness has been disclosed to opposing counsel. Defendants deny that witness Deborah Denby was timely disclosed.

1. Each exhibit list herein: (1) is in existence; (2) is numbered; and (3) has been disclosed and shown to opposing counsel.   Defendants deny that all exhibits have been physically shown, or shown in time for proper review.

4. The parties have complied *in all respects* with the mandates of the Court's Rule 16 Case Management Order and the Order Setting Final Pretrial Conference.

5. The Parties have made all of the disclosures required by the Federal Rules of Civil Procedure, with the exception of a settlement agreement between Plaintiff and a home remediation company that is anticipated by Defendants to bear on damages.   Defendants have only recently learned of the lawsuit leading to this agreement, the parties have met and conferred on the issue and continue to do so, and Defendants anticipate filing a

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

discovery motion based on the recent discovery and non-disclosure of this document if an agreement on this document's disclosure cannot be reached.

6. The parties acknowledge that once this Joint Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to the Order can be made without leave of Court.

## 17. MODIFICATION OF FINAL PRETRIAL ORDER

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that the Court may, in order to prevent manifest injustice or for good cause shown, at the trial of the action or prior thereto upon application of counsel for either party, made in good faith, or upon the motion of the Court, modify the Final Pretrial Order upon such conditions as the Court may deem just and proper.

**APPROVED AS TO FORM AND CONTENT:**

_____                    _____
Attorney for Plaintiffs                                        Attorney for Defendants

70

**RESPECTFULLY SUBMITTED** this 24th day of March 2026.

MILLS + WOODS LAW, PLLC


By _/s/ Sean A. Woods_
Sean A. Woods
Robert T. Mills
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiffs*


**JELLISON LAW OFFICES, PLLC**

By: /s/ James M. Jellison
James M. Jellison, Esq.
18801 N. Thompson Peak Parkway
Suite D235
Scottsdale, AZ 85255
*Counsel for Engstrom, Robinson, Gragg, Lapre and Skedel*

71

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

James M. Jellison, Esq.
jim@jellisonlaw.com
**JELLISON LAW OFFICES, PLLC**
admin@jellisonlaw.com
18801 N Thompson Peak Parkway, Ste. D235
Scottsdale, AZ 85255
*Attorneys for Defendants David Engstrom, Jacob H. Robinson, Christopher Lapre, Brian Gragg, and Rory Skedel*


        /s/ Ben Dangerfield

72