**JELLISON LAW OFFICES, PLLC**
18801 North Thompson Peak Parkway
Suite D235
Scottsdale, Arizona 85255
Telephone: (480) 659-4244
E-mail: jim@jellisonlaw.com
JAMES M. JELLISON, ESQ. #012763
Attorney for Defendants Engstrom, Robinson, Lapre, Gragg, and Skedel (the individual Defendants are referred to by name, or collectively as the "City and County Defendants" or "Defendants")

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James W. Denby, a single man ; Elizabeth J. Torres, a single woman,<br><br>                   Plaintiffs,<br>vs.<br><br>David Engstrom; Jacob H. Robinson; Christopher Lapre; Sgt. Gragg; Rory Skedel; Abram Ochoa, a single man,<br><br>                   Defendants. | Case No.: 2:17-cv-00119-SPL<br><br>**DEFENDANTS ENGSTROM, ROBINSON, LAPRE, GRAGG AND SKEDEL'S RULE 60 AND 37 MOTION TO DISMISS PLAINTIFF ELIZABETH TORRES AND FOR SANCTIONS AGAINST PLAINTIFF DENBY AND HIS COUNSEL**<br><br>**(Expedited Briefing and Oral Argument Requested)** |

Pursuant to Fed.R.Civ.P. 60 and 37, Defendants Engstrom, Robinson, Lapre, Gragg and Skedel ("Defendants"), through undersigned counsel, move for dismissal of Plaintiff Elizabeth Torres and sanctions against Plaintiff James Denby, and Plaintiffs' counsel, based on commission of a fraud on the court, and lack of timely disclosure, regarding the competence of Plaintiff Torres to be a party or to testify in any proceeding. In Plaintiffs' Motion to Vacate Competency Hearing, Plaintiffs provided limited medical information in an effort to argue that Plaintiff Torres' incompetency had developed only in the past 30 days. On April 15, 2026, however, Plaintiffs finally provided Torres' medical records from the facility where she has been housed since 2024 which show that Torres was not competent to participate in this case from the moment a motion to file the Third Amended Complaint to

1

add her was filed.    For the next eight (8) months, Plaintiff Denby, and counsel, led this Court, and Defendants, to believe that Torres was a willing and competent participant in the case when they knew she was not.  Indeed, when the motion to amend was filed during August 2025, Plaintiffs' counsel had not received permission from Torres, or any person authorized to act on her behalf, to have her in this case as a plaintiff.

For the following reasons, Plaintiff Elizabeth Torres should be dismissed prior to trial, and sanctions assessed against Plaintiff James Denby, and Plaintiffs' counsel.

## I. FACTUAL BACKGROUND REGARDING TORRES' ALZHEIMER'S AND DEMENTIA.

Defendants' knowledge of Plaintiff Torres' condition is still limited to the April 3, 2026 disclosure of four (4) pages material and the April 14, 2026 disclosure of approximately 1183 pages of documents,[1] along with Plaintiffs' counsel representation that more material would be forthcoming.  (Exhibits A and B hereto, S. Woods April 3, 2026 and April 14, 2026 emails).   With what we have; this is what we know.

As a result of an MRI performed on or around April 23, 2024, findings suggestive of Alzheimer's disease were identified, and "[s]ignificant hippocampal atrophy which would explain the memory loss." (Exhibit C hereto, SimonMed records dated April 23, 2024).   The MRI was ordered by physician Carolyn Elizabeth Gatti.  (*Id.*).  Plaintiffs' counsel has never explained who they received these records from and have failed to provide any other records involving treating physician Carolyn Elizabeth Gatti.  The SimonMed records were provided in this case on April 3, 2026.  (Ex. A; Ex. C, TorresMed 00184-87).

On October 21, 2024, Ms. Torres was evaluated for primary care services where she was described as not having decision-making capacity, being confused "most of the time,"

---

[1] On April 14, 2026, Plaintiffs' counsel provided, for the first time, 1183 pages of medical and/or treatment records from Terra Pointe.  (Pertinent excerpts of those 1183 medical records are attached hereto as Exhibit D).  Terra Pointe is the memory care facility where Torres appears to have resided since December, 2024.

and with memory deficit.  (Ex. D, TorresMed 000024-25).   On December 4, 2024, Torres was experiencing "increased confusion and agitation" to the point that she had been hospitalized in late November, 2024, and that her family was looking to have her moved into a care facility.  (Ex. D. TorresMed 000020).   Torres entered the Terra Pointe Memory Care facility sometime on or near mid to late December, 2024.  (Ex. D, TorresMed 000016).  At the time of her entry into Terra Pointe in 2024, Torres required direct care for dementia, and was unable to self-direct her own care.   (Ex. D, TorresMed 000019).   Her initial 2024 "Directed Care Evaluation" reported "sundown hallucinating at times slamming doors," "constant supervision with bathroom (toileting) care," assistance dressing, "full assistance" for grooming to include washing hands and face, combing/brushing hair, and detailed memory care symptom management, risk of falling, and impaired ability to walk with her head up.  (Ex. D, TorresMed 000113-000125).

In a January 7, 2025 evaluation, Ms. Torres was "aware she is in Arizona but unable to recall other specifics."  (Ex. D, TorresMed 000055).   She was described as "homebound." (*Id.*).   A February 13, 2025 note reports numerous instances of witnessed and unwitnessed falling on Ms. Torres' part.  (Ex. D, TorresMed 000308).   In a July 15, 2025 note, Torres continues memory care treatment for Alzheimer's dementia, and is noted as being "oriented to person and possibly place, forgetful at baseline."  (Ex. D, TorresMed 001121).   In a July 31, 2025 note, the provider indicated Torres "is unable to leave home due to cognitive loss and mental illness, therefore requiring a home visit."  (Ex. D, TorresMed 001163).   The note is significant in that it indicates Torres "***was visiting with her brother today***."   (Ex. D, TorresMed 001163) (emphasis added).[2]   On August 31, 2025, Torres was transported to Banner Thunderbird Medical Center, which noted upon discharge she was "not oriented to place, not oriented to situation."   (Ex. D, TorresMed 001017).   She was not independent

---

[2] Plaintiffs' Motion for Leave to Amend Complaint was filed within two weeks of this visit, and as more fully described below, falsely portraying the testimony that could be expected from Ms. Torres regarding events from many years ago. *See,* Doc. 249; 249-2.

with activities of daily living, and could not walk, even with assistance. (Ex. D, *Id.* and TorresMed 000617-620). By September 30, 2025, her Care Plan Report remained similar to her original care plan. (Ex. D, TorresMed 000685-87). In an October 21, 2025 cognitive examination note, the provider stated "no acute changes to baseline mentation," and that "patient is homebound, with history of muscle weakness … requires moderate to maximum assistance for transfers and ADL's." (Ex. D, TorresMed 001132). The report noted "assessment finding and place of care discussed in detail with patient, family, and/or staff." (*Id.*). The report also noted her dementia is a "progressive disease" for which, at that time, there were no acute changes in behavior or cognition. (Ex. D, TorresMed 001134).

On or about January 6, 2026, Nurse Practitioner Zyrine Calucer noted Torres' "advance Alzheimer's disease progression" requiring 24/7 monitoring, inability to provide care for herself, and able to respond "to some questions with simple yes/no responses." (Ex. D, TorresMed 001148-50).[3] By February 5, 2026, Torres was identified with "major neurocognitive disorder" that renders her "not able to leave [her] home due to cognitive loss and mental illness." (Ex. D, TorresMed 001178). On February 17, 2026, as part of a memory care facility visit to Ms. Torres, she was described as "homebound due to severe cognitive impairment requiring 1:1 escort to leave facility, debility making leaving the home a significant hardship." (Ex. D, TorresMed 001151).

On March 17, 2026, there was no change, with a follow up visit revealing continued "inability to provide care for herself," an inability to "complete day to day activities without

---

[3] The notes are consistent with the DSM5-TR description of Neurocognitive Disorder due to Alzheimer's disease as including "an insidious onset and gradual progression of cognitive and behavioral symptoms (Criterion B)… [t]he typical presentation is amnestic (i.e., wit impairment in memory and learning) . . . [a]t the mild NCD phase, Alzheimer's disease manifests typically with impairment in memory and learning, sometimes accompanied by deficits in executive function. At the major NCD phase, visuoconstructional/perceptual-motor ability and language (e.g., word retrieval) will also be impaired, particularly when the NCD is moderate to severe." *See,* DSM5-TR, pg. 691.

assistance," and "baseline forgetfulness and confusion." (Ex. D, TorresMed 001155). On March 19, 2026, she was determined to be "unable to leave home due to cognitive loss and mental illness," although repeatedly asking "when she can go home" because her house is "only 3 minutes away." (Ex. D, TorresMed 001181). On March 31, 2026, it is noted that a "Court Letter" is requested per a family member request, with a note that Torres "does not have the capacity to travel or care for herself independently." (Ex. D, TorresMed 001158-59). Presumably, this resulted in a letter allegedly signed by NP Zynrine Calucer which letter does not appear anywhere in the Torres medical records, and which has not been authenticated in any way, or a determination made of whether NP Calucer merely signed the letter instead of both signing *and* authoring. (Exhibit C, TorresMed 00186-87).

On April 17, 2026, Plaintiffs' counsel provided the identity of Torres' previous primary care doctor, but no records from this doctor have been produced, and currently Defendants lack the ability to seek further discovery. (Exhibit E hereto, S. Woods email dated April 17, 2026).

## II.     FACTUAL BACKGROUND REGARDING PLAINTIFFS' FILINGS AND DISCOVERY CONCEALING TORRES' CONDITION AND FALSELY REPRESENTING HER PARTICIPATION IN LITIGAION.

During 2018, prior to Torres' dismissal from the case, Defendants sent requests for Torres' prior medical and mental health treatment, and the identity of her treatment providers. (Exhibit F hereto).[4] Plaintiffs responded with no information on these topics, claiming the requests asked for irrelevant information. (Ex. F, pgs. 3 of First Set of Non-Uniform Interrogatories and Requests to Produce). In 2022, the same questions were asked with the

---

[4] The discovery requests also seek information on the identity of the deeded owner, and the issue of standing was a stated affirmative defense in Defendants' very first Answer. Plaintiff Denby argues that standing and ownership were only newly injected during the formation of pretrial documents. That assertion is false. In fact, Denby made several efforts after the subject incident to create a deed, or deeds, in his name to show home ownership. He surely knew it was an issue as early as 2016 and 2017, and when Elizabeth Torres was dismissed in 2019 but never sought an amended complaint at that time.

same responses.  (Exhibit G hereto).  Finally, in 2026, when Plaintiff Denby and counsel knew, but Defendants did not, the same answer was given even though Torres' medical and mental health condition was, and is, a relevant issue for the Court's consideration.  (Exhibit H before).   Defendants had no idea there was an issue involving Torres' competence to assist counsel in making a claim, or to provide testimony until the Defendants' April 3, 2026 email, and the details of Plaintiff Torres' recent treatment provided near midnight on April 14, 2026, a mere two weeks prior to the start of trial.

Looking back on all of Plaintiffs' and Plaintiffs' counsels' filings after the final pretrial conference in July 2025, however, Plaintiffs have steadfastly, though falsely and through active concealment, misled the Court and Defendants as to Torres' true condition. On July 8, 2025, this Court, and the Parties, attended the final pretrial conference.  (Doc. 247).   On July 31, 2025, Plaintiff James Denby had an in-person visit with Ms. Torres who, at that time according to her medical records, "is unable to leave home due to cognitive loss and mental illness, therefore requiring a home visit."   (Ex. D, TorresMed 001163).   A week later, on August 8, 2025, Plaintiff Denby's counsel filed the Motion for Leave to Amend Complaint representing "Elizabeth will testify that it was her and their mother's understanding and intention at the time that Jim [Denby] was the sole owner . . . and that his omission from the deed was a mere oversight"  (Doc. 249, pg. 3, lls. 22-25).   The Motion further alleges quitclaim deeds were signed by Torres in 2016 and 2017, but that the corrected deeds failed to name Denby as an owner in 2014.  (Doc. 249, pg. 3, ll. 24 – pg. 4, ll. 3).   The Motion further states that any prejudice regarding the introduction of Torres at this late stage can be overcome with further discovery.  (Doc. 249, pg. 6, lls. 1-5).   Of course, the Motion for Leave to Amend makes no mention of Torres' then-existing medical or mental health condition, her MRI results, or her residence in a memory care facility based on a diagnosis of advanced Alzheimer's disease and dementia.   (*See*, Doc. 249).

In Plaintiffs' December 3, 2025 Response to Defendants' Motion to Dismiss the Third Amended Complaint, Plaintiffs again assert that 'the individuals whose names were on the

deed (Torres and Logston) believed and considered him to be the actual owner of the Residence." (Doc. 269, pg. 18, ll. 26 – pg. 19, ll. 2).    Plaintiffs further claim that the subsequent quitclaims deeds merely clarified Torres' and Logston's intent. (*Id.*).    The Response states "Elizabeth will testify that it was her and their mother's understanding and intention at the time that Jim was the sole owner . . . and that his omission from the deed was a mere oversight." True to this understanding and intention, on December 16, 2015 Elizabeth and her mother executed a quitclaim deed to Jim as sole owner of the residence." (Doc. 269, pg. 20, lls. 8 – 18).    The Response goes on to say, this "is evidence of the alignment of Jim's and Elizabeth's interest in the Residence." (*Id.*).    At the time of these representations, however, Ms. Torres was not going to be testifying about anything.    On or about January 6, 2026, Nurse Practitioner Zyrine Calucer observed Torres' "advance Alzheimer's disease progression" requiring 24/7 monitoring, inability to provide care for herself, and able to only respond "to some questions with simple yes/no responses." (Ex. D, TorresMed 001148-50).

After the Court granted a period of limited discovery, Defendants filed a Notice of Deposition for Torres to take place on February 27, 2026. (Doc. 285).    On February 26, 2026, Plaintiffs filed their Motion for Protective Order to block depositions of Torres and Denby. (Doc. 286).    The Motion says nothing about Torres' capacity to testify and, instead, relies on Plaintiffs' counsels' schedules that make it "impossible for counsel to meet with and prepare Plaintiffs for a deposition on such short notice." (Doc. 286, pg. 3, lls. 10 – 13).    In Plaintiffs' March 3, 2026 Response to Defendants' Motion to Extend Time to complete discovery, Plaintiffs offer that if "new depositions (including Torres) are deemed appropriate, Plaintiffs' counsel proposes a minimal extension and affirms he can find appropriate dates in the next ten (10) days." (Doc. 288).    Again, nowhere do Plaintiffs, or their counsel, suggest Ms. Torres is incompetent to assist counsel in pursuing claims, that she cannot testify, and that she has suffered from advanced cognitive disabilities, including memory loss, for at least the previous two years.    That last point is also salient as Plaintiffs' late disclosure of Ms. Torres' true condition has prevented Defendants from pursuing discovery regarding the

beginnings of her progressive memory loss.   On January 6, 2026, Nurse Practitioner Zyrine Calucer noted Torres' "advance Alzheimer's disease progression" requiring 24/7 monitoring, inability to provide care for herself, and able to respond "to some questions with simple yes/no responses."  (Ex. D, TorresMed 001148-50).   On March 17, 2026, there was no change, with a follow up visit revealing continued "inability to provide care for herself," an inability to "complete day to day activities without assistance," and "baseline forgetfulness and confusion."   (Ex. D, TorresMed 001155). By March 19, 2026, she was determined to be "unable to leave home due to cognitive loss and mental illness," although repeatedly asking "when she can go home" because her house is "only 3 minutes away."   (Ex. D, TorresMed 001181).

Yet, despite the documentation that clearly shows Torres' inability to self-care, inability to make decisions, or to communicate beyond simple "yes/no responses," on February 24, 2026, Plaintiffs' counsel submitted a series of responses to written discovery *purporting to be Ms. Torres' answers and positions on factual and legal issues* on numerous requests for admission and interrogatories.  (Exhibit H, hereto).   Although Defendants had asked for Torres' health information in 2018, 2022, and 2026 and the MIDP rules apply to this case, Plaintiffs provided nothing in their February 24, 2026 responses *on behalf of Torres* that even hinted at the severe cognitive deficiencies experienced by Torres in the previous years; and at the time of the discovery responses.

One week prior to NP Calucer's alleged letter declaring Ms. Torres incompetent to testify, on March 24, 2026, Plaintiffs' counsel submitted a form of Proposed Pretrial Order where counsel states they "had no reason to question [Torres'] competency to testify about the issues raised in this case and still had no reason to question the same." (Doc. 300-1, pg. 5, lls. 2-5).   While Plaintiffs' counsel represents Torres is in "early stages of dementia and Alzheimer's" that "Plaintiffs' counsel still has no concern about her recall of the events surrounding this case and prior." (Doc. 300-1, pg. 5, lls. 7-12).   Plaintiffs' counsel goes on

to say they met with Ms. Torres "in person recently" and "do not question her fitness to testify about the events at issue in this case." (Doc. 300-1, pg. 5, lls. 11-15; pgs. 20, 30, and 31).[5] Plaintiffs' counsel goes on in several places in the filing to discuss what Torres will testify about at trial, or her role in responding to discovery. (Doc. 300-1, pgs. 9, 18, 19, 24, 27, and 37).

Indeed, there is nothing to suggest that Plaintiffs' counsel actually obtained Torres' permission to come back into this case, or the permission of a person authorized by Torres to make that determination. Equally clear is that Plaintiffs' counsel purported to provide responses to discovery *purporting to be from Torres* at a time when it would have been impossible based on Torres' advanced Alzheimer's disease, dementia, and other cognitive deficiencies to work with Torres to provide accurate responses. Indeed, there is nothing to suggest that in this case, and now on the eve of trial, Plaintiffs' counsel have had any meaningful opportunity to work with Torres to prepare her for trial.

In fact, Plaintiffs did not volunteer Torres' condition. Rather, Torres' condition came *to light only after Defendants attempted to serve a subpoena for trial testimony and was told* by Torres' daughter that she resided at a memory care facility. Even then, Defendants do not have the full medical records and treatment provider list originally requested eight (8) years ago.

### III.    PLAINTIFFS AND THEIR COUNSEL CONTINUE TO MISLEAD THE COURT CONCERNING TORRES' TRUE CONDITION.

On April 16, 2026, Plaintiffs filed a Motion to Vacate Competency Hearing, admitting only that Torres was not competent to "testify." (Doc. 316). The Motion takes no position on whether Torres was ever competent to assist counsel in prosecuting her civil claims. Moreover, Plaintiffs' counsel and Torres' daughter team-up to suggest to this Court that "until recently" Torres' daughter "had no concerns over [her] mother's memory regarding"

---

[5] If Plaintiffs' counsel met with Ms. Torres in-person that would have to have occurred at the Terra Pointe facility, which should have some record of that visit. Torres' Terra Pointe

events related to the litigation that would have occurred years ago. The filing goes on to say "she *now* agrees her mother is *no longer competent* to testify." (Doc. 316, pg. 2) (emphasis added). Plaintiffs' counsel then parrots the same line that "Plaintiff Torres is *no longer* competent to testify in this matter." (*Id.*).

The false and misleading suggestion being made in Doc. 316 is that Torres was previously competent to testify, but only "recently" became incompetent. This fiction is necessary to maintain, because Plaintiffs' counsel, as of March 24, 2026, made numerous statements in the proposed Joint Pretrial Order that Torres was competent to assist counsel and to testify. Certainly, Torres was not competent on March 24, 2026, and then magically became incompetent on March 30, 2026. Plaintiffs, and counsel, foster their false narrative by shielding this Court from any documents from Torres' medical records from the last two years. Defendants now provide that record, and it is clear that Torres was never competent to be a party in this case, or to testify, ever since the filing of the August 2025 Motion for Leave to Amend Complaint. At the time, Torres was entering the Terra Pointe memory care facility, requiring direct care for dementia, and being unable to self-direct her own care. (Ex. D, TorresMed 000019). Her initial 2024 "Directed Care Evaluation" reported "sundown hallucinating at times slamming doors," "constant supervision with bathroom (toileting) care," assistance dressing, "full assistance" for grooming to include washing hands and face, combing/brushing hair, and detailed memory care symptom management, risk of falling, and impaired ability to walk with her head up. (Ex. D, TorresMed 000113-000125).

Ms. Jackson's Power of Attorney status is suspect. In 2022, Torres appears to have executed a Health Care Power of Attorney giving Ms. Jackson the power to admit Torres to an inpatient or partial psychiatric hospitalization program, *if* ordered by Torres' physician. (Ex. D, TorresMed 000010). Jackson, however, did not receive a Durable Power of Attorney until December 30, 2024. (Ex. D, TorresMed 000012-14). By October 21, 2024, Ms. Torres was evaluated and determined to not having decision-making capacity, being confused "most

records currently in our possession do not reflect any visits by counsel.

of the time" and with memory deficit.  (Ex. D, TorresMed 000024-25).  In December 2024, Torres was entering the Terra Pointe memory care facility, requiring direct care for dementia, and was unable to self-direct her own care.   (Ex. D, TorresMed 000019).   Her initial 2024 "Directed Care Evaluation" reported "sundown hallucinating at times slamming doors," "constant supervision with bathroom (toileting) care," assistance dressing, "full assistance" for grooming to include washing hands and face, combing/brushing hair, and detailed memory care symptom management, risk of falling, and impaired ability to walk with her head up.  (Ex. D, TorresMed 000113-000125).    Torres had already been diagnosed with Alzheimer's disease and cognitive impairment significant enough for admission into a full-time memory care facility. By December 30, 2024, Torres was not competent to enter into a durable power of attorney.

**IV.   PLAINTIFFS' CONCEALMENT OF TORRES' COMPETENCY ISSUES CONSTITUTES FRAUD AND A FRAUD ON THIS COURT THAT DEMANDS RELIEF.**

Rule 60(b) enumerates six grounds under which a court may relieve a party from a final judgment, order, or proceeding:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b). A motion seeking relief from a final judgment or order under Rule 60(b) must be made "within a reasonable time" and any motion under one of the first three grounds for relief must be made "no more than a year after the entry of the judgment." *Id.* R. 60(c)(1).

The Supreme Court has "justified the 'historic power of equity to set aside fraudulently begotten judgments' on the basis that 'tampering with the administration of justice ... involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public.'" *In re Levander,* 180 F.3d 1114, 1118 (9th Cir.1999). Still, "[a] court must exercise its inherent powers with restraint and discretion in light of their potency." *Id.* at 1119. Relief for fraud on the court must be "reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." *United States v. Beggerly,* 524 U.S. 38, 46 (1998). A finding of fraud on the court "must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Pumphrey v. K.W. Thompson Tool Co.,* 62 F.3d 1128, 1131 (9th Cir.1995) (internal quotations marks omitted). In *Abatti v. Comm'r of the I.R.,* 859 F.2d 115, 118-119 (9th Cir. 1988), the court noted that fraud on the court "may occur when the acts of a party prevent his adversary from fully and fairly presenting his case." The fraud must involve "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Id.*

In its Order granting leave to add Ms. Torres, the Court noted the importance of prejudice to the non-moving party as a touchstone issue under Rule 15. *See,* Doc. 255, pgs. 5-7. This Court noted that any prejudice can be overcome with "limited discovery and a deposition" or that "[t]he parties could even agree on the scope of her testimony prior to trial.' Doc. 255, pg. 6. Indeed, this Court suggests that deposition, discovery, and/or stipulation could address assertions by the Plaintiffs of what "Elizabeth will testify" about. Doc. 255, pg. 6, nt. 3. In making its ruling, this Court was led to believe that Ms. Torres was a willing, voluntary, and competent party. The Court's suggestions on how to overcome

prejudice required that Ms. Torres be competent.    Yet, not only did Plaintiff Denby, and counsel, conceal the fact that Torres did not provide her consent to counsel to be added to the case, but that she lacked the capacity to do so.

As the Ninth Circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).    Prejudice is the "touchstone of the inquiry under rule 15(a)." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.,* 238 F.3d 363, 368 (5th Cir.2001); *Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir.1973)(stating that "the crucial factor is the resulting prejudice to the opposing party"). Based on the concealment of Torres' condition, this Court was deprived of the opportunity to make a ruling on the Motion for Leave to Amend Complaint on the issue of prejudice to the Defendants.    Here, Torres was never going to testify – not at deposition and not at trial.    Torres was not, and is not, competent to enter into stipulations regarding her testimony.    Had Plaintiff Denby, and counsel, revealed that Torres was incompetent to assist in prosecuting a claim, or providing testimony, this Court could have made an informed decision about whether it was proper to bring her back into the case at all, or whether Defendants would be prejudiced based the inability to ever hear from her; particularly when she had been dismissed from the case for the 6 years between 2019 and 2025 which included a period of open discovery where depositions were actively taken.

Plaintiff Torres should never have been added to this case after disappearing from it for 6 years, and, unbeknownst to this Court and counsel, was incompetent *ab initio* upon her re-insertion into the case during October, 2025.

In addition to Rule 60, sanctions are appropriate pursuant to Fed.R.Civ.P. 37(b)(2).[6] A five-part balancing test is generally applied to determine whether a case-dispositive sanction

---

[6] On April 17, 2026, counsel certifies the parties engaged in a personal, telephonic consultation regarding Plaintiffs' lack of disclosure of Torres' medical records and the identity of her doctors, as well as the concealment of her cognitive disabilities, and whether

13

under Fed. R. Civ. P 37(b)(2) is appropriate. The five factors are: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of lesser sanctions. *Connecticut General Life Ins. Co. v. New Images of Beverly Hills,* 482 F.3d 1091, 1096 (9th Cir. 2007) (quoting *Jorgensen v. Cassiday,* 320 F.3d 906, 912 (9th Cir. 2003)).

This is an unusual situation.    Torres' medical records clearly show her severed cognitive impairment over, at least, the last two years, and it cannot at this point in time be disputed that Torres was never competent to assist counsel in this case, or to testify. Notwithstanding, Plaintiff Denby, and counsel, concealed her condition for eight months, even representing on numerous occasions to the Court and Defendants that Torres was a willing, voluntary, and competent plaintiff who would be available at trial to offer testimony on the factual and legal issues raised by the Third Amended Complaint.    Plaintiffs have asserted that Torres' testimony would be helpful to the trier of fact.    In the absence of such testimony, and given the circumstances of this case, the risk of prejudice to the Defendants is extensive. Defendants would be denied access to testimony necessary to their defense on the issue of Denby's standing on home ownership.  This, of course, is the central damage issue. Denby wants the five Defendants to pay to tear down and rebuild a house that he did not even own in 2014.  Denby wants the jury to believe that even though he was not on the deed, that decedent Logston and incompetent party Torres intended for him to be the owner.  Not only did Ms. Torres refuse to give her testimony at deposition in February, 2026, it turns out she was incompetent to do so then and is incompetent to do so now.  Plaintiffs have withheld the information of Torres' condition, even though the MIDP rules required its voluntary disclosure and relevant medical records for Torres had been requested as far back as 2018. That we are even dealing with the complicated and important issues of how to deal with a

---

Plaintiffs would fulfill their disclosure obligations, dismiss Torres, of offer some other remedy.  No agreements were reach.

14

Plaintiff's incompetence to participate in litigation or testify at trial with only one week to a jury trial is difficult to understand.  In the end, however, Defendants will never have the opportunity to hear from Torres about Denby's assertions, or whether Torres has any real-party interest in the case or its outcome.  She cannot supply the testimony and neither can Ms. Jackson.  Torres' testimony is necessary for her case to be fully assessed and, without it, her claims should not go forward.  The same is true of Denby.  His standing claim is based, on large part, to Torres' testimony over the intent for Denby to be considered the owner, despite the plain language of the deed operative in 2014.  Plaintiff Denby's claim to compensation for damage to real property should also be dismissed.   Under these circumstances, the Court may explore lesser sanctions, but none is consistent with the fairness owed to the Defendants in this case.

Finally, there is a question about monetary sanctions.   Defendants have spent a great deal of time and money defending this case from August 2025 to the present, precisely because Ms. Torres was added as a party, while being incompetent to be a party.  Indeed, a series of motions, responses, revised pretrial documents, and delays have been occasioned based on Torres' fraudulently obtained re-introduction to this case.   Defendants seek, as a sanction, reasonable attorneys' fees incurred in battling issues related to Torres' insertion into the case at a time when she was not competent to be in the case, or to provide any meaningful form of testimony.

## V.     CONCLUSION

Defendants respectfully request that the Court grant their Motion to set aside the original order allowing leave to amend the complaint to introduce Torres back into this case, dismiss Torres from this matter, and, as a matter of sanctions, dismiss Denby's claims or, at the very least, issue an order allowing Defendants reasonable attorneys' fees and costs from August 2025 to the present that would have been avoided had Plaintiffs, and counsel, not pursued claims on behalf of an incompetent party.

DATED this 21st day of April, 2026.

JELLISON LAW OFFICES, PLLC


s/ *James M. Jellison*

James M. Jellison
*Attorney for Defendants Engstrom, Robinson,*
*Lapre, Skedel, and Gragg*


## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on April 21, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing with service on the following registrants:

Robert T. Mills
Sean A. Woods
Mills + Woods Law PLLC
5055 North 12th Street
Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiffs*


s/ *Valerie Hall*

16