**JELLISON LAW OFFICES, PLLC**
18801 North Thompson Peak Parkway
Suite D235
Scottsdale, Arizona 85255
Telephone: (480) 659-4244
E-mail: jim@jellisonlaw.com
JAMES M. JELLISON, ESQ. #012763
Attorney for Defendants Engstrom, Robinson, Lapre, Gragg, and Skedel (the individual Defendants are referred to by name, or collectively as the "City and County Defendants" or "Defendants")

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James W. Denby, a single man ; Elizabeth J. Torres, a single woman,<br><br>                        Plaintiffs,<br>vs.<br><br>David Engstrom; Jacob H. Robinson; Christopher Lapre; Sgt. Gragg; Rory Skedel; Abram Ochoa, a single man,<br><br>                        Defendants. | Case No.: 2:17-cv-00119-SPL<br><br>**DEFENDANTS ENGSTROM, ROBINSON, LAPRE, GRAGG, AND SKEDEL'S  RESPONSE TO PLAINTIFFS' MOTION TO APPOINT SUZANNE JACKSON AS REPRESENTATIVE OF PLAINTIFF ELIZABETH TORRES PURSUANT TO FED.R.CIV.P. 17(c)** |

Defendants Engstrom, Robinson, Lapre, Gragg and Skedel ("Defendants"), through undersigned counsel, hereby submit their Response to Plaintiffs' Motion to Appoint Suzanne Jackson as Representative of Plaintiff Elizabeth Torres Pursuant to Fed.R.Civ.P. 17(c). Defendants' position is that this Court lacks sufficient, credible information that Ms. Jackson can fulfill that role under the standards required under federal law.

**I.  INTRODUCTION**

Rule 17 "requires a court to take whatever measures it deems proper to protect an incompetent person during litigation." *United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cty., State of Wash.*, 795 F.2d 796, 805 (9th Cir. 1986). Rule 17(c) establishes certain rules regarding representation of minors and competent persons in federal court actions. First, for individuals "with a representative," the Rule provides that "[t]he

1

following representatives may sue or defend on behalf of a minor or an incompetent person: (A) a general guardian; (B) a committee; (C) a conservator; or (D) a like fiduciary." Fed. R. Civ. P. 17(c)(1). Second, for individuals "without a representative," the Rule provides that "[a] minor or incompetent person *who does not have a duly appointed representative* may sue by a next friend or by guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is *unrepresented in an action*." Fed. R. Civ. P. 17(c)(2) (emphasis added).

On April 20, 2026, this Court noted that Plaintiffs have only averred that Torres is not competent to testify at trial, that although Jackson purports to hold a durable power of attorney for Torres, shes does not have status in this case, and that, for purposes of Rule 17, Torres is deemed unrepresented by this Court.  As briefed by Defendants in Doc. 321, Plaintiff James Denby, Plaintiffs' counsel, and Ms. Jackson have engaged in conduct to conceal Ms. Torres' condition, minimize the scope of her condition, or have downplayed the impact of her cognitive abilities on the proper administration of this case.   To date, Plaintiffs' counsel and Jackson have only acknowledged that Ms. Torres is not competent to testify at trial.   Although Torres' medical records support a conclusion that she is incompetent, and has been so for some time, to conduct or assist in the prosecution of her claims, work with counsel to cogently identify her position on case facts and issues, or to testify, neither Plaintiffs nor Jackson have been willing to so stipulated.   No hearing has been held to define Ms. Torres' scope of incompetence, nor to assess Jackson's qualifications to serve as some form of representative under Rule 17.

There is insufficient information for this Court to conclude that Ms. Jackson's appointment is a sufficient measure "to protect [Ms. Torres] during litigation." *30.64 Acres of Land, supra.*  Without sufficient information, the appointment of a guardian ad litem will, instead, serve the purpose of protecting Ms. Torres.

## II.    JACKSON DOES NOT QUALIFY AS A "LIKE FIDUCIARY" PURSUANT TO FED.R.CIV.P. 17(c)(1)

Rule 17(c)(1) provides that an appropriate representative for an incompetent person may be drawn from the following group of person:  (A) a general guardian; (B) a committee; (C) a conservator; or (D) a like fiduciary." Fed. R. Civ. P. 17(c)(1).  Plaintiffs do not argue that Jackson qualifies as any of the first three.  Plaintiffs' primary position is that Jackson qualifies as a "like fiduciary," based on the durable power of attorney she holds.   Jackson holds two Powers of Attorney.   The first, from 2022, only provides Jackson the authority to admit Torres into a care facility if ordered by a physician.  (Doc. 321-4, pgs. 2-4).   The second, which it appears Plaintiffs rely on, was signed on December 30, 2024, *after* Torres was deemed by her medical providers as incapable of voluntary, knowing, and intelligent decision making due to her advance stage Alzheimer's disease and dementia.   Whatever Jackson's motives may have been at the time, we do not know at this time.   However, we know enough from the medical records to conclude that Torres did not have capacity to enter into a broad-scope power of attorney as of December 30, 2024.   The proper course of action at that time would be to obtain a guardianship through a court action.  That the proper course of action was not followed by Jackson in this matter is of great concern.

In any event, a power of attorney obtained from a person known to be competent does not a make Jackson a fiduciary, and she cannot be appointed under Fed.R.Civ.P. 17(a) in the absence of a hearing to obtain more information about how, why, and under what conditions the durable power of attorney was obtained.

## III.    PLAINTIFFS' MOTION DOES NOT QUALIFY JACKSON AS A "NEXT FRIEND" PURSUANT TO FED.R.CIV.P. 17(c)(2)

In 1990, the Supreme Court identified the "two firmly rooted prerequisites for 'next friend' standing." *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990). First, a putative next friend must establish the "real party in interest cannot appear on his own behalf to prosecute the action." *Id.* And second, the putative next friend "must be truly dedicated to the best interests of the person on whose behalf [s]he seeks to litigate." *Id.* In connection with this

second requirement, the Supreme Court noted "it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." *Id.* The Supreme Court did not hold this "further suggest[ion]" of a preexisting significant relationship was required to be eligible to serve as a next friend.  Shortly after *Whitmore*, the Ninth Circuit imposed such a requirement.

In *Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192 (9th Cir. 2001), a journalist was attempting to serve as the next friend of an inmate scheduled to be executed. 244 F.3d 1192 (9th Cir. 2001). The inmate, through counsel, opposed the journalist's actions. *Id.* at 1195. In addressing whether the journalist was a proper next friend, the Ninth Circuit held "next friend standing" requires a showing "(1) that the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability; and (2) the next friend has some significant relationship with, and is truly dedicated to the best interests of, the petitioner." *Id.* at 1194. The *Massie* court cited *Whitmore* as supporting this formulation, including the requirement of a preexisting "significant relationship." *Id.*

Not long after *Massie*, the Ninth Circuit was asked to clarify if next friends must have preexisting significant relationships. In 2002, a group of individuals were trying to sue as next friends of habeas petitioners held at Guantanamo Bay. The individuals argued the significant relationship requirement set forth in *Massie* was an "erroneous gloss on *Whitmore*" that "need not be followed." *Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1161 (9th Cir. 2002). The panel majority rejected that argument, claiming the "significant relationship" requirement "meets the concerns the *Whitmore* Court addressed." *Id.* The majority explained the significant relationship requirement "enhances the probability that a petitioner is a suitable next friend, *i.e.*, that a petitioner knows and is dedicated to the prisoner's individual best interests." *Id.* at 1162. Thus, the majority concluded a preexisting relationship is a requirement for someone to serve as a next friend.

Despite ostensibly agreeing with *Massie*, the *Coalition of Clergy* majority went on to provide a crucial qualification: "the contours of the requisite 'significant relationship' do not

remain static, but must necessarily adapt to the circumstances facing each individual detainee." *Id.* Thus, "'[s]ignificance' is a relative concept" and it may be possible in "an extreme case ... that a person with 'some' relationship conveying some modicum of authority or consent ... could serve as the next friend." *Id.* In other words, if the putative next friend's relationship is " 'significant' in comparison to the detainee's other relationships," that may be sufficient. *Id.*

Based on these cases, the requirements a putative next friend must meet are easy to recite but potentially difficult to apply. *Tinsley v. Flanagan*, 2016 WL 8200450 (D. Ariz. May 13, 2016). A putative next friend must, first, establish the real party in interest cannot litigate on her own behalf. Second, a putative next friend must establish she is truly dedicated to the best interests of the real party in interest. And third, a putative next friend must establish she has a significant relationship with the real party in interest. That relationship, however, need only be "significant" when compared to the real party in interest's other relationships. *Tinsley*, 2016 WL 8200450, at *2-4 (footnote omitted); *see also T.W. by Enk v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997) ("significant relationship" requirement in the appointment of a guardian ad litem for a child is typically satisfied by appointment of a parent, older sibling, or conservator, but "in desperate circumstances," where no one with a significant relationship is available, a court may appoint "a stranger whom the court finds to be especially suitable to represent the child's interests in the litigation")

Jackson does not, in her affidavit at Doc. 316-2, opine on competence other than to say Ms. Torres in capable of testifying. Jackson has not established that Ms. Torres "cannot litigate on her own behalf." Although the Court may infer this from medical records provided by Defendants[1] that Torres is incompetent in all respects, the putative "next friend"

---

[1] Plaintiffs and their counsel continue to based on Torres' condition solely on an undated screen shot from a letter purporting to be from a nurse practitioner. *See,* Doc. 316-1. The letter does not appear in Torres' medical records, it remains unknown who authored the letter, or under what circumstances. Moreover, Plaintiffs, and their counsel, never explain why they are relying only on a screenshot of a medical record. There is no information upon which to

has not asserted that through affidavit or testimony at any pre-trial proceeding.   The second issue, whether Jackson "is truly dedicated to the best interests of" Torres is more troubling. Jackson's affidavit at Doc. 316-2 is drafted on Wood and Mills pleading paper, and says more about her support of Plaintiff Denby's alleged relief, and nothing about Torres' interest in recovery.   Upon information and belief, Jackson is no longer a disinterested person, but is a client of Denby's attorneys.   That is omitted from the Jackson affidavit.   Moreover, Jackson' affidavit appears to adopt Denby's position in this case, rather that critically analyzing Torres' potential right to relief, how Jackson intends to assist counsel on Torres' behalf, or indicating she has even had any opportunity to review the extensive case file or underlying facts.   The latter would appear necessary in order to fulfill the role as a representative that is "truly dedicated" to assisting Torres in a trial set to begin five business days from today.

"A person having only an ideological stake in the [litigation] is ineligible" to serve as a next friend. *Anthem Life Ins. Co. v. Olguin*, No. 1:06-CV-01165 AWINEW, 2007 WL 1390672, at *2 (E.D. Cal. May 9, 2007).   Ms. Jackson's affidavit states she has already arrived at an ideological view of this case that is not based on any of the facts obtained in discovery, or on facts that would be available at trial.   More troubling is whether Jackson has a conflict of interest that prevents her from fulfilling her duties.   There is no question that the Woods firm has been dedicated to Denby's cause for nearly a decade now, took no action to keep Torres in this case when she was dismissed in 2019, and only brought Torres back into this case on Denby's insistence and based on Denby's concern whether real property damage recovery could be obtained without Torres' symbolic presence in this case.   Denby continues to assert, up through the revised, proposed pretrial order in this case, that he, not Torres, is the homeowner entitled to recovery for alleged real property damage even though he was not the homeowner on December 17, 2014.   Jackson's affidavit provide no assurance that she is

declare the letter authentic, or to identify it as an admissible record under the federal rules of evidence.

capable of assisting Torres to press her claims in a manner that can be described as "truly dedicated" to Torres, rather than to Denby.

## IV.    THIS CASE IS MORE SUITABLE FOR THE APPOINTMENT OF A GUARDIAN AD LITEM

Pursuant to Rule 17(c)(2), the federal court thus has the power to appoint a special representative for a minor or incompetent plaintiff. *United States v. 30.64 Acres of Land*, 795 F.2d 796 (9th Cir. 1986). "The role of the guardian ad litem is to protect the incompetent person's rights in the action, to control the litigation, to compromise or settle, to direct the procedural steps, and make stipulations." *Golin v. Allenby*, 190 Cal. App. 4th 616, 644, 118 Cal.Rptr.3d 762 (Cal. Ct. App. 2010). As a general matter, the decision whether to appoint a guardian ad litem is "normally left to the sound discretion of the trial court." *United States v. 30.64 Acres of Land*, 795 F.2d 796, 804 (9th Cir. 1986). Relatedly, in its discretion, the Court may remove a guardian ad litem if she acts contrary to the best interests of the minor or incompetent plaintiff, has a conflict of interest with the minor or incompetent plaintiff, or demonstrates an inability or refusal to act. *See Garlick v. Cty. of Kern*, No.1:13-cv-01051-LJO-JLT, 2015 U.S. Dist. LEXIS 22236, at \*4 (E.D. Cal. Feb. 14, 2015) (citing *Hull By Hull v. U.S.*, 53 F.3d 1125, 1127 n.1 (10th Cir. 1995) and *M.K. v. Harter*, 716 F.Supp. 1333, 1335–36 (E.D. Cal. 1989) ).

"Although a guardian ad litem has more limited powers than a general guardian, the appointment of a guardian ad litem 'is more than a mere formalism.' " *AT&T Mobility, LLC v. Yeager*, 143 F. Supp. 3d 1042, 1051-52 (E.D. Cal. 2015) (quoting *United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cnty., State of Wash.* (*Acres*), 795 F.2d 796, 805 (9th Cir.1986). As one court explained, A guardian ad litem "is 'appointed as a representative of the court to act for the [ward] ..., with authority to engage counsel, file suit, and to prosecute, control and direct the litigation. As an officer of the court, the guardian ad litem has full responsibility to assist the court to secure a just, speedy and inexpensive determination of the action.'" *Noe v. True*, 507 F.2d 9, 12 (6th Cir. 1974) (per curiam) (quoting *Fong Sik Leung v. Dulles*, 226 F.2d 74, 82 (9th Cir. 1955) (Boldt, D.J., concurring)).

"For example, notwithstanding the incompetency of a party, the guardian may make binding contracts for the retention of counsel and expert witnesses and may settle the claim on behalf of his ward." *Acres*, 795 F.2d at 805; *see also Thomas v. Humfield*, 916 F.2d 1032, 1034 (5th Cir. 1990) ("The appointment of a guardian ad litem deprives the litigant of the right to control the litigation ...."); *Estate of Escobedo v. City of Redwood City*, No. 03-03204, 2006 WL 571354, at *9 (N.D. Cal. Mar. 2, 2006) ("Courts vest complete control in guardians to direct, manage and control litigation subject to judicial oversight that works as a further safeguard to protect the [ward] and makes sure any compromise is fair to the [ward] and in his or her best interest."). Furthermore, the "court can remove or replace the guardian ad litem if he or she does not properly represent the ward's interests." *See Elliott v. Versa CIC, L.P.*, 328 F.R.D. 554, 556 (S.D. Cal. 2018) ("[I]n its discretion, the Court may remove a guardian ad litem if she acts contrary to the best interests of the minor or incompetent plaintiff, has a conflict of interest with the minor or incompetent plaintiff, or demonstrates an inability or refusal to act.").

A guardian ad litem need not possess any special qualifications, but must "be truly dedicated to the best interests of the person on whose behalf he seeks to litigate." *Whitmore*, 495 U.S. at 163-64. When choosing a guardian ad litem for a lawsuit, the most important factor for the court to consider is the protection of the incompetent party's interest in the litigation. *Williams v. Superior Court*, 147 Cal. App. 4th 36, 47 (2007); *see also Briggs v. Briggs*, 160 Cal. App. 2d 312, 319, 325 (1958) (the guardian ad litem's main focus is the minor's best interests). Courts also frequently consider a candidate's "experience, objectivity, and expertise," *Nichols v. Nichols*, 2011 WL 2470135, at *4 (D. Or. June 20, 2011).

Under the circumstances here, Defendants ask this Court to consider whether a guardian ad litem is, in actuality, the best, even if not the most expedient, choice to protect Torres' interests. Defendants have an interest in a final judgment as to Torres that will truly be binding on her, and assert that a guardian ad litem appointment will maximize the chances

8

that whatever the final judgment, it will not be subject to attack on the grounds that Torres' interests were not protected as required by federal law.

## V.    CONCLUSION

For all of the above reasons, Defendants request this Court deny the motion to recognize Jackson as Plaintiff Torres' representative and to appoint, instead, a guardian ad litem at Plaintiffs' expense.

DATED this 22nd day of April, 2026.

JELLISON LAW OFFICES, PLLC

s/ *James M. Jellison*
James M. Jellison
*Attorney for Defendants Engstrom, Robinson, Lapre, Skedel, and Gragg*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on April 22, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing with service on the following registrants:

Robert T. Mills
Sean A. Woods
Mills + Woods Law PLLC
5055 North 12th Street
Suite 101
Phoenix, AZ 85014
*Attorneys for Plaintiffs*

s/ *James M. Jellison*