Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| James W. Denby, a single man; Elizabeth J. Torres, a single woman,<br><br>Plaintiffs,<br><br>vs.<br><br>David Engstrom; Jacob H. Robinson; Christopher Lapre; Sgt. Gragg; Rory Skedel; Abram Ochoa, a single man,<br><br>Defendants. | Case No.: CV-17-00119-PHX-SPL<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS TORRES AND FOR SANCTIONS**<br><br>(Assigned to the Hon. Steven P. Logan) |

## INTRODUCTION

Defendants Engstrom, Robinson, Lapre, Gragg, and Skedel's (collectively, "Defendants'") Motion to Dismiss Torres and for Sanctions, ECF No. 321 (the "Motion" or "Defendants' Motion"), is the latest in a decade-long pattern of delay, obstruction, and procedural gamesmanship designed to prevent Plaintiffs from ever having their day in court. Having filed four interlocutory appeals, a petition for writ of certiorari to the United States Supreme Court (which was denied), and countless motions over the nearly ten years this case has been pending, Defendants now ask this Court to reward their dilatory tactics by dismissing a Plaintiff's claims and sanctioning her counsel, all because counsel transparently disclosed a medical condition the moment it became known and immediately

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

took steps to protect the interests of a vulnerable client. The Motion should be denied in its entirety.

Defendants' Motion rests on a fundamental mischaracterization of the facts and a willful distortion of the applicable legal standards. They accuse Plaintiffs' counsel of "fraud on the court", an extraordinary allegation that "must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995) (quoting *Abatti v. Commissioner*, 859 F.2d 115, 118 (9th Cir.1988)). Nothing in the record remotely supports such a finding. To the contrary, the record demonstrates that Plaintiffs' counsel: (1) was never terminated by Torres and never withdrew from representation; (2) maintained a good-faith belief, based on regular communications with Torres' brother James Denby, that Torres had capacity to pursue her claims; (3) actually met with Torres in person to prepare discovery responses in February 2026; (4) immediately notified opposing counsel upon learning of Torres' incapacity determination on March 30, 2026; and (5) promptly moved to vacate the competency hearing and has moved to appoint a representative under Rule 17(c). This is the conduct of diligent counsel, not fraud, let alone fraud on the Court.

## I. FACTUAL BACKGROUND

### A. The Protracted History of This Litigation

The events giving rise to this action occurred on December 17, 2014, over eleven years ago. This case was filed on December 17, 2016, and has been pending for nearly a decade. During that time, Defendants have pursued an extraordinary campaign of delay. They have filed four interlocutory appeals to the Ninth Circuit. They filed a petition for

writ of certiorari to the United States Supreme Court, which was denied. Each appeal stayed the proceedings, consuming years of the parties' time and judicial resources. It is against this backdrop, a decade of Defendants' own delay, that Defendants now have the audacity to seek sanctions against Plaintiffs' counsel for purported "delay." Without the continued delay tactics, Ms. Torres would have had the capacity to testify.

### B. Counsel's Continued Representation of Torres

Plaintiffs' counsel was retained by Torres to represent her in this action and has continuously represented her throughout the pendency of this case. Counsel was never terminated. Counsel never withdrew. The attorney-client relationship remained intact at all times. Defendants do not, and cannot, allege otherwise.

Throughout this representation, counsel maintained regular contact with Torres' family, including her brother, Plaintiff James Denby. Mr. Denby communicated with Torres regularly and consistently reported to counsel that Torres had capacity and that he had never observed issues with her memory of the events at issue in the Third Amended Complaint. Counsel relied on these reports in good faith. Critically, when Defendants served new discovery on Torres in February 2026, counsel did not simply respond based on prior information. Counsel actually met with Torres in person to develop responses to the discovery requests. *See* ECF No. 321-8. This meeting occurred just weeks before the incapacity determination, and is wholly inconsistent with Defendants' narrative that counsel was somehow ignoring Torres's condition or proceeding in bad faith.

///

///

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

### C. **The Incapacity Determination and Counsel's Immediate Response**

On March 30, 2026, Nurse Practitioner Zyrine Calucer, Torres' treating provider, authored a letter determining that Torres "lacks the capacity to understand or participate in court proceedings" and is "medically incapacitated and unable to manage personal or legal matters." ECF No. 316-1 at TORRESMED_001187. This was the first formal determination of Torres' incapacity to participate in litigation. This determination related specifically to Torres' competency to testify, not her status as a party to this action, which is a distinct legal concept governed by Federal Rule of Civil Procedure 17(c).

Upon receiving this determination, counsel acted with urgency and transparency. On April 3, 2026, just four days after the incapacity determination, counsel proactively forwarded the MRI records and NP Calucer's letter to defense counsel. *See* ECF No. 321-1. Counsel then filed a Motion to Vacate the Competency Hearing, ECF No. 316, which the Court granted. ECF No. 317. Counsel continued to cooperate fully with Defendants, sharing Torres' medical records via Box link on April 14, 2026, *see* ECF No. 321-2[1], and providing information about Torres' prior primary care physician on April 17, 2026, *see* ECF No. 321-5. This is the opposite of concealment; it is the epitome of good-faith cooperation.

### D. **Torres' Proactive Estate Planning and the Powers of Attorney**

The record demonstrates that Torres proactively planned for the possibility of incapacity well before her cognitive decline. On May 6, 2022, while still competent, Torres

---

[1] Plaintiffs' counsel further updated the same shared folder with additional records as they were received. This was communicated via a phone call to Defense Counsel prior to his filing of his Motion to Dismiss and Request for Sanctions.

executed a Health Care (Medical) Power of Attorney naming her daughter, Suzanne Jackson, as her agent for health care decisions. *See* ECF No. 321-4. On December 30, 2024, Torres executed a General Durable Power of Attorney, which was properly notarized and witnessed, granting Jackson broad authority over her affairs. *See* ECF No. 321-4. That instrument specifically provides: "[i]f the Principal becomes disabled or Incapacitated, the Attorney-in-Fact may continue acting as such despite the disability, incapacity or the expiration date." ECF No. 321-4 at ep 5. This durable power of attorney, by its terms, survives Torres' incapacity and provides the legal framework for Jackson to act on Torres's behalf, including in this litigation.

## II. <u>LEGAL ARGUMENT</u>

### A. <u>Defendants' Claim of "Fraud on the Court" Is Baseless.</u>

Defendants invoke Rule 60(b) and accuse Plaintiffs' counsel of perpetrating a "fraud on the court." This allegation is not merely wrong, it is irresponsible, and frankly, offensive and shocking. Fraud on the court is a very particular concept requiring proof of "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *See Pumphrey*, 62 F.3d at 1131 (quoting *Abatti*, 859 F.2d at 118). The Ninth Circuit has reserved this extraordinary doctrine for cases involving deliberate, intentional schemes to deceive the court, such as the fabrication of evidence, the presentation of perjured testimony, or the systematic concealment of material facts through an orchestrated campaign of deception. *See id.* at 1131-33 (finding fraud on the court where a party created a fraudulent videotape and presented false testimony to the jury).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

The Ninth Circuit has confirmed that "[c]ourts may not invoke [the power to sanction] without a 'specific finding of bad faith.'" *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993) (quoting *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir.1986)) (reversing sanctions where there was "no indication in the record . . . that [the attorney] acted in bad faith or intended to mislead the court"). In *Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644 (9th Cir. 1997), the Ninth Circuit reversed sanctions because the district court had not made the requisite finding of bad faith, holding that even characterizing conduct as "outrageous" and "inexcusable" was insufficient without a specific finding of bad faith intent. *See id.* at 649.

Defendants cannot identify a single affirmative misrepresentation made by Plaintiffs' counsel to this Court. They cannot identify any fabricated evidence, perjured testimony, or orchestrated scheme to deceive. What they point to instead is counsel's continued prosecution of Torres' claims during a period when counsel did not yet know, and had no reason to know, that Torres' cognitive condition had deteriorated to the point of legal incapacity. That is not fraud. That is an attorney fulfilling the ethical obligation to continue representing a client who had not terminated the representation. Defendants seem to argue that Torres' attorneys should have let her claims die after raising the very issue that prompted the motion practice to add Torres back to the suit and ***protect her interests.***

### B. Counsel Had an Ethical Obligation to Continue Representing Torres.

Defendants' argument proceeds from the false premise that counsel should have abandoned Torres the moment any question about her capacity arose. The law requires precisely the opposite. Arizona's Ethical Rule 1.14, which mirrors ABA Model Rule 1.14,

provides that "[w]hen a client's capacity to make adequately considered decisions in connection with a representation is diminished . . . the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client." Ariz. R. Prof. Conduct 1.14(a). The Comment to ER 1.14 explains that "[t]he fact that a client suffers a disability does not diminish the lawyer's obligation to treat the client with attention and respect."

This is precisely what counsel did. Counsel maintained the attorney-client relationship, continued to advocate for Torres' interests, relied on information from Torres' brother regarding her capacity, and, when the formal incapacity determination was made, immediately took protective action by disclosing the situation to opposing counsel, moving to vacate the competency hearing, and filing a motion to appoint a representative under Rule 17(c). Defendants would apparently have preferred that counsel simply abandon Torres and allow her civil rights claims to expire without any advocate. That is not what the law requires; it is what Defendants desire for strategic advantage.

### C. **Competency to Testify Is Not the Same as Capacity to Be a Party.**

Defendants conflate two fundamentally different legal concepts: the competency to testify as a witness under Federal Rule of Evidence 601 and the capacity to be a party to litigation under Federal Rule of Civil Procedure 17(c). Nurse Practitioner Calucer's March 30, 2026 letter addressed Torres' ability to "understand or participate in court proceedings", i.e., her competency to testify. It did not address, and could not have addressed, Torres's legal capacity to be a Plaintiff. Rule 17(c) exists precisely for situations like this. It provides that "[a] minor or an incompetent person who does not have a duly

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

appointed representative may sue by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2). The Rule further provides that "[t]he court must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is ***unrepresented*** in an action." *Id.* (emphasis added). The existence of Rule 17(c) reflects the fundamental policy that an individual's legal claims do not evaporate merely because that individual develops a cognitive impairment. The remedy is the appointment of a representative, not dismissal.

This Court has already recognized as much. In its Order at Document 320, the Court directed Plaintiffs to inform the Court how they will proceed with Torres' claims, not whether Torres' claims should be dismissed. Plaintiffs have responded by moving to appoint Suzanne Jackson as Torres's representative, as the Court contemplated. Defendants' request to dismiss Torres' claims entirely contravenes the protective purpose of Rule 17(c) and this Court's own prior Orders.

### D. <u>Sanctions Are Not Warranted Under Any Standard.</u>

Defendants seek the ultimate sanction: dismissal of Torres's claims and dismissal or sanctions against Denby. The Ninth Circuit has repeatedly held that terminating sanctions are a harsh remedy that should be imposed "only in extreme circumstances." *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985). Before imposing terminating sanctions, a court must weigh five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Hernandez v. City of El Monte*, 138 F.3d 393,

399 (9th Cir. 1998). The fourth and fifth factors—public policy favoring merits disposition and the availability of less drastic sanctions—"counsel strongly against dismissal," and this policy is "particularly important in civil rights cases." *Id.*  Moreover, where a sanction effectively amounts to dismissal, the court is required to make findings of "willfulness, fault, or bad faith." *R & R Sails, Inc. v. Ins. Co. of State of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012). Each of these factors weighs decisively against sanctions here.

There is no evidence whatsoever that counsel acted willfully or in bad faith. Counsel relied on communications with Torres at the inception of this matter, through check-ins during the litigation of this matter, and on good faith on communications from Torres' brother, met with Torres in person in February 2026, and immediately disclosed the incapacity determination when it was received on March 30, 2026. The Ninth Circuit has held that sanctions are improper where there is "no indication in the record . . . that [the attorney] acted in bad faith or intended to mislead the court . . . ." *Yagman*, 987 F.2d at 628.

Torres' claims arise from alleged civil rights violations that occurred on December 17, 2014. All Plaintiffs have waited over eleven years for their day in court. Dismissing her claims as a sanction, rather than appointing a representative under Rule 17(c) as the Federal Rules contemplate, would permanently extinguish the rights of a vulnerable individual who, through no fault of her own, developed a debilitating illness during the pendency of this case.

There is an obvious, far less drastic alternative available: the appointment of Suzanne Jackson as Torres' representative pursuant to Rule 17(c), which Plaintiffs have

9

already moved for. This is precisely the remedy the Federal Rules provide. There is no reason to resort to the nuclear option of dismissal when the Rules provide a tailored mechanism to address the situation.

Defendants claim prejudice, but they cannot articulate any cognizable harm. Torres' claims have been part of this case since 2016. Defendants have had full notice of the claims, have conducted discovery, and have litigated these issues for nearly a decade. The appointment of a representative under Rule 17(c) does not change the nature of Torres' claims or create any new burden for Defendants. What Defendants actually seek is a strategic windfall, the elimination of claims by a cognitively impaired plaintiff, not relief from genuine prejudice. Notably, Defendants laid in wait until a week before trial to raise a conflict issue that simply does not exist.

**E. <u>Defendants' Discovery Complaints Are Meritless.</u>**

Defendants suggest that Torres' discovery responses are somehow deficient or fraudulent. This argument fails for multiple reasons. First, as noted above, counsel actually met with Torres in February 2026 to develop responses to Defendants' latest discovery requests. *See* ECF No. 321-8). Second, Torres has provided discovery responses at three separate stages of this litigation, in January 2018, *see* ECF No. 321-6) January 2022, *see* ECF No. 321-7, and March 2026, *see* ECF No. 321-8, each time cooperating with the discovery process. Third, NP Calucer's incapacity determination was not issued until March 30, 2026, after the discovery responses were prepared based on counsel's February 2026 meeting with Torres. There is simply no basis to claim that the discovery responses were prepared in bad faith or constitute a fraud on the court.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

### F. <u>Rule 11 Does Not Support Sanctions.</u>

To the extent Defendants invoke Rule 11, that Rule requires only that an attorney, after "an inquiry reasonable under the circumstances," certify that factual contentions have evidentiary support or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The standard is one of objective reasonableness, not perfection. *See* Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment) ("The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories").

Counsel's conduct was exceedingly reasonable. Counsel maintained an ongoing attorney-client relationship with Torres. Counsel relied on reports from Torres' brother that she had capacity and could recall the events at issue. Counsel met with Torres in person in February 2026. When the incapacity determination was made on March 30, 2026, counsel disclosed it within days. No reasonable standard of conduct required counsel to independently conduct medical evaluations of a client who had not been adjudicated incompetent and whose family reported no concerns about her capacity.

### G. <u>Sanctions Against Denby Are Entirely Unwarranted.</u>

Defendants' request for sanctions against Plaintiff James Denby is particularly offensive. Denby is a separate plaintiff with his own independent claims. His claims do not depend on Torres' capacity and are not affected by her medical condition. Any dispute regarding Torres' capacity has absolutely no bearing on the merits of Denby's claims, his conduct, or his right to pursue his case. In fact, her incompetency potentially hurts both

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

11

Denby's and Torres' claims as no testimony is able to be given by Torres. Regardless, Torres' rights have been vigorously pursued and protected.

Furthermore, Denby acted in good faith throughout. As Torres' brother, he maintained regular contact with her and genuinely believed she had the capacity to participate in the litigation. He shared his observations with counsel, who reasonably relied on them. That his sister's condition was more advanced than he appreciated does not make Denby's conduct sanctionable. It makes him a concerned family member who was doing his best to support his sister's legal rights. Sanctioning Denby for this would send a chilling message that family members who assist in the prosecution of civil rights claims do so at their peril.

### H. **Defendants' Motion Is Itself an Exercise in Bad Faith and Delay.**

The true nature of Defendants' Motion is not difficult to discern. This case has been pending for nearly ten years. The events occurred over eleven years ago. Defendants have filed four interlocutory appeals and a petition for certiorari, all of which failed. They have consumed years of the parties' and the Court's time with procedural maneuvers. In the meantime, life has moved on. Parties and witnesses have grown older. One, Wilma Logston, has passed away, and another has developed dementia. Now, faced with the prospect of finally having to try this case on the merits, Defendants seize upon a client's tragic medical diagnosis as an excuse for even more delay and an opportunity to avoid accountability.

Sanctions under 28 U.S.C. § 1927 are "extraordinary" and must be "exercised with extreme caution." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

12

Such sanctions require a finding of subjective bad faith, that an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* at 436; *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002). There is no evidence of any such intent here. If anything, the decade-long history of this case suggests that it is Defendants who have multiplied the proceedings unreasonably and vexatiously through their relentless motion practice and serial appeals.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss Torres and for Sanctions (Doc. 321) in its entirety. Defendants have failed to demonstrate fraud on the court, bad faith, willfulness, or any other basis for the extraordinary relief they seek. Counsel acted at all times in good faith, consistent with ethical obligations, and with transparency toward both this Court and opposing counsel. The appropriate remedy for Torres' incapacity is the one the Federal Rules provide: the appointment of a representative under Rule 17(c), which Plaintiffs have already moved for. Defendants' attempt to weaponize a client's medical diagnosis to obtain a strategic litigation advantage should be rejected.

Plaintiffs further request that this Court consider awarding Plaintiffs their reasonable attorneys' fees incurred in responding to this baseless Motion, or in the alternative, that the Court admonish Defendants for their continued pattern of delay and frivolous motion practice in a case that has been pending for nearly a decade.

///

///

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**RESPECTFULLY SUBMITTED** this 22nd day of April 2026.

MILLS + WOODS LAW, PLLC

By    */s/ Sean A. Woods*
        Sean A. Woods
        Robert T. Mills
        5055 North 12th Street, Suite 101
        Phoenix, AZ 85014
        *Attorneys for Plaintiffs*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

14

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

James M. Jellison, Esq.
jim@jellisonlaw.com
**JELLISON LAW OFFICES, PLLC**
admin@jellisonlaw.com
18801 N Thompson Peak Parkway, Ste. D235
Scottsdale, AZ 85255
*Attorneys for Defendants David and Jane Doe Engstrom, Jacob H. Robinson, Christopher and Jane Doe Lapre, Sgt. Gragg and Jane Doe Gragg, and Rory Skedel*

Abram Ochoa
Tuc.Rita.library@azadc.gov
*Defendant*

     */s/ Ben Dangerfield*
    _____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556