**JELLISON LAW OFFICES, PLLC**
18801 North Thompson Peak Parkway
Suite D-235
Scottsdale, Arizona 85255
Telephone: 480.659.4244
JAMES M. JELLISON, ESQ., #012763
E: jim@jellisonlaw.com
E: admin@jellisonlaw.com
   *Counsel for Defendants David Engstrom, Jacob H. Robinson, Christopher Lapre, Brian Gragg, and Rory Skedel (collectively the "Defendants")*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE STATE OF ARIZONA

| | |
|---|---|
| James W. Denby,<br><br>Plaintiff,<br><br>v.<br><br>City of Casa Grande, et al.,<br><br>Defendants. | Case No. CV-17-00119-PHX-SPL<br><br>**DEFENDANTS MOTION TO STRIKE PLAINTIFFS' RESPONSE AT DOC. 325 AND, ALTERNATIVELY, REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR RULE 60 AND 37 RELIEF** |

Defendants David Engstrom, Jacob H. Robinson, Christopher Lapre, Brian Gragg, and Rory Skedel (the "Defendants"), by and through undersigned counsel, move this Court to strike Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss and for Sanctions (Doc. 325) as untimely filed in violation of this Court's Order or, alternatively, to consider the Reply herein.

**I.   THE COURT'S SCHEDULE AND PLAINTIFFS' FAILURE TO ABIDE BY THAT SCHEDULE.**

On April 21, 2026, this Court entered an Order setting an expedited briefing schedule in light of the imminent trial date. The Court specifically ordered that: "Plaintiffs shall file a response … by April 22, 2026 at 5:00 p.m." The Court further ordered that Defendants' reply would be due the following day at noon. Despite this clear directive,

Plaintiffs filed their Response at 5:35 p.m. on April 22, 2026, thirty-five minutes after the Court-imposed deadline. Plaintiffs did not seek leave to file late, did not request an extension, and offered no justification for their untimely filing.

## II. LEGAL STANDARD

District courts have inherent authority to enforce their orders and control their dockets, including the authority to strike filings that fail to comply with court-ordered deadlines. See, e.g., Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 12(f); *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (district courts have broad discretion to enforce scheduling orders).  Scheduling orders "are not frivolous pieces of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

This is particularly true where, as here, the Court has imposed an expedited schedule on the eve of trial, where compliance is critical to orderly adjudication.

## III. ARGUMENT ON MOTION TO STRIKE

### A. Plaintiffs Violated a Clear Court-Ordered Deadline

There is no dispute that Plaintiffs did not file their Response in accordance with the clear mandates of this Court's Scheduling Order at Doc. 322. The filing timestamp reflects submission at 5:35 p.m.—after the deadline had expired. The Court's Order was unequivocal and left no room for interpretation. Failure to comply with such an order—particularly in an expedited setting—warrants enforcement.

### B. Plaintiffs Failed to Seek Leave or Show Good Cause

Plaintiffs did not request an extension before the deadline; move for leave to file out of time; or provide any explanation for their delay. Absent a showing of good cause under Rule 16(b)(4), noncompliance with a scheduling order should not be excused.

### C. The Untimely Filing Flouts this Court's Expedited Schedule

Under the Court's expedited schedule, Defendants have only four (4) business hours to submit a reply brief on an extremely important issue.  Plaintiffs' concealment of information that would have gone to heart of assessing the prejudice now inherent in

bringing Torres back into this case is not a de minimis allegation that can simply be brushed aside. By filing late, Plaintiffs effectively flout this Court's Orders setting a short deadline for response, with an apparent confidence that the rules do not apply to them.

### D. Striking the Filing Is the Appropriate Remedy

Given the clear violation of a court order, the absence of any request for relief or justification, and the prejudice in an expedited, pretrial posture, striking the untimely response is appropriate and consistent with the Court's authority to enforce its orders. If the Court declines to strike the filing outright, Defendants respectfully request that the Court disregard the Response.

Alternatively, Defendants offer, without waiving the relief of striking the Response, the following in Reply.

### IV. ARGUMENTS IN REPLY SUPPORTING DEFENDANTS' MOTION AT DOC. 325.

Defendants' Motion at Doc. 321 seeks relief from Plaintiff Denby and Plaintiffs' counsel based on newly discovered evidence, fraud *and* fraud on the court under Rules 60(b)(2)&(3) and 37. Plaintiffs do not argue that Rules 60 and 37 do not apply, or that Defendants have not provided a correct legal standard under those Rules. Additionally, Plaintiffs do not dispute the relief requested is proper under Rules 60 and 37 if this Court accepts the facts provided by Defendants, which are supported by evidence. Instead, Plaintiffs and counsel, without providing any evidence, simply argue "other" facts which are inconsistent with the history of the case, and medical records provided by Defendants.

Plaintiffs' and their counsels' decision to seek Torres' reintroduction after having been dismissed for six years - without informing the Court, or Defendants' counsel, that in those six years Torres had become so incapacitated she is unable to assist counsel, or testify - is not only unconscionable; but demands proper inquiry and remedy. In their Response, Plaintiffs try to "palm off" the seriousness of their conduct as a delay tactic, reciting Defendants' decisions to seek lawful and available motions or appeals over the years. These arguments by Plaintiffs only serve as a distraction. First, Defendants never asked

for delay in their Motion at Doc. 321.  Second, Defendants' Motion is about Plaintiffs', and counsels', conduct since August 2025 and their continued efforts to keep the Court and Defendants from knowing Torres' true circumstances and condition; until Defendants, themselves, first discovered that Torres was in a memory care facility after attempting service of a subpoena.

Indeed, Defendants provided this Court with exhibits that support each and every fact identified by Defendants.   In turn, Plaintiffs' Response fails to contain a single piece of evidence, visitor log, or affidavit in support of their position.    On issues of this seriousness, evidence is necessary and should have been provided, or an evidentiary hearing held.   Taking Plaintiffs' "word for it" does not suffice under these circumstances.

### A. COUNSEL'S BALD ALLEGATION THAT THEY CONTINUED TO REPRESENT TORRES IS NOT ONLY UNTRUE, BUT IS INCONSISTENT WITH THE KNOWN FACTS.

In 2019, Plaintiff Torres was dismissed from this case without prejudice.  Although this Court offered Torres a chance to file an amended complaint - which would have required simple allegations to show standing – Torres' counsel did nothing, resulting in Torres be out of the case for the next six (6) years.   If counsel was representing Torres in 2019, they failed miserably.   After 2019, counsel did nothing to represent Torres in this action until Denby and counsel sought her return after the July 8, 2025 final pretrial conference.  Plaintiffs' Response does not dispute that when they filed the Motion for Leave to Amend (to bring Torres back), they engaged in no consultation with Torres or Torres' POA, and did not have either's permission to bring Torres back into the case.  Yet, Plaintiffs' counsel led this Court and Defendants to believe – falsely - that Torres was a voluntary, willing, and competent participant in the case.

As to how Torres' condition came to light, on March 23, 2026, *Defendants' investigator*, in trying to serve a subpoena, found out that Torres was in a memory care facility.  The investigator interviewed Torres' daughters that day.   The following is what

the investigator wrote concerning the issues pertinent to Defendants' Motion during his interview of Suzanne Jackson:

On March 23, 2026 I telephonically interviewed Suzanne Marie Jackson, who resides at [omitted for privacy reasons]. She was born on [omitted for privacy reasons] (age 57) and holds [omitted for privacy reasons]. Her email address is [omitted for privacy reasons]. It would appear from database records that her spouse is or may have been [omitted for privacy reasons].

At the onset of the interview I introduced myself, and indicated that I was conducting investigation on behalf of Pinal County and its attorney. Ms. Jackson acknowledged that she had been told by her younger sister, Natalie Torres, that I had contacted her. Suzanne, like Natalie, was pleasant and appeared to be forthcoming during the course of the interview.

Suzanne acknowledged that she holds a medical, financial and general power of attorney for her mother, Elizabeth Torres. Suzanne claims that she did not know, until I mentioned it, that Elizabeth is a plaintiff in the lawsuit. She said that several months ago she was contacted by attorneys for Jimmy Denby, who said that they wanted to call Elizabeth to the trial. Suzanne explained to them that Elizabeth was in a memory care facility, and that the attorneys would have to ask Elizabeth's doctor whether she could testify. She did not think that the attorneys were interested in following up about Elizabeth's status and competence. When I asked Suzanne about Elizabeth's memory, she said that her mother had "good days and bad days," and that her long-term memory was better than her short-term memory. Suzanne said that Elizabeth uses a walker, and if she went to the trial to testify, she would need to be a wheelchair.

Suzanne confirmed that there has been no guardianship action or other probate action opened for her mother. She also confirmed the basic information that I had obtained from Natalie about Elizabeth, including information about the epilepsy (reported caused by a toxic spill at Motorola many years ago), the history of strokes, a more serious stroke in 2019, the subsequent onset of dementia in 2024 and later that year the diagnosis of Alzheimer's. She also confirmed that in December 2025[1] Elizabeth entered the care facility (Tierra Pointe). According to Suzanne, Natalie had been taking care of Elizabeth during the week days for 5 years, and they had folks come in at night and on the weekend to help. It got to the point that Natalie could no longer

---

[1] Torres' medical records show that entry into Terra Pointe actually occurred in December 2024.

5

care for her mother, and the decision was made to place her in the memory care facility.

Defendants avow that, if called to testify under oath at a hearing, investigator Keith Sobraske would testify that Ms. Jackson relayed the above information. According to Ms. Jackson' statements, she did not know Ms. Torres was even a plaintiff until informed on March 23, 2026 *by Defendants*, and that she had informed the "attorneys for Jimmy Denby" "months ago" that Ms. Torres was in memory care, and only her doctor could say whether she could testify. "Months" prior to March 23, 2026, Denby's counsel did not identify themselves to Jackson as being Torres' counsel as well; merely that they wanted her to testify. Ms. Jackson is unaware of any visits by Denby's counsel to actually meet Ms. Torres in the facility prior to March 23, 2026.[2]

The above information directly contradicts Plaintiffs' counsels' assertion that they "met with Torres in person to develop discovery requests." Moreover, in the Response, no evidence or affidavits are provided to support the assertions made. The Response gives no detail on what they did, when they met, or how they could possibly have missed Torres' deteriorated condition that is clearly described in the medical records. By February, 2026, Torres' medical records show advance memory loss and an inability to respond to questions, except at best, "yes/no" answers. We know from the records that her daughter had a POA, and Torres was determined incapable of self-care, much less making important or complex decision-making. The medical records, in short, contradict Plaintiffs' counsels' unsupported assertion that they were able to engage in a sophisticated assessment of discovery requests and responses during February, 2026.[3]

---

[2] Nothing in the medical records reflect a visit by counsel at any time Torres was at Terra Pointe.

[3] On the other hand, if Torres was capable of answering discovery responses and making binding admissions in February, 2026, she would also have been able to testify on February 27, 2026. By omitting anything about Torres' condition in the Motion for Protective Order, Plaintiffs and counsel deprived the Court of the ability to rule that the depositions should proceed, giving Defendants a chance to hear from Torres. Moreover, if, as Plaintiffs allege, she was competent in February 2026, there remains a question about the status and

Moreover, if there had been a visit, Plaintiffs' counsel could have simply gone to the POA to obtain a visitation log entry for their Response to show a visit, but they did not do so. It is not enough for Plaintiffs' counsel to just say something, without proof. The issues raised in Defendants' Motion are far too important for that. Since Plaintiffs and counsel have failed to provide evidence supporting their assertions, they have created a need for an evidentiary hearing where witnesses are called, documents received, and the true facts developed so that the Court can make an informed decision.

Finally, the assertion that "Mr. Denby communicated with Torres regularly and consistently reported to counsel that Torres had capacity and that he had never observed issues with her memory of the events at issue in the Third Amended Complaint" show that the lawyers were aware, from the outset, that Torres was in a memory care facility, and that her ability to recollect was at issue. Either way Rule 60 and 37 relief are justified; Denby either knew and lied to his own lawyers; or the lawyers were properly informed and joined in the concealment.[4] Again, no disclosures followed, and counsel was content to, at the very least, turn a blind eye to Torres' condition and, more importantly, actively concealed information that prevented the Court, and Defendants, from discovering the truth of Torres' condition. Knowing that Torres was incapable of being a plaintiff or testifying in this case, could have and should have, changed the decisions on bringing her back into the case, or challenging her and Denby submitting to depositions on the issues raised in the Third Amended Complaint. As late as March 24, 2026 – in the proposed final pretrial order – Plaintiffs' counsel represented to this Court that Torres, despite her medical condition, would be able to testify at trial. That was obviously a false representation in light of the March 30, 2026 letter from NP Calucer, and the existing medical records that Plaintiffs had an obligation to produce under discovery request and MIDP obligations.

scope of her competency even now, on the eve of trial.

[4] Defendants should not have to learn the answer to this question during trial. Based on Plaintiffs' assertions in Doc. 325, unsupported by evidence, this Court should hold an evidentiary hearing or, at least, allow Denby's deposition before the trial starts.

Defendants were entitled to something better than Plaintiffs' counsels' reliance on Denby's report "to counsel" that Torres had capacity, and this Court was entitled to accurate information at the time of the Motion for Leave to Amend, Motion to Dismiss, Motion for Protective Order, and Proposed (Revised) Pretrial Order.

### B. PLAINTIFFS AND COUNSEL DID NOT IMMEDIATELY RESPOND TO TORRES' INCAPACITY.

Medical records show Denby visited Torres at Terra Pointe on July 31, 2025. Less than two weeks later, Plaintiffs' counsel filed the Motion for Leave to Amend to add Torres back into the case. If Denby was faithfully reporting Torres' circumstances to counsel, they surely would have known that Torres was committed to a memory care facility, there was a POA (who was not Denby), and that Torres suffered from serious memory loss. If counsel visited Torres in February, 2026, they would have seen with their own eyes how far she had fallen. Accordingly, as to the interview with Keith Sobraske and Ms. Jackson on March 23, 2026, she had no idea Torres was a party to this case until that interview, and "months" before had informed "Denby's" lawyers that Torres' ability to testify needed to be assessment by medical professionals. No action or disclosure followed any of these events. The assertion that they did not know Torres was incompetent until March 30, 2026 is preposterous in light of the memory issues reflected in the medical records during the preceding two years, and their contact with Jackson and their own client, Denby.

The NP Calucer letter was obtained "by the family" only after the March 23, 2026 attempt to subpoena Torres. There is no evidence that Plaintiffs' counsel was involved in that process. Moreover, we've never seen an authenticate copy of the Calucer letter; only screenshots. How it was created, or wrote it, and the standard relied upon by Calucer remain unknown. Whether the letter is authentic, or properly instructs this Court as to competency, are unknown.

Moreover, the Calucer's letter was dated March 30, 2026, and does not establish the beginning of Torres' incompetency. Again, the medical records show that her brain

function (through MRI) and her loss of competency (through evaluation and treatment) were well-known prior to March 30, 2026.

### C. PLAINTIFFS AND COUNSELS' RELIANCE ON THE POA IS MISPLACED.

As shown by Defendants, through evidence, the Durable POA was signed on December 30, 2024 *after* Torres had been diagnosed with Alzheimer's and dementia, transferred full time to a memory care facility, and *after* she had been diagnosed as incompetent to make decisions on complex documents - like a POA or litigation matters. Whatever Ms. Jackson's motive (good or bad) to obtain a broad POA at that time, it was obtained from an incompetent party and a guardianship should have been instituted instead. Suzanne Jackson indicated that she did not know that Elizabeth was a plaintiff in the case, or the history of Elizabeth's involvement in the lawsuit, *i.e.,* being added as a plaintiff in an amended complaint, dismissed out of the lawsuit in 2019, and added back in as a plaintiff in 2025, which she acknowledged would have been after Elizabeth entered the memory care facility. She was not even contacted about Torres being added to the lawsuit, even though Denby would have known Jackson was the POA.

### V. CONCLUSION.

Plaintiffs' bald, unsupported assertions are insufficient to deny the relief Defendants request and the evidentiary record, itself, shows that Plaintiffs' mendacity, minimizing, and concealment continue to this day when it comes to Ms. Torres' condition, and how Plaintiffs' and their counsel managed this litigation to the detriment of informed decision-making.  Defendants' Motion, on the other hand, is fully supported by the evidence provided, the record of this case, and the law.  Defendants respectfully request the Rule 60 and 37 relief requested be granted, and if not, that Plaintiffs' unsupported assertions in their Response be properly vetted in an evidentiary hearing where documents must be produced, and witnesses testify under oath and subject to cross-examination including Calucer, Jackson, Denby, Sobraske and Woods.

**RESPECTFULLY SUBMITTED** this 23rd day of April, 2026.

JELLISON LAW OFFICES, PLLC

s/ *James M. Jellison*

James M. Jellison, Esq.
*Counsel for Defendants*

## CERTIFICATE OF FILING & SERVICE

I hereby certify that on April 23, 2026 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing with service on the following registrants, or by mail if not a registrant:

Sean A. Woods, Esq.
Robert T. Mills, Esq.
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
T: 480.999.4556
E: docket@millsandwoods.com
E: swoods@millsandwoods.com
 *Counsel for Plaintiff*


By: s/ *James M. Jellison*

11