**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

James W. Denby, et al.,

     Plaintiffs,

vs.

City of Casa Grande, et al.,

     Defendants.

No.  CV-17-00119-PHX-SPL

**ORDER**

Pending before the Court is Defendants Engstrom, Robinson, Lapre, Gragg, and Skedel's (collectively, "Defendants") Rule 60 and Rule 37 Motion to Dismiss Plaintiff Elizabeth Torres and for Sanctions against Plaintiff Denby and his Counsel. (Doc. 321). In accordance with expedited briefing ordered by the Court, Plaintiffs filed a Response (Doc. 325),[1] and Defendants filed a Reply (Doc. 326). The Motion is fully briefed, and the Court now rules as follows.[2]

///

///

---

[1]   The Court ordered Plaintiffs to file their Response by 5:00 P.M. on April 22, 2026. (Doc. 322). Plaintiffs' Response was not filed until 5:35 P.M. (*See* Docs. 326 at 1, 327 at 3). As a result, Defendants moved to strike the Response in their Reply. (Doc. 326 at 1–2). Plaintiffs then filed a Response to the Reply, which included a declaration from Plaintiffs' counsel's paralegal, explaining why the filing was thirty-five minutes late. (Doc. 327). The Court will decline to strike the Response.

[2]   Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I.    BACKGROUND

### A. Facts and Procedural History

This case has been pending for almost ten years. (*See* Doc. 1). The procedural history is complex, and this action has involved three different Plaintiffs, three amended complaints, and three appeals to the Ninth Circuit. The jury trial in this case was set to begin on April 28, 2026, four calendar days from the date of this Order. After Plaintiff Elizabeth Torres was re-added to this case in the Third Amended Complaint, filed October 9, 2025, the parties engaged in highly contested motion practice about the two Plaintiffs' abilities to claim damages. About one month ago, on March 24, 2026, Defendants informed the Court that Plaintiff Torres resides in a memory care facility and raised concerns about her competency. (Docs. 300-1, 302). The questions about Plaintiff Torres's competency, and Plaintiffs' subsequent course of conduct, have led to the filing of the instant Motions.

### 1.  Factual History

The Court has outlined the facts behind this case numerous times but will do so again in this Order. This case arises from a search warrant executed in the City of Casa Grande. (Doc. 256). In the afternoon of December 17, 2014, the Casa Grande Police Department ("CGPD") responded to a "domestic disturbance" complaint. (*Id.* at 4, ¶ 24). The disturbance involved Abram Ochoa ("Ochoa"), who had multiple arrest warrants. (*Id.* ¶ 27).

The officers learned that Ochoa fled to Plaintiffs' residence (the "Residence"). (*Id.* at 5, ¶ 30). At the time, Plaintiffs James Denby and Elizabeth Torres, who are brother and sister, as well as their mother Wilma Logston, "resided at" the Residence. (*Id.* at 3, ¶ 13). At the time, "Elizabeth Torres and Wilma Logston were the named grantees listed in the deed of the Residence." (*Id.* ¶ 15). However, Plaintiffs allege that Denby, Torres, and Logston "all understood and intended that James Denby was the sole owner of the Residence." (*Id.* ¶ 16).

The officers believed that Ochoa was inside the Residence. (*Id.* ¶ 37). Minutes after arriving, CGPD requested assistance from the Pinal County Regional SWAT ("SWAT").

(*Id.* at 6, ¶ 51). After one hour, Defendant Engstrom, a sergeant in the CGPD, noticed movement coming from a tarp in the backyard, but no one investigated further. (*Id.* at 7, ¶ 57–63). Meanwhile, two SWAT teams arrived and used a Bearcat armored vehicle to drive over a fence and into the front of the Residence, breaking down the windows and doors. (*Id.* at 8, ¶¶ 65, 67, 73). SWAT attempted to communicate with Ochoa and launched chemical munitions into the Residence. (*Id.* ¶¶ 76, 78). A judge signed a search warrant, permitting officers to enter the Residence and curtilage for the sole purpose of arresting Ochoa. (*Id.* at 9, ¶¶ 79–82). Over the next several hours, SWAT deployed robots, fired twenty-two canisters of pepper spray and tear gas, and deployed Noise Flash Diversionary Devices into the Residence. (*Id.* at 9–10, ¶¶ 83, 84, 95, 98, 102, 104). SWAT eventually entered the home to search for Ochoa, and during that process, destroyed several items including furniture, cushions, pillows, windows, window coverings, bathroom mirrors, shower doors, toilets, televisions, artwork, and antiques. (*Id.* at 11, ¶¶ 103, 109–15). At approximately 10:03 P.M., Ochoa was found hiding under a tarp in the backyard. (*Id*. at 12, ¶ 121–23). He had apparently been hiding there during the entire incident. (*Id*.).

## 2. Procedural History

Plaintiffs Denby, Torres, and Logston initiated this lawsuit because of the "complete demolition and destruction of the Plaintiffs' personal property and Residence."[3] (*Id.* at 12). They filed the case in state court (Doc. 1-1 at 2), and Defendants removed it to federal court on January 13, 2017. (Doc. 1). The original three plaintiffs amended their complaint twice. (*See* Docs. 31, 82).

Plaintiffs Torres and Logston were later dismissed as Plaintiffs, leaving Plaintiff Denby as the only Plaintiff for a portion of this litigation. On March 29, 2019, the Court

---

[3]    Plaintiffs filed the lawsuit against Ochoa, who has not been active in this litigation since default was entered against him (Doc. 67), as well as Defendants Engstrom, Robinson, Lapre, Gragg, and Skedel, officers employed by the City of Casa Grande Police Department or the Pinal County Sheriff's Office. (Doc. 256 at 2–3, ¶¶ 7–11). The operative complaint includes three claims: violation of Plaintiff's Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983 against the Officer Defendants (Count I); failure to intervene with respect to a constitutional violation against the Officer Defendants (Count II); and Trespass against Defendant Ochoa (Count III). (*Id.* at 14–18).

3

granted Defendants' Motion to Dismiss Elizabeth Torres for lack of standing. (Doc. 106 at 6–7). The Court explained: "The only fact alleged as to Elizabeth Torres in the Second Amended Complaint is that she is a resident of Maricopa County, Arizona. Without more, Plaintiffs have failed to satisfy the Article III standing requirements." (*Id.* at 7) (citation omitted). In that Order, the Court granted Plaintiffs leave to amend the complaint as to Elizabeth Torres's standing, but Plaintiffs did not do so. (*Id.*). On July 13, 2022, Plaintiffs filed a Motion to Dismiss Wilma Logston as Plaintiff, after informing the Court that Ms. Logston had died. (Doc. 187). The Court granted the Motion and dismissed Ms. Logston from the action on July 15, 2022. (Doc. 188).

Between 2018 and 2025, Defendants filed four appeals to the Ninth Circuit.[4] After the Ninth Circuit affirmed the Court's denial of Defendants' Motion for Summary Judgment and the Mandate issued on April 15, 2025 (Doc. 229), the Court set a Final Pretrial Conference. (Doc. 230).

### 3. Plaintiff Torres's Re-addition to the Action

On July 8, 2025, the Court held the Final Pretrial Conference ("FPTC") in this matter and set a four-week jury trial. (ME 250).[5] In advance of the FPTC, Defendants raised contested issues of fact and law that Plaintiff Denby did not own the Residence at the time of the incident and, as a result, lacks standing to assert a constitutional violation. (Doc. 237-1 at 4, 12–13). Specifically, Defendants contended that "Plaintiff [Denby] was not the owner of the home at the time of this event and, as such, he is not a real Plaintiff in interest having standing to make a Constitutional claim or to obtain damages." (*Id.* at 13). Plaintiff Denby argued that although Logston and Torres's names were on the deed, he "was

---

[4]    The Court's January 14, 2026 Order contains a more detailed summary of the appeals. (Doc. 275). In its rulings on the Motion to Dismiss and Motion for Summary Judgment, the Court found that the Defendant Officers were not entitled to qualified immunity, and the Court of Appeals affirmed those decisions. (Docs. 136, 142, 216, 229).

[5]    The jury trial was originally set to begin March 7, 2026. (ME 250). The case was briefly reassigned to Judge Liburdi (Doc. 258), and the trial date was reset to April 28, 2026. (Doc. 262). That date remained on this Court's calendar when this case was reassigned back to Judge Logan. (Doc. 271).

4

responsible for all aspects of the house" and the house "was supposed to be recorded in Mr. Denby's name prior to the event." (*Id.* at 12).

At that time, Plaintiff Denby also filed a Motion *in Limine* to address the issue, asking the Court to exclude all argument, discussion, and evidence relating to the ownership of the Residence. (Doc. 240). Plaintiff asserted that "Ms. Torres will testify that it was the family's intent that Plaintiff own the residence and that his omission from the deed was an oversight." (*Id.* at 2). Further, Plaintiff argued that Ms. Torres's claims were dismissed without prejudice, and she could "be made an additional named Plaintiff again by means of simple amendment to the Complaint with no prejudice to any party." (*Id.* at 3–4). The Court denied the Motion, explaining that a motion *in limine* "is not the appropriate channel to request the addition of a party." (Doc. 248 at 9).

On August 8, 2025, Plaintiff Denby filed a Motion for Leave to Amend the Complaint to add his sister, Ms. Torres, back into the action as a Plaintiff. (Doc. 249). Even though he believed he has standing, Plaintiff Denby sought "to re-add Elizabeth out of an abundance of caution and in the interests of justice." (*Id.* at 4–5). Plaintiff re-emphasized that "[Ms. Torres] will testify that it was her and their mother's understanding and intention at the time that [Plaintiff Denby] was the sole owner . . . and that his omission from the deed was a mere oversight." (*Id.* at 3). Plaintiff continued to explain:

> True to this understanding and intention, on December 16, 2015 [Ms. Torres and Ms. Logston] executed a quitclaim deed to [Plaintiff Denby] as sole owner of the Residence. Though that deed was later declared to be invalid, [Ms. Torres] and her mother properly corrected it on July 10, 2017. However, due to an inadvertent oversight, the corrected deed failed to amend the date of the change back to December 2014, the time of the incident.

(*Id.* at 3–4 (citations omitted)). Plaintiff Denby further argued in support of his Motion that no prejudice would result from the amendment because "even if some discovery were necessary . . . trial is still seven and a half months away." (*Id.* at 6).

5

The Court considered the request under Rules 15 and 16. (Doc. 255). The Court found that Defendants would not be prejudiced by the amendment because she did not raise any new claims, and her ownership of the house was her only connection to the case. (*Id.* at 6). The Court also agreed that discovery could be accomplished, if need be, before trial. (*Id.*). The Court granted the Motion, and Plaintiff Torres was added to the case in the Third Amended Complaint ("TAC"), filed on October 9, 2025. (Doc. 256).

After Plaintiff Torres was added to the case, Defendants filed a Motion to Dismiss. (Doc. 267). Relevant here, Defendants argued that Plaintiff Torres's claims are time-barred, and therefore she should be dismissed. (*Id.* at 17). The Court rejected that argument, finding that Plaintiff Torres's claims in the TAC relate back to the original complaint. (Doc. 275 at 6–9). Therefore, the Court declined to dismiss her from the action. Defendants also argued that Plaintiff Denby lacked Fourth Amendment standing to sue based on the damage to the real property because he did not own the Residence at the time of the incident. (Doc. 267 at 18). The Court determined that Plaintiffs had adequately alleged that Plaintiff Denby had a possessory interest in the Residence, sufficient to establish Fourth Amendment standing at the pleading stage. (Doc. 275 at 10). The Court denied Defendants' Motion to Dismiss (*id.* at 12–14), and the TAC remains the operative complaint. (*See* Doc. 256).

### 4. Recent Litigation and Competency Issues

After the Motion to Dismiss was denied, Defendants requested a Rule 16 Case Management Conference and additional discovery. (Doc. 276). After hearing argument at a status conference, the Court granted the parties a short period of limited discovery, from February 18, 2026–March 2, 2026. (Doc. 282). During that time, Plaintiffs sought a protective order excusing Plaintiffs Denby and Torres from depositions (Doc. 286), and Defendants sought to extend the discovery deadline. (Doc. 287). Recognizing that Defendants propounded extensive discovery requests, the Court denied the request for an extension of the discovery period and did not require that Plaintiffs be deposed. (Doc. 294).

In light of Plaintiff Torres's re-addition to the case, the parties were also directed to resubmit their joint pretrial documents to reflect the addition of Plaintiff Torres before the

trial, scheduled to begin on April 28, 2026. The parties did so on March 24, 2026. (*See* Docs. 297–300). In the Joint Proposed Final Pretrial Order, Defendants informed the Court that, in an attempt to serve a witness subpoena on Plaintiff Torres at her last known address on March 18, 2026, they were unable to complete service but made contact with the resident, Plaintiff Torres's daughter, who informed them that Plaintiff Torres lives in a memory care facility. (Doc. 300-1 at 4). Defendants' investigator interviewed Plaintiff Torres's two daughters on March 20 and 22, 2026. (*Id.*). The daughter holding power of attorney, Suzanne Jackson, told the investigator that "her first contact with Denby's counsel was approximately 3 months ago during which Plaintiffs' counsel stated he would like Ms. Torres to testify, and was told about her residency in a memory care facility." (*Id.*). The daughters also informed the investigator of Plaintiff Torres's diagnoses of dementia and Alzheimer's disease. (*Id.*). Finally, they stated that "depending on the day, [Plaintiff Torres's] long-term memory could be good," but they could not answer whether she is competent to testify. (*Id.*).

Shortly after submitting the pretrial documents, Defendants filed a Motion to set a competency hearing for Plaintiff Torres (Doc. 302), which the Court granted, and set a hearing for April 22, 2026. (Doc. 310). In granting the Motion, the Court ordered Plaintiffs to produce Plaintiff Torres to testify in-person at the hearing. (*Id.*). On April 15, 2026, Plaintiffs filed a Motion to Vacate the hearing and informed the Court that after obtaining Plaintiff Torres's medical records, they conceded she was not competent to testify at trial. (Doc. 316). The hearing was vacated (Doc. 317), and the Court ordered Plaintiffs to inform the Court how they would proceed in prosecuting Plaintiff Torres's claims given her incompetency. (Doc. 320).

On April 21, 2026, Defendants filed the instant Motion to Dismiss Elizabeth Torres as a party and impose sanctions. (Doc. 321). Later that same day, Plaintiffs filed a Motion to appoint Plaintiff Torres's daughter, Suzanne Jackson, as a representative for Plaintiff Torres under Federal Rule of Civil Procedure 17(c). (Doc. 323).

*///*

**B. Medical Records**

Along with the Motion to Dismiss and Motion for Sanctions (Doc. 321), Defendants provided a summary of the medical records disclosed by Plaintiffs on April 3, 2026 and April 14, 2026 from the Terra Pointe memory care facility where Plaintiff Torres resides. (Doc. 321 at 2). Those records include over 1,180 pages of documents, and Defendants provided the Court with relevant excerpts. (*Id.*). Plaintiffs did not provide any additional medical records or information in their Response or in the Motion to Appoint a representative. (Docs. 325, 323). Plaintiffs also do not dispute Defendants' account of Plaintiff Torres's medical history. (*See id.*). The Court will summarize the medical evidence before it.

On April 23, 2024, Plaintiff had an MRI of her brain based on complaints of memory loss and frequent falls. (Doc. 321-3 at 2–3). It revealed findings that "would explain the memory loss." (*Id.* at 3). At a medical visit on October 21, 2024, a provider reported that Plaintiff Torres did not have decision-making capacity, was positive for memory loss, was confused "Most of the Time," and had a memory deficit. (Doc. 321-4 at 11). On November 24, 2024, Plaintiff Torres was admitted to the hospital for three days because of "increased confusion and agitation." (*Id.* at 9). She was seeing a "psych provider" and her daughter reported at a December 4, 2024 doctor's visit that Plaintiff Torres "continues presenting behavior changes that is difficult to manage at home" and the provider discussed a "need for higher level of care or dementia unit." (*Id.*).

On December 19, 2024, Plaintiff moved into Terra Pointe Memory Care, an assisted living facility, for dementia specific care, with the knowledge that she could not self-direct care. (Doc. 321-4 at 8, 13). In the Terra Pointe Directed Care Evaluation, Plaintiff Torres's medical history was reported to include sundown hallucinating, slamming doors, OCD history, mobility issues, and that she needs assistance with transfers to the bathroom and to and from bed. (*Id.* at 13). Plaintiff Torres required assistance and supervision with medication administration to the effect of placing her medications in a cup, handing them to her, and observing her take the medication. (*Id.* at 14). Plaintiff Torres was determined

to require full support for oral care, which may include support with physically brushing teeth, as well "constant supervision with bathroom (toileting) care." (*Id.* at 17–18). Team members were to provide "full assistance" with mobility/transfers, dressing, grooming to include washing hands and face, and bathing, which requires "physical support for the duration of the shower/bath." (*Id.* at 18).

On January 7, 2025, Plaintiff's medical provider reported that Plaintiff Torres was "aware that she is in Arizona but unable to recall other specifics" and was "homebound." (*Id.* at 12). On a July 15, 2025 follow-up visit, Plaintiff's provider noted that she was "awake and alert, oriented to person and possibly place, forgetful at baseline." (*Id.* at 33). In a July 31, 2025 treatment note, the provider reported that Plaintiff Torres stated she "was visiting with her brother today." (Doc. 321-4 at 43). On October 21, 2025, Plaintiff's medical provider noted no acute changes in behavior or cognition and recommended that Plaintiff Torres "continue in calm/structured environment in locked down memory unit." (*Id.* at 35).

On January 6, 2026, the provider reported that Plaintiff Torres was "[a]ble to respond to some questions with simple yes/no responses." (Doc. 321-4 at 36). On February 5, 2026, a medical note reports that Plaintiff Torres "could not remember what state we are in, which is unlike her" and that she was "fixate[d] on wanting to go home because her house is so close by." (*Id.* at 44). On February 17, 2026, the provider reported that Plaintiff Torres was "able to state her name; however, she did not respond to the provider throughout the visit." (*Id.* at 39). On March 17, 2026, the provider again reported that Plaintiff can "respond to some questions with simple yes/no responses" and stated that she is not able to complete day-to-day activities without assistance." (*Id.* at 40). On March 19, 2026, Plaintiff "continue[d] to repeatedly ask when she can go home, stating her house is 'only 3 minutes away' from the facility." (*Id.* at 45).

On March 31, 2026, the provider entered an office note based on the request for a court letter regarding Plaintiff Torres. (Doc. 321-4 at 41). The provider wrote that Plaintiff Torres is a 75 year-old female "who resides at Terra Pointe [memory care] unit on a 24/7

basis [due to] increased monitoring required. [Plaintiff Torres] does not have the capacity to travel or care for herself independently [relating to] her advanced alzheimer's disease progression." (*Id.*).

## C.  Plaintiffs' Representations to the Court

As stated above, the question of Plaintiff Torres's competency was first raised in the Proposed Joint Pretrial Order by Defendants, who informed the Court that Plaintiff Torres was living in a memory care facility with diagnosed Alzheimer's disease. (Doc. 300-1 at 3–4). Prior to Defendants bringing the issue to the Court's attention, Plaintiffs had not raised any issues surrounding Plaintiff Torres's health or memory. Indeed, in the Joint Proposed Pretrial Order submitted on June 13, 2025, Plaintiff Denby averred that "Ms. Torres was dismissed without prejudice, is still living, is available to testify, and with simple amendment can be allowed to be a Plaintiff again." (Doc. 237-1 at 13). Further, Ms. Torres was listed on Plaintiff Denby's List of Witnesses with the explanation that "[s]he has knowledge of the condition of Mr. Denby's property before the incident, how Mr. Denby lived his life prior, the condition of the property following the incident, the issues that Mr. Denby has dealt with since the incident, and how Mr. Denby has lived following the incident." (*Id.* at 20).

As stated above, Plaintiff Denby made similar representations about Ms. Torres in the Motion *in Limine* (Doc. 240) and Motion for Leave to Amend (Doc. 249). Namely, Plaintiff Denby averred that Ms. Torres would testify to her and her mother's belief that, at the time of the incident, Plaintiff Denby owned the Residence. (*See id.*). In Response to Defendants' Motion to Dismiss the TAC, Plaintiffs did not raise any additional information about Plaintiff Torres and again stated that she "has been added to the Complaint for the sole reason that she was the record owner of the Residence at the time Defendants destroyed it." (Doc. 269 at 17).

The parties also engaged in a period of limited discovery after Plaintiff Torres was re-added to the case, during which time Plaintiffs did not inform the Court of any concerns about Plaintiff Torres's ability to respond to discovery or testify. Plaintiffs assert that

"counsel actually met with Torres in February 2026 to develop responses to Defendants' latest discovery requests" and counsel prepared the responses based on that meeting. (Doc. 325 at 10). When Defendants noticed Plaintiff Torres's deposition, however, counsel did not provide any information about her residence or condition. (*See* Doc. 286).  In Plaintiffs' February 26, 2026 Motion for Protective Order, Plaintiffs argued that "Plaintiffs [Denby and Torres] are unable to sit for the noticed depositions, as both of their counsel have prior conflicts in other matters on the scheduled dates and times and it would be impossible for counsel to meet with and prepare Plaintiffs for a deposition on such short notice." (*Id.* at 3).

In the Joint Revised Proposed Pretrial Order, submitted on March 24, 2026, Plaintiffs averred that Plaintiffs' counsel "has represented Ms. Torres since December 2016" and "has had no reason to question her competency to testify about the issues raised in this case and still has no reason to question the same." (Doc. 300-1 at 5). Plaintiffs further averred, in relevant part:

> [Plaintiff Torres] resides in an assisted living facility and has been diagnosed with early stages of dementia and Alzheimer's. Despite this, Plaintiffs' counsel *still has no concerns* about her recall of the events surrounding this case and prior. Plaintiffs' counsel *has met with Ms. Torres in person recently* and without waiving privilege, do not question her fitness to testify about the events at issue in this case. Potential accommodations may be necessary.

(*Id.*) (emphasis added).[6] In the Joint Revised Proposed Pretrial Order, Plaintiffs again stated that "Plaintiff Elisabeth Torres (*sic*) will testify that James Denby was always considered the owner of the property. In fact, Ms. Torres was not even living on the property at the

---

[6]     Later in the Joint Proposed Revised Pretrial Order, in discussing the issue of Plaintiff Torres's competency, Plaintiffs again contend that counsel "[]has[ ]never had any reason to question her competency to testify as to the issues raised in this case. Plaintiffs' counsel has met with her in person very recently, and still has no reasons to question her competency to testify as to the issues raised in this matter." (Doc. 300-1 at 20).

time of the Incident."[7] (Doc. 300-1 at 9).

Next, in their Response to Defendants' Motion for a competency hearing, Plaintiffs appeared to agree that there was uncertainty about Plaintiff Torres's competency and informed the Court that they were in the process of obtaining her medical records. (Doc. 308 at 2). With that information, the Court set a competency hearing for April 22, 2026 and ordered Plaintiffs to produce Plaintiff Torres to testify. (Doc. 310).

On April 15, 2026, Plaintiffs filed a Motion to Vacate the hearing and stated that they "concede that Ms. Torres is not competent to testify at trial." (Doc. 316 at 1). Plaintiffs included a letter from Plaintiff Torres's medical provider which stated that Plaintiff Torres has "severe memory loss, impaired judgment, and lacks the capacity to understand or participate in court proceedings." (*Id.* at 2). Plaintiffs also included a declaration of Plaintiff Torres's daughter, Suzanne Jackson, who "holds power of attorney over Ms. Torres'[s] affairs." (*Id.*). In the Declaration, Ms. Jackson avowed that she was "aware of the lawsuit for the last decade" and she knew Plaintiff Torres was originally a party to the lawsuit and was recently added back. (Doc. 316-2 at 3). However, Ms. Jackson also declared that she "*did not talk to [Plaintiffs'] attorneys prior to adding [Plaintiff Torres] back* to the lawsuit." (*Id.*) (emphasis added). Nonetheless, she stated that she agreed with the decision and the lawsuit. (*Id.*). The Court vacated the hearing on April 16, 2025. (Doc. 317).

Plaintiffs remained silent on how they would proceed in prosecuting Plaintiff Torres's claims given her incompetency. (*See* Doc. 316). Their inaction left the case in a concerning posture, wherein an incompetent Plaintiff, unrepresented in the action within the meaning of Rule 17(c), could not testify at the impending trial and apparently had not been deposed earlier in the case. Five days after Plaintiffs filed their Motion to Vacate the competency hearing, the Court ordered them to inform the Court of how they would proceed with Plaintiff Torres's claims. (Doc. 320). Only in response to that Order did Plaintiffs file the instant Motion to Appoint a Representative for Plaintiff Torres on April 21, 2026. (Doc.

---

[7] This contradicts the allegation in the TAC that Plaintiffs Denby, Torres, and their mother Ms. Logston all "resided at" the Residence. (Doc. 256 at 3, ¶ 13).

323). That request came over three weeks after Plaintiffs received the letter from Plaintiff Torres's medical provider attesting to her incapacity and only one week before trial.

## II.     LEGAL STANDARDS

### A.  Inherent Powers of the Court

"It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812)). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45.

In *Chambers*, the Supreme Court discussed the scope of a federal court's inherent power, including the power "to vacate its own judgment upon proof that a fraud has been perpetrated upon the court." *Id.* at 44. The Court emphasized that this power is "necessary to the integrity of the courts, for 'tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public.'" *Id.* (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)). To this end, "a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Id.* (citing *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)). The Supreme Court underscored that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

### B.  Federal Rule of Civil Procedure 11

Rule 11 provides that by "presenting to the court a pleading, written motion, or other paper," an attorney certifies to the best of their "knowledge, information, and belief, formed

after an inquiry reasonable under the circumstances" that the filing "is not being presented for any improper purpose," and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b) (quoted in relevant part). Conduct that allegedly violates Rule 11(b) may be challenged by a motion for sanctions, but the Court also may, "[o]n its own," order a party to "show cause why conduct specifically described in the order has not violated Rule 11(b). Fed. R. Civ. P. 11(c)(2)–(3).

Courts must "exercise extreme caution" when imposing Rule 11 sanctions and should only order sanctions in rare and exceptional circumstances. *Larez v. Holcomb*, 16 F.3d 1513, 1522 (9th Cir. 1994). Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The imposition of sanctions is discretionary. *See Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995) ("Although courts *may* impose sanctions . . . they are not required to do so.").

Statutes and Rules, including Federal Rule of Civil Procedure 11, have not "displace[d] the inherent power to impose sanctions." *Chambers,* 401 U.S. at 46. However, "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Id.* at 50. A court's power to impose sanctions under Rule 11 differs from its inherent power. "A violation of [Rule 11] does not require subjective bad faith." *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993). Conversely, courts may not impose sanctions under their inherent powers "without a specific finding of bad faith." *Id.* (internal quotations and citations omitted).

### C. Dismissal as a Sanction

In *Chambers and Roadway Express*, the Supreme Court recognized that "outright

dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the Court's discretion." 501 U.S. at 44; *see also Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) ("A district court may, among other things, dismiss a case in its entirety, bar witnesses, exclude other evidence, award attorneys' fees, or assess fines."). The Ninth Circuit has observed that under those cases, courts have "inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Although "recklessness, without more, does not justify sanctions under a court's inherent power," sanctions are justified for "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 993–94. "Knowingly false representations to the court by a party and his lawyer on an issue that relates to the matters in controversy also constitutes willful abuse." *Bridgepoint Constr. Servs. Inc. v. Lassetter*, No. CV-16-00078-PHX-JJT, 2018 WL 4539972, at *10 (D. Ariz. Sept. 21, 2018) (citing *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)).

If a district court finds that a party "willfully violated its order(s), or acted in bad faith," the court "should not dismiss the party's case unless the case presents 'extreme circumstances' that satisfy certain criteria established by the Ninth Circuit." *Allen v. W. Governors Univ.*, No. 2:25-cv-00325-RFB-NJK, 2026 WL 893368, at *4 (D. Nev. Mar. 31, 2026) (citing *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. Mar. 3, 1998)). Before dismissing a case pursuant to its inherent powers, a district court must consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." *Thompson v. Housing Auth. of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (citing *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). In addition, "[d]ue process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s]

15

to interfere with the rightful decision of the case.'" *Anheuser-Busch*, 69 F.3d at 348 (citing *Wyle*, 709 F.2d at 591).

## III.    DISCUSSION

### A.  Bad faith

First, the Court will determine whether it can make a finding of specific bad faith based on Plaintiffs' course of conduct in this matter.  Defendants argue that since the Final Pretrial Conference, "Plaintiffs have steadfastly, though falsely and through active concealment, misled the Court and Defendants as to Torres' true condition." (Doc. 321 at 6). Defendants assert that based on Plaintiff Torres's medical records, "it is clear that [she] was never competent to be a party to this case, or to testify, ever since the filing of the August 2025 Motion for Leave to Amend Complaint." (*Id.* at 10). Saliently, Defendants highlight Plaintiff James Denby's visit to his sister in the memory care facility on July 31, 2025, one week before Plaintiffs filed the Motion for Leave to Amend. (*Id.* at 6). Defendants also compare Plaintiffs' contradicting beliefs that Plaintiff Torres was competent to testify when the parties submitted the pretrial documents on March 24, 2026, yet determined to be incompetent six days later, the date of her medical provider's letter to counsel. (*Id.* at 10).

Plaintiffs, on the other hand, aver that they relied, in good faith, on Plaintiff Denby's "regular[] and consistent[] report[s] to counsel that Torres had capacity and that he had never observed issues with her memory of the events at issue" in the TAC. (Doc. 325 at 3). They argue that they maintained an attorney-client relationship with Plaintiff Torres after her dismissal from the action, though they do not state in what capacity, and throughout the representation "maintained regular contact with Torres' family, including her brother." (*Id.*). They do not explain the contact they had with Plaintiff Torres over the years, except to say they met with her in February 2026 about the discovery responses. (*Id.*). Plaintiffs do not describe where or exactly when this meeting took place, except that it was "just weeks before the incapacity determination." (*Id.*). Their argument centers on the contention that Nurse Practitioner Calucer's March 30, 2026 letter "was the first formal determination

16

of Torres' incapacity to participate in litigation," they cooperated in good faith after that time. (*Id.* at 4).

### 1. Plaintiffs' Failure to Investigate and/or Communicate with Plaintiff Torres

The Court finds that the conduct here is tantamount to bad faith because, at best, Plaintiffs acted recklessly with an improper purpose in failing to inform the Court of Plaintiff's inability to participate in her case. *Fink*, 239 F.3d at 994 (Bad faith includes "a variety of types of willful actions, including recklessness when combined with . . . an improper purpose.").

First, Plaintiff Denby and Plaintiffs' counsel knew or should have known that Plaintiff Torres was not competent to participate in the case at the time they moved to re-add her as a Plaintiff. At the time Plaintiff Denby filed the Motion to Amend the Complaint on August 8, 2025, Plaintiff had already been living in a memory care facility for over seven months. When Plaintiff Torres was admitted to the secure memory care unit on December 19, 2024, she was determined to require full assistance with many daily activities and had already been diagnosed with dementia and Alzheimer's disease. (*See* Doc. 321-4). Plaintiffs did not provide this information to the Court. According to Plaintiffs, Plaintiff Denby "communicated with Torres regularly," (Doc. 325 at 3), and a treatment note indicates that Plaintiff Torres visited with her brother on July 31, 2025.[8] (Doc. 321-4 at 43). Indeed, Plaintiffs aver that Plaintiff Denby "consistently reported to counsel that Torres had capacity." (Doc. 325 at 3). Thus, Plaintiff Denby was certainly aware of Plaintiff Torres's residence in the memory care facility and Plaintiffs' counsel should have known the same.

But by all accounts, Plaintiffs' counsel failed to communicate with Plaintiff Torres or her daughter and power of attorney before re-adding her to the case. In the Joint Proposed Revised Pretrial Order submitted on March 24, 2026, Plaintiffs' counsel averred

---

[8] The Court has not been provided with visitation records from the Terra Pointe facility.

that they met with Plaintiff Torres in-person "recently." (Doc. 300-1 at 5). In response to the Motion to Dismiss and Motion for Sanctions, Plaintiffs provided a time frame for that visit for the first time, stating that counsel met with her in "February 2026" to prepare discovery responses. (Doc. 325 at 2). They provided no other facts about the visit, including a specific day, time, or place. (*See id.*). Based on the information from both parties, February 2026, six months after moving to re-add Plaintiff Torres to the case, is the only time that Plaintiffs assert that counsel has actually met or spoken with her.

In addition, counsel did not speak to Plaintiff Torres's daughter, Suzanne Jackson, who holds power of attorney for Plaintiff Torres, prior to adding Plaintiff Torres back into the case. In the Declaration attached to Plaintiffs' Motion to Vacate, Ms. Jackson declared: "I did not talk to her attorneys prior to adding her back to the lawsuit[.]" (Doc. 316-2 at 3). Indeed, it appears that Plaintiffs' counsel did not contact Ms. Jackson until approximately December 2025, when counsel "stated he would like Ms. Torres to testify, and was told about her residency in a memory care facility." (Doc. 300-1 at 4) (explaining that Ms. Jackson's "first contact with Denby's counsel was approximately 3 months ago").

The information that Plaintiffs have provided to the Court does not support their contention that the "attorney-client relationship remained intact at all times." (Doc. 325 at 3). The Court agrees with Defendants that "[i]f counsel was representing Torres in 2019," when she was dismissed for failure to allege facts establishing standing, "they failed miserably." (Doc. 326 at 4). Plaintiffs make this assertion about the continuation of their representation in the same breath as they assert that counsel maintained regular contact with her *family*, and they relied on Plaintiff Denby's reports about Plaintiff Torres's capacity. (Doc. 325 at 3). Plaintiffs assert that counsel had no concerns about Plaintiff Torres's memory or mental condition, yet they apparently did not communicate with her and relied on others' statements about her condition. Plaintiffs cannot have it both ways.

Moreover, Plaintiffs aver that they acted with "urgency and transparency" upon learning of "the first formal determination of Torres's incapacity to participate in litigation" on March 30, 2026. (Doc. 325 at 4). But this characterization of the events ignores

18

counsel's ethical duties to their client as well as their common-sense responsibility to investigate the mental status of a client who was diagnosed with Alzheimer's disease and living in a memory care unit in a "homebound" state. Further, it shows that Plaintiff Denby and Plaintiffs' counsel were either completely unaware of Plaintiff Torres's condition, or they were less-than-candid with the Court. The Court cannot conceive of how Plaintiffs planned to present their case at trial and prosecute Plaintiff Torres's claims, given her reported inability to, at the very least, leave her memory care unit.[9]

### 2. Improper Purpose and Fraud on the Court

At the very least, these facts reveal recklessness with an improper purpose. To further illustrate this finding, the Court will turn to the law of fraud on the court, based on which a court may may relieve a party from a judgment.[10] Rule 60(b) provides that a court may relieve a party from a final judgment for, among other reasons, "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "In determining whether fraud constitutes fraud on the court, the relevant inquiry is not whether fraudulent conduct prejudiced the opposing party, but whether it harm[ed] the integrity of the judicial process." *United States v. Estate of Stonehill*, 660 F.3d 415, 444 (9th Cir. 2011) (internal quotations and citation omitted). Fraud on the court requires "an intentional, material misrepresentation in support of an unconscionable plan or scheme which [was] designed to improperly influence the court in its decision." *Trendsettah USA, Inc. v. Swisher Intern., Inc.*, 31 F.4th 1124, 1133 (9th Cir. 2022) (internal quotations and citations omitted).

Here, Plaintiff Denby sought to re-add Plaintiff Torres to the Complaint "after Defendants raised the issue of his standing due to his lack of ownership of the Residence

---

[9]   Plaintiffs do not dispute this contention, and do not provide information about where counsel met with Plaintiff Torres.

[10]   Defendants argue that the Court should grant relief under Rule 60(b). However, Rule 60(b) only allows the Court to grant relief from a "Final Judgment, Order, or Proceeding." Fed. R. Civ. P. 60(b). The Court will impose sanctions based on other sources of authority. However, the standard is assessed here because it provides a helpful point of comparison for Plaintiffs' conduct.

at the time of Defendants' siege of and damage to it." (Doc. 249 at 7). Now, Plaintiffs argue that "Denby is a separate plaintiff with his own independent claims. His claims do not depend on Torres' capacity and are not affected by her medical condition. Any dispute regarding Torres' capacity has absolutely no bearing on the merits of Denby's claims, his conduct, or his right to pursue his case." (Doc. 325 at 11). This is not true. Plaintiff Denby has repeatedly argued that Plaintiff Torres will testify as to Plaintiff Denby's possessory interest in the Residence. Their mother, the other owner of the Residence at the time, is deceased. Plaintiff Torres was the only person who could testify to her own belief that Plaintiff Denby owned the house and her intention to have deeded it to him at the time.[11] This testimony is central to his argument that he was the true owner of the house and could therefore receive damages based on the destruction of the property. (*See also* Doc. 325 at 11–12 (Plaintiff Torres's "incompetency potentially hurts both Denby and Torres' claims as no testimony is able to be given by Torres.")).

Plaintiff Denby sought to add Plaintiff Torres to the case to streamline the issue of Fourth Amendment standing. (*See* Doc. 249). This in and of itself was not improper, and the Court granted the Motion with the belief that it would streamline the issues for trial without prejudicing Defendants. (Doc. 255). But given the revelation of Plaintiff Torres's incompetency, along with the apparent fact that Plaintiffs' counsel did not consult with her or her daughter, the re-addition of Plaintiff Torres looks like it was part of "a plan . . . to improperly influence the court." *See Trendsettah*, 31 F.4th at 1133. The failure to investigate and inform the Court of her competency or mental condition harmed the

---

[11]     Plaintiffs' counsel has averred that they had no concerns about Plaintiff Torres's ability to testify. But Plaintiff Torres's purported testimony surrounding the ownership of the house and the attempts to deed it to Plaintiff Denby is not a simple subject. Plaintiffs' theory is that Plaintiff Denby was the intended owner in 2014, and that in 2015, Plaintiff Torres and her mother executed a quitclaim deed to him, but it was later declared invalid. (Doc. 249 at 3–4). Plaintiff Torres and her mother then corrected it in 2017, but "due to an inadvertent oversight," the corrected deed did not amend the date of the change back to 2014. (*Id.* at 4).

Even for someone who is only in the early stages of dementia or Alzheimer's disease, the scope of this testimony, dating back over ten years and involving several attempts to convey property, should have rung alarm bells.

integrity of the judicial process.

Although the Court will not make a determination under Rule 60, the fraud on the court standard shows the improper purpose with which Plaintiffs acted. Seeking to claim damages for the destruction of the property and to avoid litigation on the scope of his possessory interest, Plaintiff Denby and counsel re-added Plaintiff Torres to the Complaint. In doing so, they either completely failed to communicate with Plaintiff Torres and learn of her incompetency, or they failed to provide the Court with this information. Even more, this course of conduct continued through discovery, when Plaintiff Torres's deposition was noticed. Since Defendants raised the competency issue, there has been a continued lack of candor to the Court. These actions combined show a reckless ignorance of obvious facts and an intentional failure to disclose important information to the Court, coupled with the intent to "influence or manipulate the proceedings" by bringing Plaintiff Torres back into the case for the purpose of damages. For these reasons, the Court finds that Plaintiffs' course of conduct reflects bad faith.

### B. Imposition of Sanctions

Having found that Plaintiffs acted with bad faith, the Court will impose sanctions on Plaintiffs. First, the Court will discuss under what authority it imposes sanctions, and then will turn to the sanction of dismissal.

### 1. The Court's Authority

Defendants sought relief under Rule 60 and Rule 37. (*See* Doc. 321). As discussed above, the Court will not make a determination based on Rule 60(b) as Defendants do not seek relief from a final judgment. *See* Fed. R. Civ. P. 60(b). However, there are several other applicable sources of authority to draw upon.

For instance, Plaintiffs' many failures to disclose information about Plaintiff Torres's condition throughout the discovery process in response to written discovery requests and a noticed deposition certainly empowers the Court to issue sanctions under Rule 37(b). But Plaintiffs' continuous course of conduct, which has extended far further than the discovery stage and impacts the merits of the parties' claims, also provides grounds

21

for the Court to exercise authority pursuant to Rule 11 or its inherent powers. As discussed *supra* Section II.B, the imposition of sanctions under Rule 11 "does not require subjective bad faith," but doing so pursuant to the Court's inherent powers does. *Yagman*, 987 F.2d at 628. Having made a specific finding of bad faith, sanctions would be appropriate under either source of authority.

First, under Rule 11, an attorney must certify, "after an inquiry reasonable under the circumstances," that, among other requirements, the filing is not being presented for an improper purpose and the factual contentions have evidentiary support. Fed. R. Civ. P. 11(b). Plaintiffs' counsel repeatedly certified that Plaintiff Torres would testify about Plaintiff Denby's intended ownership of the Residence. After Defendants discovered Plaintiff Torres's residence at Terra Pointe memory care facility, Plaintiffs' counsel stated they met with her and "[did] not question her fitness to testify about the events at issue in this case. Potential accommodations may be necessary." (Doc. 300-1 at 5). Again, in response to Defendants' Motion for a Competency Hearing, Plaintiffs stated: "Both Elizabeth and Jim believe, and will testify, that at all relevant times they considered, and intended for, Jim to be the true owner thereof." (Doc. 308 at 3).

An inquiry reasonable under the circumstances would have revealed that these facts were not true. Medical records from the time reflect Plaintiff Torres's baseline forgetfulness, lack of orientation, and diminished ability to communicate, sometimes only answering questions with yes or no responses. (*See* Doc. 321-4). Even acknowledging that those with dementia and Alzheimer's disease may have good and bad days, Plaintiffs' statements misrepresented Plaintiff Torres's ability to participate in her own case, misleading the Court. Plaintiffs' course of conduct amounts to a violation of Rule 11.[12]

---

[12]    In addition, "[t]hough FRCP 11 does not mention misleading a court in its reference to improper purpose, the language of the rule makes clear that it contemplates a range of possible improper purposes . . . and applicable law makes clear that misleading a court is an improper purpose. Thus, having found as part of the bad faith analysis that [the relevant party] acted with an improper purpose, sanctions are permissible under FRCP 11(b)." *Disability Rights Or. v. Hathi*, No. 3:02-cv-00339-AN (lead), 3:21-cv-01637-AN (consolidated), 2025 WL 868656, at *8 (D. Or. Mar. 20, 2025).

Even though the conduct here violates Rule 11, the Court will impose sanctions under its inherent powers due to the continued course of bad faith conduct at issue. *See Chambers*, 401 U.S. at 50 ("[T]he court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."). The Court has already found that the conduct at issue here is the kind of "willful improper conduct" that is tantamount to bad faith. *Fink*, 239 F.3d at 992. Having authority under its inherent powers, the Court will determine what sanction to impose.

### 2. Sanction of Dismissal

Defendants seek the dismissal of not only Plaintiff Torres's claims, but Plaintiff Denby's claims as well. (Doc. 321 at 14–15). Defendants write that "[i]n the end," they "will never have the opportunity to hear from Torres about Denby's assertions, or whether Torres has any real-party interest in the case or its outcome." (*Id.* at 15). Defendants further explain that Plaintiff Denby's standing claim "is based, on large part, to Torres' testimony over the intent for Denby to be considered the owner, despite the plain language of the deed operative in 2014." (*Id.*). Despite Plaintiffs' attempts to distinguish Plaintiff Denby's claims from Plaintiff Torres's, which contradicts the stance they took in re-adding her to the case, Plaintiffs also acknowledge that Plaintiff Torres's unavailability hurts Plaintiff Denby's claims. (Doc. 325 at 11–12). The Court will consider dismissing both Plaintiffs' claims.

Dismissal is a severe sanction, but the Court has detailed at length the false representations Plaintiffs submitted to the Court about Plaintiff Torres's ability to testify and the continued less-than-candid conduct that followed the revelation that she was living in a memory care facility. "It is well settled that dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" *Anheuser-Busch*, 69 F.3d at 348 (citing *Wyle*, 709 F.2d at 589)).

23

The Court cannot interpret the conduct here in any way that does not amount to deception. By failing to proactively provide any information about Plaintiff Torres's ability to participate in the case—even down to the fact that she lives in a memory care facility and would not be able to appear in person at trial—Plaintiffs willfully deceived the Court. Even the failure to offer this information until the eve of trial is a deception that impacts the parties' ability to litigate their claims. This deception has certainly undermined the judicial proceedings and administration of justice.

In addition, dismissal as a sanction comports with due process. This requires the Court to find that "there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case." *Anheuser-Busch*, 69 F.3d at 348. As described above, Plaintiff Torres's claims and testimony go to the heart of Plaintiff Denby's Fourth Amendment standing and ability to recover damages. Thus, the deception is closely related to the merits of the case.

Before dismissing a case pursuant to its inherent powers, a district court must consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." *Thompson v. Housing Auth. of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (citing *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). As to the first factor, "the public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). Conversely, the fourth factor, public policy favoring resolution on the merits, "clearly counsels against dismissal, especially because [this case] is a § 1983 civil rights action." *Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir. 1998).

The second factor, the Court's need to manage its docket, favors dismissal. Plaintiffs' addition of Plaintiff Torres to the action at a late stage in the case, as well as the competency issues, have led to extensive motion practice that has, at times, monopolized

24

the Court's resources. The competency issues were raised to the Court less than one month before a four-week jury trial, in which issues relating to Plaintiff Torres's testimony or lack there-of and Plaintiff Denby's standing, would be highly contested. For those reasons, this factor weighs toward dismissal. The third factor, risk of prejudice to Defendants, also weighs toward dismissal. "In determining whether a defendant has been prejudiced, we examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone v. United States Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). There is no doubt that the last-minute discovery of Plaintiff Torres's incompetency prejudices Defendants' ability to defend Plaintiffs' claims, which have been premised on Plaintiff Torres's recollection of past events. To require Defendants to defend these claims at trial next week would be highly prejudicial.

As to the fifth and final factor, the availability of less drastic sanctions, the Court also finds that this factor weighs toward dismissal. Less drastic sanctions are not available in this case. Defendants propose that as an alternative to dismissal, the Court could deny Plaintiff Torres's claims and award monetary sanctions of their attorneys' fees incurred in opposing Plaintiff Torres's addition to the case and litigating competency. (Doc. 321 at 15). This sanction would eliminate Plaintiff Denby's ability to rely on Plaintiff Torres's ownership of the property to collect damages. However, it would not address the fact that Plaintiff Denby and Plaintiffs' counsel failed to inform the Court of Plaintiff Torres's condition, and as far as the Court is aware, planned to proceed to trial without disclosing this information.

Further, the misrepresentations to the Court continued for such a long period of time that "the Court can only anticipate that, if this action were to proceed, Plaintiff's and counsel['s] deceptive misconduct would continue." *Bridgepoint*, 2018 WL 4539972, at *11. Those credibility issues would compromise the effective administration of the imminent jury trial. The Court is also concerned that a less drastic sanction would send the message that a party and their counsel might intentionally fail to disclose facts, continue to remain silent when an issue arises, and move forward with their claims nonetheless. It is

especially important because the facts here involve a vulnerable person whose addition into the litigation, unbeknownst to her, conferred a benefit upon the other Plaintiff. This decision is not made lightly, but lesser sanctions are not sufficient based on these facts. *See also Henderson*, 779 F.2d at 1424 ("The district court need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives."). The Court will dismiss this action in its entirety.

## IV.   CONCLUSION

For the reasons stated above, the Court has found that Plaintiffs acted in bad faith and deceived the Court as to Plaintiff Torres's ability to testify and participate in this action. The Court has considered the appropriate sanctions pursuant to its inherent authority and determined that dismissal of the case in its entirety, though drastic, is the only appropriate sanction. Therefore, Defendants' Rule 60 and Rule 37 Motion to Dismiss Plaintiff Elizabeth Torres and For Sanctions Against Plaintiff Denby and His Counsel (Doc. 321) is granted to the extent that this Order grants the request for the sanction of dismissal.[13]

Accordingly,

**IT IS ORDERED** that Defendants' Rule 60 and Rule 37 Motion to Dismiss Plaintiff Elizabeth Torres and For Sanctions Against Plaintiff Denby and His Counsel (Doc. 321) is **granted**, consistent with this Order.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike contained in Defendants' Reply in Support of their Motion (Doc. 326) is **denied**.

**IT IS FURTHER ORDERED dismissing** this case in its entirety.

**IT IS FURTHER ORDERED** that all other pending Motions are **denied as moot**.

///

///

///

///

---

[13] Because this action will be dismissed, all other pending Motions will be denied as moot.

IT IS FINALLY ORDERED directing the Clerk of Court to enter final judgment accordingly and **terminate** this action accordingly.

Dated this 24th day of April, 2026.

Honorable Steven P. Logan
United States District Judge