Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| James W. Denby, a single man; Elizabeth J. Torres, a single woman,<br><br>Plaintiffs,<br><br>vs.<br><br>David Engstrom; Jacob H. Robinson; Christopher Lapre; Sgt. Gragg; Rory Skedel; Abram Ochoa, a single man,<br><br>Defendants. | Case No.: CV-17-00119-PHX-SPL<br><br>**PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DISMISSING CASE**<br><br>(Assigned to the Hon. Steven P. Logan) |

## INTRODUCTION

Plaintiffs James Denby ("Denby") and Elizabeth Torres ("Torres") (collectively, "Plaintiffs") respectfully move this Court to reconsider its Order of April 24, 2026, ECF No. 329, which dismissed this nearly decade-old Section 1983 civil rights action in its entirety as a sanction. This Motion is filed pursuant to LRCiv 7.2(g) and Federal Rule of Civil Procedure 59(e), and identifies manifest errors of law and fact that warrant reconsideration.

The underlying facts of this case are undisputed: on December 17, 2014, law enforcement officers deployed a Bearcat armored vehicle, fired twenty-two canisters of chemical munitions, deployed robots, flash-bang grenades, and pepper spray into Plaintiffs' home to execute a warrant for a single individual—who was hiding under a tarp in the backyard the entire time. The home, which had been in the Denby family for approximately

a century, was rendered uninhabitable. Denby has lived without running water, working plumbing, or functional utilities for most of the twelve years.

This Court's Order dismissed *all* claims, including Denby's independent Fourth Amendment claims, as a sanction for alleged bad faith related to the handling of co-Plaintiff Elizabeth Torres' competency. No sanction of any kind is warranted here. Indeed, this Court itself found, just six months ago, that there was "no evidence" of bad faith in counsel's handling of Torres, that counsel was "diligen[t]," and that Defendants suffered no prejudice. *See* ECF No. 255 at 4-6. The dismissal order reverses those findings without acknowledging them and constitutes manifest error for at least seven independent reasons: (1) it dismisses Denby's independent claims without adequate nexus to any alleged misconduct; (2) even if sanctions were warranted, and they are not, the Court failed to consider any alternative as required by Ninth Circuit law; (3) it contravenes Rule 17(c)'s mandate to protect, not punish, incompetent parties; (4) it sanctions counsel for conduct that Arizona's ethical rules *required*; (5) it imposes the most extreme measure available on an expedited timeline with no prior warning; (6) the Thompson factors, properly analyzed, do not support dismissal of this Section 1983 civil rights action; and (7) the Court resolved material factual disputes which include disputes that Defendants themselves asked to resolve through an evidentiary hearing without permitting live testimony or cross-examination.

Elizabeth Torres is a Plaintiff in this case because her name was on the deed to the Property at the time the house was destroyed. Defendants' counsel waited until the 11th hour, after 10 years of litigation, to raise the issue that only the title owner has standing to bring Fourth Amendment claims. Plaintiffs have always disagreed with that contention. But in order to foreclose counsel's argument, she is a Plaintiff, and per the jury instructions the jury will be able to award her damages if it finds in her favor.

Defendants' Motion to Dismiss, to which Plaintiffs were given only 24 hours to respond, is an exercise in hysterics. There was no "deception" or "fraud on the Court." A lawyer's relationship with a mentally impaired client is special, complex, and is a matter

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

uniquely the province and responsibility of the lawyer, the client and the client's representative. It is decidedly NOT the business of opposing counsel.  Plaintiffs had no obligation to disclose that Ms. Torres has been diagnosed with dementia or any other medical condition. Rules of Professional Responsibility prohibit the disclosure of client confidential information and information protected by the attorney-client privilege. Moreover, the law is clear that people suffering from dementia are not necessarily incompetent to make their own binding legal decisions or to testify at trial. In fact, the Federal Rules of Evidence *presume* that every person is competent to testify. Legal incompetence is a highly fact specific determination, and the condition is not static.

The Court's attempt to determine Ms. Torres' competence at specific points in time based upon its own review of certain medical records provided by Defendants' counsel was highly improper and discriminatory against Ms. Torres, a disabled person. For instance, the Court wrote:

> On January 6, 2026, the provider reported that Plaintiff Torres was "[a]ble to respond to some questions with simple yes/no responses." (Doc. 321-4 at 36). On February 5, 2026, a medical note reports that Plaintiff Torres "could not remember what state we are in, which is unlike her" and that she was "fixate[d] on wanting to go home because her house is so close by." (Id. at 44). On February 17, 2026, the provider reported that Plaintiff Torres was "able to state her name; however, she did not respond to the provider throughout the visit." (Id. at 39). On March 17, 2026, the provider again reported that Plaintiff can "respond to some questions with simple yes/no responses" and stated that she is not able to complete day-to-day activities without assistance." (Id. at 40). On March 19, 2026, Plaintiff "continue[d] to repeatedly ask when she can go home, stating her house is 'only 3 minutes away' from the facility." (Id. at 45)

> ECF No. 329 at 15-25.

Presumably, the Court took those statements as false or not representative of reality for Ms. Torres. Ms. Torres' home in Glendale, AZ which she still owns, is located at 4312 W. Mary Circle, Glendale, AZ 85308. Her facility she resides at is located at 5330 W Union

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Hills Dr, Glendale, AZ 85308. It is in the same zip code. In fact, her home is located 1.44 miles as the crow flies from her facility. It is a 5 minute drive using surface streets[1]:



She was not wrong about it being minutes away.

On April 8, 2025, a cognitive examination was administered to Ms. Torres. *See* Exhibit 1. She scored 20 out of 30, which indicates *mild* cognitive impairment. Approximately six months later, on October 21, 2025, she was given another cognitive examination. *See* Exhibit 2. She scored 21 out of 30, only three points short of "WNL" (within normal limits). Progress notes indicate that Ms. Torres has focused on wanting to go home because her house is near the facility–in *walking distance* at only 1.44 miles away. It was between these two cognitive exams that Mr. Denby was in regular contact with his sister, Ms. Torres, and when the Third Amended Complaint was filed. In fact, her cognitive test results improved during that period.

Furthermore, the medical literature is clear. Dementia is a progressive condition that effects different people differently and differently from day to day. At any rate, Ms. Torres

---

[1] Pulled from Google Maps on May 8, 2026. This fact is necessary because this Court's order specifically discussed the statements made by Ms. Torres regarding the proximity of her house.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

has had an attorney in-fact in the person of her eldest daughter since 2024. Both Ms. Torres and her attorney in fact are represented by counsel in this matter. In fact, Ms. Torres has been represented by counsel as a party and a witness since 2016 – many years before she developed symptoms of dementia. That representation was never terminated. Ms. Torres' interests are being well-protected.[2]

Nonetheless this Court, two business days before trial and after a decade of litigation, decided that Ms. Torres needed to be punished for failing to keep Defendants' counsel and the Court adequately apprised of her medical condition. The Court decided that the appropriate punishment was dismissal of her claims. This Court did not even mention the attorney's professional imperatives to maintain client confidence and the attorney-client privilege. Protecting client confidential information is not "deception." It is mandatory. Nor, apparently did it give any consideration to the complex nature of dementia or to Ms. Torres' unique condition. It simply shut the courthouse door.

The Court also decided that Mr. Denby, who is not a lawyer and who has at all times been represented by counsel, needed to be punished for not keeping Defendants' counsel and the Court apprised of his sister's medical condition. The Court decided that no less punishment than outright dismissal of Mr. Denby's 12-year-old claims would do because Mr. Denby's claims are totally dependent of Ms. Torres' testimony.

This Court has specifically recognized, Ms. Torres' testimony is *not* necessary to prove Mr. Denby's claims. It never has been. Nor is it necessary to prove her own claims. Defendants openly admit that her name was on the deed. According to Defendants, that alone is enough to give her exclusive standing to make a Fourth Amendment claim. It thus changes *nothing* that she has been diagnosed with Alzheimer's disease or dementia. The Court's dismissal of all claims in this case is manifestly erroneous and grossly unjust.

---

[2] The Court's finding that Ms. Torres is an "unrepresented party" is gross error. It ignores the sworn declaration of Ms. Torres' attorney in fact and the representations of two officers of the Court. In fact, the Court suggests that Plaintiffs' counsel have been deceitful or dishonest about Ms. Torres medical condition. Plaintiffs' counsel request the opportunity to clear their names in open court.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## ARGUMENT

### I.  THE COURT COMMITTED MANIFEST ERROR BY DISMISSING DENBY'S INDEPENDENT CLAIMS.

#### A.  Denby Has Independent Fourth Amendment Standing That This Court Has Already Affirmed.

The most fundamental error in the Court's Order is its dismissal of Denby's independent claims as a sanction for conduct related to co-Plaintiff Torres. This Court itself found that Denby "adequately alleged that [he] had a possessory interest in the Residence. . . . sufficient to establish Fourth Amendment standing at the pleading stage." ECF No. 275 at 10:11-18. In reaching that conclusion, the Court relied on *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1186-87 (9th Cir. 2015) (recognizing possessory interest in property occupied with owner's permission and with "some joint control and supervision"), and *United States v. Thomas*, 447 F.3d 1191, 1198 (9th Cir. 2006) (possessory interest to property established if "joint control" or "common authority" is shown). *See* ECF No. 275 at 9-10.

The Court's Order reasons that Torres' testimony "go[es] to the heart of Denby's Fourth Amendment standing and ability to recover damages." ECF No. 329 at 24:11-13. But this conflates the *weight* of evidence at trial with the *existence* of an independent legal claim. The Court's prior order recognized Denby's independently alleged possessory interest. Whatever the effect of Torres's competency on certain proof issues, that did not by itself establish that Denby's entire action was fraudulently maintained or that no lesser evidentiary or trial-management remedy could address the perceived prejudice. Denby's possessory interest in the Residence can be established through multiple independent sources of evidence, including but not limited to: his decades of continuous residence at the property; his payment of property taxes, PLTR Ex. 56; his homeowner's insurance on the property, PLTR Ex. 57; the quitclaim deed executed by Torres and Logston, PLTR Ex. 9; trash service records in his name, PLTR Ex. 55; and family historical documents spanning nearly a century, PLTR Ex. 58. While Torres' testimony would have supported Denby's claims, it was not at all *necessary* to prove those claims.

The Supreme Court has long recognized that Fourth Amendment standing does not require legal title or ownership. In *Minnesota v. Olson*, 495 U.S. 91 (1990), the Court held that even an *overnight guest* in a home has a reasonable expectation of privacy sufficient for Fourth Amendment standing, even though the guest has "no legal interest in the premises and do[es] not have the legal authority to determine who may or may not enter the household" *Id.* at 99. If an overnight guest has Fourth Amendment standing, then *a fortiori* a person who has lived in a family home for decades, paid the property taxes, carried the homeowner's insurance, and maintained the property has a possessory interest that independently supports standing. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (expectation of privacy is the touchstone of Fourth Amendment standing). Torres' unavailability as a witness does not extinguish Denby's independent standing, which rests on *his own* decades of occupancy, financial responsibility, and possessory interest.

Indeed, the Court's own actions throughout this litigation confirm Denby's independent standing. In its Order Denying Defendants' Motion to Dismiss the Third Amended Complaint, the Court not only found Denby's possessory-interest standing adequately alleged – it ordered the parties to "update the pretrial documents to reflect the addition of Elizabeth Torres as a Plaintiff." ECF No. 275 at 12:23-13:5. The Court thus *actively facilitated* Torres' participation in the case and simultaneously confirmed that Denby's claims stood on their own. Four months later, the Court dismissed *all* claims including Denby's independently-standing claims as a sanction for Torres' competency. The dismissal order does not acknowledge, let alone reconcile, these prior holdings.

**B. The Sanction Lacks the Required Nexus to Denby's Claims.**

Due process requires "a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case.'" *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983)). The alleged misconduct here of failing to adequately investigate and disclose Torres' competency relates to *Torres'* claims and her availability as a witness. It

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

7

does not relate to the merits of *Denby's* independent Fourth Amendment claims, which are based on his own possessory interest, his own suffering, his own twelve years of consequences, and his own constitutional rights.

The Supreme Court's decision in *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178 (2017), reinforces this point. There, the Court held that sanctions under a court's inherent authority must be causally connected to the misconduct, that they must be "'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based." *Id.* at 1186. Moreover, "any 'sanction imposed must be tailored to curtail the attorney's particular misconduct.'" *Englebrick v. Worthington Indus., Inc.*, No. 13-56067, No. 13-56780, at 7 (9th Cir. July 06, 2015) (quoting *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1063 (9th Cir. 2007)). Here, the destruction of Denby's home, his twelve years of displacement, and his Fourth Amendment claims exist entirely independently of anything related to Torres' competency, and disposing of his claims based on counsel's *alleged* misconduct regarding Torres was not proper.

## II.    THE COURT FAILED TO CONSIDER ALTERNATIVES TO DISMISSAL.

Plaintiffs maintain that no sanction of any kind is warranted here. Certainly, terminating sanctions were unwarranted; at minimum, the record required an evidentiary hearing and consideration of narrower curative measures. But even assuming *arguendo* that the Court had a basis for some remedial action, "[d]ismissal is a harsh penalty and is to be imposed only in extreme circumstances." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). Before imposing this ultimate sanction, a district court must weigh five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." *Thompson v. Hous. Auth. of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986). The District Court "need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives." *Henderson*, 779 F.2d at 1424.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

8

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**A. <u>The Court Failed to Discuss or Consider Any Alternative to Dismissal.</u>**

As set forth in Argument IV below, Plaintiffs maintain that no sanction of any kind is warranted because counsel's conduct was dictated by Arizona's ethical rules. But even if the Court were to conclude otherwise, the Ninth Circuit requires a district court to consider alternatives before imposing dismissal. The Court's Order fails this requirement. The Ninth Circuit held that "the following factors are of particular relevance in determining whether a district court has considered alternatives to dismissal: (1) Did the court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inadequate? (2) Did the court implement alternative methods of sanctioning or curing the malfeasance before ordering dismissal? (3) Did the court warn the plaintiff of the possibility of dismissal before actually ordering dismissal?" *Malone v. U.S. Postal Service*, 833 F.2d 128, 132 (9th Cir. 1987).

Regarding factor (1), the Court's Order acknowledges that Defendants themselves proposed alternatives short of total dismissal. ECF No. 329 at 25:14-17. The Court rejected those alternatives with the conclusory statement that they "would not address the fact that [ ] Denby and Plaintiffs' counsel failed to inform the Court of Torres' condition . . . ." *Id.* at 25:18-20.[3] The Ninth Circuit does not permit such cursory treatment.  The Court should also have considered whether it "implement[ed] alternative methods of sanctioning or curing the malfeasance before ordering dismissal," and whether it "warn[ed] the [P]laintiff[s] of the possibility of dismissal before actually ordering dismissal." *See Malone*, 833 F.2d at 132. Here, the Court imposed no intermediate measures of any kind, issued no warnings, and gave Plaintiffs barely one business day to respond to the motion that resulted in the termination of a case that has been pending for almost ten years.

**B. <u>The Court Had Numerous Alternatives It Did Not Even Discuss.</u>**

Again, Plaintiffs maintain that no sanction is warranted. However, less drastic sanctions were certainly available rather than the ultimate sanction of dismissal. The Court acknowledged possible lesser alternatives, including dismissal of Torres and fee-shifting,

---

[3]  Even though Plaintiffs did, in fact, inform the Court.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

but did not explain why narrower measures aimed at the specific alleged prejudice would be inadequate before imposing the ultimate sanction against both plaintiffs." (ECF No. 329, p. 25). The Court had at its disposal, at minimum: (a) simply ruling on the pending Rule 17(c) motion, ECF No. 323, and permitting the case to proceed with a representative for Torres; (b) granting a continuance; (c) referring the matter to the State Bar for ethical review if the Court believed counsel's conduct warranted it, or; (d) conducting an evidentiary hearing before making any factual findings. The Court's Order does not discuss any of these alternatives, let alone explain why each would be inadequate.

### C. Factor Four Strongly Disfavors Dismissal in a Section 1983 Case.

The Court's own Order acknowledges that the fourth *Thompson* factor – public policy favoring resolution on the merits "clearly counsels against dismissal, especially because [this case] is a § 1983 civil rights action." ECF No. 329 at 24:23-25 (quoting *Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir. 1998)). The Ninth Circuit has emphasized that this policy "is particularly important in civil rights cases." *Hernandez*, 138 F.3d at 401 (quoting *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir.1987)). In *Hernandez*, the Ninth Circuit reversed dismissal of a Section 1983 case involving police officers who allegedly attacked Spanish-speaking individuals with batons, flashlights, and chemical sprays – facts remarkably analogous to the case at bar. The court found that the District Court abused its discretion, holding that the fifth factor – availability of less drastic sanctions "clearly counsel[ed] against dismissal." *Id.* at 401.

### III. THE COURT'S ORDER CONTRAVENES RULE 17(C)'S MANDATE TO PROTECT INCOMPETENT PARTIES

Federal Rule of Civil Procedure 17(c)(2) provides that "[t]he court must appoint a guardian ad litem-or issue another appropriate order-to protect a minor or incompetent person who is unrepresented in an action." The Ninth Circuit has unequivocally held that a district court may not "use the Rule as a vehicle for dismissing claims" of an incompetent person. *Davis v. Walker*, 745 F.3d 1303, 1310 (9th Cir. 2014).

In *Davis*, the Ninth Circuit found that the district court abused its discretion when, instead of appointing a guardian ad litem or taking other protective measures, it "closed the courthouse doors, aware of the strong probability that [the incompetent plaintiff] would not soon return." *Id.* at 1311. The court emphasized that Rule 17(c) imposes an *affirmative obligation* on the court to protect an incompetent person's interests, and that the court should have "sought counsel, made inquiry of the bar associations, or inquired as to whether law schools that may have clinical programs . . . would be willing to undertake the necessary representation." *See id.* (quoting *Powell v. Hartmann*, 680 F.3d 301, 308 (3d Cir.2012)).

Here, the precise opposite occurred. On April 20, 2026, this Court entered an Order recognizing that "Torres currently remains unrepresented within the meaning of Federal Rule of Civil Procedure 17(c)" and ordering Plaintiffs to inform the Court by April 21, 2026 "how they plan to proceed with the case as to [ ] Torres." ECF No. 320 at 1:24-2:5. Plaintiffs complied with that Order by filing a Motion to Appoint Torres' daughter, Suzanne Jackson, as a representative under Rule 17(c). ECF No. 323. Ms. Jackson holds durable medical, financial, and legal decision-making power of attorney over Torres' affairs, declared under penalty of perjury that she "wholeheartedly agree[s]" with pursuing the lawsuit, and noted that Torres "always told [her] that what happened to her brother Jim Denby's house in Casa Grande was a travesty . . . ." ECF No. 316-2 ¶¶ 3, 5, 11. Torres' own treating nurse practitioner recommended that "the court allow the designated Power of Attorney (POA) or legal representative to act on her behalf." ECF No. 316-1.

The Court's own actions throughout this case demonstrate that it viewed Rule 17(c) appointment and not dismissal as the appropriate mechanism. As recently as January 14, 2026, the Court denied Defendants' motion to dismiss the Third Amended Complaint, confirmed Torres' claims related back to the original complaint, and ordered the parties to "update the pretrial documents to reflect Elizabeth Torres as a Plaintiff." ECF No. 275 at 12:22-13:5. The Court thus actively integrated Torres into the case. Three months later, the Court dismissed the *entire case* because of Torres' participation – the very participation

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

the Court itself ordered. Rather than even considering or granting this motion the Court denied it as moot by dismissing the entire case. The Court thus ordered Plaintiffs to propose a path forward for Torres, and then dismissed the case before ruling on the very proposal it had solicited. This is precisely the outcome *Davis* prohibits: closing the courthouse doors to an incompetent plaintiff instead of exercising the protective function Rule 17(c) demands.

Other circuits have reached the same conclusion. In *Powell*, the Third Circuit reversed where the District Court failed to appoint a representative for an incompetent plaintiff in a Section 1983 case, holding it was an "abuse of discretion not to enter an order appointing an appropriate representative" when the evidence of incapacity was clear. 680 F.3d at 308. The court directed the district court to appoint counsel or a representative on remand, not to dismiss the case. *Id.* Here, by contrast, this Court had a pending motion to appoint a representative, ECF No. 323, a willing and qualified representative in Ms. Jackson, and a treating provider's recommendation to allow the POA to act on Torres' behalf yet chose dismissal instead. Notably, even *Defendants* recognized that Rule 17(c) appointment and not dismissal was the appropriate mechanism. In their Response to the Rule 17(c) Motion, Defendants asked this Court to "deny the motion to recognize Jackson as Torres' representative and to appoint, instead, a guardian ad litem at Plaintiffs' expense." ECF No. 324 at 9.:4-6. In other words, both sides agreed that the proper course was to appoint a representative for Torres under Rule 17(c), but disagreed only on *who* that representative should be. The Court's failure to exercise this universally acknowledged alternative, and instead dismiss her claims (indeed, the entire case), is an abuse of its discretion. *See Davis*, 745 F.3d at 1310-11.

## IV. <u>THE COURT'S BAD-FAITH FINDING SANCTIONS COUNSEL FOR COMPLYING WITH THEIR ETHICAL OBLIGATIONS.</u>

The Court's bad-faith analysis rests on its finding that Plaintiffs' counsel failed to investigate and disclose Torres' diminished capacity. ECF No. 329 at 17-19. But this finding overlooks the fundamental ethical obligations that constrained counsel's conduct –

obligations that, far from constituting bad faith, reflect compliance with Arizona's Rules of Professional Conduct. Both Robert T. Mills and Sean A. Woods have always practiced in litigation.

### A. **Counsel Did Not Mislead the Court**

As discussed herein, Plaintiffs' counsel protected their clients, held sacred the attorney-client privilege, and did not mislead the Court. Mills and Woods Law was formed in 2015 by Robert Mills and Sean Woods. Ex. 3 ¶ 21, Ex. 4 ¶ 20. Robert has always known Sean to observe high ethical standards, and act with candor and honesty toward the courts in which he practices and vice versa. Ex. 3, ¶ 22, Ex. 4, ¶ 21. Robert Mills has practiced law in Arizona since 1998 and prior to that practiced in Illinois and Missouri. Ex. 3, ¶ 3. He served a clerkship with the Honorable Howard C. Ryan (now deceased), Supreme Court of Illinois until his retirement at the end of 1990. *Id.* ¶ 4. Both Robert Mills and Sean Woods have always practiced in litigation and Sean Woods has always pursued his clients' claims for violation of civil rights. *Id.* ¶ 5, Ex. 3 ¶ 3. Sean Woods has been lead counsel on this case since its inception and has communicated directly with both current Plaintiffs throughout the case. Ex. 3 ¶ 5. Sean also communicated with former and deceased plaintiff, Wilma Logston. *Id.* ¶ 6.

Both Robert and Sean have never held the belief that Ms. Torres' testimony is necessary to prove either her claims or Jim Denby's claims in this matter. Ex. 3 ¶ 14, Ex. 4 ¶ 14. It was only when Ms. Torres' nurse practitioner issued a written opinion that Ms. Torres is not competent to testify that Plaintiffs' Counsel felt it necessary to inform the Court that Ms. Torres had this finding in her record. Ex. 3 ¶ 15, Ex. 4 ¶ 15. However, it didn't change anything other than to establish that perhaps Ms. Torres should not testify. *Id.* It was and continues to be Plaintiffs' belief and opinion that despite the opinion of the nurse practitioner, Ms. Torres is capable of testifying. Ex. 3 ¶ 16, Ex. 4 ¶ 16.  Despite this, Despite this, and to protect our client, Ms. Torres, Mr. Woods authored a Motion to Vacate the competency hearing because of the nurse practitioner's report. Ex. 3 ¶ 17. At the time

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Plaintiffs' counsel received the April 24, 2026 order dismissing the case, they had been arranging transportation for Ms. Torres to attend the trial. Ex. 3 ¶ 18, Ex. 4 ¶ 17. In Robert's 37 years of practicing law, he has not until now had any court accuse him of being dishonest or deceitful. Ex. 4 ¶ 19. He takes these accusations very seriously, and specifically requests the opportunity to clear his name in open Court as soon as possible. *Id.* In Sean's 15 years of practicing law, he has not until now had any court accuse him of being dishonest or deceitful. Ex. 3 ¶ 20. It has never once even been implied. *Id.* Rather, he has had judges applaud him for his honesty and integrity. *Id.* Sean takes this Court's accusations very seriously, and also specifically requests the opportunity to clear his name in open Court. *Id.*

### B. Arizona ER 1.14 Required Counsel to Maintain a Normal Relationship.

Arizona Ethical Rule 1.14(a) provides: "When a client's capacity to make adequately considered decisions in connection with a representation is diminished . . . the lawyer *shall, as far as reasonably possible, maintain a normal client-lawyer relationship* with the client." (Emphasis added). This is not discretionary. It is a mandate. The Comments explain that "the client may wish to have family members or other persons participate in discussions with the lawyer," *id.* Comment 3, and "the fact that a client suffers a disability does not diminish the lawyer's obligation to treat the client with attention and respect," *id.* Comment 1.

The Comments to ABA Model Rule 1.14 provide further guidance: "[a]n ordinary client-lawyer relationship is based, in part, on the assumption that the client, when properly advised and assisted, can make and communicate reasoned, informed decisions about important matters. When the client has decision-making limitations, however," *id.* Comment 4, "the lawyer must [nevertheless] keep the client's interests foremost," *id.* Comment 5. Moreover, because "[d]ecision-making limitations can be situational in nature and can vary in degree and over time. . . . A client with decision-making limitations often can understand, deliberate upon, and reach conclusions about matters affecting the client's own well-being." *Id.* Comment 2.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

14

That is exactly what counsel did here. Counsel communicated with Torres at the onset of the case and for years thereafter. Ex. 4, ¶ 5. Counsel met with Torres and Denby in person as well as Suzanne Jackson via speakerphone on February 2026. ECF No. 325 at 2, Ex. 4, ¶¶ 7-10, Ex. 3, ¶¶ 7-10. For what should be obvious reasons, Plaintiffs' counsel will not divulge what was discussed other than it was to respond to discovery. Ex. 3, ¶¶ 11-12, Ex. 4, ¶¶ 11-12. Nothing about that meeting led either Sean or Bob to believe that Ms. Torres was unable to testify. Ex. 3 ¶ 13, Ex. 4 ¶ 13. Denby communicated with Torres regularly and "consistently reported to counsel that Torres had capacity . . . ." *Id.* at 3. The Court's finding that counsel should have known Torres lacked capacity requires counsel to override the lay reports of their client and Torres' family member (Denby is her brother), to override the longstanding principle that diminished capacity can vary by degree and time, and to violate ER 1.14's directive to maintain a normal relationship as far as reasonably possible. Indeed, even the nurse practitioner's determination that Ms. Torres is incompetent to testify does not mean that Ms. Torres does not have a memory of the events at issue here, or that she could not actually take the stand and answer questions about them.

### C. Arizona ER 1.6 Prohibited Disclosure of Torres' Medical Condition.

Even if counsel had suspected Torres lacked capacity earlier, Arizona ER 1.6(a) prohibited disclosure of her medical condition absent informed consent or an applicable exception. ER 1.6(a) provides that "[a] lawyer shall not reveal information relating to the representation of a client" except in narrowly defined circumstances. A client's medical diagnosis, mental health status, and living situation are quintessentially confidential information relating to the representation.

ER 1.14(c) provides a narrow exception: "[w]hen taking protective action pursuant to paragraph (b), the lawyer is impliedly authorized under ER 1.6(a) to reveal information about the client, but ***only to the extent reasonably necessary to protect the client's interests***." (Emphasis added). Critically, this authorization is to protect *the client's* interests – not to satisfy the opposing party's desire for information, and not to assist the court in deciding whether the client should remain in the case. Disclosing Torres' medical condition

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

to the Court would have been *adverse* to Torres' interests, as it would have invited precisely the outcome that occurred: the termination of her claims. See also American Bar Association, "The Ten Commandments of 'Capacity' and the Law," September-October 2018 ("Thou shalt honor thy client's confidentiality and autonomy even in the face of incapacity.")

The Court thus punishes counsel for failing to do something that Arizona's ethical rules *prohibited* them from doing. This creates an impossible Catch-22: disclose and violate ER 1.6 or maintain confidentiality and face sanctions for bad faith. The Ninth Circuit has recognized that "[a] district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Compliance with mandatory ethical rules is the antithesis of bad faith, or of any kind of willful and improper conduct.

### D. The Sequence of Events Demonstrates Good Faith, Not Bad Faith.

The actual timeline demonstrates that counsel acted promptly once a formal determination of incapacity was made:

On March 30, 2026, nurse practitioner Calucer issued the first formal written determination that Torres lacked capacity to participate in litigation. Within days, counsel obtained Torres' medical records. On April 3, 2026, counsel disclosed the records to Defendants. On April 15, 2026, counsel filed the Motion to Vacate the competency hearing and conceded Torres' incompetency. ECF No. 316. On April 21, 2026, counsel filed the Motion to Appoint a Representative under Rule 17(c). ECF No. 323. This timeline reflects urgency and transparency, not bad faith.

The Court states that counsel "either completely failed to communicate with Torres and learn of her incompetency, or they failed to provide the Court with this information." ECF No. 329 at 21. But there is a third possibility the Court does not address: counsel communicated with Torres, relied in good faith on their client and Torres' *brother* Denby's regular reports about her capacity, met with her in person, formed a professional judgment under ER 1.14 that she retained sufficient capacity, and then promptly reversed course

16

when her medical provider counseled otherwise. That is not bad faith. That is lawyering under difficult ethical constraints.

The Court resolved this critical factual dispute – the central question in its bad-faith analysis – without an evidentiary hearing, without live testimony, and without cross-examination. The investigator's notes of Ms. Jackson's statements are hearsay.ECF No. 326 at 6-7. The Ninth Circuit has held that a finding of bad faith sufficient to support inherent-power sanctions requires conduct that "constitutes or is tantamount to bad faith." *Fink*, 239 F.3d at 993-94. At minimum, the disputed factual record required an evidentiary hearing before the Court could find, by clear and convincing evidence, that counsel acted in bad faith. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, n.14 (1980) (due process requires that sanctions, in particular dismissal and even a mere assessment of attorneys' fees, "should not be assessed lightly or without fair notice and an opportunity for a hearing on the record," and "[t]he due process concerns posed by an outright dismissal are plainly greater than those presented by assessing counsel fees"); *United States v. Tillman*, 756 F.3d 1144, 1146 (9th Cir. 2014) (concluding "the district court erred in imposing sanctions without notice and a hearing"); *U.S. v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (holding that "[w]here, as here, the conduct giving rise to the imposition of sanctions occurred outside the presence of the court, counsel should be provided an opportunity to explain his conduct. . . . To establish bad faith on this record, a hearing was required"); *Western Systems, Inc. v. Ulloa*, 958 F.2d 864, 873 (9th Cir. 1992) "conclud[ing] that the [sanctioned parties] were not afforded sufficient notice nor given an adequate hearing at which to contest the proposed sanctions," and "therefore vacat[ing] the award of sanctions and remand[ing] to the district court for a hearing on the appropriateness and the amount of the sanctions"); *Miranda v. Southern Pacific Transp. Co.*, 710 F.2d 516, 522 (9th Cir. 1983) ("agree[ing] that sanctions should not be imposed" absent "notice, an opportunity to respond, and a hearing," because "[a]bsent extraordinary circumstances, procedural due process requires notice and hearing before any governmental deprivation of a significant property interest").

**E. The Court's Own Prior Findings Negate Bad Faith.**

Perhaps the most compelling evidence against a bad-faith finding comes from this Court's own prior orders. On October 8, 2025, the Court granted Plaintiffs' Motion for Leave to File the Third Amended Complaint, which added Torres back as a plaintiff. ECF No. 255. In doing so, the Court made detailed findings that are irreconcilable with the dismissal order's conclusion that counsel acted in bad faith:

- **No Bad Faith:** The Court found that "[t]here is no evidence that Plaintiff purposefully waited over six years after Elizabeth Torres was dismissed to re-add her as a plaintiff." ECF No. 255 at 5:7-8. The Court rejected the very inference of strategic manipulation that the dismissal order now embraces.

- **Diligence:** The Court found that "Plaintiff's failure to re-add Elizabeth Torres as a Plaintiff earlier in the case does not reflect a lack of diligence," and that Plaintiff "promptly attempted to remedy the issue" through motion practice. ECF No. 255 at 4:24-27. The Court further noted that "it is not clear what tactical advantage Plaintiff would have gained" from any delay. ECF No. 255 at 5:10-11.

- **No Prejudice.** The Court expressly found that Defendants would not be prejudiced by Torres' addition to the case. ECF No. 255 at 6. This finding directly contradicts the dismissal order's reliance on alleged prejudice to Defendants as a basis for the ultimate sanction.

The Court cannot find on the same set of underlying facts that counsel acted with diligence, without bad faith, and without prejudice to Defendants in October 2025, and then find bad faith, willful misconduct, and prejudice sufficient to dismiss the entire case in April 2026. The conduct at issue is the same: counsel's handling of Torres' status as a plaintiff. What changed between October 2025 and April 2026 is not the nature of counsel's conduct - it is the discovery that Torres lacks the capacity to testify per her nurse practitioner. But that medical development does not retroactively transform conduct that the Court found diligent and non-prejudicial into sanctionable bad faith. The dismissal order does not acknowledge these prior findings, let alone explain why they no longer apply. That failure alone constitutes manifest error.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

18

On January 14, 2026, the Court reinforced these findings by denying Defendants' Motion to Dismiss the Third Amended Complaint. *See* ECF No. 275. The Court found that Torres' claims related back to the original complaint, that Denby had adequately alleged possessory interest standing, and that Defendants were not entitled to qualified immunity. ECF No. 275 at 9-13. The Court ordered the parties to update pretrial documents to reflect Torres as a plaintiff. ECF No. 275 at 13:4-5. These orders constitute the law of the case and cannot be silently abandoned.

## V.　THE COURT'S FINDING THAT MS. TORRES WAS INCOMPETENT FOR YEARS IS DIRECTLY CONTRARY TO LAW AND MEDICINE.

Federal Rule of Evidence 601 states:

> Every person is competent to be a witness unless these rules provide otherwise. except as otherwise provided in these rules. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision.

The Notes of the Advisory Committee on Proposed Rules explain that Rule 601 was intended to eliminate rules that automatically excluded as incompetent the testimony of witnesses. Specifically with respect to mental capacity to testify, the Committee noted:

> <u>No mental</u> or moral <u>qualifications</u> for testifying as a witness <u>are specified</u>. <u>Standards of mental capacity have proved elusive</u> in actual application. A leading commentator observes that <u>few witnesses are disqualified on that ground</u>. Weihoffen, *Testimonial Competence and Credibility*, 34 Geo. Wash. L. Rev.53 (1965). Discretion is regularly exercised in favor of allowing the testimony. <u>A witness wholly without capacity is difficult to imagine.</u> The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence. 2 Wigmore §§501, 509.

Emphasis added.　Plaintiffs' claims are federal law claims, and federal law provides the rule of decision.

Nothing in the Federal Rules provides that a person with dementia lacks the capacity to be a party to an action or the competency to testify at trial. "[N]ot all people diagnosed

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

with Alzheimer-type dementia are legally incompetent." *United States v. Liberatore*, 856 F. Supp. 358, 363 (N.D. Ohio 1994). Elderly, mentally impaired individuals are not automatically disqualified as witnesses. *See Rodriguez v. State*, 772, S.W.2d 167 (Tex. Ct. App. 1989) (testimony of 80 year old witness properly allowed although witness had Alzheimer's disease, recently had a nervous breakdown, did not know her own age and was confused about what day of the week it was, among other inconsistencies); *State v. Forte,* (Docket No. COA09-1591) Court of Appeals of North Carolina (2010) (99 year old elder abuse victim's *testimony allowed although he was at times confused and unable to answer certain questions during voir dire).*[4] See also *Huebner v. Ochberg*, 87 F.R.D. 449, 456 (E. D. Mich. 1980) (Assuming patients in mental hospitals are legally incompetent is prohibited under Michigan law.).

Similarly, a diagnosis of dementia does not mean that a person cannot validly execute legal documents, such as contracts and wills. *In re Estate of Vermeersch*, 109 Ariz. 125, 127 (1973) (Will contest – testator was 94 years old, forgetful, did not remember the names of her great grandchildren, and had a short attention span. In reversing a finding of lack of testamentary capacity, the Court stated "This court, however, is not concerned with a generally deteriorated mental condition; the law is concerned only with the state of the testatrix's mind at the time of the execution of the will," and that the law presumed testamentary capacity). In *In re Stitt's Estate*, 93 Ariz. 302, 304,380 P.2d 601 (1963) the

---

[4] Interpreting respectively Texas and North Carolina state rules of evidence modeled after FRE 601.

Arizona Supreme Court affirmed a finding of testamentary capacity despite evidence that at the time she executed her will the Testatrix:

> "shrieked and screamed at all hours of the day and night … became utterly careless in her dress, took to wearing very little clothing, rarely combed her hair or bathed, and on occasion was indecently exposed in the presence of neighborhood children … stopped taking care of her house, stopped cooking, and ate from cans, although she fed her animals and chickens better food … practiced 'black magic' … thought she could cast spells on people and tried to put a hex on the family next door …sat in the outhouse behind her home and watched the neighbors' children from a peephole or stalked up and down along the fence between their property, glaring and gesturing to them and sticking out her tongue … declared that the members of a church on the corner were praying for her to die …built a fence around her house to 'keep my enemies out' and hung a padlock on the gate."

In the last months before she executed her will "her conversation became incoherent and her mind wandered, she was forgetful and childish, and she seemed even more quarrelsome and ill-tempered than before." The Court held that while "the contestants have put on much testimony of what they might consider delusions or hallucinations they have not put on any testimony that the will was a creature or a product of these supposed delusions or hallucinations." *Id*. at 305. See also *Webb v. The Betty S. Anderson Children Trust*, 160 N.E.3d 804, 811, ¶ 36 (Ohio App. 2020) ("evidence that a person had dementia is insufficient by itself to establish the person's lack of testamentary capacity; there must be evidence that dementia actually affected the person's capacity to make the testamentary disposition.").

According to the U.S. National Institute on Aging, dementia "is an umbrella term used to describe a range of neurological conditions affecting the brain that get worse over time." https://www.nia.nih.gov/health/alzheimers-and-dementia/understanding-different-types-dementia. There are different types of dementia, and symptoms can vary from person to person. Dementia is not a "one-size-fits- all" condition. It is a progressive condition that affects each individual differently. Nor do dementia patients suffer a static state of mental

impairment. *See Interview of Dr. Melissa Batchelor*, Federal Judicial Center, "Dementia and Law: Helpful Tips for Courts," September 2024 (Symptoms of dementia can vary and can fluctuate over time; dementia progresses at rates that vary from person to person.) Accordingly, evidence of dementia-based incompetence at one period in time does not mean that an individual was incompetent at another point in time. *Liberatore*, 856 F. Supp. at 364 ("The pathology of Alzheimer-type dementia is neither so uniform nor so defined to render a sufficient degree of predictability to the course of defendant's malady."). Moreover:

> "Evidence suggests, however, that many people with dementia, even those with more advanced disease, can still articulate their values, preferences, and choices in a reliable manner. Indeed, people with dementia maintain a strong desire to remain central in decision-making processes that directly impact their lives."

American Medical Association, *AMA Journal of Ethics*, July 2017, Volume 19, Number 7, p. 639.

In a July 2024 interview with Federal Judicial Center regarding "Dementia and Law: Legal Perspective," United States District Court Judge Jed Rakoff of the Southern District of New York observed:

> "In the United States alone, 6 million people already have been diagnosed with Alzheimer's. And that figure is expected to grow to no few than 14 million by 2060. And one result of this is that an increasing number of litigants have dementia in one form or another. And that presents all sorts of problems for the court that many judges have never encountered before.
>
> I'll give you just one quick example from a case I had in the past year. So this was a commercial case, civil case, brought by a very wealthy but elderly gentleman. And he was beginning to suffer from dementia. And I found out in a funny way. Because he could not understand what his lawyers were saying. And he thought this was their fault.
>
> And after he had gone through three different sets of pretty competent lawyers, I got concerned it was causing big delays. And so, I brought in the most recent lawyers and questioned them a little. And of course, a lawyer, particularly in a civil case, is reluctant to say, Judge, my client is suffering from dementia. So they sort of expressed it as a communication problem but

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

one they were hoping to overcome and so forth. But eventually it all came out.

And then the question was what to do about it. I must admit, I ducked the issue. I did what any federal judge does in a situation like that. I referred it to a magistrate judge. But that kind of problem was new to me. And I think it's going to come much more frequent in the future."[5]

The fact that Ms. Torres has been diagnosed with dementia does not mean that she is or was incapable of understanding that she is a party to a lawsuit, that she is being represented, and that she needs to tell the truth if she testifies. This Court's dismissal of Plaintiffs' claims is a gross overreach and interference with the attorney-client relationship. Notably the Court has not inquired whether Mr. Jellison communicated personally with each of the individual defendants before he began representing them or, for that matter, whether any of them had any say in who would represent them. It doesn't matter what the answer is, Mr. Jellison has represented to the Court that they are his clients.

## VI.    THE EXPEDITED TIMELINE DEPRIVED PLAINTIFFS OF DUE PROCESS.

Defendants filed their Motion to Dismiss and for Sanctions on April 21, 2026. ECF No. 321. The Court ordered Plaintiffs to respond by 5:00 P.M. on April 22, 2026, ECF No. 322 – giving counsel approximately **one business day** to respond to a motion seeking the death penalty for a case that has been pending for almost ten years. The Court's Order dismissing the case issued two days later, on April 24, 2026. ECF No. 329. No hearing was held.

This timeline is extraordinary. Because "[a] district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions," the Ninth Circuit has identified three relevant factors for determining whether the trial court did so: "(1) [d]id the court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

---

[5] Notably, Judge Rakoff did not dismiss the case on the grounds that he or anyone else had been deceived about Plaintiff's mental condition.

inadequate? (2) [d]id the court *implement alternative methods* of sanctioning or curing the malfeasance *before ordering dismissal*? (3) [and] [d]id the court *warn* the plaintiff of the possibility of dismissal *before actually ordering* dismissal?" *Malone*, 833 F.2d at 131-32 (emphasis added).

While the Court may have attempted to address (1), it nevertheless completely failed to observe (2) and (3). The Court issued no prior warning that it was considering dismissal. It imposed no intermediate sanctions. It gave Plaintiffs barely twenty-four hours to respond to a case-dispositive motion and the compressed timeline was so extreme that Plaintiffs' Response was filed at 5:35 P.M., just thirty-five minutes after the 5:00 P.M. deadline. ECF No. 326 at 2:1. Defendants seized on this minimal delay to move to strike the Response entirely. ECF No. 326 at 1-3. The Court determined that the pending motions were "suitable for decision without oral argument," ECF No. 329 at 1 n.2 – despite the fact that the parties presented sharply disputed factual contentions about counsel's knowledge, the timing of events, and the nature of counsel's contact with Torres.

Indeed, even *Defendants* recognized that the factual record was inadequate for resolution on the papers. In their Reply, Defendants requested in the alternative that "Plaintiffs' unsupported assertions in their Response be properly vetted in an evidentiary hearing where documents must be produced, and witnesses testify under oath and subject to cross-examination . . . ." ECF No. 326 at 9:22-26. The Court did not hold an evidentiary hearing. Instead, it resolved every disputed factual issue against Plaintiffs and imposed the ultimate sanction – the termination of a nearly decade-old civil rights case four days before trial without permitting Plaintiffs any opportunity to present live testimony or cross-examine witnesses. Due process demanded far more.

## VII.  THE PROCEDURAL HISTORY OF JUDICIAL REASSIGNMENT COMPOUNDS THE PREJUDICE.

The procedural history surrounding the judicial reassignment of this case exacerbated the circumstances that led to this Order. The jury trial was originally set to begin March 17, 2026. ECF No. 250. The case was then reassigned to the Honorable Judge

Liburdi, ECF No. 258, the trial date was reset to April 28, 2026, ECF No. 262, and the case was subsequently reassigned back to Judge Logan, ECF No. 271. The Torres competency issues including the additional discovery, the competency hearing motion, and the motion practice at issue here all arose during this period of judicial transition and compressed timelines.

The reassignment and deadline reset created an environment where the Torres competency issue collided with rapidly approaching deadlines. The limited discovery period (February 18–March 2, 2026), ECF No. 282, the submission of revised pretrial documents (March 24, 2026), *id.*, and the filing of the competency motion (March 25, 2026), ECF No. 302, all occurred within this compressed window. To characterize counsel's conduct during this period as a deliberate scheme to defraud the Court rather than as a difficult navigational challenge under shifting deadlines and competing ethical obligations is a misapprehension of the facts that warrants reconsideration.

## VIII.   THE COURT RESOLVED MATERIAL FACTUAL DISPUTES WITHOUT AN EVIDENTIARY HEARING.

The Court's bad-faith finding rests on disputed factual determinations that were resolved entirely on the papers, without live testimony or cross-examination. The Supreme Court has held that the exercise of a court's inherent authority must comport with due process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Due process in such cases requires, at minimum, "fair notice and an opportunity for a hearing on the record." *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). Here, the parties presented sharply conflicting accounts on multiple material facts.

**First**, according to Defendants, their investigator reported that Ms. Jackson stated she had informed "attorneys for Jimmy Denby" "months" before March 23, 2026 that Torres was in memory care and they would need to ask her doctor whether she could testify. ECF No. at 326:11-15. Counsel for Plaintiffs stated that they met with Torres in person in February 2026 to develop answers to Defendants' discovery requests. ECF No. 325 at 2:15-16. The Court credited the investigator's hearsay account over the representations of two

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

officers of the Court, without permitting cross-examination of either Jackson or the investigator.

**Second**, the parties disagreed about when counsel knew or should have known of Torres' incapacity. Defendants argued counsel knew or should have known from Denby's July 31, 2025 visit. *See* ECF No. 326 at 8:6-11. Plaintiffs stated the first formal determination came with NP Calucer's March 30, 2026 letter. ECF No. 325 at 4:2-7. This factual dispute goes to the heart of the bad-faith finding.

**Third**, Defendants challenged the authenticity of the NP Calucer letter, stating they had "never seen an authenticate[d] copy" and that "[h]ow it was created, or wrote it [sic], and the standard relied upon by Calucer are unknown." ECF No. 326 at 8:21-24. Despite raising these questions, the Court relied on its own interpretation of the medical records without permitting either side to present expert or witness testimony.

Perhaps most tellingly, Defendants themselves recognized that the factual record was inadequate. In their Reply, Defendants urged alternatively that "Plaintiffs' unsupported assertions in their Response be properly vetted in an evidentiary hearing where documents must be produced, and witnesses testify under oath and subject to cross-examination including Calucer, Jackson, Denby, Sobraske and Woods." ECF No. 326 at 9:23-27. The Court declined to hold the hearing that even the moving party considered necessary, instead resolving every disputed fact against Plaintiffs and imposing the most severe sanction available.

"Because of [its] very potency," this Court's inherent power to sanction "must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Where, as here, the factual basis for a bad-faith finding is genuinely disputed, the court should have afforded the parties an opportunity to present evidence before imposing sanctions—especially the ultimate sanction of dismissal. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, n.14 (1980) (due process requires that sanctions, especially dismissal, "should not be assessed lightly or without fair notice and an opportunity for a hearing on the record").

**IX.   CONCLUSION AND REQUESTED RELIEF**

The Court's Order reflects manifest errors of law and fact. No sanction of any kind is warranted here. Counsel's conduct was dictated by Arizona's ethical rules, which required maintaining client confidentiality and a normal attorney-client relationship with a client of diminished capacity. Counsel acted promptly and transparently once a formal determination of incapacity was made. There is no bad faith, no fraud on the Court, and no basis for sanctions under any standard.

Even if the Court were to disagree, the dismissal of Denby's independent Fourth Amendment claims – claims that this Court and the Ninth Circuit have already found sufficiently pleaded – as a sanction for conduct relating to a different plaintiff's competency violates every applicable requirement: proportionality, nexus, consideration of alternatives, and due process. The Court's bad-faith finding rests on disputed facts that even Defendants acknowledged required an evidentiary hearing to resolve. No such hearing was held.

Plaintiffs respectfully requests that the Court:

**1.** Reconsider and vacate its Order dismissing this case, ECF No. 329;

**2.** Permit Plaintiffs to proceed to trial on their claims;

**3.** Rule on the pending Motion to Appoint a Representative for Torres under Rule 17(c), ECF No. 323;

**4.** In the alternative, hold an evidentiary hearing on the disputed factual issues underlying the Court's findings before entering any further orders; and

**5.** Grant such other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** this 8th day of May 2026.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

27

**MILLS + WOODS LAW, PLLC**


By     */s/ Sean A. Woods*
      Sean A. Woods
      Robert T. Mills
      5055 North 12th Street, Suite 101
      Phoenix, AZ 85014
      *Attorneys for Plaintiffs*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

28

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

James M. Jellison, Esq.
jim@jellisonlaw.com
**JELLISON LAW OFFICES, PLLC**
admin@jellisonlaw.com
18801 N Thompson Peak Parkway, Ste. D235
Scottsdale, AZ 85255
*Attorneys for Defendants David and Jane Doe Engstrom, Jacob H. Robinson, Christopher and Jane Doe Lapre, Sgt. Gragg and Jane Doe Gragg, and Rory Skedel*

Abram Ochoa
Tuc.Rita.library@azadc.gov
*Defendant*


        */s/ Ben Dangerfield*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556