Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| James W. Denby, a single man; Elizabeth J. Torres, a single woman,<br><br>Plaintiffs,<br><br>vs.<br><br>David Engstrom; Jacob H. Robinson; Christopher Lapre; Sgt. Gragg; Rory Skedel; Abram Ochoa, a single man,<br><br>Defendants. | Case No.: CV-17-00119-PHX-SPL<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RULE 59(E) RELIEF**<br><br>(Assigned to the Hon. Steven P. Logan) |

Through counsel undersigned and pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Plaintiffs James W. Denby ("Jim") and Elizabeth J. Torres ("Elizabeth") (collectively, "Plaintiffs") hereby reply in support of their Motion for Reconsideration[1] of the Court's Order dismissing Plaintiffs' claims in their entirety in this matter (the "Dismissal Order").

Defendants complain of "new arguments," but do not address the fact that the Court only allowed Plaintiffs *one day* to respond to Defendants' Motion to Dismiss before it dismissed the case in its entirety. They offer no substantive defense of the Dismissal Order. They cite not one single authority for the proposition that Plaintiffs and their counsel had *any* obligation to disclose Elizabeth's mental condition. They say nothing about her

---

[1] Plaintiffs reply to the Motion for Reconsideration only to the extent it requests relief under Rule 59(e), as Defendants' Response thereto is also so limited.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

presumed competence.[2] They cite nothing to support the proposition that she was legally incompetent at any time, or that she is legally incompetent now for that matter. They offer no rebuttal of the Declarations of Plaintiffs' counsel regarding Elizabeth.[3] They offer no explanation of how they or the interests of justice were in any way prejudiced by any of the alleged "deception."[4] They cite nothing to dispute that the Court was required to hold a hearing before dismissing the action as a sanction for alleged misconduct. They offer no excuse for why the Court ignored the sworn declaration of Elizabeth's Attorney and the representations of two officers of the Court.

## INTRODUCTION

Defendants' Response confirms, rather than rebuts, the manifest errors in the Dismissal Order. Faced with a motion identifying seven independent legal errors, Defendants devote the bulk of their brief to a procedural objection that Rule 59(e) cannot be used to "relitigate" and then simply reprint the Order's findings, as though repetition were refutation. Neither response engages the controlling law.

[2] They do not even mention the wealth of authority cited by Plaintiffs regarding the legal competency of mentally impaired individuals. They offer not one shred of anything to suggest that Elizabeth was not competent to enter into a legal representation agreement, to be aware that she is represented, to remember the events at issue in this litigation, and to testify. Defendants cite no authority to support the proposition that she is *legally* incompetent to do anything. Defendants constantly toss about the words "competence," "incompetent," and "competency" with respect to Elizabeth. But as explained in detail in Plaintiffs' Motion, such labels are meaningless.

[3] Defendants grossly misrepresent the record. For example, they assert that "plaintiffs' counsel now makes the incredible claim that Elizabeth was competent on February 26, 2026 and could have testified, but fell out of competency one month later and could not provide testimony thereafter." Defs.' Resp. 14:5-7. Plaintiffs did not determine that she was incompetent at any point. Rather, her nurse practitioner recommended that she not testify, and Plaintiffs simply followed that advice.

[4] They claim to have been misled about Elizabeth's competency to testify. As Defendants know, her testimony is not necessary to prove Jim's claims, and this Court has specifically recognized as much. Certainly, her own claims are not dependent on her competency to testify, because Defendants do not dispute that her name was on the deed to the Premises at the time Defendants destroyed it.

2

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Two points frame everything that follows. First, Plaintiffs do not seek reconsideration on the basis of "newly discovered evidence." They seek it to correct manifest errors of law and to prevent manifest injustice – independent grounds that, by definition, turn on the existing record and the Court's own prior orders, not on new facts. *See Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111-12 (9th Cir. 2011). Defendants' repeated invocation of the rule against "new evidence" is therefore beside the point.

Second, Defendants never answer the dispositive legal questions the Motion raises. How can the Court dismiss Jim's independent Fourth Amendment claims – claims this Court already held were adequately pleaded, ECF No. 275 at 10 – as a sanction for conduct concerning a different plaintiff's competency, when controlling law requires that any sanction bear a nexus to, and be calibrated against, the specific misconduct? How can dismissal stand when the Court implemented no lesser sanction, issued no warning, and never ruled on the pending Rule 17(c) motion it had itself solicited? And, how can a bad-faith finding rest on disputed facts resolved entirely on the papers – when even Defendants asked for an evidentiary hearing? Defendants offer no answer because there is none. The Order should be vacated.

## ARGUMENT

### I.    PLAINTIFFS' MOTION SQUARELY SATISFIES RULE 59(e).

Defendants devote nearly half their brief to the contention that Plaintiffs' Motion is a procedurally improper attempt to "relitigate." That argument misreads both Rule 59(e) and the Motion.

#### A.    Manifest Errors of Law and Manifest Injustice Are Independent Grounds That Do Not Require New Evidence.

The parties agree on the governing standard. A Rule 59(e) motion may be granted on any of four grounds: "(1) to correct a manifest error of fact or law; (2) to incorporate newly discovered and previously unavailable evidence; (3) to prevent manifest injustice; and (4) to address an intervening change in controlling law." Defs.' Mot. 3:13-16, May 22, 2026, ECF No. 337 (citing *Herron*, 634 F.3d at 1111–12). These grounds are stated in the

disjunctive. Reconsideration is appropriate where the district court "committed clear error or the initial decision was manifestly unjust" – grounds wholly independent of "newly discovered evidence." *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Plaintiffs' Motion rests on grounds (1) and (3), not (2). Defendants' lengthy argument that the affidavits and medical excerpts are not "newly discovered evidence," Defs.' Mot. at 5–6, attacks a ground Plaintiffs do not assert. A motion premised on manifest legal error necessarily relies on the record already before the Court; the entire point is that the Court erred in applying the law to that record. Defendants cannot convert a manifest-error motion into a "new evidence" motion and then fault it for failing the standard for new evidence.

### B. Arguments That Respond to the Order's Own Reasoning Are Not "New" and Cannot Be Waived.

Defendants' waiver theory – that Plaintiffs raise "new" arguments" that "could reasonably have been raised earlier," *see* Defs.' Mot. 3:18-20 (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)) – proves too much. *Marlyn* bars arguments that were available before the challenged ruling. It does not bar arguments that respond to the reasoning of the ruling itself. A litigant cannot "reasonably have [ ] raised earlier" a rebuttal to a rationale that did not exist until the Court announced it.

The arguments Defendants label "new" are precisely of this character. The Court's nexus analysis – its conclusion that Elizabeth's testimony "go[es] to the heart of [Jim's] Fourth Amendment standing," Dism'l Order 24:11-12, April 24, 2026, ECF No. 329 – first appeared in the Dismissal Order. By invoking *Goodyear* and *Anheuser-Busch*, Plaintiffs' Motion addresses that holding. The Court's treatment of the *Thompson*/*Malone* alternatives, its reliance on Rule 17(c) framing, and its competency findings likewise originated in the Dismissal Order. Pointing out that those determinations misapply *Davis v. Walker*, *Malone*, and Federal Rule of Evidence 601 is not "relitigation" – it is the core

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

function of a motion to correct manifest error. Indeed, every reconsideration motion necessarily "disagrees" with the order it challenges; if disagreement alone were disqualifying, Rule 59(e)'s manifest-error ground would be a nullity.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

### C. The Compressed Briefing Schedule, Not Any Strategic Withholding, Explains the Record – and Manifest Injustice Is Established Regardless.

To the extent the affidavits and records inform the Motion, they do so because Plaintiffs had approximately one business day to respond to a motion seeking the termination of a ten-year-old case. *See* Order, April 21, 2026, ECF No. 322 (ordering Plaintiffs to respond by 5 p.m. the very next day). Plaintiffs hurriedly worked around the clock to get their Response filed, but because the timeframe was so compressed, Plaintiffs were not able to get it on file until 5:35 P.M. – barely thirty (30) minutes over the deadline[5] – even though the issues presented required far more time. Material already in the record that corroborates and contextualizes facts *already in the record* such as Elizabeth's cognitive test scores, the timeline of counsel's contact is not the sort of "previously unavailable" evidence Rule 59(e)'s second prong addresses; it is confirmation of the manifest injustice worked by resolving a disputed bad-faith question on a 24-hour record. The relief Plaintiffs seek does not depend on this material. It depends on legal errors apparent on the face of the Order.

### D. Defendants Cannot Simultaneously Claim the Record Was Adequate and That Plaintiffs Waived a Hearing.

Defendants' procedural position is internally contradictory. They argue both that the record fully supported dismissal on the papers and that Plaintiffs waived any objection to the absence of a hearing by "not [ ] request[ing]" one. Defs.' Resp. 18:3. But, Defendants themselves told the Court the record was inadequate: in their Reply on the underlying motion, they urged that "Plaintiffs' unsupported assertions . . . be properly vetted in an evidentiary hearing where documents must be produced, and witnesses testify under oath

---

[5] Though Defendants moved to strike the Response as untimely, ECF No. 326 at 1-3, the Court declined to do so, Dism'l Order 1:26.

and subject to cross-examination . . . ." ECF No. 326 at 9:23-26. A party who demanded an evidentiary hearing below cannot now contend that proceeding without one was unobjectionable, or that Plaintiffs forfeited the very process Defendants themselves requested.

## II. DISMISSING JIM'S INDEPENDENT CLAIMS WAS MANIFEST ERROR.

### A. Jim's Standing Is Independent and Already Adjudicated.

Defendants assert that Jim's claims are not independent because he "repeatedly argued that [Elizabeth] will testify as to [his] possessory interest . . . ." Defs.' Resp. 10:3-4. That conflates the weight of trial evidence with the existence of a legal claim. This Court has already held that Jim "adequately alleged that [he] had a possessory interest in the Residence. . . . sufficient to establish Fourth Amendment standing . . . ." ECF No. 275 10:11-18. It reached that conclusion on Denby's own allegations of his decades of residence and control relying on *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1186-87 (9th Cir. 2015), and *United States v. Thomas*, 447 F.3d 1191, 1198 (9th Cir. 2006). Fourth Amendment standing has never required legal title. *Minnesota v. Olson*, 495 U.S. 91, 99 (1990) (overnight guest with no legal interest has reasonable expectation of privacy); *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). A man who lived in, paid taxes on, insured, and maintained a family home for decades has a possessory interest that does not evaporate because one corroborating witness becomes unavailable.

Defendants do not, and cannot, contend that this Court's prior standing holding was wrong. They instead argue that Jim's reliance on Elizabeth's testimony shows his claim "depend[s]" on her. But the availability of additional proof goes to how Jim proves his claim at trial, not to whether the claim exists. That distinction is dispositive, and the Order erased it.

### B. The Sanction Lacks the Nexus and Calibration the Law Requires.

Due process permits a terminating sanction only where there is "a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case.'" *Anheuser-*

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

*Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983)). And, a sanction imposed under the inherent power must be causally calibrated to the harm the misconduct caused. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108-09 (2017); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1063 (9th Cir. 2007) (sanction "must be tailored to" the specific misconduct).

The alleged misconduct concerns the disclosure and investigation of Elizabeth's competency. Whatever its bearing on Elizabeth's claims and her availability as a witness, it has no bearing on the existence of Jim's independent constitutional injury: the destruction of his home, his twelve years living at times without water or working utilities, and his own Fourth Amendment rights. Extinguishing those claims as a sanction for conduct relating to Elizabeth is the antithesis of a calibrated remedy. Defendants' recitation of the Court's "complicity" findings, *see* Defs.' Resp. 9–11, does not bridge this gap: every item on their list concerns Elizabeth's condition and testimony, not the independent factual basis of Jim's claims.

## III. THE COURT DID NOT CONSIDER – LET ALONE IMPLEMENT – THE REQUIRED ALTERNATIVES.

"Dismissal is a harsh penalty and is to be imposed only in ***extreme*** circumstances." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986) (emphasis added). Before imposing such a "harsh penalty," a court must "explore possible and meaningful alternatives." *Id.* at 1424. To determine whether a trial court sufficiently did so before dismissal, the Ninth Circuit asks (1) whether the court explicitly discussed the feasibility of less drastic sanctions and explained why they would be inadequate; (2) whether it implemented alternative sanctions before dismissing; and (3) whether it warned the party of possible dismissal. *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987).

Defendants address only the first factor, quoting the Dismissal Order's discussion of fee-shifting. *See* Defs.' Resp. at 11–13. They have no answer to factors two and three: the Court implemented no intermediate sanction of any kind, and issued no warning that

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

dismissal was under consideration. Defendants' reliance on *Adriana International Corp. v. Thoeren*, 913 F.2d 1406, 1412-13 (9th Cir. 1990), for the proposition that "an explicit warning is not always necessary," Defs.' Resp. 13:12-13, does not help them. *Adriana* excuses the absence of a warning where a party has defied prior orders over time; it does not excuse the simultaneous absence of a warning and of any lesser sanction, imposed on a one-day timeline with no prior notice of any kind. *See Adriana*, 913 F.2d at 1412-13.

Defendants' core justification – that alternatives were "impossible" because the case was "on the brink of jury trial," Defs.' Resp. 13:10-12 – is circular. The compressed posture was a function of the expedited schedule the Court itself set and of the trial date; a continuance was always available, and is the ordinary response when a represented but incompetent party needs a representative. The proximity of trial is a reason to consider alternatives, not a license to forgo them. This is especially so given the fourth *Thompson* factor, which the Order conceded "clearly counsels against dismissal" in a § 1983 case. Dism'l Order 24:23-25; *Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir. 1998); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

## IV. THE ORDER CONTRAVENES RULE 17(c)'s MANDATE TO PROTECT, NOT PUNISH, AN INCOMPETENT PARTY.

Defendants insist "the Court did not 'use' Rule 17 to dismiss [Elizabeth]." Defs.' Resp. 13:22-23. The label is immaterial; the result is what Rule 17(c) forbids. A court "may not use the Rule as a vehicle for dismissing claims" of an incompetent person and must instead appoint a representative or enter another protective order. *Davis v. Walker*, 745 F.3d 1303, 1310 (9th Cir. 2014). Closing the courthouse doors to an incompetent litigant, rather than protecting her, is an abuse of discretion. *See id.* at 1310–11; *accord Powell v. Symons*, 680 F.3d 301, 308 (3d Cir. 2012).

The posture here makes the error stark. First, the Court ordered Plaintiffs to state how they would proceed as to Elizabeth, Order 2:2-4, April 20, 2026, ECF No. 320; Plaintiffs quickly complied by moving to appoint Elizabeth's daughter holding a power of attorney, Suzanne Jackson, as representative under Rule 17(c), Pls.' Mot. Appoint, April

21, 2026, ECF No. 323; but the Court then abruptly dismissed the case mooting the very motion it had solicited without ruling on it. Notably, both sides agreed a representative was the proper course: Defendants asked the Court to "appoint, instead, a guardian ad litem at Plaintiffs' expense." Defs.'s Resp. Pls.' Mot. Appoint 9:5-6, April 22, 2026, ECF No. 324. The parties disagreed only about who should serve, not about whether Rule 17(c) protection was warranted. Choosing dismissal over the protective mechanism both sides endorsed is precisely the abuse of discretion *Davis* condemns.

## V.    THE BAD FAITH FINDING PUNISHES COUNSEL FOR CONDUCT THE ETHICAL RULES REQUIRED, AND DEFENDANTS' AUTHORITIES ARE INAPPOSITE.

"Before awarding sanctions under its inherent powers, [ ] [a] court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997); *Fink v. Gomez*, 239 F.3d 989, 992–94 (9th Cir. 2001). Compliance with mandatory ethical duties cannot supply that finding. Counsel was obligated under Arizona ER 1.14(a) to "maintain a normal client-lawyer relationship" with a client of diminished capacity, and under ER 1.6(a) to refrain from disclosing client confidences – including a medical diagnosis – absent an applicable exception. Treating adherence to these rules as "deception" creates an untenable Catch-22.

Defendants' newly cited disciplinary cases prove Plaintiffs' point by contrast. *In re Moak* involved an attorney who "fil[ed] the complaint without [the client's] consent and forg[ed] her name to the verification . . . ." 205 Ariz. 351, 350, ¶ 39 (Ariz. 2003). *In re Shannon* involved an attorney who "changed [the client's] answers" to interrogatories without the client's knowledge. 179 Ariz. 52, 63 (1994). Those cases sanction affirmative fabrication that include forging signatures and doctoring discovery. Counsel here did the opposite: they protected a client's confidences and declined to volunteer privileged medical information to the opposing party. Far from supporting sanctions, *Moak* and *Shannon*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

illustrate the kind of conduct (fabrication, not confidentiality) that actually warrants discipline.

Defendants' suggestions that counsel acted without Elizabeth's "consent," Defs.' Resp. at 14, 16, are contradicted by the record. Elizabeth's daughter and power of attorney holder declared under penalty of perjury that she "wholeheartedly agree[s]" with pursuing the lawsuit. Jackson Decl ¶ 11, ECF No. 316-2. And counsel's eventual disclosure of the medical records once competency was squarely placed in issue was authorized by ER 1.14(c) to protect the client's interests; it is not inconsistent with the earlier duty not to volunteer those confidences. *Channel Development*, the unpublished district-court decision Defendants cite, Defs.' Resp. 15:19-20, does not bear on these ethical questions and, in any event, addresses egregious litigation deception absent here.

## VI. THE FINDING THAT ELIZABETH WAS INCOMPETENT "FOR YEARS" IS CONTRARY TO LAW AND MEDICINE.

Defendants defend the Court's competency findings on the ground that they rested on "the medical records provided . . . ." Defs.' Resp. 17:10-11. But the legal error is not which records the Court read; it is the conclusion the Court drew from them. Under Federal Rule of Evidence 601, "[e]very person is competent to be a witness" unless a rule provides otherwise, and federal law supplies the rule of decision for these federal claims. Nothing in the Rules disqualifies a person with dementia. "[N]ot all people diagnosed with Alzheimer-type dementia are legally incompetent," and the disease's course is neither uniform nor predictable. *See United States v. Liberatore*, 856 F. Supp. 358, 363-64 (N.D. Ohio 1994). Arizona law is in accord, even for the more demanding question of capacity to execute legal instruments. *See In re Estate of Vermeersch*, 109 Ariz. 125, 127 (Ariz. 1973) (forgetfulness and deteriorated condition insufficient; capacity judged at the relevant moment); *In re Stitt's Estate*, 93 Ariz. 302, 380 P.2d 601 (1963) (capacity upheld despite severe eccentric and delusional behavior).

A single nurse practitioner's letter that Elizabeth should not testify at trial does not establish that she was incompetent to be a party "for years," nor that counsel's contrary

professional judgment was made in bad faith. The Dismissal Order's contrary inference is legal error.

## VII.   RESOLVING DISPUTED FACTS WITHOUT A HEARING VIOLATED DUE PROCESS.

The exercise of the inherent sanction power must comport with due process, which requires "fair notice and an opportunity for a hearing on the record." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 & n.14 (1980) (due process concerns of dismissal are "plainly greater" than those of a fee award). Where the conduct underlying sanctions occurred outside the court's presence and the facts are disputed, the Ninth Circuit at minimum requires a hearing before a bad faith finding may issue. *See United States v. Tillman*, 756 F.3d 1144, 1146 (9th Cir. 2014) (concluding "the district court erred in imposing sanctions without notice and a hearing"); *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (holding that "[w]here, as here, the conduct giving rise to the imposition of sanctions occurred outside the presence of the court, counsel should be provided an opportunity to explain his conduct. . . . To establish bad faith on this record, a hearing was required"); *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 873 (9th Cir. 1992) ("conclud[ing] that the [sanctioned parties] were not afforded sufficient notice nor given an adequate hearing at which to contest the proposed sanctions," and "therefore vacat[ing] the award of sanctions and remand[ing] to the district court for a hearing on the appropriateness and the amount of the sanctions"); *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 522 (9th Cir. 1983)("agree[ing] that sanctions should not be imposed" absent "notice, an opportunity to respond, and a hearing," because "[a]bsent extraordinary circumstances, procedural due process requires notice and hearing before any governmental deprivation of a significant property interest").

The record here was genuinely disputed on the issues central to the bad faith finding: when counsel learned of any incapacity; whether and when Jackson informed counsel of Elizabeth's condition (an account drawn from an investigator's hearsay summary); and the authenticity and meaning of the medical provider's letter. The Court resolved each disputed

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

point against Plaintiffs on the papers, crediting hearsay over the sworn representations of two officers of the Court, without live testimony or cross-examination. As shown above, even Defendants asked for an evidentiary hearing. ECF No. 326 at 9. Imposing the most severe sanction available, on the most serious accusation a court can level at counsel – deceit – without the hearing both the law required and the moving party requested, cannot be reconciled with due process.

**CONCLUSION**

Defendants' Response does not defend the Order on the law; it restates the Dismissal Order and recasts a procedural objection as a merits answer. The Dismissal Order reflects manifest errors: it dismissed independent claims without the required nexus; imposed the ultimate sanction without implementing any alternative or issuing any warning; chose dismissal over the Rule 17(c) protection both parties endorsed; treated mandatory ethical compliance as bad faith; misapplied the law of testimonial competency; and resolved sharply disputed facts without the hearing due process demands. Plaintiffs respectfully request that the Court:

1. Reconsider and vacate the Dismissal Order, ECF No. 329;

2. Permit Plaintiffs to proceed to trial on their claims;

3. Rule on the pending Motion to Appoint a Representative for Elizabeth under Rule 17(c), ECF No. 323;

4. In the alternative, hold an evidentiary hearing on the disputed factual issues before entering any further orders; and

5. Grant such other relief as the Court deems just and proper.

///

///

///

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**RESPECTFULLY SUBMITTED** this 29th day of May 2026.

MILLS + WOODS LAW, PLLC


By      /s/ Sean A. Woods
    Sean A. Woods
    Robert T. Mills
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014
    *Attorneys for Plaintiffs*


**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

James M. Jellison, Esq.
jim@jellisonlaw.com
**JELLISON LAW OFFICES, PLLC**
admin@jellisonlaw.com
18801 N Thompson Peak Parkway, Ste. D235
Scottsdale, AZ 85255
*Attorneys for Defendants David and Jane Doe Engstrom, Jacob H. Robinson, Christopher and Jane Doe Lapre, Sgt. Gragg and Jane Doe Gragg, and Rory Skedel*

Abram Ochoa
Tuc.Rita.library@azadc.gov
*Defendant*


    /s/ Ben Dangerfield